IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

ASSOCIATED RECOVERY, LLC,      )
               )
           *Plaintiff*,   )  Case No. 1:15-cv-01723-AJT-JFA
               )
v.                  )
               )
JOHN DOES 1-44,       )
               )
      *Defendants in rem*.  )

In re:

| 744.COM | KXW.COM | UHW.COM | YJX.COM |
|---------|---------|---------|---------|
| 028.COM | LNM.COM | VCZ.COM | YLZ.COM |
| 3DCAMERA.COM | LUOHE.COM | VGJ.COM | YQP.COM |
| FNY.COM | MEQ.COM | WYD.COM | YQT.COM |
| FX2.COM | OCU.COM | XAQ.COM | YRN.COM |
| FXF.COM | PIXIE.COM | XFF.COM | YTE.COM |
| JTZ.COM | QMH.COM | XSG.COM | YYG.COM |
| KGJ.COM | RUTEN.COM | YCX.COM | ZDP.COM |
| KMQ.COM | SDU.COM | YEY.COM | ZHD.COM |
| KOU.COM | SQG.COM | YGX.COM | ZULIN.COM |
| KXQ.COM | TAOLV.COM | YJR.COM | ZZM.COM |

**CERTAIN DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR FAILURE TO JOIN A NECESSARY PARTY, OR IN THE ALTERNATIVE, TO TRANSFER VENUE**

Certain Defendants,[1] by counsel, and pursuant to Fed. R. Civ. P. 12(b)(7) and 28 U.S.C. §

1404(a), hereby submit this Memorandum in Support of their Motion to Dismiss Complaint for

Failure to Join a Necessary Party, or in the Alternative, to Transfer Venue ("Motion").  The sale

of the domain names at issue in this case arises out a long and sordid history of actions taken in

another case, *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex.), which has been

described by the Fifth Circuit as "convoluted," *see In re Ondova Ltd.*, 619 F. App'x 362, 363

(5th Cir. 2015), and by the Northern District of Texas as a "nightmare," *see Netsphere, Inc. v.*

*Baron* ("*Netsphere II*"), No. 3:09-CV-0988-F, 2013 WL 3327858, at *1 (N.D. Tex. May 29,

2013).[2]

Novo Point, LLC ("Novo Point"), the predecessor to Plaintiff Associated Recovery, Inc.,

sold for value in 2012 many of its domain names pursuant to an order from the Northern District

of Texas ("Northern District") and earned hundreds of thousands of dollars from those sales.

Now, Plaintiff, years later, seeks the return of those very domain names, despite (i) its

predecessors never raising this dispute in the Northern District during the last four years of

ongoing litigation there; (ii) the Northern District expressly retaining exclusive jurisdiction over

all such disputes; and (iii) the purchase agreements for the sale of the domain names requiring

that all disputes be brought in Texas.  Further, Plaintiff fails to join necessary parties, including

its predecessors Novo Point and Jeffrey Baron who have been embroiled in years of litigation in

---

[1] Certain Defendants include the following defendants, with the domain names owned by them in
parentheses:  Jinwu Chen (meq.com), Xumin Huang (yjr.com), Feng Lu (sqg.com, xsg.com,
zdp.com, ycx.com), Yuhua Jiang (yqp.com, ygx.com, qmh.com, yqt.com), Zhilong Chu
(pixie.com), Yaoguang Zhu (028.com), Yanbin Li (wyd.com), Yu Lin (kxw.com), Xiaofeng Lin
(kmq.com, xaq.com, kxq.com, lnm.com, kgj.com), Genjing Zhen (luohe.com), Xiaoying Li
(zzm.com, xff.com), Liwei Liu (yyg.com), Dongdong Xu (yrn.com), Teng Wang (vcz.com),
Yang Gao (fny.com), Xiaohan Shen (zhd.com), and Feng Yan (zulin.com).

[2] As of this filing, there are 1,459 docket entries in *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-
F (N.D. Tex.).

the Northern District, and Novo Point's court-appointed manager, Damon Nelson, and its

receiver, Peter S. Vogel, who are the parties that sold the domain names on behalf of Novo Point

that are now held by Certain Defendants.

Plaintiff's resistance to litigating this action in Texas is even more perplexing in light of

Plaintiff's recent filing of a related lawsuit against U.S. persons and companies who also

purchased domains through the receivership.  *See* Complaint, *Associated Recovery, LLC v.

Butcher*, No. 2:16-cv-126 (E.D. Tex. Feb. 8, 2016), ECF No. 1 ("*Butcher* Complaint"), attached

as Exhibit A.

Accordingly, because Plaintiff has failed to join necessary parties, and exclusive

jurisdiction of these claims is with the Northern District of Texas, the Court should grant this

Motion.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Much of the procedural history has been discussed in decisions by the Northern District

and the Fifth Circuit, which are summarized in relevant part below.[3]

### A.     *Netsphere* Litigation

Years ago, Plaintiff's alleged predecessor-in-interest, Jeffrey Baron ("Baron") entered

into a joint venture with Munish Krishan ("Krishan") "involving the ownership and sale of

domain names."  *See Netsphere II*, 2013 WL 3327858, at *1.  Numerous disputes arose between

Baron and Krishan, and in April 2009 they reached an agreement and signed a Memorandum of

---

[3] Summaries of the procedural history by the Northern District and the Fifth Circuit can be found in the following orders and opinions:  *Netsphere, Inc. v. Baron* ("*Netsphere I*"), 703 F.3d 296, 302 (5th Cir. 2012); *Netsphere II*, 2013 WL 3327858; *In re Baron*, No. 12-37921-SGJ-7, 2013 WL 3233518 (Bankr. N.D. Tex. June 26, 2013), *rev'd sub nom.* Baron *v. Schurig*, No. 3:13-cv-3461-L, 2014 WL 25519 (N.D. Tex. Jan. 2, 2014), *aff'd in part, rev'd in part, sub nom. In re Baron*, 593 F. App'x 356 (5th Cir. 2014).

Understanding ("MOU") to settle all disputes between them. *Id.* Shortly thereafter, however, Baron and one of his companies, Ondova Ltd. ("Ondova"), allegedly breached the agreement. *Id.* Krishan and his company, Netsphere, Inc., filed suit in the Northern District of Texas against Baron and Ondova in May 2009. *Id.* Throughout the underlying case, Baron substituted counsel so many times that the Northern District of Texas was "concerned that Baron would continue to frustrate the judicial system by cycling through attorneys in order to cause delay." *Id.* at *2.[4]

### B.    Bankruptcy and Receivership

Early in the case, the Northern District entered a preliminary injunction to compel Baron to comply with the MOU. *Netsphere I,* 703 F.3d at 302. In July 2009, after Netsphere moved to hold Baron in contempt for violating the preliminary injunction and one day before the hearing, Baron further complicated the proceeding by placing Ondova into bankruptcy. *Id.* Eventually, the bankruptcy creditors and Ondova agreed to a partial settlement, but Baron continued to substitute counsel in the bankruptcy proceedings. *Id.* Another settlement was reached, and the bankruptcy court approved the settlement in July 2010. *Id.* at 303. At a hearing regarding the settlement agreement, the bankruptcy trustee informed the bankruptcy court that a former attorney for Baron testified that Baron planned to move assets that were subject to U.S. jurisdiction to another country. *Id.* The bankruptcy trustee was further concerned that money to pay lawyers and satisfy other claims in the bankruptcy would be lost by moving the assets. *Id.* In response, the district court appointed a special master to mediate claims for any unpaid legal fees based on a recommendation by the bankruptcy court. *Id.* at 304. After Baron again fired his attorney, the bankruptcy trustee filed a motion to appoint a receiver "because of Baron's failure

---

[4] Baron apparently refused to pay many of his counsel. *See Netsphere I,* 703 F.3d at 303 (at Fifth Circuit hearing, trustee's attorney "presented a chart identifying 45 lawyers whom Baron had not paid").

to cooperate with the order to mediate the legal-fee claims and his continued hiring and firing of

lawyers in violation of the court's order," which would "expose the bankruptcy estate to

additional administrative claims and further delay the resolution of the bankruptcy proceedings."

*Id.*  Ultimately, the Northern District of Texas appointed Peter S. Vogel ("Vogel" or "Receiver")

as the receiver for Baron's companies in November 2010.  *Id.*; *see also* Order Appointing

Receiver, *Netsphere, Inc. v. Baron* , No. 3:09-CV-0988-F (N.D. Tex. Nov. 24, 2010), ECF No.

130 (copy attached as Exhibit B).[5]

### C.      Sale of Domain Names Pursuant to Receivership

In order to fund disbursements to the unpaid attorneys, the Northern District granted a

motion by the Receiver to permit sales of domain names on February 4, 2011.  *See* Order

Granting the Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere, Inc. v.*

*Baron*, No. 3:09-CV-0988-F (N.D. Tex. Feb. 4, 2011), ECF No. 288 (copy attached as Exhibit

C); *see also* The Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere, Inc.*

*v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. Jan. 24, 2011), ECF No. 242.  The Northern District

further granted the Receiver's motion to appoint Damon Nelson ("Nelson") as permanent

manager of Quantec, LLC and Novo Point, LLC ("Novo Point") to assist the receiver in selling

the domain names.  *See* Order Granting the Receiver's Motion to Appoint Damon Nelson as

Permanent Manager of the LLCs and For Turnover of LLC Materials to Damon Nelson,

---

[5] The original order appointing a receiver granted the receiver exclusive control over Baron and
several of his related companies:  Village Trust, Equity Trust Company IRA 19471, Daystar
Trust, Belton Trust, Novo Point, Inc., Iguana Consulting, Inc., Quantec, Inc., Shiloh, LLC,
Novquant, LLC, Manassas, LLC, Domain Jamboree, and ID Genesis, LLC.  The Northern
District later clarified that the receivership order should have included Novo Point, LLC and
Quantec, LLC as parties over which the receiver has exclusive control.  *See* Order Granting the
Receiver's Motion to Clarify the Receiver Order with Respect to Novo Point, LLC and Quantec,
LLC, *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. Dec. 17, 2010), ECF No. 176
(copy attached as Exhibit D).

*Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. Apr. 22, 2011), ECF No. 473 (copy

attached as Exhibit E); *see also* The Receiver's Motion to Appoint Damon Nelson as Permanent

Manager of the LLCs and for Turnover of LLC Materials to Damon Nelson, *Netsphere, Inc. v.*

*Baron*, No. 3:09-CV-0988-F (N.D. Tex. Mar. 16, 2011), ECF No. 377.

Mr. Nelson worked under the direction of receiver Peter Vogel.  Pursuant to this latter

order authorizing sales of the domain names, Mr. Nelson sold the domain names that are the

subject of the instant case in 2012.  *E.g.*, Ex. F; *see also* ECF 1 ¶ 241.  The purchasers of these

domain names purchased them for value (hundreds of thousands of dollars) and pursuant to

formal domain name assignment and transfer agreements.  *E.g.*, Ex. F.  The seller of the domain

names in the agreements is Novopoint, LLC [sic], and Mr. Nelson authorized the sale and

signing on behalf of Novo Point.  *Id.*  Moreover, these domain name assignment and transfer

agreements contain forum selection clauses, which require that any dispute arising from or

relating to these agreements be brought in Texas:

> THIS AGREEMENT SHALL BE CONSTRUED AND ENFORCED IN
> ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS.  ALL
> DISPUTES ARISING FROM OR RELATING TO THIS AGREEMENT
> **SHALL BE ADJUDICATED IN THE U.S. DISTRICT COURTS FOR THE**
> **NORTHERN DISTRICT OF TEXAS** (DALLAS DIVISION) OR THE STATE
> DISTRICT COURTS OF DALLAS COUNTY, TEXAS, UNITED STATES.

*Id.* (capital letters in original; emphasis added).

### D.     Reversal of Receivership

Baron appealed the receivership order, as well as subsequent orders entered by the

Northern District.  *Netsphere I*, 703 F.3d at 305.  On appeal, the Fifth Circuit looked at "whether

a court can establish a receivership to control a vexatious litigant."  *Id.*  Ultimately, the Fifth

Circuit reversed the appointment of the receiver with directions to vacate the receivership.  *Id.* at

315.  Normally when a receivership is improper, the party that sought the receivership should be

accountable for the receivership fees and expenses.  *Id.* at 312.  But because the Fifth Circuit found that "the record supports that the circumstances that led to the appointment of a receiver were primarily of Baron's own making," the Fifth Circuit found that it was equitable to charge "the current receivership fund for reasonable receivership expenses."  *Id.* at 313.[6]

### E.       Winding Down of Receivership

Pursuant to the Fifth Circuit's Order, the Northern District began to wind down the receivership.  *See* Order, *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. Jan. 7, 2013), ECF No. 1155.  When determining the fees to be paid, the Northern District observed, "Never in this Court's experience of over 40 years in the civil justice system, both as a lawyer and a judge, has this Court observed the kind of party misconduct that has been exhibited by Baron."  *Id.* at 3.  While the Northern District recognized that the Fifth Circuit vacated the receivership, it understood that "all Orders issued under the Receivership remain in effect until the Receivership is wound down."  *Netsphere II*, 2013 WL 3327858, at *6-7.  Though winding down was further delayed by the bankruptcy and other proceedings over the next two years, on March 27, 2015, the Northern District issued an opinion and order regarding the Receiver's request for final accounting.  *Netsphere, Inc. v. Baron* ("*Netsphere III*"), No. 3:09-CV-0988-F, 2015 WL 1400543 (N.D. Tex. Mar. 27, 2015) (copy attached as Exhibit G).  In addition to awarding the Receiver fees and expenses and holding that the receivership should be terminated once the Receiver has been paid, the Northern District ordered that the Receiver "shall store and maintain all books and records of the Receivership estate under his control until otherwise ordered by the court."  *Id.* at *10.  Moreover, the Northern District held:

---

[6] On the same day that the Fifth Circuit reversed the receivership order, various creditors filed an involuntary-bankruptcy petition against Baron, which delayed the winding up of the receivership.  *See Netsphere II*, 2013 WL 3327858, at *6.

> The court **shall retain exclusive jurisdiction** of this case over any disputes that
> may arise concerning this or any earlier order, the wind down of the Receivership
> estate, and the relief provided under this order, or any controversy that arises from
> or relates to the Receivership or actions of the Receiver or his professionals.

*Id.* (emphasis added). Further, the Northern District held that it could not continue with the case

until related bankruptcies were resolved, and therefore closed, but did not dismiss, the case.

Order, *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. Mar. 27, 2015), ECF No. 1448.

In 2015, Baron, Quantec, and Novo Point filed a lawsuit against receiver Peter Vogel and

his Dallas-based law firm in Texas state court. Mr. Vogel successfully removed that case to the

Northern District—specifically, to Judge Lindsay's court—based on that Court's retention of

jurisdiction over issues arising from the receivership. Memorandum Opinion and Order, *Baron*

*v. Vogel*, No. 3:15-cv-232-L (N.D. Tex. Sep. 25, 2015), ECF No. 48 (copy attached as Exhibit

H).

### F.    This Litigation

Plaintiff is allegedly the "assignee for consideration of the rights to recover the Subject

Domain Names." ECF 1 ¶ 4. But Plaintiff does not explain how it became the assignee to any

interest of Novo Point or Baron. Nor does Plaintiff state or attempt to explain how it is able to

avoid the Northern District's order retaining "exclusive jurisdiction" over transactions occurring

during the receivership—the very transactions Plaintiff now seeks to unwind.[7] Indeed, as Novo

Point and Baron are clearly subject to the Northern District's clear order that it retains exclusive

jurisdiction over such disputes, Plaintiff can point to no basis why it allegedly succeeded to

---

[7] During the meet and confer conference, Certain Defendants asked Plaintiffs' counsel how
Associated Recovery allegedly obtained rights to the domain names from Jeffrey Baron and/or
Novo Point. Plaintiffs refused to provide that information. As any transfer of assets would
likely have required court approval by the Northern District, Plaintiffs' ability to sue and claim
some ownership right is very much at issue and tied to the Texas proceedings.

greater rights than its predecessors.  Finally, Plaintiff makes no attempt to explain why Novo

Point and/or Baron did not raise an issue with the sale of these domain names with the Northern

District of Texas over the last three and one-half to four years since the sale of these domain

names.

### G.       The *Butcher* Litigation

On February 8, 2016, Plaintiff filed a complaint in the Eastern District of Texas, seeking

the following relief:

> a declaration that Plaintiff's property, which was fraudulently converted Vis a Vis
> a vacated receivership which was a part of a bankruptcy, should be returned to
> Plaintiff, that any and all interest obtained in the property by every Defendant was
> done wrongfully, that Plaintiff has a superior right in law and equity and that any
> purported and/or alleged ownership rights are invalid, null and void *ab initio*. In
> addition to the return of its property under Texas law and a removal of cloud on
> said property via a request to quiet title, Plaintiff also seeks damages under federal
> and state law for conversion, misappropriation, the Texas Theft Liability Act,
> unjust enrichment, misappropriation, and violation of the Anticybersquatting
> Consumer Protection Act, 15 U.S.C. § 1125(d).

*Butcher* Complaint ¶ 1 (Ex. A).  There, Plaintiff sues more than 50 entities for return of domains

that, like these at issue in the present case, were conveyed through the N.D. Texas receivership.

*See id.* ¶¶ 97-108.  Plaintiff's counsel in *Butcher* is a Dallas-based attorney.  *Id.* at 29.

The *Butcher* Complaint references eight domain names that also are subject to Plaintiff's

complaint in *this* action.  Specifically, the *Butcher* Complaint lists qmh.com, sqg.com, xsg.com,

ycx.com, ygx.com, yqp.com, yqt.com, and zdp.com as alleged factual basis for including

defendants Telepathy, Inc. and Nathaniel Cohen in that case.  *Id.* ¶ 35.  Those same domains are

in-suit here.  *See* ECF 1 ¶¶ 22, 25, 33, 34, 36, 40, 41, 45.

## II.     ARGUMENT

### A.     The Court Should Dismiss this Action for Failure to Join Necessary Parties

"Rule 19 sets forth a two-step inquiry to determine whether a party should be joined."

*ADI Const. of Virginia LLC v. Bordewick*, No. 1:13CV598 JCC/IDD, 2013 WL 3730084, at *3

(E.D. Va. July 12, 2013).  Specifically, a court looks at: (1) "whether the party is 'necessary' to

the action under Rule 19(a)"; and (2) if the necessary party is unavailable, "whether the party is

'indispensable' to the case."  *Id.*  A party is "necessary" if

> (A) in that person's absence, the court cannot accord complete relief among
> existing parties; or (B) that person claims an interest relating to the subject of the
> action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the
> interest; or (ii) leave an existing party subject to a substantial risk of incurring
> double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  Once a party is determined to be necessary, courts then look at whether

joinder is feasible under the second step.  "Rule 19(a) sets forth three circumstances in which

joinder is not feasible: when venue is improper, when the absentee is not subject to personal

jurisdiction, and when joinder would destroy subject matter jurisdiction."  *E.E.O.C. v. Peabody*

*W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005); *see also* Fed. R. Civ. P. 19(a).  If joinder is not

feasible, courts look at whether the necessary party is indispensable.  To determine whether a

party is indispensable, courts must consider: "whether a judgment rendered in the party's

absence would be prejudicial, the extent to which prejudice can be lessened or avoided by

shaping relief, whether a judgment rendered in the party's absence would be adequate, and

whether the plaintiff will have an adequate remedy if the action is dismissed."  *ADI*, 2013 WL

3730084, at *4 (citing Fed. R. Civ. P. 19(b)).

In cases involving disputes over ownership of assets, "[a] determination of ownership to

assets allegedly transferred between a buyer and a seller should not be attempted without both

parties to the transaction being before the court." *In re Rouge Indus., Inc.*, 326 B.R. 55, 59 (Bankr. D. Del. 2005); *see also ADI*, 2013 WL 3730084, at *3 ("In applying Rule 19, the Fourth Circuit has found that 'all parties to a contract, and others having a substantial interest in it, are necessary parties.'" (quoting *Delta Financial Corp. v. Paul D. Comanduras & Assoc.*, 973 F.2d 301, 305 (4th Cir.1992))).

Here, the necessary parties are (1) Novo Point, the actual party to the domain name assignment and transfer agreements; (2) Jeffrey Baron, the apparent owner of Novo Point who has been embroiled in years of litigation in Texas and who the Texas courts have characterized as a "vexatious litigant"[8]; (3) Damon Nelson, the permanent manager of Novo Point and signatory of the domain name assignment and transfer agreements; and (4) Peter S. Vogel, the Northern District-appointed Receiver for Novo Point.  As discussed above, the domain names at issue in this case were all sold for hundreds of thousands of dollars by Novo Point pursuant to an order by the Northern District.  *See* ECF 1 ¶ 241.

Although Plaintiff alleges that it is the successor in interest to Novo Point, Plaintiff offers no proof of same.  *See id.* ¶ 3.  Moreover, given the complicated history in the Northern District, it is unclear how Novo Point could have transferred any domain names without any approval from the Northern District, and Plaintiff has not provided any order authorizing such transfer to itself of any assets of Novo Point or Baron.  In any event, Novo Point is required as the actual party to the domain name assignment and transfer agreements.  *See ADI*, 2013 WL 3730084, at

---

[8] *See, e.g.*, *Netsphere*, 703 F.3d at 304 (noting that the Northern District previously stated in its January 4, 2011 order that "Baron's vexatious litigation tactics have increased the cost of [the] litigation for all parties"); *In re Ondova Ltd. Co.*, No. 09-34784-SGJ-11, 2012 WL 5879147, at *10 (Bankr. N.D. Tex. Nov. 21, 2012) (finding that the "Receiver credibly testified that people are afraid of being sued by [Baron], given a reputation he has developed for being a vexatious litigator").

*3.  Plaintiff is disputing the validity of the domain name assignment and transfer agreements, and as such, the parties to the contract are necessary parties.  *See* 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1613 (3d ed. 2005) ("When the validity of the assignment itself is at issue the assignor's joinder may be required.").  Thus, Novo Point is a necessary party and should be joined.

Similarly, Plaintiff alleges that Baron is the predecessor-in-interest of Novo Point and of Plaintiff, and that Baron was responsible for acquiring the subject domain names.  *See* ECF 1 ¶¶ 3, 102.  Plaintiff further suggests that Baron is the party actually in control of Novo Point and responsible for the domain names, stating throughout the Complaint that Baron and/or Novo Point had ownership rights in the domain names, and that Baron and/or Novo Point never gave authority for Nelson to act.  *See id.* ¶¶ 241-259.  Given Baron's close involvement with Novo Point and the domain names, he should also be joined as a necessary party.

Moreover, at the time of the domain name sales, Nelson was the manager of Novo Point and the signatory to the domain name assignments, and the receiver, Peter Vogel, supervised and authorized Mr. Nelson's activities and, thus, both may be necessary parties who should be joined, given that they are the parties who purportedly transferred the domain names "without authorization," according to Plaintiff.[9]  *See id.* ¶ 241.

In *ADI*, the court was concerned about inconsistent obligations between the parties and considered it as part of the Rule 12(b)(7) analysis.  2013 WL 3730084, at *3.  That possibility arises here as well because of the lawsuit by Baron and Novo Point against Vogel.  *See generally* Ex. H.  There, Novo Point and Baron seek damages from Vogel.  But here, were Associated

---

[9] The fact that Baron, Quantec, and Novopoint currently are litigating against Mr. Vogel in the Northern District further militates in favor of transferring this lawsuit to that court.

Recovery to prevail, the Chinese entities who currently hold the domain names in-suit would likely have claims against Novo Point or Baron (or perhaps even Nelson or Vogel) for recovery of moneys spent by the Chinese entities to obtain the domains.

Second, it is not feasible to join Novo Point, Baron, Nelson, or Vogel because the Court cannot exercise personal jurisdiction over Novo Point, Baron, Nelson, and Vogel. A federal court may exercise personal jurisdiction over a non-resident where "(i) the applicable state long-arm statute confers jurisdiction; and (ii) the assertion of that jurisdiction is consistent with constitutional due process." *DeSantis v. Hafner Creations, Inc.*, 949 F. Supp. 419, 422 (E.D. Va. 1996). Virginia's long-arm statute allows for personal jurisdiction to be exercised over a person if the cause of actions arises out of the person's activities in Virginia. *See* Va. Code Ann. § 8.01-328.1 (West). Here, Novo Point's, Baron's, Nelson's, and Vogel's actions have nothing to do with Virginia. Rather, all of their actions are rooted in the Northern District. Thus, the requirements for personal jurisdiction are not met, and it is therefore not feasible to join Novo Point, Baron, Nelson, and Vogel. *See, e.g.*, *Thimbler, Inc. v. Unique Sols. Design USA, Ltd.*, No. 5:12-CV-695-BR, 2014 WL 1663418, at *4 (E.D.N.C. Apr. 25, 2014) (finding that joinder was not feasible where necessary party was not subject to personal jurisdiction in the district).

Lastly, Novo Point, Baron, Nelson, and Vogel are indispensable parties. "'[P]recedent supports the proposition that a contracting party is the paradigm of an indispensable party.'" *Id.* (quoting *Nat'l. Union Fire Ins. Co. v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 252 (4th Cir. 2000)). Further, the actions of these parties are at the heart of the transfer of the domain names to the Certain Defendants for value. If Novo Point, Baron, Nelson, and Vogel are not joined in this case, a judgment rendered in their absence would be prejudicial to them and to Certain Defendants. Here, Plaintiff's remedy for dismissal is to bring this case in the Northern District,

where it belongs, and where Novo Point, Baron, Nelson, and Vogel would be amenable to suit. *See Thimbler*, 2014 WL 1663418, at *4.

**B.      The Court Should Transfer this Action Under Section 1404(a)**

Ordinarily on a motion to transfer under Section 1404(a), "'a district court must make two inquiries: (1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum.'"  *Beatgasm, LLC v. Punchkick Interactive, Inc.*, No. 2:14CV611, 2015 WL 4394260, at *2 (E.D. Va. June 25, 2015) (quoting *Koh v. Microtek Int'l, Inc.* 250 F. Supp. 2d 627, 630 (E.D. Va.)).  "The calculus changes, however, when the parties' contract contains a valid forum-selection clause."  *Atlantic Marine Const. Co. v. U.S. District Court for the Western District of Texas*, -- U.S. --, 134 S.Ct. 568, 581, (2013).  In such cases, "a valid-forum selection clause [should be] given controlling weight in all but the most exceptional cases."  *Id.* (citation omitted).

**1.      The Claims Could Have Been Brought in the Northern District**

Under Section 1391, venue is proper in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S. Code § 1391.

As discussed, this case arises out of extensive proceedings in the Northern District, and the domain names were sold pursuant to orders by the Northern District expressly permitting the sale of the domain names at issue in this case.  Thus, venue would be proper under Section 1391(b)(2) in the Northern District.

### 2. The Northern District Retains Exclusive Jurisdiction to Hear All Claims Arising out of the Receivership or Actions of the Receiver

The Northern District has retained *exclusive* jurisdiction to hear this very dispute.  As discussed above, the Northern District recently held in the underlying *Netsphere* litigation that:

> The court **shall retain exclusive jurisdiction** of this case over any disputes that may arise concerning this or **any earlier order**, the wind down of the Receivership estate, and the relief provided under this order, or **any controversy that arises from or relates to the Receivership or actions of the Receiver or his professionals**.

*See Netsphere III*, 2015 WL 1400543, at *10 (Ex. G) (emphasis added).  First, it cannot be disputed that the domain names at issue in this case were sold pursuant to an "earlier order" by the Northern District.  *See* Ex. C.  Second, the sale of the domain names by the receiver to Certain Defendants, moreover, directly "arises from or relates to the Receivership or actions of the Receiver or his professionals."  Indeed, Plaintiff concedes that the Northern District "issued several orders permitting the receivership to sell at least some of the Subject Domain Names." ECF 1 ¶ 241.  Thus, because the Northern District has expressly held that it retains exclusive jurisdiction over such actions as the sale of domain names by the receiver, this case should be transferred to the Northern District.

Plaintiff's attempt to bring the action in this forum appears to be calculated to avoid the long litigation history in the Northern District, where clearly Novo Point and Baron are bound to bring any disputes arising from the sale of the domain names.  Indeed, there is no explanation for why Novo Point and Baron did not raise this dispute with the Northern District during the last three to four years that it has been litigating over the Receivership and the actions of the Receiver.

3.      **The Forum Selection Clause in the Domain Name Assignment and
        Transfer Agreements Requires Transfer**

The relevant domain name assignment and transfer agreements pertaining to the purchase

of the domain names at issue contain a mandatory forum selection clause for the Northern

District.  Specifically, the forum selection clause states:

> THIS AGREEMENT SHALL BE CONSTRUED AND ENFORCED IN
> ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS.  ALL
> DISPUTES ARISING FROM OR RELATING TO THIS AGREEMENT
> **SHALL BE ADJUDICATED IN THE U.S. DISTRICT COURTS FOR THE
> NORTHERN DISTRICT OF TEXAS** (DALLAS DIVISION) OR THE STATE
> DISTRICT COURTS OF DALLAS COUNTY, TEXAS, UNITED STATES.

*See, e.g.*, Ex. F (capital letters in original, emphasis added).  Thus, the agreements to purchase

the domain names designate either the Northern District or the state district courts of Dallas

County, Texas, as the exclusive forum for any claims arising out of the sale of the domain names

at issue.  Given the presence of the forum selection clause, the claims asserted by Plaintiff should

be adjudicated in the Northern District.  *See, e.g.*, *Beatgasm*, 2015 WL 4394260, at *3 (granting

a motion to transfer where an agreement contained a forum-selection clause and noting that "the

interests of justice still strongly favor a transfer to the parties' agreed and exclusive forum").

4.      **The Northern District is More Convenient for the Parties and
        Witnesses**

Even if there were no forum selection clause in the agreements, venue would be more

appropriate in the Northern District.  When courts look at convenience of the parties, "courts

generally consider 'ease of access to sources of proof, the cost of obtaining the attendance of

witnesses, and the availability of compulsory process.'"  *Glob. Tel Link Corp. v. Securus Techs.

Inc.*, No. 3:13-CV-713, 2014 WL 860609, at *5 (E.D. Va. Mar. 5, 2014) (quoting *Samsung

Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 717 n. 13 (E.D. Va. 2005)).

As discussed above, there is a long history of litigation in the Northern District involving Plaintiff's predecessors in interest, Baron and Novo Point.  Baron resides in Carrolton, Texas. *See* Original Complaint ¶ 4, *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. May 28, 2009), ECF No. 1.  Novo Point regularly engages in business in Texas and has selected the Northern District (and state district courts of Dallas County) as the exclusive forum to resolve the dispute regarding the domain names.  *See* Ex. F.  Plaintiff itself already has counsel in Dallas who is familiar with many of the core underlying facts of this litigation, particularly the N.D. Texas receivership.  *See Butcher* Complaint ¶¶ 97-108 (describing conveyance of domains during receivership), p. 29 (*Butcher* Complaint signed by attorney in Dallas).  Plaintiff's willingness to file a related lawsuit in Texas undermines its reluctance to litigate this case in Texas.  Likewise, the signatory to the domain name assignment and transfer agreements, Nelson, and the Receiver Vogel are located in Texas.  Thus, assuming that Novo Point, Baron, Nelson, and Vogel are properly joined as necessary parties as discussed above, it will be more costly to travel to Texas to depose these parties when the case should have been brought in Texas.

If they are not necessary parties, as discussed above, Novo Point, Baron, Nelson, and Vogel are essential parties and their testimony will likely be critical at trial, particularly as to the transfer of the domain names.  Moreover, Plaintiff claims throughout its complaint that "Novo Point used" the domain names and "Novo Point used and promoted" the domain names.  ECF 1.  Thus, Novo Point will be essential for Plaintiff to prove that it has common law trademarks in the domain names.  As non-parties, Novo Point, Baron, Nelson, Vogel would not be subject to compulsory process for trial in Virginia.

Moreover, the record evidence concerning the sales of the domain names during the receivership is also in the Northern District.  *See Netsphere III*, 2015 WL 1400543, at *10 (Ex.

16

G) (noting that the receiver "shall store and maintain all books and records of the Receivership estate under his control until otherwise ordered by the court").[10] Thus, transfer to the Northern District is proper given that it offers "easier access to sources of proof." *See Glob. Tel Link Corp.*, 2014 WL 860609, at *5.

Conversely, the Eastern District of Virginia is not convenient to any party. Certain Defendants are all located in China, and Plaintiff is located in Wyoming. ECF 1 ¶ 3. And, Certain Defendants are aware of no documents or witnesses that are located in Virginia.

### 5. The Northern District Has a Strong Interest in Adjudicating the Claims in this Case

In looking at the interests of justice, courts "look[] to 'the public interest factors aimed at systemic integrity and fairness.'" *Glob. Tel Link Corp.*, 2014 WL 860609, at *7 (quoting *Heinz Kettler GMBH & Co. v. Razor, USA, LLC*, 750 F. Supp. 2d 660, 669–70 (E.D. Va. 2010)). "'The most prominent elements of systemic integrity are judicial economy and the avoidance of inconsistent judgments.'" *Id.* (quoting *Kettler*, 750 F. Supp. 2d at 669–70).

As discussed above, the Northern District (and the Fifth Circuit) have dealt with *Netsphere* and its related litigation since 2009 and are most familiar with the facts, including the actions taken by Plaintiff's "predecessors-in-interest" Novo Point and Baron. Given that this case arises out of the Northern District's appointment of a receiver, the Northern District's order authorizing the sales of the domain names, and the Northern District's order retaining exclusive jurisdiction over all disputes arising from its orders or the Receivership, the Northern District has

---

[10] The Northern District Order also overrules the various objections asserted by Baron and Novo Point regarding the manner in which the Receivership assets were turned over. While it is unclear to Certain Defendants the scope of that specific ruling, it underscores the Northern District's intimate involvement in the very issues that are the subject of this case. *See Netsphere III*, 2015 WL 1400543, at *9, n. 7 (Ex. G).

a most profound interest in this case, and judicial economy would be best served by having the case heard in the Northern District. Indeed, Plaintiff's avoidance of the Northern District—unquestionably the court most familiar with the parties and operative facts—when filing this lawsuit and the *Butcher* case raises red flags about Plaintiff's intentions and commitment to efficient, non-vexatious litigation. Moreover, the Fifth Circuit, which has now heard multiple appeals arising from the years of litigation in Texas concerning Novo Point, Baron, and the Receivership, also has a strong interest in the outcome of this case as this matter concerns the issues the Fifth Circuit remanded to the Northern District.

Transferring to the Northern District will also avoid any inconsistent judgment regarding the effect of the receivership, which is at issue in this case. *See, e.g.*, *Augme Techs., Inc. v. Gannett Co.*, No. at *5 (E.D. Va. July 26, 2011) (finding that similarities with a suit in the Southern District of New York presented a "substantial risk of inconsistent judgment" and ultimately transferring to the Southern District of New York). Given the lengthy case history and continued litigation in the Northern District, the interests of justice strongly favor transfer to the Northern District. Indeed, that Plaintiff includes eight domains as part of both this action and the *Butcher* case underscores this risk. *Compare Butcher* Complaint ¶ 35, *with* ECF 1 ¶¶ 22, 25, 33, 34, 36, 40, 41, 45 (overlapping domain names).

## III.   CONCLUSION

WHEREFORE, for the foregoing reasons, the Certain Defendants respectfully request that the Court GRANT its motion to dismiss for failure to join a necessary party, and transfer the case to the Northern District, and for such other further relief as is appropriate.

Dated:  March 25, 2016

Of Counsel:

Steven M. Geiszler
Zunxuan D. Chen
Dentons US LLP
2000 McKinney Avenue
Suite 1900
Dallas, TX 75201-1858
214-259-0900 (phone)
214-259-0910 (fax)
steven.geiszler@dentons.com
digger.chen@dentons.com

Respectfully submitted,

/s/ Eric Y. Wu

Lora A. Brzezynski, VSB No. 36151
Claire M. Maddox, VSB No. 71230
Eric Y. Wu, VSB No. 82829
Dentons US LLP
1900 K Street, NW
Washington, DC  20006
202-496-7500  (phone)
202-496-7756 (fax)
lora.brzezynski@dentons.com
claire.maddox@dentons.com
eric.wu@dentons.com

*Counsel for Domain Names 028.com,
fny.com, kgj.com, kmq.com, kxq.com,
kxw.com, lnm.com, luohe.com, meq.com,
pixie.com, qmh.com, sqg.com, vcz.com,
wyd.com, xaq.com, xff.com, xsg.com,
ycx.com, ygx.com, yjr.com, yqp.com, yqt.com,
yrn.com, yyg.com, zdp.com, zhd.com,
zulin.com, zzm.com and Defendants Jinwu
Chen, Xumin Huang, Feng Lu, Yuhua Jiang,
Zhilong Chu, Yaoguang Zhu, Yanbin Lin, Yu
Lin, Xiaofeng Lin, Fengjing Zheng, Xiaoying
Li, Liwei Liu, Dongdong Xu, Teng Wang,
Yang Gao, Xiaohang Shen, Feng Yan*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 25th day of March 2016, I will electronically

file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a

notification of such filing (NEF) to the following:

> Rebecca J. Stempien Coyle (VSB 71483)
> Levy & Grandinetti
> Suite 304
> 1120 Connecticut Ave., N.W.
> Washington, D.C. 20036
> (202) 429-4560
> Fax: (202) 429-4564
> mail@levygrandinetti.com
>
> *Counsel for Associated Recovery, LLC*

> */s/ Eric Y. Wu*
> _____
> Eric Y. Wu, VSB No. 82829
> Dentons US LLP
> 1900 K Street, NW
> Washington, DC  20006
> 202-496-7500 (phone)
> 202-496-7756 (fax)
> eric.wu@dentons.com
>
> *Counsel for Domain Names 028.com,*
> *fny.com, kgj.com, kmq.com, kxq.com,*
> *kxw.com, lnm.com, luohe.com, meq.com,*
> *pixie.com, qmh.com, sqg.com, vcz.com,*
> *wyd.com, xaq.com, xff.com, xsg.com,*
> *ycx.com, ygx.com, yjr.com, yqp.com,*
> *yqt.com, yrn.com, yyg.com, zdp.com,*
> *zhd.com, zulin.com, zzm.com and*
> *Defendants Jinwu Chen, Xumin Huang,*
> *Feng Lu, Yuhua Jiang, Zhilong Chu,*
> *Yaoguang Zhu, Yanbin Lin, Yu Lin,*
> *Xiaofeng Lin, Fengjing Zheng, Xiaoying*
> *Li, Liwei Liu, Dongdong Xu, Teng Wang,*
> *Yang Gao, Xiaohang Shen, Feng Yan*