IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **ASSOCIATED RECOVERY, LLC,** | | |
| Plaintiff, | | **No. 3:16-CV-1025-N-BN** |
| v. | | |
| **JOHN DOES 1-44,** | | |
| Defendants *in rem*. | | |

*In re:*

| | | | |
|---|---|---|---|
| 744.COM | KXW.COM | UHW.COM | YJX.COM |
| 028.COM | LNM.COM | VCZ.COM | YLZ.COM |
| 3DCAMERA.COM | LUOHE.COM | VGJ.COM | YQP.COM |
| FNY.COM | MEQ.COM | WYD.COM | YQT.COM |
| FX2.COM | OCU.COM | XAQ.COM | YRN.COM |
| FXF.COM | PIXIE.COM | XFF.COM | YTE.COM |
| JTZ.COM | QMH.COM | XSG.COM | YYG.COM |
| KGJ.COM | RUTEN.COM | YCX.COM | ZDP.COM |
| KMQ.COM | SDU.COM | YEY.COM | ZHD.COM |
| KOU.COM | SQG.COM | YGX.COM | ZULIN.COM |
| KXQ.COM | TAOLV.COM | YJR.COM | ZZM.COM |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' RENEWED RULE 12(b) MOTION**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................................. 3
        A.    *Netsphere* Litigation ................................................................................ 3
        B.    Bankruptcy and Receivership ................................................................... 3
        C.    Sale of Domain Names Pursuant to Receivership ...................................... 4
        D.    Reversal of Receivership .......................................................................... 5
        E.    Winding Down of Receivership ................................................................. 6
        F.    *Baron v. Vogel* ....................................................................................... 7
        G.    This Litigation .......................................................................................... 7

III.    ARGUMENT AND AUTHORITIES ..................................................................... 8
        A.    The Court Should Dismiss this Action for Failure to State a Claim
              on Which Relief Can Be Granted. ............................................................. 8
        B.    The Court Should Dismiss this Action Because Plaintiff Lacks Standing. ................ 12
        C.    The Court Should Dismiss this Action for Failure to Join Necessary Parties. ........... 14
              1.    Novo Point ..................................................................................... 15
              2.    Jeffrey Baron ................................................................................. 16
              3.    Peter Vogel and Damon Nelson ...................................................... 17

IV.     CONCLUSION ..................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
      556 U.S. 662 (2009) ............................................................................................8

*In re Baron,*
      No. 12-37921-SGJ-7, 2013 WL 3233518 (Bankr. N.D. Tex. June 26, 2013),
      *rev'd sub nom. Baron v. Schurig,* No. 3:13-cv-3461-L, 2014 WL 25519 (N.D.
      Tex. Jan. 2, 2014), *aff'd in part, rev'd in part, sub nom. In re Baron,* 593 F.
      App'x 356 (5th Cir. 2014) ....................................................................................3

*Baron v. Vogel,* (*Vogel I*)
      No. 3:15-cv-232-L, 2016 WL 1273465 (N.D. Tex. Mar. 31, 2016) ............................. *passim*

*Bell Atlantic Corp. v. Twombly,*
      550 U.S. 544 (2007) ............................................................................................8

*Croft v. Gov. of Texas,*
      562 F.3d 735 (5th Cir.2009) ...............................................................................12

*Davis v. Bayless,*
      70 F.3d 367 (5th Cir. 1995) ................................................................................17

*DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.,*
      2014 WL 4961992, at *3 (E.D. Tex. Oct. 3, 2014) ...............................................8

*E.E.O.C. v. Peabody W. Coal Co.,*
      400 F.3d 774 (9th Cir. 2005) ..............................................................................15

*EDS Corp. v. Southwestern Bell Tel.,*
      674 F.2d 453 (5th Cir. 1982) ..............................................................................13

*Matter of Gober,*
      100 F.3d 1195 (5th Cir. 1996) ............................................................................10

*Guidry v. Am. Pub. Life Ins. Co.,*
      512 F.3d 177 (5th Cir. 2007) ................................................................................8

*HS Res., Inc. v. Wingate,*
      327 F.3d 432 (5th Cir. 2003) ..............................................................................15

*Jaffer v. Standard Chartered Bank,*
      301 F.R.D. 256 (N.D. Tex. 2014) ...............................................................15, 16, 17

*Johnson v. Ga. Hwy Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ............................................................................11

*LST Financial, Inc. v. Four Oaks Fincorp, Inc.*,
    No. 14-cv-435, 2014 WL 3672982 (W.D. Tex. Jul. 24, 2014) ...............................17

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ........................................12

*McCoy v. Misuboshi Cutlery, Inc.*,
    67 F.3d 917 (Fed. Cir. 1995)................................................................................13

*Hood ex rel. Mississippi v. City of Memphis*,
    570 F.3d 625 (5th Cir. 2009) ...............................................................................14

*Nat'l. Union Fire Ins. Co. v. Rite Aid of S.C., Inc.*,
    210 F.3d 246 (4th Cir. 2000) ...............................................................................17

*Netsphere, Inc. v. Baron*, (*Netsphere I*)
    703 F.3d 296 (5th Cir. 2012) ................................................................ *passim*

*Netsphere, Inc. v. Baron*, (*Netsphere II*)
    No. 3:09-CV-0988-F, 2013 WL 3327858 (N.D. Tex. May 29, 2013) .......................... *passim*

*Netsphere, Inc. v. Baron*, (*Netsphere III*)
    No. 3:09-CV-0988-L, 2015 WL 1400543 (N.D. Tex. Mar. 27, 2015) .......................... *passim*

*Nikols v. Chesnoff*,
    435 Fed. Appx. 766 (10th Cir. 2011)......................................................................8

*PEMEX Exploracion y Produccion v. Murphy Energy Corp.*,
    923 F. Supp.2d 961 (S.D. Tex. 2013) ............................................................12, 14

*R2 Invs. LDC v. Phillips*,
    401 F.3d 638 (5th Cir. 2005) ................................................................................8

*Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*,
    583 F.3d 348 (5th Cir. 2009) ................................................................................9

*Recoveredge LP v. Pentecost*,
    44 F.3d 1284 (5th Cir. 1995) ...............................................................................12

*Reliable Consultants, Inc. v. Earle*,
    517 F.3d 738 (5th Cir. 2008) ................................................................................8

*In re Rouge Indus., Inc.*,
    326 B.R. 55 (Bankr. D. Del. 2005) .......................................................................15

*In re Schering Plough Corp./Intron Temodar Consumer Class Action*,
   678 F.3d 235 (3rd Cir. 2012) .................................................................14

*SEC v. W.L. Moody & Co.*,
   374 F. Supp. 465 (S.D. Tex. 1974) ........................................................11

*In re Sims*,
   479 B.R. 415 (Bankr. S.D. Tex. 2012) ....................................................8

*Southmark Corp. v. Coopers & Lybrand*,
   163 F.3d 925 (5th Cir. 1999) .................................................................11

## Other Authorities

Fed. R. Civ. P. 12(b)(1).......................................................................2, 14

Fed. R. Civ. P. 12(b)(6)....................................................................2, 8, 12

Fed. R. Civ. P. 12(b)(7)....................................................................2, 3, 17

Fed. R. Civ. P. 19(a) ..............................................................................14

Fed. R. Civ. P. 19(b) ..............................................................................15

## I.       INTRODUCTION

This case should end immediately, under any or all of three Rule 12(b) bases.  The

parties' dispute concerns Internet domain names that Defendants acquired, directly or indirectly,

from Plaintiff Associated Recovery, LLC's predecessor-in-interest when a Court-appointed

receiver sold them.  The sales occurred in a related case, *Netsphere, Inc. v. Baron*, which then-

presiding Judge Furgeson described as a case that "should have been a simple contract dispute"

but "morphed into a … train-wreck involving numerous attorneys, millions of dollars in legal

fees, thousands of docket entries, and massive frustrations for all parties, for this Court, for the

Bankruptcy Court and for the Fifth Circuit." No. 3:09-CV-0988-F, 2013 WL 3327858, at *1

(N.D. Tex. May 29, 2013) ("*Netsphere II*").  Plaintiff alleges that the sales were improper and

the domain names should be returned because the Fifth Circuit later vacated the receivership

order.  But Plaintiff's predecessors, Jeffrey Baron and Novo Point, LLC, never raised this dispute

with the Court in *Netsphere*.[1]  Instead, Baron waited four-plus years then formed a shell

company, Associated Recovery, to file this separate lawsuit seeking return of the domain names.

The Court recently granted a Rule 12(b) motion in a related case brought by Baron and

Novo Point against the court-appointed receiver, Peter Vogel, and his law firm: *Baron v. Vogel*,

No. 3:15-cv-232-L, 2016 WL 1273465 (N.D. Tex. Mar. 31, 2016) ("*Vogel I*").[2]  Judge Lindsay

ruled that "any claim by Plaintiffs based on the wrongful establishment or continuation of the

receivership or payment of receivership expenses is an impermissible collateral attack of prior

orders through this suit." *Id.* at *6.  When applied to the case at-bar, that ruling makes Plaintiff's

allegations untenable.  Indeed, Defendants seek dismissal of this lawsuit because it is yet another

---

[1]  *"Netsphere"* refers to the *Netsphere v. Baron* litigation, No. 3:09-CV-0988-F/L (N.D. Tex.), whereas *Netsphere I, Netsphere II,* and *Netsphere III* refer to three orders in that litigation.

[2] "*Vogel*" refers to the *Baron v. Vogel* litigation, No. 3:15-cv-232-L (N.D. Tex.), whereas *Vogel I* refers to the specific Memorandum Opinion and Order dated Mar. 31, 2016.

impermissible attempt by Baron and Novo Point—through their proxy, Associated Recovery—to collaterally attack and unwind transactions that occurred under the Court's supervision.

First, Plaintiff fails to state a claim upon which relief can be granted.  The case at bar is yet another "impermissible collateral attack of prior orders"—this time, through the domain name purchasers rather than the receiver.  The Fifth Circuit's and this Court's rulings in *Netsphere* and *Vogel* on the propriety of the Receiver's actions—which include the sales of the domain names in dispute—not only impact the ability of Plaintiff to add Messrs. Vogel and Nelson as parties to this suit, but preclude Plaintiff's claims.  Accordingly, this case should suffer the same fate as *Vogel* and be dismissed under Rule 12(b)(6).

Second, Plaintiff lacks standing.  It is a shell company apparently created by Baron for the purpose of suing bona fide purchasers for value of domain names sold through the receivership.  Rulings in the *Netsphere* and *Vogel* cases, however, preclude Baron and Novo Point from pursuing this kind of case.  Because this Court authorized and later ratified the receiver's actions in selling the domain names, Baron and Novo Point had no domain name assets or interests to transfer to Plaintiff.  That is, they no longer had any rights to the domain names in dispute.  Thus, as Baron and Novo Point's assignee, Plaintiff lacks standing.  The Court should dismiss this case under Rule 12(b)(1).

Finally, Plaintiff failed to join necessary parties, including its predecessors Novo Point and Jeffrey Baron, who have been embroiled in years of litigation in this Court.  Plaintiff also failed to join Novo Point's court-appointed manager, Damon Nelson, and its receiver, Peter Vogel, who are the parties that, *on Novo Point's behalf and with this Court's authorization*, sold the domain names now held by Defendants.  Plaintiff's failure to join those necessary parties is grounds for dismissal under Rule 12(b)(7).

## II.     FACTUAL BACKGROUND

Much of the procedural history has been discussed in decisions by the Northern District and the Fifth Circuit, which are summarized in relevant part below.[3]

### A.     *Netsphere* Litigation

Years ago, Plaintiff's alleged predecessor-in-interest, Jeffrey Baron entered into a joint venture with Munish Krishan "involving the ownership and sale of domain names."  *See Netsphere II*, 2013 WL 3327858, at *1.  Numerous disputes arose between Baron and Krishan, and in April 2009 they reached an agreement and signed a Memorandum of Understanding ("MOU") to settle all disputes between them.  *Id.*  Shortly thereafter, however, Baron and one of his companies, Ondova Ltd., allegedly breached the agreement.  *Id.*  Krishan and his company, Netsphere, Inc., filed suit in the Northern District of Texas against Baron and Ondova in May 2009.  *Id.*  Throughout the underlying case, Baron substituted counsel so many times that the Judge Furgeson was "concerned that Baron would continue to frustrate the judicial system by cycling through attorneys in order to cause delay."  *Id.* at *2.[4]

### B.     Bankruptcy and Receivership

Early in the *Netsphere* litigation, the Court entered a preliminary injunction to compel Baron to comply with the MOU.  *Netsphere I*, 703 F.3d at 302.  In July 2009, after Netsphere moved to hold Baron in contempt for violating the preliminary injunction and one day before the hearing, Baron further complicated the proceeding by placing Ondova into bankruptcy.  *Id.*

---

[3] Summaries of the procedural history by the Northern District and the Fifth Circuit can be found in the following orders and opinions:  *Netsphere, Inc. v. Baron*, 703 F.3d 296, 302 (5th Cir. 2012) (*"Netsphere I"*); *Netsphere II*, 2013 WL 3327858; *In re Baron*, No. 12-37921-SGJ-7, 2013 WL 3233518 (Bankr. N.D. Tex. June 26, 2013), *rev'd sub nom. Baron v. Schurig*, No. 3:13-cv-3461-L, 2014 WL 25519 (N.D. Tex. Jan. 2, 2014), *aff'd in part, rev'd in part, sub nom. In re Baron*, 593 F. App'x 356 (5th Cir. 2014).

[4] Baron apparently refused to pay many of his counsel.  *See Netsphere I*, 703 F.3d at 303 (at Fifth Circuit hearing, trustee's attorney "presented a chart identifying 45 lawyers whom Baron had not paid").

3

Eventually, the bankruptcy creditors and Ondova agreed to a partial settlement, but Baron continued to substitute counsel in the bankruptcy proceedings. *Id.* Another settlement was reached, and the bankruptcy court approved the settlement in July 2010. *Id.* at 303. At a hearing regarding the settlement agreement, the bankruptcy trustee informed the bankruptcy court that a former attorney for Baron testified that Baron planned to move assets that were subject to U.S. jurisdiction to another country. *Id.* The bankruptcy trustee was further concerned that money to pay lawyers and satisfy other claims in the bankruptcy would be lost by moving the assets. *Id.*

In response, Judge Furgeson appointed a special master to mediate claims for any unpaid legal fees based on a recommendation by the bankruptcy court. *Id.* at 304. After Baron again fired his attorney, the bankruptcy trustee filed a motion to appoint a receiver "because of Baron's failure to cooperate with the order to mediate the legal-fee claims and his continued hiring and firing of lawyers in violation of the court's order," which would "expose the bankruptcy estate to additional administrative claims and further delay the resolution of the bankruptcy proceedings." *Id.* Ultimately, the Court appointed Peter Vogel ("Vogel" or "Receiver") as the receiver for Baron's companies in November 2010. *Id.*; *see also* Order Appointing Receiver, *Netsphere* Dkt. 130 (N.D. Tex. Nov. 24, 2010).[5]

### C.    Sale of Domain Names Pursuant to Receivership

In order to fund disbursements to the unpaid attorneys, the Court granted a motion by the Receiver to permit sales of domain names on February 4, 2011. *See* Order Granting the

---

[5] The original order appointing a receiver granted the receiver exclusive control over Baron and several of his related companies: Village Trust, Equity Trust Company IRA 19471, Daystar Trust, Belton Trust, Novo Point, Inc., Iguana Consulting, Inc., Quantec, Inc., Shiloh, LLC, Novquant, LLC, Manassas, LLC, Domain Jamboree, and ID Genesis, LLC. The Court later clarified that the receivership order should have included Novo Point, LLC and Quantec, LLC as parties that the receiver has exclusive control over. *See* Order Granting the Receiver's Motion to Clarify the Receiver Order with Respect to Novo Point, LLC and Quantec, LLC, *Netsphere* Dkt. 176 (N.D. Tex. Dec. 17, 2010).

Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere* Dkt. 288 (N.D. Tex.

Feb. 4, 2011); *see also* The Receiver's Omnibus Motion to Permit Sales of Domain Names,

*Netsphere* Dkt. 242 (Jan. 24, 2011).  The Court further granted the Receiver's motion to appoint

Damon Nelson ("Nelson") as permanent manager of Quantec, LLC and Novo Point, LLC

("Novo Point") to assist the receiver in selling the domain names.  *See* Order Granting the

Receiver's Motion to Appoint Damon Nelson as Permanent Manager of the LLCs and For

Turnover of LLC Materials to Damon Nelson, *Netsphere* Dkt. 473 (N.D. Tex. Apr. 22, 2011);

*see also* The Receiver's Motion to Appoint Damon Nelson as Permanent Manager of the LLCs

and for Turnover of LLC Materials to Damon Nelson, *Netsphere* Dkt. 377 (Mar. 16, 2011).

Mr. Nelson worked under the direction of receiver Peter Vogel.  Pursuant to this latter

order authorizing sales of the domain names, Mr. Nelson sold the domain names that are the

subject of the instant case in 2011 and 2012.  *E.g.*, App. 3-29 (Exhibits A-D: domain name

assignments and transfer agreements for domain names in-suit); *see also* Complaint ¶ 241 (Dkt.

1).  The purchasers of these domain names purchased them for value (thousands of dollars) and

pursuant to formal domain name assignment and transfer agreements.  *E.g.*, App. 3-29.  The

seller of the domain names in the agreements is Novopoint, LLC [*sic*], and Mr. Nelson

authorized the sale and signing on behalf of Novo Point.  *Id.*

### D.      Reversal of Receivership

Baron appealed the receivership order, as well as subsequent orders entered by the Court.

*Netsphere I*, 703 F.3d at 305. On appeal, the Fifth Circuit looked at "whether a court can

establish a receivership to control a vexatious litigant."  *Id.*  Ultimately, the Fifth Circuit reversed

the appointment of the receiver with directions to vacate the receivership. *Id.* at 315. Normally

when a receivership is improper, the party that sought the receivership should be accountable for

the receivership fees and expenses.  *Id.* at 312.  But because the Fifth Circuit found that "the

record supports that the circumstances that led to the appointment of a receiver were primarily of Baron's own making," the Fifth Circuit found that it was equitable to charge "the current receivership fund for reasonable receivership expenses." *Id.* at 313.[6]

### E.    Winding Down of Receivership

Pursuant to the Fifth Circuit's Order, the Court began to wind down the receivership. *See* Order, *Netsphere* Dkt. 1155 (N.D. Tex. Jan. 7, 2013).  When determining the fees to be paid, Judge Furgeson observed, "Never in this Court's experience of over 40 years in the civil justice system, both as a lawyer and a judge, has this Court observed the kind of party misconduct that has been exhibited by Baron." *Id.* at 3. While the Court recognized that the Fifth Circuit vacated the receivership, it understood that "all Orders issued under the Receivership remain in effect until the Receivership is wound down." *Netsphere II*, 2013 WL 3327858, at *6-7.

Though winding down was further delayed by the bankruptcy and other proceedings over the next two years, on March 27, 2015, then-presiding Judge Lindsay issued an opinion and order regarding the Receiver's request for final accounting. *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-L, Dkt. 1447, 2015 WL 1400543 (N.D. Tex. Mar. 27, 2015) ("*Netsphere III*"). In addition to awarding the Receiver fees and expenses and holding that the receivership should be terminated once the Receiver has been paid, the Court ordered that the Receiver "shall store and maintain all books and records of the Receivership estate under his control until otherwise ordered by the court." *Id.* at *10. Moreover, Judge Lindsay ordered:

> The court shall retain exclusive jurisdiction of this case over any disputes that may arise concerning this or any earlier order, the wind down of the Receivership estate, and the relief provided under this order, or any controversy that arises from or relates to the Receivership or actions of the Receiver or his professionals.

---

[6] On the same day the Fifth Circuit reversed the receivership order, various creditors filed an involuntary-bankruptcy petition against Baron, which delayed winding down the receivership. *See Netsphere II*, 2013 WL 3327858, at *6.

*Id.* (emphasis added). Further, the Northern District held that it could not continue with the case until related bankruptcies were resolved, and therefore closed, but did not dismiss, the case. Order, *Netsphere* Dkt. 1448 (N.D. Tex. Mar. 27, 2015).

### F.     *Baron v. Vogel*

In 2015, Baron, Quantec, and Novo Point filed a lawsuit against receiver Peter Vogel and his law firm in Texas state court. Vogel successfully removed that case based on the Court's retention of jurisdiction over issues arising from the receivership. Memorandum Opinion and Order, *Vogel* Dkt. 48 (N.D. Tex. Sep. 25, 2015).  Judge Lindsay then quickly dismissed the *Vogel* case with prejudice, ruling that, although the Fifth Circuit vacated the receivership order, Mr. Vogel conducted his receivership duties according to the Court's authorization.  *Vogel I*, 2016 WL 1273465 at *6 ("[A]ny claim by Plaintiffs based on the wrongful establishment or continuation of the receivership or payment of receivership expenses is an impermissible collateral attack of prior orders through this suit.").

### G.     **This Litigation**

Plaintiff is allegedly the "assignee for consideration of the rights to recover the Subject Domain Names."  Complaint ¶ 4 (Dkt. 1).  But Plaintiff does not explain how it became the assignee to any interest of Novo Point or Baron.[7]  Indeed, as Novo Point and Baron are prevented by the *Vogel I* decision from attacking the receivership, Plaintiff can point to no basis why it allegedly succeeded to greater rights than its predecessors.  Indeed, every indication points to Baron pulling the strings in this case. Finally, Plaintiff makes no attempt to explain why

---

[7] During the meet-and-confer conference before the original motion in E.D. Va., Defendants asked how Associated Recovery allegedly obtained rights to the domain names from Jeffrey Baron and/or Novo Point.  Plaintiff refused to provide that information.  As any transfer of assets would likely have required court approval by this Court, Plaintiff's ability to sue and claim some ownership right is very much at issue.

Novo Point and/or Baron did not raise an issue with the sales of these domain names with the Court in the *Netsphere* case over the last three and one-half to four years since the sale occurred.

## III.    ARGUMENT AND AUTHORITIES

### A.    The Court Should Dismiss this Action for Failure to State a Claim on Which Relief Can Be Granted.

The Fifth Circuit decision in *Netsphere I* and this Court's decisions in *Netsphere II, Netsphere III,* and *Vogel I* collaterally estop Plaintiff's claims.[8]  In light of that collateral estoppel, dismissal is proper under Rule 12(b)(6).

To avoid dismissal, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).  A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth."  *Id.* at 679 (citation omitted).  Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions.  *R2 Invs. LDC v. Phillips,* 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted).  As

---

[8] Plaintiffs' challenges to the validity of these orders are fully briefed and submitted to the Fifth Circuit for oral argument and decision. Nevertheless, a judgment or order is final for purposes of the doctrine of collateral estoppel, even though on appeal, until that judgment or order is reversed on appeal, modified, or set aside by the rendering court. *See Nikols v. Chesnoff*, 435 Fed. Appx. 766, 770 (10th Cir. 2011); *DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, --- F. Supp. 3d ----, 2014 WL 4961992, at *3 (E.D. Tex. Oct. 3, 2014); *In re Sims*, 479 B.R. 415, 421 (Bankr. S.D. Tex. 2012).

explained below, Associated Recovery's claims are, at heart, an impermissible attack on actions taken by Nelson under Vogel's supervision and with the Court's authorization and ratification.

To establish collateral estoppel under federal law, one must show: (1) the issue is identical to the issue involved in the prior litigation; (2) the issue was actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation was a crucial and necessary part of the judgment. *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.,* 583 F.3d 348, 353 (5th Cir. 2009). Here, all three prongs are met.

The issues Plaintiff raises in its complaint have been litigated and decided against Plaintiff's predecessors-in-interest. Plaintiff alleges that the domain names at issue were "improperly" placed under the control of a receivership then sold pursuant to "Improper Receivership Sale Orders." Complaint ¶¶ 240-41 (Dkt. 1). But the Fifth Circuit held that the district court entered the Receivership Order to bring a halt to Baron's "longstanding vexatious litigation tactics," and rejected Baron's contention that the appointment of the Receiver was in bad faith or collusive. *Netsphere I,* 703 F.3d at 310-13 ("[W]e hold, based on this record, that in creating the receivership there was no malice nor wrongful purpose, and only an effort to conserve property in which the court believed it was interested in maintaining for unpaid attorney fees and to control Baron's vexatious litigation tactics.") (internal quotations omitted). The Fifth Circuit also held that "the record supports that the circumstances that led to the appointment of a receiver were primarily of Baron's own making." *Id.*

Moreover, since the *Netsphere I* decision, this Court has had opportunity to review the actions of the Receiver, Peter Vogel, and the manager, Damon Nelson. The Court found Vogel's work "exemplary and entirely appropriate," *Netsphere II,* 2013 WL 3327858, at *22. Both the Fifth Circuit and this Court blamed Baron—not Vogel or Nelson—for the high fees and other

expenses that Baron himself caused. *See Netsphere I*, 703 F.3d at 310-13; *Netsphere II,* 2013 WL 3327858, at *7, 15-16; 21-22; *Netsphere III*, 2015 WL 1400543, at *3.

The issues in this suit previously were presented to the Fifth Circuit and to this Court in connection with *Netsphere II*. In Baron's *Netsphere I* March 28, 2011 Fifth Circuit brief, he complained—as Associated Recovery complains here—that the Receivership was wrongful. Baron sought to "recover the costs of the receivership from those who have wrongfully provoked it." Brief at 69-71. After the panel decision in *Netsphere I,* Baron filed his objections to the Receiver's fee applications in this Court. *Netsphere* Dkt. No. 1269 (May 8, 2013). Baron argued, among other things, that Vogel should receive no fees because of alleged breaches of fiduciary duty and waste. *See id.* The next day, Baron sought leave to amend his pleadings to assert claims including "breaches of fiduciary duties, malpractice, negligence, gross negligence, fraud and other causes of action" against Vogel, the Trustee, and law firm Munsch Hardt. *Netsphere* Dkt. No. 1270 (May 9, 2013). These issues were submitted for determination and decided against Baron in *Netsphere II. See Netsphere II*; *see also Netsphere* Dkt. No. 1289 (N.D. Tex. May 29, 2013) (electronic order finding Baron's motion for leave to be moot, because the issues raised therein were ruled upon in *Netsphere II*); *Matter of Gober,* 100 F.3d 1195, 1203-04 (5th Cir. 1996) (explaining that an issue is 'actually litigated' when it is properly raised by the pleadings, or otherwise submitted for a determination, and determined).

Each of the foregoing rulings was crucial and necessary to the Fifth Circuit's decision in *Netsphere I* and this Court's decisions in *Netsphere II* and *Netsphere III*. With respect to the Fifth Circuit's decision in *Netsphere I,* the findings that the Receivership was not procured by any conspiracy between the professionals, there was no bad faith, and that Baron's own tactics caused the Receivership were critical to the Fifth Circuit's holding that, although the Receivership was improper, equity would permit the reasonable fees and expenses of the

Receivership professionals to be charged against the Receivership estate.  *See Netsphere I*, 703 F.3d at 313.

Likewise, for this Court to award the Receiver and his professionals attorneys' fees, it was required, under *Johnson v. Ga. Hwy Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), to determine the reasonableness of the award, make specific findings in support of any award of attorneys' fees, and to consider all circumstances surrounding the receivership, including the Receiver's performance. *SEC v. W.L. Moody & Co.,* 374 F. Supp. 465, 480 n.20 (S.D. Tex. 1974).  The fee award, coupled with the Court's express findings of no wrongdoing set forth in the *Netsphere II* collaterally estop Baron and Novo Point from claiming wrongdoing regarding the payment of the receivership costs.  *See Southmark Corp. v. Coopers & Lybrand,* 163 F.3d 925, 932-34 (5th Cir. 1999) (partial fee disgorgement order in bankruptcy court collaterally estopped debtor from seeking to recover greater damages in subsequent suit). Furthermore, raising funds to pay receivership fees entailed selling the domain names in suit.  *See* Order Granting the Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere* Dkt. 288 (N.D. Tex. Feb. 4, 2011); *see also* The Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere* Dkt. 242 (Jan. 24, 2011).  By dispensing the assignment proceeds to pay receivership fees *after* the Fifth Circuit's *Netsphere I* decision, the Court gave *post hoc* approval of, or ratified, the assignments.  Specifically, Judge Lindsay found:

> [Vogel's law firm] developed a system for determining the value of domain names that allowed it to make choices regarding the fate of individual names: whether to develop, to park, to sell or to let lapse.  This was critical because it enabled counsel … to identify money losing names that should be culled from the portfolios.  Although Baron may have elected to run these businesses differently, all of the actions were reasonable and prudent ….

*Netsphere II*, 2013 WL 3327858, at *16.  The Court again gave *post hoc* approval of the Receiver's actions in the recent *Vogel I* decision.  2016 WL 1273465 at *6.

11

Associated Recovery's claims, which were allegedly assigned by Novo Point, are barred by such rulings by this Court and the Fifth Circuit in *Netsphere* and *Vogel*. *See Recoveredge LP v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995) ("Collateral estoppel will apply in a second proceeding that involves separate claims if the claims involve the same issue and the subject matter of the suits may be different as long as the requirements for collateral estoppel are met." (internal citations omitted)). Hence, the Court should dismiss this case under Rule 12(b)(6).

### B.      The Court Should Dismiss this Action Because Plaintiff Lacks Standing.

Neither Baron nor Novo Point could bring this suit. Associated Recovery is merely their assignee and, thus, is likewise unable. "[T]he only injury sufficient to support an assignee's standing to assert an assigned claim is an injury suffered by the assignor, and that injury must satisfy all the requirements of constitutional standing, i.e., the injury suffered must be an injury-in-fact that is causally traceable to a named defendant and likely to be redressed by the court action." *PEMEX Exploracion y Produccion v. Murphy Energy Corp.*, 923 F. Supp.2d 961, 965 (S.D. Tex. 2013). "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). These elements are "(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury." *Croft v. Gov. of Texas*, 562 F.3d 735, 745 (5th Cir.2009) (citing *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130.

Associated Recovery's allegations lack at least two requisite elements. First, there was no injury in fact. Although the Fifth Circuit vacated the receivership, the sales of domain names to raise funds needed to pay the receivership fees occurred under the Court's authority. *See* Order

Granting the Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere* Dkt. 288 (N.D. Tex. Feb. 4, 2011); *see also* The Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere* Dkt. 242 (Jan. 24, 2011*); see also Vogel I*, 2016 WL 1273465 at *5 (finding no *ultra vires* acts by Vogel).  Furthermore, the Court implicitly authorized the sales *post hoc* when it authorized payment of the receivership fees using, in part, funds raised through the sales. *See generally Netsphere II*, 2013 WL 3327858; *Netsphere III*, 2015 WL 1400543.

Second, there is no causal connection between the alleged injury and the conduct complained of.  Assuming, *arguendo*, there were an injury, it was not caused by Defendants, who, directly or indirectly, are bona fide purchasers for value of the domain names.  *See EDS Corp. v. Southwestern Bell Tel.*, 674 F.2d 453, 459 (5th Cir. 1982) ("A bona fide purchaser … is one who buys property in good faith for valuable consideration and without knowledge (actual or imputed) of outstanding claims in a third party or parties.").  Indeed, the domain names at issue were transferred pursuant to contracts, signed by Damon Nelson on behalf of Novo Point, without notice or mention of any alleged third-party interests.  *See, e.g.*, App. 3-29.

Associated Recovery's claims of violation of the Anticybersquatting Consumer Protection Act (ACPA), for quiet title, and conversion, all flow from Defendants' acquisition and use of domain names that were sold with the Court's authorization.  The quiet title and conversion claims are extinguished by the Court's orders authorizing the sales and orders authorizing payments.  As for the ACPA claims, which flow from alleged trademark rights, Defendants' respective use of the domain names was not only foreseeable but constitutes the very reason for the assignments.  Hence, Defendants enjoy an implied license from Novo Point that defeats any ACPA/trademark allegations.  *See McCoy v. Misuboshi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995) (implied license available even through involuntary sale).  Defendants have not injured Baron, Novo Point, or Plaintiff.  *Id.*  Any alleged injury to Baron or Novo Point

(and by assignment, Associated Recovery) was self-inflicted. *See Netsphere I*, 703 F.3d at 313 ("the record supports that the circumstances that led to the appointment of a receiver were primarily of Baron's own making"); *Netsphere III*, 2015 WL 140043, at *3 ("[T]he court also takes into account the disruptive conduct of Receivership Parties Jeffrey Baron, Novo Point LLC, and Quantec LLC, which continued after the order establishing the Receivership was reversed and increased the Receivership expenses to which Baron now objects.").

With only Baron and Novo Point to blame, Associated Recovery is the "assignee" of nonexistent rights and, thus, has no standing to bring this case. *See PEMEX*, 923 F. Supp.2d at 965 (S.D. Tex. 2013). The Court should dismiss Associated Recovery's complaint under Rule 12(b)1. *See In re Schering Plough Corp./Intron Temodar Consumer Class Action*, 678 F.3d 235, 243 (3rd Cir. 2012) ("A motion to dismiss for want of standing is … properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter.").

### C. The Court Should Dismiss this Action for Failure to Join Necessary Parties.

"Determining whether to dismiss a case for failure to join an indispensable party requires a two-step inquiry." *Hood ex rel. Mississippi v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009). First, the court must determine whether a party should be added under the requirements of Rule 19(a). *Id.* Rule 19(a) requires that a person subject to process and whose joinder will not deprive the court of subject-matter jurisdiction be joined if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). "Rule 19(a) sets forth three circumstances in which joinder is not feasible: when venue is improper, when the absentee is not subject to personal jurisdiction, and

when joinder would destroy subject matter jurisdiction." *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005).

Second, if the necessary party cannot be joined without destroying subject-matter jurisdiction, the court must then determine whether that person is "indispensable," that is, whether litigation can be properly pursued without the absent party. *Id.* at 629 (citing *HS Res., Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 2003)). The factors a district court is to consider in making this determination are laid out in Rule 19(b). *Id.* (quoting Fed. R. Civ. P. 19(b)).

Here, the necessary parties are (1) Novo Point, the actual party to the domain name assignment and transfer agreements; (2) Jeffrey Baron, the apparent owner of Novo Point who has been embroiled in years of litigation in Texas and who the Texas courts have characterized as a "vexatious litigant"; (3) Damon Nelson, the permanent manager of Novo Point and signatory of the domain name assignment and transfer agreements; and (4) Peter Vogel, the Court-appointed Receiver for Novo Point. As discussed above, the domain names at issue in this case were all sold for thousands of dollars by Novo Point pursuant to an order by the Court. *See* Complaint ¶ 241 (Dkt. 1); App. 3-29 (domain name assignments and transfer agreements).

### 1.    Novo Point

Plaintiff offers no proof that it is the successor-in-interest to Novo Point. *See id.* ¶ 3. Moreover, given the complicated history of the *Netsphere* litigation giving rise to the issues at-bar, it is unclear how Novo Point could have transferred any domain names without any approval from the Court, and Plaintiff has not provided any order authorizing such transfer to itself of any assets of Novo Point or Baron. In any event, Novo Point is required as the actual party to the domain name assignment and transfer agreements. *See Jaffer v. Standard Chartered Bank*, 301 F.R.D. 256, 261 (N.D. Tex. 2014); *In re Rouge Indus., Inc.*, 326 B.R. 55, 59 (Bankr. D. Del.

2005) ("A determination of ownership to assets allegedly transferred between a buyer and a seller should not be attempted without both parties to the transaction being before the court.").

Plaintiff has not identified, nor are Defendants aware of, any order by the Court to unwind any transactions or the order authorizing sale of domain names entered during the Receivership. To the extent there is a question of the validity of the assignments of the domain names, Novo Point remains a necessary party. Indeed, Plaintiff recently punctuated the folly of its attempt to litigate this case without Novo Point. Plaintiff alleges that its "predecessors-in-interest include Novo Point LLC." Complaint ¶ 3 (Dkt. 1). Yet prior to Defendants' original March 25, 2016 Motion to Dismiss, Plaintiff had "***never before seen any of the agreements*** that purported to transfer or assign any of the domain names from Novo Point to others during the Receivership." Plaintiff's Opposition to Certain Defendants' Motion to Dismiss at 2-3 (Dkt. 36; emphasis added). Similarly, Plaintiff characterizes this case as "simply one where a plaintiff's property was taken" and "plaintiff is seeking to get its improperly taken property back." *Id.* at 11. But in those statements, the "plaintiff" is Novo Point, not Associated Recovery.

### 2.      Jeffrey Baron

Plaintiff alleges that Baron is the predecessor-in-interest of Novo Point and of Plaintiff, and that Baron was responsible for acquiring the subject domain names. Complaint, Dkt. 1 ¶ 3. Plaintiff further suggests that Baron is the party actually in control of Novo Point and responsible for the domain names, stating throughout the Complaint that Baron and/or Novo Point had ownership rights in the domain names, and that Baron and/or Novo Point never gave authority for Nelson to act. *See id.* ¶¶ 241-259. Given Baron's close involvement with Novo Point (of which Baron apparently owns a controlling interest) and the domain names—and given that Baron's litigation misconduct caused the receivership and, in turn, domain-name sales—he is a necessary party. *See Jaffer*, 301 F.R.D. at 261. Indeed, Baron filed the *Vogel* case, which had

16

the same operative facts as this case, except there Baron attacked the Receiver, while here

Baron's proxy attacks the purchasers. *See generally*, *Vogel I*, 2016 WL 1273465.

### 3. Peter Vogel and Damon Nelson

Nelson was the manager of Novo Point and the signatory to the domain name

assignments. As Receiver, Peter Vogel, supervised and authorized Mr. Nelson's activities. Both

should be joined, given that they are the parties who purportedly "wrongfully transferred" the

domain names. Complaint ¶ 3; *see Jaffer*, 301 F.R.D. at 261. Like Novo Point, Nelson, and

Vogel are indispensable parties. "[P]recedent supports the proposition that a contracting party is

the paradigm of an indispensable party." *Nat'l. Union Fire Ins. Co. v. Rite Aid of S.C., Inc.*, 210

F.3d 246, 252 (4th Cir. 2000). Complicating this analysis, however, is the Court's recent *Vogel*

*I* decision, which dismissed Baron's claims against Vogel and held that Vogel's actions were

consistent with his charge and not subject to collateral attack. *Vogel I*, 2016 WL 1273465 at *6.

The same logic likely applies to Nelson, who was manager under Vogel's supervision and whose

actions were also subject to the Court's review. *See Netsphere II*, 2013 WL 3327858, at * 18;

*Netsphere III*, 2015 WL 140043, at *2. Accordingly, as a matter of law, neither Vogel nor

Nelson is likely available as a party this lawsuit. *See Davis v. Bayless*, 70 F.3d 367, 373 (5th Cir.

1995); *Vogel I*, 2016 WL 1273465 at *5 ("Vogel and Gardere are entitled to immunity in

connection with their administration of the receivership as long as they were acting pursuant [to]

the receivership order(s) entered by Judge Furgeson."). Where necessary parties are

indispensable but unavailable, dismissal is proper under Rule 12(b)(7). *See LST Financial, Inc.*

*v. Four Oaks Fincorp, Inc.*, No. 14-cv-435, 2014 WL 3672982 (W.D. Tex. Jul. 24, 2014).

## IV.   CONCLUSION

For the foregoing reasons, Defendants move the Court to dismiss Plaintiff's claims with

prejudice. Defendants respectfully reserve the right to seek fees and costs at such time.

Dated:  April 29, 2016                          Respectfully submitted


By: */s/ Steven M. Geiszler*


*Of Counsel:*                                   Steven M. Geiszler
Lora A. Brzezynski                              Texas Bar No. 24032227
Claire M. Maddox                                Zunxuan D. Chen
Eric Y. Wu                                      Texas Bar No. 24059564
**DENTONS US LLP**                              **DENTONS US LLP**
1900 K Street, NW                               2000 McKinney Avenue, Suite 1900
Washington, DC 20006                            Dallas, Texas 75201-1858
202-496-7500 (phone)                            T: (214) 259-0900
202-496-7756 (fax)                              F: (214) 259-0910
lora.brzezynski@dentons.com                     steven.geiszler@dentons.com
claire.maddox@dentons.com                       digger.chen@dentons.com
eric.wu@dentons.com

*Counsel for Domain Names 028.com,
fny.com, kgj.com, kmq.com, kxq.com,
kxw.com, lnm.com, luohe.com, meq.com,
pixie.com, qmh.com, sqg.com, vcz.com,
wyd.com, xaq.com, xff.com, xsg.com,
ycx.com, ygx.com, yjr.com, yqp.com, yqt.com,
yrn.com, yyg.com, zdp.com, zhd.com,
zulin.com, zzm.com and Defendants Jinwu
Chen, Xumin Huang, Feng Lu, Yuhua Jiang,
Zhilong Chu, Yaoguang Zhu, Yanbin Lin, Yu
Lin, Xiaofeng Lin, Fengjing Zheng, Xiaoying
Li, Liwei Liu, Dongdong Xu, Teng Wang,
Yang Gao, Xiaohang Shen, Feng Yan*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 29, 2016 I caused the foregoing document to be

served on counsel of record via the Court's CM/ECF system.

*/s/ Steven M. Geiszler*
Steven M. Geiszler


96367799