**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
Dallas Division**

Associated Recovery, LLC,          )
          )
        Plaintiff,      )
          )     No. 3:16-cv-01025-L
   v.            )
          )
John Does 1-44,         )
          )
        Defendants.    )

In re:

| 744.COM | LNM.COM | VGJ.COM | YQT.COM |
|---------|---------|---------|---------|
| 028.COM | LUOHE.COM | WYD.COM | YRN.COM |
| 3DCAMERA.COM | MEQ.COM | XAQ.COM | YTE.COM |
| FNY.COM | OCU.COM | XFF.COM | YYG.COM |
| FX2.COM | PIXIE.COM | XSG.COM | ZDP.COM |
| FXF.COM | QMH.COM | YCX.COM | ZHD.COM |
| JTZ.COM | RUTEN.COM | YEY.COM | ZULIN.COM |
| KGJ.COM | SDU.COM | YGX.COM | ZZM.COM |
| KMQ.COM | SQG.COM | YJR.COM | |
| KOU.COM | TAOLV.COM | YJX.COM | |
| KXQ.COM | UHW.COM | YLZ.COM | |
| KXW.COM | VCZ.COM | YQP.COM | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' RENEWED RULE 12(b) MOTION**

The Plaintiff Associated Recovery, LLC (the "Plaintiff"), by counsel, submits this

opposition to Defendant's Renewed Rule 12(b) Motion (the "Defendant's Motion").   ECF

Nos. 47-49.   For the reasons set forth below, the Plaintiff respectfully requests that the

Defendants' Motion be denied in its entirety.

## I.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The Defendants' Motion is cluttered with a lot of noise, unnecessary "background," and

efforts to taint the Court's impression of the Plaintiff or its predecessors.   In reality, the issues in

this matter are much more focused and narrow than the Defendants are attempting to portray.

The factual and procedural background of the earlier litigation involving the Plaintiff's

predecessor, Novo Point, LLC ("Novo Point"), and the improper Receivership that is actually

germane to the Defendants' Motion is quite simple.

The United States Court of Appeals for the Fifth Circuit held that the Receivership Order

instituted by the Northern District of Texas was improper and vacated the order appointing a

receiver.   *Netsphere, Inc. v. Baron*, 703 F.3d 296, 311 (5th Cir. 2012).   The Northern District of

Texas ultimately wound down the Receivership, issuing its order regarding the Receivership's

final accounting and discharge on March 27, 2015.   ECF No. 32, Exhibit G.[1]

## II.     ARGUMENT

### A.      The Defendants' Efforts to Apply Collateral Estoppel Are Misguided

The Defendants' arguments that collateral estoppel applies and that, therefore, this case

should be dismissed are based on misstatements of the issues presented in this case and

misguided efforts to shoehorn this matter into prior findings.   However, a clear-eyed look at the

crux of this matter shows that the Defendants' efforts must fail.

---

[1] The Certain Defendants' questions as to why the Plaintiff seeks the return of its
property now are irrelevant.   If the Certain Defendants believe the Plaintiff (or its predecessor)

had the standing to bring such claims earlier, they can bring a properly pled laches defense.

3

To prevail on their theory of collateral estoppel, the Defendants must show (1) the issue in this litigation is identical to the issue involved in the prior litigations upon which the Defendants rely, (2) this issue was actually litigated in the prior litigations, and (3) the determination of the issue in the prior litigations was a necessary part of the judgment there. *Test Masters Educ. Servs. v. Robin Singh Educ. Servs.*, 799 F.3d 437, 448 (5th Cir. 2015).

Moreover, the "issues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same." *B&B Hardware, Inc. v. Hargis Indus.*, 135 S. Ct. 1293, 1306 (2015) (quoting 18 C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE & PROCEDURE § 4417, p. 449 (2d ed. 2002)). *See also Amrollah v. Napolitano*, 710 F.3d 568, 572 (5th Cir. 2013). ("However, '[i]ssues of fact are not "identical" or "the same" and therefore not preclusive, if the legal standards governing their resolution are "significantly different,"' or create a 'demonstrable difference' in legal standards" (quoting *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005), and *Talcott v. Allahabad Bank, Ltd.*, 444 F.2d 451, 459 n.8 (5th Cir. 1971)).

The first two factors for collateral estoppel are not present here and, necessarily, neither is the third. Therefore, the Defendants cannot make the necessary showing of collateral estoppel, and the motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) should be denied.

   **1.**  **The Issue in This Litigation Is Different from Issues Involved in Prior Litigations**

4

In an effort to show "identical" issues, the Defendants continually go back to a blanket assertion that the Plaintiff is asserting that the Receivership was wrongful and that this issue was already decided in earlier litigations.   This assertion is sweeping and generalized and, therefore, misses the point of the real issue in this case, as distinct from the issues in the prior litigations.

It is important to be clear on what this case is **not** about.   This case is **not** about attacks on the appointment of the underlying receivership.   The Fifth Circuit has already addressed that issue.   This case is also **not** about attacks on Receiver or his agents.   Rather, this case **is about the return of property to its rightful owner**.   The crux of this case is that the sales of the domain names at issue may be set aside as void,[2] since they were conducted solely due to an Order which was found to lack subject matter jurisdiction.

It is also important to be clear on what the issues were in the prior litigations cited by the Defendants.   *Netsphere I* was about the propriety of the District Court's order appointing a receiver.   The Fifth Circuit held that the appointment was an abuse of discretion and outside the subject matter of the District Court and therefore vacated that order.   *Netsphere, Inc.*, 703 F.3d 296.   *Netsphere II* was about the management of winding down the Receivership and the amount of fees to be paid to the Receiver and his agents.   *Netsphere, Inc. v. Baron & Ondova Co.*, 2013 U.S. Dist. LEXIS 94308 (N.D. Tex. May 29, 2013).   *Netsphere III* was about the Receiver's request for Approval of Final Accounting, Application for Payment, and Request for Order of Final Discharge.   *Netsphere, Inc. v. Baron*, 2015 U.S. Dist. LEXIS 39735 (N.D. Tex. Mar. 27, 2015).   *Vogel* was about judicial immunity as well as whether the defendants there (including

---

[2] The impact of this on, and how it supports, each of the causes of action is not addressed in detail herein as the Plaintiff's position is that the Defendants have not offered any arguments

the Receiver) engaged in wrongful or sanctionable conduct in the *Netsphere* cases.   *Baron v. Vogel*, U.S. Dist. LEXIS 44294 (W.D. Tex. Mar. 31, 2016).

An argument that the causes of action in this matter and the causes of action and decisions in *Netsphere I, II, III* and *Vogel,* are all related to the institution of a receivership is simply not sufficient for finding that the issues are identical.   Not only are the actual issues and causes of action in the cases cited by the Defendants different from the issue in this case, but the legal standards applied are different as well.   Therefore, the issues cannot be "identical" and meet the requirements for applying collateral estoppel.   *B&B Hardware, Inc.*, 135 S. Ct. at 1306.

Even glossing over the entirely different causes of action in this matter, the question of the receivership in this case centers on the void nature of the sales of the domain names.   The question of whether a sale is void is subject to legal standards that are simply not the same as the legal standards applied in determining whether the order appointing the receiver should be vacated or whether fees should be awarded to the Receiver.

---

addressing each cause of action specifically.   Therefore, a detailed analysis is premature.

2.      **The Issue in This Litigation Was Not Actually Litigated in the Prior Litigations**

"As a general rule, an issue is 'actually litigated' only when it is properly raised by the pleadings, submitted for a determination, and actually determined."   *Gober v. Terra+Corp.*, 100 F.3d 1195, 1203 (5th Cir. 1996) (citation omitted).   The issue in this litigation was never actually litigated in the prior litigations.   None of the prior litigations cited by the Defendants addressed the issue of whether a court-ordered sale is void when it is later held that the order authorizing the sale was found to lack subject matter jurisdiction.   Indeed, the question of subject matter jurisdiction was raised only in relation to judicial immunity.   Judicial immunity is an entirely different context subject to distinct precedent from the issue at hand and therefore is not an "identical" issue under collateral estoppel.   *See B&B Hardware, Inc.*, 135 S. Ct. at 1306.

The closest the Defendants can get to arguing that the second prong of collateral estoppel applies is a vague "it must be inferred" argument that, since the Receiver was paid via the sales of the domain names after the Fifth Circuit's decision, the issue raised in this litigation has been somehow addressed.   However, the Defendants do not point to any statements or findings in the prior litigations where the issues in this case were actually raised and submitted for decision, let alone litigated and determined.

3.      **The Issue in This Litigation Was Not Determined in the Prior Litigations and Not a Necessary Part of the Judgment in the Prior Litigations**

There has been no judgment in any of the prior litigations cited by the Defendants wherein the issue of this case was actually litigated or determined.   Consequently, the issue of this litigation was not a necessary part of any of the judgments in these prior litigations.

7

The issue in this case is not identical to any of the issues raised, actually litigated, or determined in the prior litigations.   Therefore, collateral estoppel cannot apply.   Moreover, to the extent the Defendants assert that this litigation is a collateral attack on any earlier decisions, such an assertion is a red herring.   Parties are allowed to "collateral[ly] attack[] a jurisdictionally void sale," as opposed to attacking the sale on direct review.   *SEC v. American Capital Investments, Inc.*, 98 F.3d 1133, 1141 (9th Cir. 1996) (citing *Voorhees v. Jackson*, 35 U.S. 449 (1836)).[3]   The Defendants' motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) should therefore be denied.

### B.      The Defendants' "Standing" Argument Is Based on a Presumption that Their Defenses Will Prevail

The Defendants make two arguments as to why the Plaintiff lacks standing, both of which are fundamentally flawed and depend on a presumption that certain defenses will be found.

First, the Defendants argue there was no injury in fact because the domain names were sold pursuant to the District Court's order appointing a receivership and because "the Court implicitly authorized the sales *post hoc*."   Dkt. 48, PageID 690-91.   This argument does not equate to a lack of injury in fact.   The injury in fact **was** the sale and assignment of the domain names.   That this was done pursuant to an order later held to be without jurisdiction does not "erase" the injury.   It is fundamental that a party who loses title to property sold through what is later held to be a void sale has standing to bring a claim to recover that property.   *See Ocwen Loan Servicing LLC v. Gonzalez Fin. Holdings, Inc.*, 77 F. Supp. 3d 584 (S.D. Tex. 2015).

---

[3] *American Capital Investments, Inc*. further noted that the ability to being such a collateral attack was contingent on the party being able to overturn the order which authorizes the sale in the first place.

8

(Plaintiff brought suit, on which it ultimately prevailed, alleging wrongful foreclosure and to quiet title over property that was sold to one of the defendants via a tax sale that the plaintiff argued was void.)

Second, the Defendants argue that any injury "was not caused by the Defendants, who directly or indirectly, are bona fide purchasers for value of the domain names." Dkt. 48, PageID 691. Whether or not the Defendants are bona fide purchasers is not ripe for decision. Moreover, it is immaterial if both the sale and transfer of the domain names were void. *See Ocwen Loan Servicing*, 77 F. Supp. 3d at 597-97 (citing *Slaughter v. Qualls*, 139 Tex. 340, 345, 162 S.W.2d 671 (Tex. 1942)). *See also Pemex Exploracion y Produccion v. BASF Corp.*, 2013 U.S. Dist. LEXIS 144166, *54-56 (S.D. Tex. Oct. 1, 2013) (noting that a defendant accused of conversion who asserts the defense of being a good faith purchaser for value must establish that its title was voidable and not void), and *United States v. Miller*, 2003 U.S. Dist. LEXIS 24884 (N.D. Tex. Dec. 22, 2003). (A tax sale that was invalid when it occurred did not convey any legally enforceable interest in the property to the buyer, even though the buyer as bona fide purchaser.) Similarly, the Defendants' argument of an implied license falls flat since its case citation refers to valid sales. *McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 921 (Fed. Cir. 1995). There is no indication that the Federal Circuit ever intended to allow implied licenses when a sale was void or otherwise improper. Indeed, to allow such a result would fly in the face of the principle that even a good faith purchaser does not acquire title in a void sale.

Nor does the Defendants' argument that the Plaintiff's predecessors caused the injury hold water. The injury was a result of the sale authorized by the Receivership, a mechanism improperly utilized by the District Court below. Perhaps the question would be different if the

District Court had sanctioned the Plaintiff's predecessors in a different manner upheld by the Fifth Circuit, but it did not.

The injury in fact is that the Defendants are the current owners (to the best of the Plaintiff's knowledge) of the domain names at issue, and not the Plaintiff.   The fact that the Defendants bought the domain names causally connects them to the injury at hand.   The fact that the sale of the domain names occurred pursuant to a Court order does not obviate the injury in fact or the connection to the Defendants.   While the Defendants may assert a good faith purchaser argument as a defense, the mere existence of a possible defense does not result in a lack of standing.   The Plaintiff's predecessors had standing to bring this suit.   Therefore, the Plaintiff has standing, and the Defendants' motion to dismiss pursuant to FED. R. CIV. P. 12(b)(1) should be dismissed.

### C.    All Necessary Parties Have Been Identified in the Complaint

A person is only a necessary party if:

(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

FED. R. CIV. P. 19(a).

"[T]he party advocating joinder has the initial burden of demonstrating that a missing party is necessary . . . ."   *Hood ex rel Mississippi v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009) .   The burden shifts to the opposing party only "after 'an initial appraisal of the facts

indicates that a possibly necessary party is absent.'"   *Id.* (quoting *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986).   The Defendants have failed to meet their initial burden.

From the outset it is important to remember once more what this case is not about.   The case is **not** a breach of contract case.   There are no factual questions to be resolved as to the validity of the sales or assignments of the domain names or whether one party failed to follow through on their end of a bargain.   No relief is being sought by the Plaintiff other than the current owners of the domain names, the Defendants.

### 1.    Novo Point Is Not a Necessary Party, Let Alone an Indispensable Party

The Defendants assert Novo Point is a necessary party because they do not believe that the Plaintiff is a successor-in-interest to Novo Point.   This is pure unfounded speculation on their part.   As pled in the Complaint, on or about December 24, 2015, Novo Point assigned its domain names and their associated trademarks and goodwill to the Plaintiff.   This included the right for the Plaintiff to sue and recover possession of the domain names and recover damages for past, present, and future infringements, dilution, misuse, misappropriation and other violations.   Dkt. 1, para. 106.   The Defendants' bemused ponderings as to whether the assignment from Novo Point to the Plaintiff was proper are without merit and lack any citation to the record or law.   As the case progresses and necessary protective orders are entered, the Plaintiff can produce the assignment and the Defendants can take testimony from Novo Point on this issue.[4]

---

[4] The fact that the Plaintiff had not seen the agreements signed by the Defendants is a red herring.   The Plaintiff had not seen them because, to its knowledge, Novo Point had never seen the documents either.   These agreements were entered into by a Court-appointed "manager" of Novo Point.   All that this statement from the Plaintiff shows is that the Plaintiff, and its

predecessor, was unaware of to whom the domain names were sold and when they were sold.

The Defendants also mischaracterize this case in an effort to apply case law applied to contract disputes.   The validity of any assignments or transfers conducted under the Receivership's authority rises and falls on the Fifth Circuit's determination of the invalidity of the order instituting the Receivership.   There are no other questions regarding the assignments or transfers of the domain names.   For example, in *Jaffer v. Standard Chartered Bank*, 301 F.R.D. 256 (N.D. Tex. 2014), "the case concern[ed] an allegedly breached investment contract and access to funds in a Ghanaian bank account," and the purported necessary party was a central contracting party.   *Id*. at 258.   The Defendants also cite *In re Rouge Indus., Inc.*, to support the misguided argument that Novo Point, "as the actual party to the domain name assignment and transfer agreements," is a necessary party.   326 B.R. 55, 59 (Bankr. D. Del. 2005).   However, *In re Rouge* concerned the customer of a chapter 11 debtor, who sued that debtor for a determination that the customer's debt was not transferred to a third party buyer.   The third party buyer was held to be a necessary party because the plaintiff was "seek[ing] a determination that [the debtor], not [the third party], owns the receivable due from" the plaintiff, and the third party claimed an interest in the property.   *Id*.

Neither of these cases is even remotely similar to the issues of this case.   First, in both cases cited by the Defendants, the "necessary party" was necessary as a defendant, not a plaintiff.   Second, the causes of action and related facts in these cases are what gave rise to their holdings.   This case does not share any causes of action or related facts with those cases.   The Plaintiff is not alleging breach of contract or seeking to enforce a contract.   Nor is the Plaintiff seeking a determination that someone other than the Defendants owns the domain names, and no one else is claiming an interest to the domain names at issue.   A more apposite case would be *In re*

*Formtech Industries, LLC*, 439 B.R. 352, 359 (Bankr. D. Del. 2010).   The same court, in distinguishing the case from *In re Rouge Industries*, held it was not necessary to join sellers of a property because the plaintiff, "the party asserting ownership over the property in dispute [was] already present in the proceeding" and "the validity of the assignment [was] not at issue."

On a more fundamental level, even if Novo Point were a necessary and indispensable party, the Defendants offer no explanation of how that would create a problem justifying dismissal of the case.[5]

If the Defendants feel that their defense requires testimony from Novo Point, then the Defendants may bring Novo Point as a witnesses.   *Payan v. Cont'l Tire N. Am., Inc.*, 232 F.R.D. 587, 590, 2005 U.S. Dist. LEXIS 31418, *9 (S.D. Tex. Aug. 10, 2005); *see also Nat'l Mortg. Warehouse, LLC v. Trikeriotis*, 201 F. Supp. 2d 499, 506 (D. Md. 2002).   (The District of Maryland held that two parties were not "necessary" to an action despite their involvement in the alleged transfers that were at the heart of the case.   The court noted that certain facts had "been established beyond a reasonable doubt in prior proceedings" and "[o]ther matters relating to their involvement in the alleged transfers . . . may be determined by either calling them as witnesses if necessary, or using documentary evidence.")   *See also In re Maggard*, 2007 Bankr. LEXIS 3893, *11 (Bankr. E.D. Va. Nov. 13, 2007) (holding that the chapter 7 trustee, who sold the property at issue, was not a necessary party to the litigation, even though he "might be a useful witness, but that [was] a different issue"); and *In re Donoho*, 402 B.R. 687, 699 (Bankr. E.D. Va.

---

[5] It was the Defendants' burden to make this showing.   Since the Defendants failed even to address this element, the Plaintiff respectfully submits the Defendants should be precluded from offering any last-minute arguments in their reply.

2009) (noting the difference between an important *witness* and a necessary *party*, based on how the action is framed).

**2.**     **Mr. Baron Is Neither a Necessary Party nor an Indispensable Party**

The Defendants' argument regarding Jeffrey Baron as a "necessary" party is based solely on an argument of Mr. Baron's "close involvement with Novo Point and the domain names."[6] The Defendants do not allege that Mr. Baron signed any of the agreements with the Defendants or that he was otherwise a party to those contracts.   At best, it seems that the Defendants are asserting a claim that Novo Point and/or the Plaintiff functions as an alter ego for Mr. Baron. This, however, is a basis for **denying** a finding that Mr. Baron is a necessary party.   *Jaffer*, 301 F.R.D. at 262.   (If a named party is the alter ego of a third party, then the third party is not a necessary party since the defendant "would have sufficient control and knowledge over the [third party] such that the party would not be prejudiced by [the third party's] absence.")

Once again, the Defendants offer no explanation of how, even if Mr. Baron were a necessary and indispensable party, that would create a problem justifying dismissal of the case.[7]

If the Defendants feel that their defense requires testimony from Mr. Baron, then they may call him as a witness.   *Payan*, 232 F.R.D. at 590.   *See also Nat'l Mortg. Warehouse, LLC,*

---

[6] The Plaintiff also disputes the cavalier statement that this case and *Vogel* have the "same operative facts."   The only similarity in the facts is that a receivership was entered. Neither the Defendants nor the sale of the domain names at issue in this case were addressed in *Vogel*.   Moreover, as discussed *supra*, the issues in this case and in *Vogel* are indeed quite different.

[7] It was the Defendants' burden to make this showing.   Since the Defendants failed even to address this element, the Plaintiff respectfully submits the Defendants should be precluded from offering any last-minute arguments in their reply.

15

201 F. Supp. 2d at 506; *In re Maggard*, 2007 Bankr. LEXIS 3893 at *11; and *In re Donoho*, 402 B.R. at 699.

### 3.   Neither Mr. Nelson nor Mr. Vogel Is a Necessary Party, Let Alone an Indispensable Party

The Defendants fail to recognize the actual scope of this case with its allegation that Messrs. Nelson and Vogel are necessary parties because "they are the parties who purportedly 'wrongfully transferred' the domain names" and "'a contracting party is the paradigm of an indispensable party.'"   Dkt. 48, PageID 695 (quoting *Nat'l Union Fire Ins. Co. v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 252 (4th Cir. 2000)).   In *Nat'l Union Fire Ins.*, the plaintiff brought suit seeking a declaratory judgment that it was not obligated to provide coverage under a general liability policy to the defendant because the defendant failed to comply with provisions and procedures in the agreement.   The Court held that "the district court's adjudication of the case on the merits will necessarily require it to interpret" the policy and related agreements and that, since it was the defendant's parent that signed these contracts, that parent company was a necessary party.   210 F.3d at 251.   The need to interpret a contract was crucial in the *Nat'l Union Fire Ins.* decision.   It is also a crucial distinction from the instant case.   There is simply no need for any contract interpretation to adjudicate the case on its merits.   The sales and assignments of the domain names were all completed under the since-vacated order appointing a receiver.   The question here is whether these sales were valid or void after the Receivership Order was held to be outside the District Court's subject matter jurisdiction.

The Defendants provide no explanation of how complete relief cannot be accorded among the Parties in the absence of Mr. Nelson or Mr. Vogel.   Nor do the Defendants explain

16

what interest either man has related to the subject of this action, let alone how either man is so situated that in his absence (1) that man's ability to protect his interest is impaired or impeded, or (2) the parties in the action are subject to substantial risk of inconsistent obligations.   The Plaintiff is not asserting a cause of action against either man.   Nor would a cause of action against them make legal sense since neither Mr. Nelson nor Mr. Vogel is the owner of any of the domain names at issue.   To the best of the Plaintiff's knowledge, and the Defendants offer no evidence to the contrary, neither Mr. Nelson nor Mr. Vogel has an interest in this case, let alone an interest that is not protected or likely to lead to inconsistent judgments.

If the Defendants feel that their defense requires testimony from Messrs. Nelson or Vogel, then the Defendants may bring them as witnesses.   *Payan*, 232 F.R.D. 587 at 590; *see also Nat'l Mortg. Warehouse, LLC* , 201 F. Supp. 2d at 506; *In re Maggard*, 2007 Bankr. LEXIS 3893 at *11; and *In re Donoho*, 402 B.R. at 699 (Bankr. E.D. Va. 2009).

At best, the individuals and entity identified by the Defendants are possible witnesses. The Defendants have failed to meet their burden of showing how the absence any of these third parties would prevent complete relief.   Nor have the Defendants met their burden of showing what interests any of the third parties have which will not be protected by this action or create a substantial risk of inconsistent obligations.   Moreover, the Defendants have failed to demonstrate how joinder of the third parties would require dismissal of the case.   Therefore, the Defendants' motion to dismiss pursuant to FED. R. CIV. P. 12(b)(7) should itself be dismissed.

## III.    CONCLUSION

WHEREFORE, for the foregoing reasons, the Plaintiff submits that the Defendants' Renewed Rule 12(b) Motion should be DENIED.

Date:   May 20, 2016

Respectfully,


  /s/ Anthony Farmer
Anthony Farmer
Texas Bar No. 24057844
THE FARMER LAW GROUP PLLC
400 S. Zang Blvd., Suite 350
Telephone (214) 948-8333
afarmer@farmerlawgroup.com

*Of Counsel*:
Paul Grandinetti
Rebecca J. Stempien Coyle
LEVY & GRANDINETTI
1120 Connecticut Avenue, N.W., Suite 304
Washington, D.C. 20036
Telephone (202) 429-4560
Facsimile (202) 429-4564
mail@levygrandinetti.com

Counsel for the Plaintiff
**Associated Recovery, LLC**

18

**CERTIFICATE OF SERVICE**

I, hereby certify that on May 20, 2016, I electronically filed the foregoing PLAINTIFF'S

OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR

FAILURE TO JOIN A NECESSARY PARTY OR, IN THE ALTERNATIVE, TO TRANSFER

VENUE by using the CM/ECF system, which will then send a notification of such filing (NEF)

to the following:

> Steven M. Geiszler
> Zunxuan D. Chen
> DENTONS US LLP
> 2000 McKinney Avenue, Suite 1900
> Dallas, Texas 75201
> steven.geiszler@dentons.com
> digger.chen@dentons.com

                            /s/ Anthony Farmer
                            Anthony Farmer
                            Texas Bar No. 24057844
                            THE FARMER LAW GROUP PLLC
                            400 S. Zang Blvd., Suite 350
                            Telephone (214) 948-8333
                            afarmer@farmerlawgroup.com

                            Counsel for the Plaintiff
                            **Associated Recovery, LLC**