IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

**ASSOCIATED RECOVERY, LLC,**

          Plaintiff,

    v.

**JOHN DOES 1-44,**

          Defendants *in rem*.

**No. 3:16-CV-1025-L**

*In re:*

| | | | |
|---|---|---|---|
| 744.COM | KXW.COM | UHW.COM | YJX.COM |
| 028.COM | LNM.COM | VCZ.COM | YLZ.COM |
| 3DCAMERA.COM | LUOHE.COM | VGJ.COM | YQP.COM |
| FNY.COM | MEQ.COM | WYD.COM | YQT.COM |
| FX2.COM | OCU.COM | XAQ.COM | YRN.COM |
| FXF.COM | PIXIE.COM | XFF.COM | YTE.COM |
| JTZ.COM | QMH.COM | XSG.COM | YYG.COM |
| KGJ.COM | RUTEN.COM | YCX.COM | ZDP.COM |
| KMQ.COM | SDU.COM | YEY.COM | ZHD.COM |
| KOU.COM | SQG.COM | YGX.COM | ZULIN.COM |
| KXQ.COM | TAOLV.COM | YJR.COM | ZZM.COM |

**<u>REPLY IN SUPPORT OF DEFENDANTS' RENEWED RULE 12(b) MOTION</u>**

## I.      INTRODUCTION

Plaintiff's Opposition Brief speaks volumes for what it concedes.  Despite pages of rote argument, Plaintiff does not dispute the Fifth Circuit's holding in *Netsphere I* that left intact the pre-December 18, 2012 court-ordered sales of the domain names, which covers all the domain names in dispute.  Nor does Plaintiff dispute this Court's confirmation in *Vogel I* of the Receiver's actions as proper.  Because of these undisputed issues, there is no good-faith basis for Plaintiff's contentions, which are barred by collateral estoppel.

Likewise, Plaintiff's arguments to assert standing are premised on its misunderstanding of *Netsphere I*, which never voided the sales in dispute.  Despite Plaintiff's unsupported implication, no court has ever questioned the validity of those sales.  Finally, Plaintiff does not deny that the true parties in interest, Novo Point and Baron, are directing this action although Plaintiff purports to suggest that its purported lack of knowledge of the facts is immaterial. In fact, Novo Point and Baron actually created this situation through Baron's vexatious litigation tactics, failed to challenge years ago this Court's ordered sales of the domain names, and are necessary for a full and proper adjudication of this case.

In short, Plaintiff cannot prevail, and this litigation should not go forward.

## II.     ARGUMENTS AND AUTHORITIES

### A.      Plaintiff Is Collaterally Estopped.

Plaintiff fails to address the key aspects of the Fifth Circuit decision in *Netsphere I* and this Court's decisions in *Netsphere II, Netsphere III,* and *Vogel I* that, together, collaterally estop Plaintiff's claims.  Plaintiff provides only a truncated discussion of those decisions to hide the fact that those holdings squarely address the core issues now before the Court.  When read and considered in full, those decisions prohibit Plaintiff's current claims.

Plaintiff is silent about the most important—and controlling—aspect of *Netsphere I* as it relates to the case at bar.  After holding that "[t]he order appointing a receiver is vacated," the *Netsphere I* court turns to the issue of receivership fees, i.e. Section II of the discussion. 703 F.3d 296, 311 (5th Cir. 2012).  There, the court holds:

> Additionally, we hold, based on this record, that in creating the receivership "there was no malice nor wrongful purpose, and only an effort to conserve property in which [the court] believed" it was interested in maintaining for unpaid attorney fees and to control Baron's vexatious litigation tactics. We recognize that the district court was dealing with a conundrum when it decided to appoint the receiver — the problem was great, but standard remedies seemed inadequate. We also take into account that, to a large extent, Baron's own actions resulted in more work and more fees for the receiver and his attorneys. For these reasons, charging the current receivership fund for reasonable receivership expenses, **without allowing any additional assets to be sold,** is an equitable solution**.**

*Id.* at 313 (emphasis added).  The only plausible reading of that passage (and the bolded language) is that the Fifth Circuit knew of the asset sales that occurred prior to its decision.  The Court left in place the cash then in receivership, in part from the proceeds of past sales— including the sales at issue here—and authorized use of that cash to pay receivership fees.  *Id.* at 313-14.  And later in the Court's Opinion, it instructed, "No **further** sales of domain names or other assets are authorized."  *Id.* at 314 (emphasis added).  The Fifth Circuit expressly addressed and authorized the expenditure of cash raised in part from pre-December 18, 2012 sales.  Standing alone, the *Netsphere I* decision is sufficient to collaterally estop the current action, which at its heart, is an attempt by a Baron-controlled Novo Point assignee to unwind pre-December 18, 2012 domain name sales.

This Court's decisions in *Netsphere II* and *Netsphere III* further confirm *Netsphere I*'s holding on these issues.  Contrary to Plaintiff's short shrift, those decisions establish that the Court carried out the Fifth Circuit's instructions by determining proper receivership fees then ordering payment of those fees from the funds (including money from sales of the domain names

2

at issue) authorized in *Netsphere I*.  Hence, the Court's actions in *Netsphere II* and *Netsphere III*
further cement the legitimacy and finality of the pre-December 18, 2012 asset sales.

In light of these rulings from the Fifth Circuit and this Court, Plaintiff's insistence that

This Court's recent *Vogel I* decision puts to rest any questions about the propriety of the
receivership's actions.  Indeed, Plaintiff admits that *Vogel I* addressed "whether the defendants
there (including the Receiver) engaged in wrongful or sanctionable conduct in the *Netsphere*
cases."  Pl. Opp. Br. at 5-6 (Dkt. 57).  This Court found no such improprieties, instead ruling that
"any claim by Plaintiffs based on the wrongful establishment or continuation of the receivership
or **payment of receivership expenses** is an impermissible collateral attack of prior orders
through this suit."  *Vogel I*, No. 3:15-cv-232-L, 2016 WL 1273465, *6 (N.D. Tex. Mar. 31,
2016) (emphasis added).  Because the Fifth Circuit and this Court previously recognized that the
money used to pay receivership fees was, in part, raised from sales of the domain names now in-
suit, *Vogel I* is yet another definitive pronouncement that the sales were and are final.

In light of these rulings from the Fifth Circuit and this Court, Plaintiff's insistence that
"this case **is about the return of property to its rightful owner**" (Pl. Opp. Br. at 5 (emphasis in
original)) supports Defendants' position.  Similarly, Plaintiff's argument that this issue was not
actually litigated in the prior litigation (*id.* at 7) fails.  The Fifth Circuit addressed the pre-
December 12, 2012 sales in *Netsphere I* (*see* 703 F.3d at 313) as did this Court when it used
funds from those sales to pay receivership fees.  Finally, Plaintiff's argument that this issue was
not a necessary part of the judgment from the prior litigations is misplaced.  The Fifth Circuit
devotes Section II of its discussion in *Netsphere I* (*id.* at 311-314) to this issue.  Likewise, this
Court purposefully dispensed funds from the sales (*Netsphere II* and *III*) and later reconfirmed
the propriety of those actions (*Vogel I*).

Plaintiff's reliance on *SEC v. American Capital Investments, Inc.*, 98 F.3d 1133 (9th Cir.
1996) is misplaced.  Plaintiff argues that case stands for the proposition that parties may

collaterally attack a jurisdictionally void sale.  Pl. Opp. Br. at 8.  But *American Capital Investments* involved a **direct** attack by defrauded investors on a receiver's sale of real estate assets, not a collateral attack.  98 F.3d at 1138-39.  Addressing an early-19th-Century Supreme Court precedent, the Ninth Circuit observed "*Voorhees* appears to allow a collateral attack on a jurisdictionally void sale, but does not address an attack on direct review."  *Id.* at 1141.[1]  Although *American Capital Investments* cites to collateral-attack precedent, it addressed a direct attack and, thus, is distinguishable.  Moreover, the *American Capital Investments* court **affirmed** the receivership sales at issue.  *Id.* at 1147.  Therefore, to the extent *American Capital Investments* is persuasive authority, it supports Defendants' position.  And like the appellant investors in *American Capital Investments*, Plaintiff's predecessors-in-interest (Novo Point and Baron), were parties to the direct attack on the Receivership Order in *Netsphere I*, wherein the Fifth Circuit allowed pre-December 18, 2012 sales to remain final.

All three collateral estoppel prongs are met: (1) the issue is identical to the issue involved in the prior litigation; (2) the issue was actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation was a crucial and necessary part of the judgment.  *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 583 F.3d 348, 353 (5th Cir. 2009).  Because Plaintiff is collaterally estopped from pursuing the present claims, the Court should dismiss this action.  *See Recoveredge LP v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995) ("Collateral estoppel will apply in a second proceeding that involves separate claims if the claims involve the same issue and the subject matter of the suits may be different as long as the requirements for collateral estoppel are met.").

---

[1] Plaintiff's reliance on *American Capital Investments* is also suspect because that decision was later harshly criticized by the Supreme Court for applying "hypothetical jurisdiction."  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93-94 (1998) ("We decline to endorse such an approach because it carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers.").

**B.      Plaintiff Lacks Standing.**

Plaintiff's standing arguments are premised on a misunderstanding of *Netsphere I* and should be rejected.  Plaintiff argues, "It is fundamental that a party who loses title to property sold through what is later held to be a void sale has standing to bring a claim to recover that property."  Pl. Opp. Br. at 8.  But as discussed above, the Fifth Circuit left undisturbed the pre-December 18, 2012 domain name sales and, in fact, authorized use of the sales proceeds for paying receivership fees.  *Netsphere I*, 703 F.3d at 313.  There is **no** order voiding the sales in dispute.  Thus, Plaintiff's argument and case law are inapposite.

Plaintiff makes the same mistake when addressing Defendants' status as bona fide purchasers for value by arguing their status "is immaterial if both the sale and transfer of the domain names were void."  Pl. Opp. Br. at 9.  Similarly, Plaintiff attempts to distinguish Defendants' reliance on *McCoy v. Mitsuboshi Cutlery* because, according to Plaintiff, that case "refers to valid sales."  *Id.*  But again, there is no order voiding the sales in dispute.  Instead, the Fifth Circuit and this Court deemed them final and expressly authorized use of their proceeds to pay receivership fees.  *E.g., Netsphere I*, 703 F.3d at 313.

Finally, Plaintiff attempts to sidestep the findings by this Court and the Fifth Circuit that Plaintiff's predecessors created the conditions requiring the domain names to be sold and proceeds used to pay receivership fees.  Defendants' opening memorandum cites multiple instances of such findings.  *See* Defs' Memorandum at 13-14 (Dkt. 48).  In *Netsphere I*, the Fifth Circuit stated, "We also take into account that, to a large extent, Baron's own actions resulted in more work and more fees for the receiver and his attorneys.  For these reasons, charging the current receivership fund for reasonable receivership expenses, without allowing any additional assets to be sold, is an equitable solution."  *Netsphere I*, 703 F.3d at 313.

5

With all three of Plaintiff's arguments dispatched, the Court should grant Defendants' Motion on this second ground. *See In re Schering Plough Corp./Intron Temodar Consumer Class Action,* 678 F.3d 235, 243 (3rd Cir. 2012) ("A motion to dismiss for want of standing is … properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter.").

### C.      Plaintiff Fails to Join Necessary Parties.

Plaintiff's flawed premise—that the Fifth Circuit voided the domain name sales at issue—permeates and blunts its arguments about whether necessary parties are missing from this action.  Plaintiff characterizes the issue in dispute as follows:  "The validity of any assignments or transfers conducted under the Receivership's authority rises and falls on the Fifth Circuit's determination of the invalidity of the order instituting the Receivership."  Pl. Opp. Br. at 13; *see id.* at 16 ("The question here is whether these sales were valid or void after the Receivership Order was held to be outside the District Court's subject matter jurisdiction.").  Plaintiff apparently stopped reading the *Netscape I* opinion after Section I of the Discussion.  Plaintiff repeatedly argues that the Fifth Circuit voided the Receivership Order, but fails to discuss or even cite to the Fifth Circuit's handling of the domain name sales—past, present, and future—as of the December 18, 2012 issuance of that opinion. *See Netscape I*, 703 F.3d at 311 ("II. The Receivership Fees").  When Defendant's characterization of this case is compared against the governing portion of *Netscape I*, it becomes clear that this case should end immediately.

Delving into Plaintiff's specific arguments regarding individuals absent from this litigation, it becomes clearer that Plaintiff's position is untenable.  At the same time Plaintiff insists that Novo Point is not a necessary party, Plaintiff inserts a footnote distinguishing its knowledge from Novo Point's knowledge about a key issue.  Specifically, Plaintiff explains, "The fact that the Plaintiff had not seen the agreements signed by the Defendants is a red herring. The Plaintiff had not seen them because, **to its knowledge**, Novo Point had never seen the

documents either."  By putting daylight between Plaintiff's knowledge and that of Novo Point, Plaintiff underscores one of the reasons why Novo Point is necessary to this case.  Should this case progress, Novo Point must address such key issues as why only now, four-plus years later, Novo Point seeks return of the domain names, albeit through a proxy; or why, as an appellant, Novo Point did not seek further appeal of *Netscape I* with respect to Section II of the Discussion, wherein the Fifth Circuit allowed then-closed sales to remain final and their proceeds to be used to pay receivership fees.  Finally, were the Court to rule that Defendants' domain names should be returned to Novo Point—which it should not do, Defendants would at least be entitled to a return of the tens of thousands of dollars used to purchase the domain names.  There is no reason to believe that Plaintiff, a holding company apparently established for the sole purpose of this litigation, has such funds.[2]

The foregoing problems caused by Novo Point's absence also apply to Mr. Baron's absence.  The knowledge gap between Plaintiff and its predecessors militates in favor of their joinder.  Moreover, Baron's vexatious litigation tactics led to, or at least exacerbated, the mess now confronting the Court and Defendants.  For him to quietly sit on the sidelines while Defendants expend tens or hundreds of thousands of dollars defending domain names they properly purchased years ago is an affront to the judicial process.  Mr. Baron is undoubtedly the most knowledgeable person on Plaintiff's side and, despite Plaintiff's attempts to make itself appear independent, is the one pulling Plaintiff's strings.  And were the Court to award fees and costs to Defendants, it would not be surprising for Plaintiff to allege that it lacks the funds necessary to pay such awards.

---

[2] Plaintiff still refuses to provide documents or information describing the precise nature of its relationship to Novo Point and Baron.  Plaintiff's excuse that there is no protective order (Pl. Opp. Br. at 11) glosses over the fact that Plaintiff could have filed such documents under seal or asked Defendants' counsel for a simple agreement to treat such information as Attorneys Eyes Only—to which counsel would have readily agreed.  Instead, Plaintiff keeps its origins secret.

As Court-appointed Receiver and Manager of Novo Point, respectively, Peter Vogel and Damon Nelson are necessary parties.  They implemented and executed the domain name sales now in dispute and did so via arms-length transactions with Defendants or Defendants' predecessors-in-interest. As stated in Defendants' Motion, however, neither Vogel nor Nelson is likely available as a party to this lawsuit as a matter of law, due to the *Vogel I* decision. Defendants note, however, that on the same day they filed their Motion, Baron and Novo Point filed a notice of appeal of the *Vogel I* decision.  *See* Notice of Appeal, *Baron v. Vogel*, No. 3:15-cv-232-L, Dkt. 51 (N.D. Tex. Apr. 29, 2016).[3]  Were the Fifth Circuit to reverse or vacate the *Vogel I* decision, Vogel and Nelson may be available as parties to this case.  But in the meantime, their absence is fatal to this case.  *See LST Financial, Inc. v. Four Oaks Fincorp, Inc.*, No. 14-cv-435, 2014 WL 3672982 (W.D. Tex. Jul. 24, 2014) (dismissal proper under Rule 12(b)(7) where necessary parties are indispensable but unavailable).

## III.   PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

On the same day Plaintiff filed its Opposition Brief (Dkt. 57), Plaintiff moved for leave to file an amended complaint (Dkt. 58) and attached its proposed amended complaint (Dkt. 59). Although the amended complaint, if operative, would add new liability theories, all the new theories flow directly from Plaintiff's core allegation that the Court and Receiver improperly sold domain names to Defendants or Defendants' predecessors-in-interest.  Specifically, the proposed amended complaint adds claims for relief under theories of declaratory judgment (¶¶ 278-80), violation of the Texas Theft Liability Act (¶¶ 281-86), unjust enrichment (¶¶ 287-89),

---

[3] There have been approximately 16 appeals to the Fifth Circuit arising from the *Netsphere* and *Vogel* cases, further demonstrating the vexatious nature of Plaintiff's predecessors-in-interest.

misappropriation (¶¶ 290-95), and fraudulent conveyance (296-304).[4] Each of those theories collapses because of Section II of the Fifth Circuit discussion in *Netsphere I*. 703 F.3d at 311 ("II. The Receivership Fees") and this Court's later rulings in *Netsphere II* and *III*, and *Vogel I*. Accordingly, Plaintiff's proposed amended complaint, whether pending or operative,[5] does not change the outcome of, nor should it delay, the Court's decision on Defendants' Motion. *See Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 690 (S.D. Tex. 2011) ("Although the filing of an amended complaint would generally render pending Rule 12(b)(6) motions to dismiss moot, the distinctions between the Second and Third Amended Complaint are not significant, and the same issues present in the Second Amended Complaint remain relevant."); *see also Shame on You Prods., Inc. v. Banks*, 120 F. Supp. 3d 1123, 1140-42 (C.D. Cal. Aug. 14, 2015) (holding that amended complaint does not alter the nature of defendants' motion for judgment on the pleadings).

## IV.     RESERVATION OF RIGHT TO SEEK FEES AND COSTS

Defendants have been forced to expend significant fees to defend this frivolous litigation. Defendants again reserve their right to seek fees and costs from Plaintiff for this litigation under theories including but not limited to 28 U.S.C. § 1927.  Defendants ask that the Court allow later briefing on that issue if the Court grants the current Motion.

## V.     CONCLUSION

For the foregoing reasons, Defendants move the Court to dismiss Plaintiff's claims with prejudice.

---

[4] For the Court's convenience, Defendants provide a red-line comparison of the proposed amended complaint to Plaintiff's original complaint.  *See* App. 32-90 (Exhibit E).  The only substantive differences are the addition of the new theories listed above.

[5] Defendants will respond directly to Plaintiff's Motion for Leave to File Amended Complaint in a separate brief.

Dated:  June 3, 2016                                    Respectfully submitted


                                                        By: */s/ Steven M. Geiszler*

*Of Counsel:*                                           Steven M. Geiszler
Lora A. Brzezynski                                      Texas Bar No. 24032227
Claire M. Maddox                                        Zunxuan D. Chen
Eric Y. Wu                                              Texas Bar No. 24059564
**DENTONS US LLP**                                      **DENTONS US LLP**
1900 K Street, NW                                       2000 McKinney Avenue, Suite 1900
Washington, DC 20006                                    Dallas, Texas 75201-1858
202-496-7500 (phone)                                    T: (214) 259-0900
202-496-7756 (fax)                                      F: (214) 259-0910
lora.brzezynski@dentons.com                             steven.geiszler@dentons.com
claire.maddox@dentons.com                               digger.chen@dentons.com
eric.wu@dentons.com

                                                        *Counsel for Domain Names 028.com,*
                                                        *fny.com, kgj.com, kmq.com, kxq.com,*
                                                        *kxw.com, lnm.com, luohe.com, meq.com,*
                                                        *pixie.com, qmh.com, sqg.com, vcz.com,*
                                                        *wyd.com, xaq.com, xff.com, xsg.com,*
                                                        *ycx.com, ygx.com, yjr.com, yqp.com, yqt.com,*
                                                        *yrn.com, yyg.com, zdp.com, zhd.com,*
                                                        *zulin.com, zzm.com and Defendants Jinwu*
                                                        *Chen, Xumin Huang, Feng Lu, Yuhua Jiang,*
                                                        *Zhilong Chu, Yaoguang Zhu, Yanbin Lin, Yu*
                                                        *Lin, Xiaofeng Lin, Fengjing Zheng, Xiaoying*
                                                        *Li, Liwei Liu, Dongdong Xu, Teng Wang,*
                                                        *Yang Gao, Xiaohang Shen, Feng Yan*


## CERTIFICATE OF SERVICE

        I HEREBY CERTIFY that on June 3, 2016 I caused the foregoing document to be served

on counsel of record via the Court's CM/ECF system.

                                                        */s/ Steven M. Geiszler*
                                                        Steven M. Geiszler


97122700

10