CLOSED,TRADEMARK

# U.S. District Court
## Eastern District of Virginia - (Alexandria)
## CIVIL DOCKET FOR CASE #: 1:15-cv-01723-AJT-JFA

| | |
|---|---|
| Associated Recovery, LLC v. John Does 1-44 et al | Date Filed: 12/31/2015 |
| Assigned to: District Judge Anthony J Trenga | Date Terminated: 08/01/2016 |
| Referred to: Magistrate Judge John F. Anderson | Jury Demand: None |
| Cause: 15:1125 Trademark (Anticybersquatting consumer protection) | Nature of Suit: 840 Trademark |
| | Jurisdiction: Federal Question |

**Plaintiff**

Associated Recovery, LLC      represented by    **Rebecca Jean Stempien**
Levy & Grandinetti
1156 Fifteenth Street, N.W.
Suite 603
Washington, DC 20005
(202) 429-4560
Fax: (202) 429-4564
Email: mail@levygrandinetti.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

John Does 1-44      represented by    **Claire Molle Maddox**
McKenna Long & Aldridge LLP (DC)
1900 K St NW
Washington, DC 20006
202-496-7500
Fax: 202-496-7756
Email: claire.maddox@dentons.com
*ATTORNEY TO BE NOTICED*

   **Eric Yu-Dar Wu**
McKenna Long & Aldridge LLP (DC)
1900 K St N.W.
Washington, DC 20006
202-496-7500
Fax: 202-496-7756
Email: eric.wu@dentons.com
*ATTORNEY TO BE NOTICED*

**Defendant**

744.com      represented by    **Eric Yu-Dar Wu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

028.com      represented by    **Claire Molle Maddox**
(See above for address)
*ATTORNEY TO BE NOTICED*

   **Eric Yu-Dar Wu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

3DCAMERA.COM

**Defendant**

**FNY.COM**                                        represented by **Claire Molle Maddox**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Eric Yu-Dar Wu**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

**Defendant**

**FX2.COM**                                        represented by **Claire Molle Maddox**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

**Defendant**

**FXF.COM**

**Defendant**

**JTZ.COM**                                        represented by **Eric Yu-Dar Wu**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

**Defendant**

**KGJ.COM**                                        represented by **Claire Molle Maddox**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Eric Yu-Dar Wu**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

**Defendant**

**KMQ.COM**                                        represented by **Claire Molle Maddox**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Eric Yu-Dar Wu**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

**Defendant**

**KOU.COM**

**Defendant**

**KXQ.COM**                                        represented by **Claire Molle Maddox**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Eric Yu-Dar Wu**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

**Defendant**

**KXW.COM**                                        represented by **Claire Molle Maddox**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

**Eric Yu-Dar Wu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**LNM.COM**              represented by  **Claire Molle Maddox**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric Yu-Dar Wu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**LUOHE.COM**            represented by  **Claire Molle Maddox**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric Yu-Dar Wu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**OCU.COM**              represented by  **Eric Yu-Dar Wu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**PIXIE.COM**             represented by  **Claire Molle Maddox**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric Yu-Dar Wu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**QMH.COM**             represented by  **Claire Molle Maddox**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric Yu-Dar Wu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**RUTEN.COM**

**Defendant**

**SDU.COM**

**Defendant**

**SQG.COM**             represented by  **Claire Molle Maddox**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric Yu-Dar Wu**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Defendant**

**TAOLV.COM**                              represented by  **Claire Molle Maddox**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**UHW.COM**

**Defendant**

**VCZ.COM**                               represented by  **Claire Molle Maddox**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Eric Yu-Dar Wu**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**VGJ.COM**                               represented by  **Eric Yu-Dar Wu**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**WYD.COM**                               represented by  **Claire Molle Maddox**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Eric Yu-Dar Wu**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**XAQ.COM**                               represented by  **Claire Molle Maddox**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Eric Yu-Dar Wu**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**XFF.COM**                               represented by  **Claire Molle Maddox**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Eric Yu-Dar Wu**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**XSG.COM**                               represented by  **Claire Molle Maddox**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Eric Yu-Dar Wu**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**YEY.COM**

**Defendant**

**YGX.COM**                                    represented by **Claire Molle Maddox**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Eric Yu-Dar Wu**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**YJR.COM**                                    represented by **Claire Molle Maddox**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Eric Yu-Dar Wu**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**YJX.COM**                                    represented by **Eric Yu-Dar Wu**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**YLZ.COM**

**Defendant**

**YQP.COM**                                    represented by **Claire Molle Maddox**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Eric Yu-Dar Wu**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**YQT.COM**                                    represented by **Claire Molle Maddox**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Eric Yu-Dar Wu**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**YRN.COM**                                    represented by **Claire Molle Maddox**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Eric Yu-Dar Wu**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**YTE.COM**                                    represented by   **Eric Yu-Dar Wu**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**YYG.COM**                                    represented by   **Claire Molle Maddox**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Eric Yu-Dar Wu**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**ZDP.COM**                                    represented by   **Claire Molle Maddox**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Eric Yu-Dar Wu**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**ZHD.COM**                                    represented by   **Claire Molle Maddox**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Eric Yu-Dar Wu**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**ZULIN.COM**                                  represented by   **Claire Molle Maddox**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Eric Yu-Dar Wu**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**ZZM.COM**                                    represented by   **Claire Molle Maddox**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Eric Yu-Dar Wu**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**MEQ.com**                                    represented by   **Eric Yu-Dar Wu**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**YCX.com**                                    represented by   **Eric Yu-Dar Wu**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/31/2015 | 1 | COMPLAINT against All Defendants ( Filing fee $ 400, receipt number 14683056200.), filed by Associated Recovery, LLC. (Attachments: # 1 Exhibit, # 2 Civil Cover Sheet, # 3 Receipt)(dvanm, ) (Entered: 01/04/2016) |
| 12/31/2015 | 2 | Financial Interest Disclosure Statement (Local Rule 7.1) by Associated Recovery, LLC. (dvanm, ) (Entered: 01/04/2016) |
| 01/20/2016 | 3 | MOTION for Service by Publication by Associated Recovery, LLC. (Attachments: # 1 Proposed Order)(Stempien, Rebecca) (Entered: 01/20/2016) |
| 01/20/2016 | 4 | Memorandum in Support re 3 MOTION for Service by Publication filed by Associated Recovery, LLC. (Attachments: # 1 Affidavit Coyle Declaration in Support with Attachments)(Stempien, Rebecca) (Entered: 01/20/2016) |
| 01/20/2016 | 5 | Waiver of re 3 MOTION for Service by Publication by Associated Recovery, LLC (Stempien, Rebecca) (Entered: 01/20/2016) |
| 01/27/2016 | 6 | ORDER granting 3 Motion for Service by Publication. Signed by Magistrate Judge John F. Anderson on 1/27/2016. (dvanm, ) (Entered: 01/27/2016) |
| 02/16/2016 | 7 | NOTICE by Associated Recovery, LLC re 6 Order on Motion for Service by Publication (Attachments: # 1 Coyle Declaration in Support with Exhibit A)(Stempien, Rebecca) (Entered: 02/16/2016) |
| 02/24/2016 | 8 | Consent MOTION for Extension of Time to File Answer re 1 Complaint by 028.com, FX2.COM, John Does 1-44, KGJ.COM, KMQ.COM, KXQ.COM, KXW.COM, LNM.COM, LUOHE.COM, PIXIE.COM, QMH.COM, SQG.COM, TAOLV.COM, WYD.COM, XAQ.COM, XFF.COM, XSG.COM, YGX.COM, YJR.COM, YQP.COM, YQT.COM, ZDP.COM, ZZM.COM. (Maddox, Claire) (Entered: 02/24/2016) |
| 02/25/2016 | 9 | Request for Entry of Default as to *744.com, 3dcamera.com, fny.com, fxf.com, jtz.com, kou.com, ocu.com, ruten.com, sdu.com, uhw.com, vcz.com, vgj.com, yey.com, yjx.com, ylz.com, yrn.com, yte.com, yyg.com, zhd.com, and zulin.com* by Associated Recovery, LLC. (Attachments: # 1 Declaration in Support)(Stempien, Rebecca) (Entered: 02/25/2016) |
| 02/26/2016 | 10 | Clerk's ENTRY OF DEFAULT as to 3DCAMERA.COM, 744.com, FNY.COM, FXF.COM, JTZ.COM, KOU.COM, OCU.COM, RUTEN.COM, SDU.COM, UHW.COM, VCZ.COM, VGJ.COM, YEY.COM, YJX.COM, YLZ.COM, YRN.COM, YTE.COM, YYG.COM, ZHD.COM, ZULIN.COM (dvanm, ) (Entered: 02/26/2016) |
| 02/29/2016 | 11 | ORDER granting 8 Motion for Extension of Time to Answer. ORDERED that Defendants file their responses to Plaintiff's Complaint on or before March 25, 2016. Signed by Magistrate Judge John F. Anderson on 02/29/2016. (wgar, ) (Entered: 02/29/2016) |
| 02/29/2016 | 12 | Amended Clerk's ENTRY OF DEFAULT as to 3DCAMERA.COM, 744.com, FNY.COM, FXF.COM, JTZ.COM, KOU.COM, OCU.COM, RUTEN.COM, SDU.COM, UHW.COM, VCZ.COM, VGJ.COM, YEY.COM, YJX.COM, YLZ.COM, YRN.COM, YTE.COM, YYG.COM, ZHD.COM, ZULIN.COM (dvanm, ) (Entered: 02/29/2016) |
| 03/04/2016 | 13 | MOTION to Set Aside Default by FNY.COM, VCZ.COM, YRN.COM, YYG.COM, ZHD.COM, ZULIN.COM. (Maddox, Claire) (Entered: 03/04/2016) |
| 03/04/2016 | 14 | Memorandum in Support re 13 MOTION to Set Aside Default filed by FNY.COM, VCZ.COM, YRN.COM, YYG.COM, ZHD.COM, ZULIN.COM. (Attachments: # 1 Chen Declaration in Support)(Maddox, Claire) (Entered: 03/04/2016) |
| 03/04/2016 | 15 | Notice of Hearing Date set for 3/11/2015 re 13 MOTION to Set Aside Default (Maddox, Claire) (Entered: 03/04/2016) |
| 03/04/2016 | 16 | MOTION for Default Judgment as to *744.COM, 3DCAMERA.COM, FXF.COM, JTZ.COM, KOU.COM, OCU.COM, RUTEN.COM, SDU.COM, UHW.COM, VGJ.COM, YEY.COM, YJX.COM, YLZ.COM, and YTE.COM* by Associated Recovery, LLC. (Stempien, Rebecca) (Entered: 03/04/2016) |
| 03/04/2016 | 17 | Memorandum in Support re 16 MOTION for Default Judgment as to *744.COM, 3DCAMERA.COM, FXF.COM, JTZ.COM, KOU.COM, OCU.COM, RUTEN.COM, SDU.COM, UHW.COM, VGJ.COM, YEY.COM, YJX.COM, YLZ.COM, and YTE.COM* filed by Associated Recovery, LLC. (Attachments: # 1 Affidavit, # 2 Proposed Order) (Stempien, Rebecca) (Entered: 03/04/2016) |

| | | |
|---|---|---|
| 03/04/2016 | 18 | Notice of Hearing Date set for 03/25/2016 re 16 MOTION for Default Judgment as to *744.COM, 3DCAMERA.COM, FXF.COM, JTZ.COM, KOU.COM, OCU.COM, RUTEN.COM, SDU.COM, UHW.COM, VGJ.COM, YEY.COM, YJX.COM, YLZ.COM, and YTE.COM*, 17 Memorandum in Support, (Stempien, Rebecca) (Entered: 03/04/2016) |
| 03/07/2016 | | Set Deadlines as to 13 MOTION to Set Aside Default . Motion Hearing set for 3/11/2016 at 10:00 AM in Alexandria Courtroom 501 before Magistrate Judge John F. Anderson. (clar, ) (Entered: 03/07/2016) |
| 03/07/2016 | | Set Deadlines as to 16 MOTION for Default Judgment as to *744.COM, 3DCAMERA.COM, FXF.COM, JTZ.COM, KOU.COM, OCU.COM, RUTEN.COM, SDU.COM, UHW.COM, VGJ.COM, YEY.COM, YJX.COM, YLZ.COM, and YTE.COM*. Motion Hearing set for 3/25/2016 at 10:00 AM in Alexandria Courtroom 501 before Magistrate Judge John F. Anderson. (clar, ) (Entered: 03/07/2016) |
| 03/07/2016 | | MOTIONS REFERRED to Magistrate Judge: Anderson. 16 MOTION for Default Judgment as to *744.COM, 3DCAMERA.COM, FXF.COM, JTZ.COM, KOU.COM, OCU.COM, RUTEN.COM, SDU.COM, UHW.COM, VGJ.COM, YEY.COM, YJX.COM, YLZ.COM, and YTE.COM*, 13 MOTION to Set Aside Default (clar, ) (Entered: 03/07/2016) |
| 03/09/2016 | 19 | Consent MOTION to Continue *Hearing Date on Certain Defendants' Motion to Set Aside Entry of Default* by Associated Recovery, LLC. (Attachments: # 1 Proposed Order)(Stempien, Rebecca) (Entered: 03/09/2016) |
| 03/09/2016 | 20 | ORDER granting 19 Motion to Continue. ORDERED that the hearing on Certain Defendants' Motion to Set Aside Entry of Default is **CONTINUED** until **10:00 A.M. on March 18, 2016**, at the United States Courthouse for the Alexandria Division of the Eastern District of Virginia. Signed by Magistrate Judge John F. Anderson on 03/09/2016. (wgar, ) (Entered: 03/09/2016) |
| 03/09/2016 | | Reset Deadlines as to 13 MOTION to Set Aside Default . Motion Hearing set for 3/18/2016 at 10:00 AM in Alexandria Courtroom 501 before Magistrate Judge John F. Anderson. (wgar, ) (Entered: 03/09/2016) |
| 03/09/2016 | 21 | RESPONSE in Opposition re 13 MOTION to Set Aside Default filed by Associated Recovery, LLC. (Attachments: # 1 Declaration in Support with Exhibits 1 through 4)(Stempien, Rebecca) (Entered: 03/09/2016) |
| 03/15/2016 | 22 | Motion to appear Pro Hac Vice by Paul Grandinetti and Certification of Local Counsel Rebecca J. Stempien Coyle Filing fee $ 75, receipt number 0422-4901004. by Associated Recovery, LLC. (Stempien, Rebecca) (Entered: 03/15/2016) |
| 03/16/2016 | 23 | REPLY to Response to Motion re 13 MOTION to Set Aside Default filed by FNY.COM, VCZ.COM, YRN.COM, YYG.COM, ZHD.COM, ZULIN.COM. (Wu, Eric) (Entered: 03/16/2016) |
| 03/16/2016 | 24 | ORDER granting 22 Motion for Pro hac vice. Signed by District Judge Anthony J Trenga on 3/16/2016. (dvanm, ) (Entered: 03/16/2016) |
| 03/16/2016 | 25 | REPLY to Response to Motion re 13 MOTION to Set Aside Default *(Corrected)* filed by FNY.COM, VCZ.COM, YRN.COM, YYG.COM, ZHD.COM, ZULIN.COM. (Wu, Eric) (Entered: 03/16/2016) |
| 03/18/2016 | 26 | Minute Entry for proceedings held before Magistrate Judge John F. Anderson:Motion Hearing held on 3/18/2016 re 13 MOTION to Set Aside Default filed by ZHD.COM, FNY.COM, YRN.COM, ZULIN.COM, YYG.COM, VCZ.COM. Appearances of counsel for plaintiff and defendants. Motion argued and 13 MOTION to Set Aside Default - GRANTED. Order to follow. (Tape #FTR.)(wgar, ) (Entered: 03/18/2016) |
| 03/18/2016 | 27 | ORDER, for the reasons stated from the bench, granting 13 Motion to Set Aside Default. ORDERED, defendants fny.com, vcz.com, yrn.com, yyg.com, zhd.com, and zulin.com shall have until March 25, 2016 to file and serve a responsive pleading to the complaint. Signed by Magistrate Judge John F. Anderson on 03/18/2016. (wgar, ) (Entered: 03/18/2016) |
| 03/25/2016 | 28 | Minute Entry for proceedings held before Magistrate Judge John F. Anderson:Motion Hearing held on 3/25/2016 re 16 MOTION for Default Judgment as to *744.COM, 3DCAMERA.COM, FXF.COM, JTZ.COM, KOU.COM, OCU.COM, RUTEN.COM, SDU.COM, UHW.COM, VGJ.COM, YEY.COM, YJX.COM, YLZ.COM, and YTE.COM* filed by Associated Recovery, LLC. Appearance of counsel for plaintiff. Matter is uncontested. Report and Recommendation to follow. (Tape #FTR.)(wgar, ) (Entered: 03/25/2016) |
| 03/25/2016 | 29 | PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS re 16 MOTION for Default Judgment as to *744.COM, 3DCAMERA.COM, FXF.COM, JTZ.COM, KOU.COM, OCU.COM, RUTEN.COM, SDU.COM, UHW.COM, VGJ.COM, YEY.COM, YJX.COM, YLZ.COM, and YTE.COM* filed by Associated Recovery, LLC Objections to R&R due by 4/11/2016. Signed by Magistrate Judge John F. Anderson on 3/25/16. (gwalk, ) (Entered: 03/25/2016) |

| 03/25/2016 | 30 | MOTION to Dismiss *Complaint for Failure to Join a Necessary Party, or in the Alternative, to Transfer Venue* by 028.com, FNY.COM, John Does 1-44, KGJ.COM, KMQ.COM, KXQ.COM, KXW.COM, LNM.COM, LUOHE.COM, MEQ.com, PIXIE.COM, QMH.COM, SQG.COM, VCZ.COM, WYD.COM, XFF.COM, XSG.COM, YCX.com, YGX.COM, YJR.COM, YQP.COM, YQT.COM, YRN.COM, YYG.COM, ZDP.COM, ZHD.COM, ZULIN.COM, ZZM.COM. (Wu, Eric) (Entered: 03/25/2016) |
| --- | --- | --- |
| 03/25/2016 | 31 | MOTION to Dismiss *Complaint for Failure to Join a Necessary Party, or in the Alternative, to Transfer Venue* by XAQ.COM. (Wu, Eric) (Entered: 03/25/2016) |
| 03/25/2016 | 32 | Memorandum in Support re 30 MOTION to Dismiss *Complaint for Failure to Join a Necessary Party, or in the Alternative, to Transfer Venue*, 31 MOTION to Dismiss *Complaint for Failure to Join a Necessary Party, or in the Alternative, to Transfer Venue* filed by 028.com, FNY.COM, John Does 1-44, KGJ.COM, KMQ.COM, KXQ.COM, KXW.COM, LNM.COM, LUOHE.COM, MEQ.com, PIXIE.COM, QMH.COM, SQG.COM, VCZ.COM, WYD.COM, XAQ.COM, XFF.COM, XSG.COM, YCX.com, YGX.COM, YJR.COM, YQP.COM, YQT.COM, YRN.COM, YYG.COM, ZDP.COM, ZHD.COM, ZULIN.COM, ZZM.COM. (Attachments: # 1 Wu Declaration in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H)(Wu, Eric) (Entered: 03/25/2016) |
| 03/25/2016 | 33 | Notice of Hearing Date set for 4/15/2016 re 30 MOTION to Dismiss *Complaint for Failure to Join a Necessary Party, or in the Alternative, to Transfer Venue*, 31 MOTION to Dismiss *Complaint for Failure to Join a Necessary Party, or in the Alternative, to Transfer Venue* (Wu, Eric) (Entered: 03/25/2016) |
| 03/28/2016 | | Set Deadlines as to 31 MOTION to Dismiss *Complaint for Failure to Join a Necessary Party, or in the Alternative, to Transfer Venue*, 30 MOTION to Dismiss *Complaint for Failure to Join a Necessary Party, or in the Alternative, to Transfer Venue*. Motion Hearing set for 4/15/2016 at 10:00 AM in Alexandria Courtroom 701 before District Judge Anthony J Trenga. (clar, ) (Entered: 03/28/2016) |
| 03/28/2016 | 34 | SCHEDULING ORDER:<br>Initial Pretrial Conference set for 4/20/2016 at 11:00 AM in Alexandria Courtroom 501 before Magistrate Judge John F. Anderson.<br>Final Pretrial Conference set for 8/18/2016 at 10:00 AM in Alexandria Courtroom 701 before District Judge Anthony J Trenga.<br>Discovery due by 8/12/2016.<br>Signed by District Judge Anthony J Trenga on 3/28/2016.<br>(jall) (Additional attachment(s) added on 3/28/2016: # 1 magistrate consent, # 2 pretrial notice) (jall, ). (Entered: 03/28/2016) |
| 03/29/2016 | 35 | NOTICE by Associated Recovery, LLC re 29 REPORT AND RECOMMENDATIONS re 16 MOTION for Default Judgment as to *744.COM, 3DCAMERA.COM, FXF.COM, JTZ.COM, KOU.COM, OCU.COM, RUTEN.COM, SDU.COM, UHW.COM, VGJ.COM, YEY.COM, YJX.COM, YLZ.COM, and YTE.COM* filed by Associated Recovery, LLC *of Service of Proposed Findings of Fact and Recommendations* (Attachments: # 1 Exhibit A - Certificate of Service of Proposed Findings of Fact and Recommendations)(Stempien, Rebecca) (Entered: 03/29/2016) |
| 04/05/2016 | 36 | Memorandum in Opposition re 30 MOTION to Dismiss *Complaint for Failure to Join a Necessary Party, or in the Alternative, to Transfer Venue*, 31 MOTION to Dismiss *Complaint for Failure to Join a Necessary Party, or in the Alternative, to Transfer Venue* filed by Associated Recovery, LLC. (Stempien, Rebecca) (Entered: 04/05/2016) |
| 04/11/2016 | 37 | REPLY to Response to Motion re 30 MOTION to Dismiss *Complaint for Failure to Join a Necessary Party, or in the Alternative, to Transfer Venue*, 31 MOTION to Dismiss *Complaint for Failure to Join a Necessary Party, or in the Alternative, to Transfer Venue* filed by 028.com, FNY.COM, John Does 1-44, KGJ.COM, KMQ.COM, KXQ.COM, KXW.COM, LNM.COM, LUOHE.COM, MEQ.com, PIXIE.COM, QMH.COM, SQG.COM, VCZ.COM, WYD.COM, XAQ.COM, XFF.COM, XSG.COM, YCX.com, YGX.COM, YJR.COM, YQP.COM, YQT.COM, YRN.COM, YYG.COM, ZDP.COM, ZHD.COM, ZULIN.COM, ZZM.COM. (Attachments: # 1 Wu Declaration in Support, # 2 Exhibit I)(Wu, Eric) (Entered: 04/11/2016) |
| 04/13/2016 | 38 | *Joint* Discovery Plan by Associated Recovery, LLC.(Stempien, Rebecca) (Entered: 04/13/2016) |
| 04/15/2016 | 39 | Minute Entry for proceedings held before District Judge Anthony J Trenga:<br>Motion Hearing held on 4/15/2016 re 30 MOTION to Dismiss *Complaint for Failure to Join a Necessary Party, or in the Alternative, to Transfer Venue* filed by 028.com, KXW.COM, KMQ.COM, YQT.COM, FNY.COM, YJR.COM, John Does 1-44, LNM.COM, MEQ.com, YCX.COM, QMH.COM, PIXIE.COM, KXQ.COM, ZZM.COM, WYD.COM, YGX.COM, YRN.COM, KGJ.COM, YYG.COM, LUOHE.COM, ZDP.COM, |

| | | |
|---|---|---|
| | | YQP.COM, VCZ.COM, ZHD.COM, SQG.COM, ZULIN.COM, XSG.COM, XFF.COM, and 31 MOTION to Dismiss *Complaint for Failure to Join a Necessary Party, or in the Alternative, to Transfer Venue* filed by XAQ.COM.<br>Appearances of Counsel for Pltf. and Deft.<br>Motions argued and GRANTED.<br>This case is to be transferred to the Northern District of Texas, except for those defendants that plaintiffs motion for default judgment is still pending.<br>Order to follow.<br>(Court Reporter R. Montgomery.)<br>(jall) (Entered: 04/15/2016) |
| 04/15/2016 | 40 | ORDER granting 30 Motion to Dismiss; granting 31 Motion to Dismiss:<br>On Friday, April 15, 2016 the Court held a hearing on Certain Defendants' Motion to Dismiss or in the Alternative to Transfer Venue [Doc. Nos. 30, 31] (the 'Motion"). Upon consideration of the Motion, the memoranda of law in support thereof and in opposition thereto, the representations of counsel, and for the reasons stated in open court during the April 15, 2016 hearing, it is hereby<br>ORDERED that Certain Defendants' Motion [Doc. Nos. 30, 31] be, and the same hereby is, GRANTED and this case is TRANSFERRED as to the Certain Defendants to the United States District Court for the Northern District of Texas, and shall otherwise remain in this District as to those defendants against whom plaintiffs Motion for Default Judgment is still pending. See [Doc. Nos. 16,27].<br>Signed by District Judge Anthony J Trenga on 4/15/2016.<br>(jall) (Entered: 04/15/2016) |
| 04/18/2016 | | Case transferred from Virginia Eastern has been opened in Northern District of Texas as case 3:16-cv-01025, filed 04/15/2016.(ltun) (Entered: 04/18/2016) |
| 04/19/2016 | 41 | ORDER - The initial pretrial conference currently scheduled for April 20, 2016 at 11:00 a.m. is CANCELLED. Signed by Magistrate Judge John F. Anderson on 4/19/2016. (dvanm, ) (Entered: 04/19/2016) |
| 05/18/2016 | 42 | ORDER granting 16 Motion for Default Judgment. Signed by District Judge Anthony J Trenga on 5/18/2016. (see Order for further details) (dvanm, ) (Entered: 05/18/2016) |
| 05/18/2016 | 43 | RULE 58 JUDGMENT. Signed by Clerk on 5/18/2016. (dvanm, ) (Entered: 05/18/2016) |
| 06/01/2016 | 44 | NOTICE by Associated Recovery, LLC re 42 Order on Motion for Default Judgment *of Service of Order and Judgment* (Attachments: # 1 Exhibit A - Certificate of Service of Order and Judgment)(Stempien, Rebecca) (Entered: 06/01/2016) |
| 06/14/2016 | 45 | MOTION to Set Aside Judgment by JTZ.COM. (Wu, Eric) (Entered: 06/14/2016) |
| 06/14/2016 | 46 | Memorandum in Support re 45 MOTION to Set Aside Judgment filed by JTZ.COM. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Wu, Eric) (Entered: 06/14/2016) |
| 06/14/2016 | 47 | Notice of Hearing Date set for 07/01/2016 re 45 MOTION to Set Aside Judgment (Wu, Eric) (Entered: 06/14/2016) |
| 06/15/2016 | | Set Deadlines as to 45 MOTION to Set Aside Judgment . Motion Hearing set for 7/1/2016 at 10:00 AM in Alexandria Courtroom 501 before Magistrate Judge John F. Anderson. (clar, ) (Entered: 06/15/2016) |
| 06/15/2016 | | MOTIONS REFERRED to Magistrate Judge: Anderson. 45 MOTION to Set Aside Judgment (clar, ) (Entered: 06/15/2016) |
| 06/15/2016 | | Reset Deadlines as to 45 MOTION to Set Aside Judgment . Motion Hearing set for 7/1/2016 at 10:00 AM in Alexandria Courtroom 701 before District Judge Anthony J Trenga. (clar, ) (Entered: 06/15/2016) |
| 06/17/2016 | 48 | MOTION to Set Aside Judgment by OCU.COM. (Wu, Eric) (Entered: 06/17/2016) |
| 06/17/2016 | 49 | Brief in Support to 48 MOTION to Set Aside Judgment filed by OCU.COM. (Attachments: # 1 Exhibit A - Declaration of R Kalfayan)(Wu, Eric) (Entered: 06/17/2016) |
| 06/17/2016 | 50 | Notice of Hearing Date set for July 1, 2016 re 48 MOTION to Set Aside Judgment , 49 Brief in Support (Wu, Eric) (Entered: 06/17/2016) |
| 06/17/2016 | 51 | MOTION to Set Aside Judgment by YTE.COM. (Wu, Eric) (Entered: 06/17/2016) |
| 06/17/2016 | 52 | Memorandum in Support re 51 MOTION to Set Aside Judgment filed by YTE.COM. (Attachments: # 1 Exhibit A - Declaration of V Harasymiak)(Wu, Eric) (Entered: 06/17/2016) |

| | | |
|---|---|---|
| 06/17/2016 | 53 | Notice of Hearing Date set for July 1, 2016 re 51 MOTION to Set Aside Judgment , 52 Memorandum in Support (Wu, Eric) (Entered: 06/17/2016) |
| 06/20/2016 | | Set Deadlines as to 51 MOTION to Set Aside Judgment , 48 MOTION to Set Aside Judgment . Motion Hearing set for 7/1/2016 at 10:00 AM in Alexandria Courtroom 701 before District Judge Anthony J Trenga. (clar, ) (Entered: 06/20/2016) |
| 06/27/2016 | 54 | Memorandum in Opposition re 45 MOTION to Set Aside Judgment filed by Associated Recovery, LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Stempien, Rebecca) (Entered: 06/27/2016) |
| 06/27/2016 | 55 | Memorandum in Opposition re 48 MOTION to Set Aside Judgment filed by Associated Recovery, LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Stempien, Rebecca) (Entered: 06/27/2016) |
| 06/27/2016 | 56 | Memorandum in Opposition re 51 MOTION to Set Aside Judgment filed by Associated Recovery, LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Stempien, Rebecca) (Entered: 06/27/2016) |
| 06/30/2016 | 57 | REPLY to Response to Motion re 48 MOTION to Set Aside Judgment , 45 MOTION to Set Aside Judgment , 51 MOTION to Set Aside Judgment *Regarding JTZ.com, OCU.com, and YTE.com* filed by JTZ.COM, OCU.COM, YTE.COM. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Wu, Eric) (Entered: 06/30/2016) |
| 07/01/2016 | 58 | Minute Entry for proceedings held before District Judge Anthony J Trenga:<br>Motion Hearing held on 7/1/2016 re 48 MOTION to Set Aside Judgment filed by OCU.COM, 45 MOTION to Set Aside Judgment filed by JTZ.COM, and 51 MOTION to Set Aside Judgment filed by YTE.COM.<br>Appearances of Counsel for Pltf. and Deft.<br>Motions argued and GRANTED.<br>The default judgments entered against defendants JTZ.com, OCU.com and YTE.com are vacated.<br>This case is to be transferred to the Northern District of Texas, as to defendants JTZ.com, OCU.com and YTE.com. Order to follow.<br>(Court Reporter R. Montgomery.)<br>(jall) (Entered: 07/01/2016) |
| 07/01/2016 | 59 | ORDER re: 45 Motion to Set Aside Judgment; 48 Motion to Set Aside Judgment; and 51 Motion to Set Aside Judgment:<br>On Friday, July 1, 2016 the Court held a hearing on Motions to Set Aside Judgment filed by certain defendants [Doc. Nos. 45, 48, 51] (the "Motions"). Upon consideration of the Motions, the memoranda of law in support thereof and in opposition thereto, the arguments of counsel and for the reasons stated in open court during the July 1, 2016 hearing, it is hereby<br>ORDERED that the Motions [Doc. Nos. 45, 48, 51] be, and the same hereby are, GRANTED and the default judgments entered against defendants JTZ.com, OCU.com, and YTE.com be, and the same hereby are, VACATED; and it is further<br>ORDERED that defendants JTZ.com, OCU.com, and YTE.com shall answer, move orotherwise respond to plaintiffs Complaint within thirty (30) days of the date of this Order, or by such other date as may be ordered by the United States District Court for the Northern District of Texas, to which these claims have been transferred by Order dated July 1, 2016.<br>Signed by District Judge Anthony J Trenga on 7/01/2016.<br>(jall) (Entered: 07/01/2016) |
| 07/01/2016 | 60 | ORDER:<br>On Friday, July 1, 2016 the Court granted Motions to Set Aside Default Judgment filed by each of defendants JTZ.com, OCU.com, and YTE.com [Doc. Nos. 45, 48, 51 ]. For the reasons previously stated in connection with the Court's Order dated April 15, 2016 [Doc. No. 40] transferring certain claims to the United States District Court for the Northern District of Texas, it is hereby<br>ORDERED that as to defendants JTZ.com, OCU.com, and YTE.com, this case be, and the same hereby is, TRANSFERRED to the United States District Court for the Northern District of Texas and shall otherwise remain in this District as to those defendants against whom judgment has been entered.<br>Signed by District Judge Anthony J Trenga on 7/01/2016.<br>(jall) (Entered: 07/01/2016) |
| 07/01/2016 | | Case transferred to District of Northern District of Texas. Original file, certified copy of transfer order, and docket sheet sent.<br>(jall) (Entered: 07/01/2016) |
| 07/18/2016 | 61 | MOTION to Set Aside Judgment by VGJ.COM, YJX.COM. (Wu, Eric) (Entered: 07/18/2016) |

Case 3:16-cv-01025-L   Document 75   Filed 08/01/16   Page 12 of 204   PageID 1086

| 07/18/2016 | 62 | Memorandum in Support re 61 MOTION to Set Aside Judgment filed by VGJ.COM, YJX.COM. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Wu, Eric) (Entered: 07/18/2016) |
| --- | --- | --- |
| 07/18/2016 | 63 | Notice of Hearing Date set for 7/29/2016 re 61 MOTION to Set Aside Judgment (Wu, Eric) (Entered: 07/18/2016) |
| 07/19/2016 | | Set Deadlines as to 61 MOTION to Set Aside Judgment . Motion Hearing set for 7/29/2016 at 10:00 AM in Alexandria Courtroom 701 before District Judge Anthony J Trenga. (clar, ) (Entered: 07/19/2016) |
| 07/19/2016 | 64 | MOTION to Set Aside Judgment by 744.com. (Wu, Eric) (Entered: 07/19/2016) |
| 07/19/2016 | 65 | Memorandum in Support re 64 MOTION to Set Aside Judgment filed by 744.com. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Wu, Eric) (Entered: 07/19/2016) |
| 07/19/2016 | 66 | Notice of Hearing Date 7/29/2016 re 64 MOTION to Set Aside Judgment (Wu, Eric) (Entered: 07/19/2016) |
| 07/20/2016 | | Set Deadlines as to 64 MOTION to Set Aside Judgment . Motion Hearing set for 7/29/2016 at 10:00 AM in Alexandria Courtroom 701 before District Judge Anthony J Trenga. (clar, ) (Entered: 07/20/2016) |
| 07/22/2016 | 67 | ORDERED that the hearing on the Motions [Doc. Nos. 61, 64], currently scheduled for Friday, July 29, 2016 be, and the same hereby is, CONTINUED to Friday, August 5, 2016 at 10:00 a.m. Signed by District Judge Anthony J Trenga on 07/22/2016. (jlan) (Entered: 07/22/2016) |
| 07/22/2016 | | Reset Deadline as to 61 MOTION to Set Aside Judgment 64 MOTION to Set Aside Judgment. Motion Hearing set for 8/5/2016 at 10:00 AM in Alexandria Courtroom 701 before District Judge Anthony J Trenga. (jlan) (Entered: 07/22/2016) |
| 07/29/2016 | 68 | RESPONSE to Motion re 61 MOTION to Set Aside Judgment filed by Associated Recovery, LLC. (Stempien, Rebecca) (Entered: 07/29/2016) |
| 08/01/2016 | 69 | ORDER granting 61 Motion to Set Aside Judgment; granting 64 Motion to Set Aside Judgment. The default judgments entered against defendants VGJ.com, YJX.com, and 744.com be, and the same hereby are, VACA TED; and it is furtherORDERED that as to defendants VGJ.com, YJX.com, and 744.com, this case be, and the same hereby is, TRANSFERRED to the United States District Court for the Northern District of Texas. Signed by District Judge Anthony J Trenga on 8/1/2016. (see Order for details) (dvanm, ) (Entered: 08/01/2016) |
| 08/01/2016 | | Case transferred to District of Northern District of Texas. Original file, certified copy of transfer order, and docket sheet sent. (dvanm, ) (Entered: 08/01/2016) |

| **PACER Service Center** | | |
| --- | --- | --- |
| **Transaction Receipt** | | |
| 08/01/2016 14:14:06 | | |
| **PACER Login:** | brandiboles:4427402:4259697 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:15-cv-01723-AJT-JFA |
| **Billable Pages:** | 15 | **Cost:** | 1.50 |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ASSOCIATED RECOVERY, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 1:15-cv-1723 (AJT/JFA) |
| | ) |
| JOHN DOES 1 – 44, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## **ORDER**

Pending before the Court are defendants VGJ.com, YJX.com, and 744.com's Motions to Set Aside Judgment [Doc. Nos. 61, 64] (the "Motions"). Upon consideration of the Motions, the memoranda of law in support thereof and in opposition thereto, and for the reasons stated in connection with the Court's previous Orders dated April 1, 2016 [Doc. No. 40] and July 1, 2016 [Doc. No. 60] transferring certain claims to the United States District Court for the Northern District of Texas, it is hereby

ORDERED that the Motions [Doc. Nos. 61, 64] be, and the same hereby are, GRANTED and the default judgments entered against defendants VGJ.com, YJX.com, and 744.com be, and the same hereby are, VACATED; and it is further

ORDERED that as to defendants VGJ.com, YJX.com, and 744.com, this case be, and the same hereby is, TRANSFERRED to the United States District Court for the Northern District of Texas, without prejudice as to any further relief requested by plaintiff, and shall otherwise remain in this District as to those defendants against whom judgment has been entered; and it is further

ORDERED that defendants VGJ.com, YJX.com, and 744.com shall answer, move, or otherwise respond to plaintiff's Complaint within thirty (30) days of the date of this Order, or by other such date as may be ordered by the United States District Court for the Northern District of Texas; and it is further

ORDERED that the hearing on the Motion, presently scheduled for Friday, August 5, 2016 be, and the same hereby is, CANCELLED.

The Clerk is directed to forward a copy of this Order to all counsel of record.

_____ /s/ __
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
August 1, 2016

2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| ASSOCIATED RECOVERY, LLC, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-01723-AJT-JFA |
| | ) | |
| JOHN DOES 1-44, | ) | |
| | ) | |
| *Defendants in rem.* | ) | |

**DEFENDANTS' MOTION TO SET ASIDE
DEFAULT JUDGMENTS REGARDING VGJ.COM AND YJX.COM AND
RETURN THOSE DOMAIN NAMES TO THEIR PRIOR OWNERS**

*In rem* Defendants VGJ.com and YJX.com, pursuant to Federal Rule of Civil Procedure 60(b), hereby request to set aside the Judgment entered on May 18, 2016 [ECF 43]. Pursuant to Local Civil Rule 7(E), Defendants' counsel called Plaintiff's counsel to meet and confer in good faith regarding this Motion, and had understood that as of July 15, Plaintiff consented to the motion to set aside entry of default judgment, but only opposed the return of the domain names to Mr. Huang and Ms. Lin.  Defendants' counsel thereafter sent a draft consent order to Plaintiff on July 15, 2016.  During a subsequent conversation with Plaintiff's counsel on July 18, however, Plaintiff's counsel informed Defendants' counsel that he was unable to obtain authorization from the client regarding any aspect of this Motion.

The basis for this motion is set forth more fully in the accompanying Memorandum in Support of Motion to Set Aside the Default Judgments Regarding VGJ.com and YJX.com and Return Those Domain Names to Their Prior Owners.

WHEREFORE, Defendants respectfully request that the Court grant this Motion and set aside the Judgment entered on May 18, 2016, 2016 (ECF 43) with respect to the VGJ.com and

YJX.com domain names.  Defendants further request that the Court further order Uniregistrar

Corp., the current registrar of the VGJ.com and YJX.com domain names, to take all steps within

its power to transfer the domain back to Huochun Huang and Chunmei Lin, respectively.

Dated:  July 18, 2016                             Respectfully submitted,

                                                  /s/ Eric Y. Wu
                                                  Lora A. Brzezynski, VSB No. 36151
Of Counsel:                                       Claire M. Maddox, VSB No. 71230
                                                  Eric Y. Wu, VSB No. 82829
Steven M. Geiszler                                Dentons US LLP
Zunxuan D. Chen                                   1900 K Street, NW
Dentons US LLP                                    Washington, DC  20006
2000 McKinney Avenue                              202-496-7500 (phone)
Suite 1900                                        202-496-7756 (fax)
Dallas, TX 75201-1858                             lora.brzezynski@dentons.com
214-259-0900 (phone)                              claire.maddox@dentons.com
214-259-0910 (fax)                                eric.wu@dentons.com
steven.geiszler@dentons.com
digger.chen@dentons.com

                                                  *Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 18th day of July, 2016, I will electronically

file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a

notification of such filing (NEF) to the following:

Rebecca J. Stempien Coyle (VSB 71483)
Levy & Grandinetti
Suite 304
1120 Connecticut Ave., N.W.
Washington, D.C. 20036
(202) 429-4560
Fax: (202) 429-4564
mail@levygrandinetti.com

*Counsel for Associated Recovery, LLC*

Dated:  July 18, 2016

*/s/ Eric Y. Wu*
Eric Y. Wu, VSB No. 82829
Dentons US LLP
1900 K Street, NW
Washington, DC  20006
202-496-7500 (phone)
202-496-7756 (fax)
eric.wu@dentons.com

*Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| ASSOCIATED RECOVERY, LLC, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-01723-AJT-JFA |
| | ) | |
| JOHN DOES 1-44, | ) | |
| | ) | |
| *Defendants in rem*. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO SET ASIDE
DEFAULT JUDGMENTS REGARDING VGJ.COM AND YJX.COM AND
RETURN THOSE DOMAIN NAMES TO THEIR PRIOR OWNERS**

*In rem* Defendants VGJ.com and YJX.com, pursuant to Federal Rule of Civil Procedure 60(b), submit this Memorandum in Support of Motion to Set Aside the Default Judgments Regarding VGJ.com and YJX.com and Return Those Domain Names to Their Prior Owners obtained by Plaintiff Associated Recovery, Inc.  Defendants are domain names against which Plaintiff has brought this *in rem* action.  Defendants also seek the return of these domain names to their Chinese owners to maintain the status quo.  Defendants' counsel met and conferred in good faith with Plaintiff's counsel regarding this motion pursuant to Local Civil Rule 7(E), and had understood that as of July 15, Plaintiff had consented to the motion to set aside entry of default judgment but only opposed the return of the domain names to Mr. Huang and Ms. Lin.  Defendants' counsel thereafter sent a draft consent order to Plaintiff on July 15, 2016.  During a subsequent conversation with Plaintiff's counsel on July 18, however, Plaintiff's counsel informed Defendants' counsel that he was unable to obtain authorization from the client regarding any aspect of this Motion.

1

# I. STATEMENT OF FACTS

## A.     The *Netsphere* Litigation.

This dispute is related to litigation in the Northern District of Texas styled *Netsphere, Inc. v. Baron*.  The *Netsphere* litigation arose from a business dispute between Jeffrey Baron, Plaintiff's alleged predecessor in interest, and his business partner.  In the Texas Litigation, the Texas court found that Baron repeatedly engaged in vexatious and abusive litigation conduct. *Netsphere, Inc. v. Baron*, 703 F.3d 296, 302 (5th Cir. 2012) (*Netsphere I*).  In response to that conduct, the Northern District of Texas appointed Peter S. Vogel ("Vogel" or "Receiver") as the receiver for companies controlled by Baron.  *See* Order Appointing Receiver, *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. Nov. 24, 2010), ECF 130.

In response to Baron's continuing misconduct, the Northern District of Texas granted a motion by the Receiver to permit the sale of domain names owned by Baron's businesses, including Novo Point, LLC ("Novo Point") for the purpose of paying Novo Point's creditors. *See* February 4, 2011 Order Granting the Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. Feb. 4, 2011), ECF 288.  The Northern District further granted the Receiver's motion to appoint Damon Nelson ("Nelson") as permanent manager of Novo Point to assist the Receiver in selling Novo Point's domain names. *See* Order Granting the Receiver's Motion to Appoint Damon Nelson as Permanent Manager of the LLCs and For Turnover of LLC Materials to Damon Nelson, *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. Apr. 22, 2011), ECF 473.  Mr. Nelson thus worked under the direction of the Receiver.

Although the Northern District of Texas eventually terminated the receivership, the court explicitly "retain[ed] exclusive jurisdiction . . . over any disputes that may arise concerning . . . any controversy that arises from or relates to the Receivership or actions of the Receiver or his

professionals." *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. March 27, 2015), ECF 1447 at 21. *See also Baron v. Vogel*, No. 3:15-CV-232-L, 2016 WL 1273465, at *3 (N.D. Tex. Mar. 31, 2016) (noting that Northern District of Texas retains exclusive jurisdiction "over any disputes that might arise . . . from or relate[ ] to the receivership or actions of the receiver or his professionals").

On April 15, 2016, this Court granted the undersigned counsel's motion to transfer a portion of this case related to 28 domain names to the Northern District of Texas. (*See* ECF 40.) On July 1, 2016, this Court set aside three default judgments and transferred three more domain names (JTZ.com, OCU.com, YTE.com) to the Northern District of Texas. (*See* ECF 59.)

**B.      Purchases of VGJ.com and YJX.com.**

Pursuant to the Northern District of Texas's order authorizing the sale of Novo Point's domain names, Nelson sold the domain names that are the subject of this litigation, including VGJ.com and YJX.com, in 2012. (*See* ECF 1 ¶ 241.) The seller of the domain names in the agreements was Novopoint, LLC [*sic*], and Nelson authorized the sale and signing on behalf of Novo Point. *Id.* Plaintiff filed this lawsuit attempting to unwind this sale. (*See* ECF 1 ¶¶ 240-41.)

On July 9, 2015, Huochun Huang purchased the VGJ.com domain name. (*See* Declaration of Huochun Huang ("Huang Decl.") at ¶ 3, attached hereto as Exhibit A.) Mr. Huang gave value for VGJ.com, and the seller caused the domain name to be transferred to eName.com, a duly accredited ICAN registrar. (*See id.* at ¶ 4.) Mr. Huang immediately provided accurate registrant contact information to eName.com. (*See id.* at ¶ 5.) Plaintiff admits that it has not used the VGJ mark since 2012. (ECF 1 ¶ 3.)

On January 29, 2013, Chunmei Lin purchased the YJX.com domain name. (*See* Declaration of Chunmei Lin ("Lin Decl.") at ¶ 3, attached hereto as Exhibit B.) Ms. Lin gave

value for YJX.com, and the seller caused the domain name to be transferred to eName.com, a

duly accredited ICAN registrar.  (*See id.* at ¶ 4.)  Ms. Lin immediately provided accurate

registrant contact information to eName.com.  (*See id.* at ¶ 5.)  Plaintiff admits that it has not

used the YJX mark since 2012.  (ECF 1 ¶ 3.)

## C.     Service of Complaint.

On December 31, 2015, Plaintiff filed this *in rem* action against various John Doe

Defendants and domain names, alleging a violation of the Federal Anticybersquatting Consumer

Protection Act ("ACPA") and other claims.  (*See* ECF 1.)  On January 20, 2016, Plaintiff filed a

Motion for an Order to Publish Notice of Action.  (*See* ECF 3; ECF 4.)  In its Memorandum in

support of that motion, Plaintiff alleged to have sent the notices "to the postal and e-mail

addresses set forth in the registrations for the Domain Names."  (ECF 4 at 4.)  The Declaration in

support of the motion further clarified that Plaintiff had sent copies of the Complaint "to each of

the defendants via e-mail, using the e-mail addresses provided on the Whois records for each of

the Internet domain names at issue," and further directed a letter to be sent "to each postal and e-

mail addresses set forth in the registrations for the Domain Names" on December 31, 2015.

(ECF 4-1 ¶ 4.)  Neither Plaintiff's Memorandum nor Declaration, however, include a certificate

of service related to sending the Complaint.  Nor does Plaintiff identify the specific addresses to

which it allegedly sent the Complaint.  Rather, the Memorandum attaches only "representative

copies" of the notices, which relate to just two of the domain names at issue.  (*Id.* at Composite

Attachment 1 and Attachment 2.)

On January 27, 2016, this Court issued an Order to Publish Notice of Action and directed

that a copy of the order be published in *The Washington Times* "within fourteen (14) days after

entry of this Order."  (ECF 6, ¶ 1.)  The Court further ordered that "[a]ny answer or other

response to the Complaint should be filed . . . within twenty-one (21) days from the date of

publication of this Order in The Washington Times." (ECF 6, ¶ 2(C).)  Plaintiff advised the

Court that it published the Court's order in *The Washington Times* on February 3, 2016. (*See*

ECF 7; ECF 7-1.)

Neither Mr. Huang nor Ms. Lin received any email notice from Plaintiff regarding this

litigation, nor does either subscribe to the *Washington Times*. (Huang Decl. at ¶¶ 6-7; Lin Decl.

at ¶¶ 6-7.)

**D.**     **Entry of Default and Other Defendants' Motion to Set Aside.**

On February 25, 2016, Plaintiff sought an entry of default against certain domain names,

including VGJ.com and YJX.com. (ECF  9.)  The Clerk granted the entry of default on February

26, 2016 (ECF 10), and then granted an amended entry of default on February 29, 2016 (ECF

12).

In late April and early March 2016, the domain names yyg.com, yrn.com, vcz.com,

fny.com, zhd.com, and zulin.com, via their corresponding owners Liwei Liu, Dongdong Xu,

Teng Wang, Xiaosheng Liu, and Feng Yan retained the undersigned counsel to set aside the

default entered in this matter.  The undersigned immediately prepared and filed a Motion to Set

Aside Default. (*See* ECF 13.)  In that motion, the Defendants argued that they acted promptly to

lift the default, had a meritorious defense, and that Plaintiff would not be prejudiced by setting

aside the default. (*See* ECF 14.)  The Magistrate Judge granted Defendants' motion on March

18, 2016, setting aside the default as to domain names yyg.com, yrn.com, vcz.com, fny.com,

zhd.com, and zulin.com. (*See* ECF 27.)  VGJ.com and YJX.com remained in default because

their respective owners were not aware or this litigation or its threat to their ownership. (Huang

Decl. at ¶ 7; Lin Decl. at ¶ 7.)

On March 25, 2016, certain domain names, including yyg.com, yrn.com, vcz.com,

fny.com, zhd.com, and zulin.com, filed a Motion to Dismiss or in the Alternative, to Transfer

Venue.  (*See* ECF 30.)  On April 15, 2016, the Court granted that motion, transferring Plaintiff's

claims against those domain names to the Northern District of Texas.  (*See* ECF 40.)

On May 18, 2016, the Court granted Plaintiff's Motion for Default Judgment against

VGJ.com and YJX.com and other domain name defendants.  (*See* ECF 42.)  The same day, the

Court entered a Default Judgment (the "Default Judgment").  (*See* ECF 43.)  In early June 2016,

the defaulted domain name was transferred to Plaintiff pursuant to the Judgment.  Defendants

understand that Uniregistrar Corp. is the current registrar of VGJ.com and YJX.com.

**E.      Other Prior Defendants' Motions to Set Aside Default Judgment.**

Other defendants, JTZ.com, OCU.com, and YTE.com, filed motions to set aside the

Default Judgment with respect to those domain names.  (ECF 45, 48, 51).  At a hearing on July

1, 2016, the Court granted those motions and transferred *in rem* Defendants JTZ.com, OCU.com,

and YTE.com to the Northern District of Texas.  (ECF 58, 59).

**F.      Representation of VGJ.com and YJX.com**

Mr. Huang first learned of this litigation on June 13, 2016, when he received an email

from eName.com that he had been delisted as registrant of VGJ.com, following which he

searched for more information and retained counsel.  (Huang Decl. at ¶¶ 7-9.)  Ms. Lin first

learned of this litigation on June 27, 2016 when someone questioned her why her domain name,

YJX.com, was up for auction.  (Lin Decl. at ¶ 7.)  She quickly investigated the matter and

retained counsel.  (*Id.* at ¶¶ 8-9).  The undersigned thereafter worked diligently to obtain the facts

necessary to file this Motion.  *In rem* Defendants VGJ.com and YJX.com now file this Motion to

Set Aside Default Judgment.[1]

---

[1] The undersigned counsel are aware that this is now the fourth motion seeking to set aside the
default judgment entered in this action.  Counsel has not filed seriatim motions to annoy or delay
in any way the proceedings.  As to be expected with multiple domain owners who live outside
the United States in different locations, they have learned of the lawsuit and have sought our

## II. ARGUMENT

The court should set aside the judgment under Rule 60(b)(1).  Under that Rule, the Court

may relieve a party from a final judgment for "mistake, inadvertence, surprise, or excusable

neglect." Fed. R. Civ. P. 60(b)(1).  "[A] district court should consider whether the moving party

has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility

of the defaulting party, the prejudice to the party, whether there is a history of dilatory action,

and the availability of sanctions less drastic." *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d

198, 204-05 (4th Cir. 2006); *see also Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*,

616 F.3d 413, 420 (4th Cir. 2010) ("[W]e have analyzed Rule 55(c) and Rule 60(b) motions

using the same factors.").  The decision to set aside a judgment under Rule 60 is committed to

the discretion of the Court. *Payne*, 439 F.3d at 204.

## A.    Courts Have a Strong Preference to Decide Cases On the Merits.

The Fourth Circuit has "repeatedly expressed a strong preference that, as a general

matter, defaults are to be avoided and that claims and defenses be disposed of on their merits."

*Saurikit, LLC v. cydia.com*, No. 1:11CV0888 JCC/JFA, 2011 WL 5843638, at *2 (E.D. Va. Nov.

21, 2011) (quoting *Colleton*, 616 F.3d at 417).  Any doubts about whether relief should be

granted, moreover, should be resolved in favor of setting aside the default so that the case may

be heard on the merits.  *Tolson v. Hodge*, 411 F.2d 123 (4th Cir. 1969) ("It has been held in an

extensive line of decisions that Rules 55(c) and 60(b) are to be liberally construed in order to

provide relief from the onerous consequences of defaults and default judgments.").  "There is

much more reason for liberality in reopening a judgment when the merits of the case never have

---

assistance at varied times.  Promptly upon being contacted by these two new domain owners, we
immediately began preparation of supporting declarations and a motion to file with the Court.  In
addition, we just learned that another Chinese owner may seek to set aside the Default Judgment
regarding yet another domain name and are trying to finalize details to likely file another motion.

been considered than there is when the judgment comes after a full trial on the merits." Wright

& Miller, § 2857 Discretion of the Court, 11 FED. PRAC. & PROC. CIV. (3d ed.). Here, the parties

dispute their respective rights and ownership interests in the VGJ.com and YJX.com domain

names. Defendants should have an opportunity to address those issues. Further, all relevant

factors weigh in favor of setting aside the Judgment.

**B.      Defendants Were Unaware of the Nature of This Action.**

Under Rule 60, courts give particular weight to a defendant's lack of notice. *Marshall v.

Boyd*, 658 F.2d 552 (8th Cir. 1981) (failure to give notice is strong factor weighing in favor of

setting aside judgment); *Lutomski v. Panther Valley*, 653 F.2d 270 (6th Cir. 1981) (same);

*Wilson v. Moore*, 564 F.2d 366 (9th Cir. 1977) (same).

Indeed, courts have found that a lack of notice justifies relief from default, even where

the defendant was properly served. In *Avon Contractors, Inc. v. Sec'y of Labor*, 372 F.3d 171

(3d Cir. 2004), the respondent moved to set aside a default under Rule 60(b). Although the

respondent had been properly served via certified mail, one of its employees had destroyed the

mail. The Third Circuit lifted the judgment, reasoning that the respondent's failure to answer

was due to excusable neglect. *See also Colleton*, 616 F.3d at 420 (although corporation was

properly served by process mailed to its agent designated for acceptance of service of process,

excusable neglect existed where agent mishandled process and defendant did not receive notice

of lawsuit).

Here, the owners of VGJ.com and YJX.com did not receive emails or regular mail from

Plaintiff's counsel related to this action. (Huang Decl. at ¶ 6; Lin Decl. at ¶ 6.) Their first notice

was after they had been delisted as registrants of VGJ.com and YJX.com. (Huang Decl. at ¶ 7;

Lin Decl. at ¶ 7.) Both owners purchased their domain names for substantial value. (Huang

Decl. at ¶ 4; Lin Decl. at ¶ 4.) Thus, Defendants did not know that their rights and ownership

interest in VGJ.com and YJX.com were threatened by this lawsuit until after the Judgment was

entered.  (Huang Decl. at ¶ 7; Lin Decl. at ¶ 7.)  And as in *Avon* and *Colleton*, Defendant's

failure to respond was, *at worst*, due to excusable neglect.  *See Colleton*, 616 F.3d at 420 (setting

aside default for excusable neglect where party was properly served, but agent for service

mishandled process); *Avon*, 372 F.2d at 175 (finding excusable neglect under Rule 60(b) where

party was properly served, but employee destroyed service of process, reasoning that opposing

party would not suffer prejudice from opening default judgment).  For this reason, the Court

should set aside the Default Judgment with respect to VGJ.com and YJX.com.

## C.      Defendants Promptly Filed This Motion.

Upon discovering that their respective ownership interests in VGJ.com and YJX.com

were threatened, the Defendant owners immediately sought to retain counsel in the United States

and promptly filed this motion to set aside the entry of default, mere weeks after the Judgment

was entered.  (Huang Decl. at ¶¶ 7-9; Lin Decl. at ¶¶ 7-9.)  Defendants' owners haves not

delayed in responding to this action in bad faith.  Thus, this factor weights in favor of setting

aside the Judgment.

## D.      Plaintiff Will Not Be Prejudiced By Setting Aside the Default Judgment.

In determining whether setting aside the default would prejudice the non-defaulting party,

courts consider whether the delay:

> (1) made it impossible for the non-defaulting party to present some of its evidence;
> (2) made it more difficult for the non-defaulting party to proceed with trial; (3)
> hampered the non-defaulting party's ability to complete discovery; and (4) was used
> by the defaulting party to collude or commit a fraud.

*Saurikit*, 2011 WL 5843638, at *5 (citing *Vick v. Wong*, 263 F.R.D. 325, 330 (E.D. Va. 2009)).

"In the context of a motion to set aside an entry of default, as in other contexts, delay in and of

itself does not constitute prejudice to the opposing party."  *Colleton*, 616 F.3d at 418.

Here, Defendants' owners filed this Motion soon after the Judgment was entered. Plaintiff's ability to present its case and gather evidence has not been prejudiced. *See Avon*, 372 F.2d at 175 (finding excusable neglect under Rule 60(b) where party was properly served, reasoning that opposing party would not suffer prejudice by opening default judgment). Indeed, as discussed above, the Court only recently transferred Plaintiff's claims against other several similarly situated domain names to the Northern District of Texas (*see* ECF 40), where that court has yet to rule on the other transferred defendants' Rule 12(b) motion or Plaintiff's motion to file an amended complaint. Moreover, **Plaintiff's Proposed Amended Complaint in the Northern District of Texas includes claims against movant Defendants VGJ.com and YJX.com**, a copy of which is provided here as Exhibit C. In both the motion and Amended Complaint, Plaintiff is represented by the same counsel appearing here: Paul Grandinetti and Rebecca Stempien Coyle. *See* Exhibit C at 57. Indeed, save for the change in court name and docket number, and the addition of Texas-specific causes of action, the Texas complaint is a copy of Plaintiff's Complaint in this Court. Plaintiff's willingness to file the Texas complaint and voluntarily pursue its claims against the Defendants in Texas is sufficient reason for this Court to set aside the Default Judgment.

By contrast, VGJ.com and YJX.com's owners will suffer serious injury to their ownership interest in the VGJ.com and YJX.com domain names if the Court does not set aside the Judgment. Indeed, Defendants understand that Plaintiff has already put VGJ.com and YJX.com up for auction online. *See* Exhibit D (online auction posting for VGJ.com and YJX.com, as well as other domain names subject to the Default Judgment). Plaintiff intends to sell the domain names, which reflects their lack of importance to Plaintiff. Defendants, on the other hand, seek to maintain ownership of them. To prevent the domain names from being sold

to a third party, the Court should return them to their prior owners, Mr. Huang and Ms. Lin.[2]

Thus, this factor weights in favor of setting aside the Default Judgment.

**E.  Defendants Have A Meritorious Defense.**

"[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982); *see also Cent. Operating Co. v. Util. Workers of Am., AFL-CIO*, 491 F.2d 245, 253 (4th Cir. 1974) ("[A] party is not required to establish a meritorious defense by a preponderance of the evidence. The purpose of the motion was only to open the default judgment so that there may be a trial on the merits; he did not seek a judgment in his favor.").

**1.  Plaintiff Lacks Standing.**

Neither Baron nor Novo Point could bring this suit.  Plaintiff is allegedly their assignee.[3] (ECF 1 ¶¶ 3 & 4.)  Thus, Plaintiff's claims are likewise barred.  "[T]he only injury sufficient to support an assignee's standing to assert an assigned claim is an injury suffered by the assignor, and that injury must satisfy all the requirements of constitutional standing, i.e., the injury suffered must be an injury-in-fact that is causally traceable to a named defendant and likely to be redressed by the court action." *PEMEX Exploracion y Produccion v. Murphy Energy Corp.*, 923

---

[2] The undersigned counsel respectfully submit that the Court should consider temporarily enjoining Plaintiff from auctioning or otherwise transferring any more of the domain names subject to the Default Judgment, as it is foreseeable that other foreign owners may soon seek relief.  A 90-day injunction, for example, should give adequate time for others to appear without unduly prejudicing Plaintiff, who appears intent on selling, and not keeping, the domain names.

[3] Baron controls Plaintiff; indeed, he attended a settlement conference as Plaintiff's representative.  He is directing this litigation through Plaintiff as a collateral attack on the sale of VGJ.com and YJX.com pursuant to the Northern District of Texas's orders.  His conduct caused the Northern District of Texas to appoint the Receiver.  *See* February 4, 2011 Order Granting the Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. Feb. 4, 2011), ECF No. 288.  Baron cannot obtain a second bite at the apple by challenging those orders by using Plaintiff as a proxy in this litigation.

F. Supp. 2d 961, 965 (S.D. Tex. 2013).  "[T]he irreducible constitutional minimum of standing

contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  These

elements are "(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or

imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the

likelihood that a favorable decision will redress the injury."  *Croft v. Gov. of Texas*, 562 F.3d

735, 745 (5th Cir. 2009) (citing *Lujan*, 504 U.S. at 560–61).  The party invoking federal

jurisdiction bears the burden of establishing these elements."  *Lujan*, 504 U.S. at 561.

Plaintiff's allegations lack at least two requisite elements.  First, there was no injury in

fact.  Although the Fifth Circuit vacated the receivership, the sales of domain names to raise

funds needed to pay the receivership fees occurred under the court's authority. *See Baron v.

Vogel*, No. 3:15-cv-232-L, 2016 WL 1273465, *5 (N.D. Tex. Mar. 31, 2016) (finding no *ultra

vires* acts by court-appointed receiver) ("*Vogel I*").  Neither the Fifth Circuit nor the Northern

District entered any order voiding the sales.  Further, the Northern District of Texas implicitly

authorized the sales *post hoc* when it authorized payment of the receivership fees using, in part,

funds raised through the sales.  *See generally Netsphere, Inc. v. Baron*, No. 3:09-cv-988-F, 2013

WL 3327858 (N.D. Tex. May 29, 2013) ("*Netsphere II*").

Second, there is no causal connection between the alleged injury and the conduct about

which Plaintiff complains.  Assuming, *arguendo*, there were an injury, it was not caused by

Defendants, who are bona fide purchasers for value of VGJ.com and YJX.com.  *See EDS Corp.

v. Southwestern Bell Tel.*, 674 F.2d 453, 459 (5th Cir. 1982) ("A bona fide purchaser … is one

who buys property in good faith for valuable consideration and without knowledge (actual or

imputed) of outstanding claims in a third party or parties.").  Indeed, VGJ.com and YJX.com

were transferred pursuant to a contract, signed by Damon Nelson on behalf of Novo Point, without notice or mention of any alleged third-party interests.

Plaintiff's claims under the ACPA, for quiet title, and conversion all flow from Defendant's acquisition and use of domain names that were sold pursuant to the authorization of the Northern District of Texas.  The quiet title and conversion claims are extinguished by that court's orders authorizing the sales and subsequent orders authorizing payments.  As for the ACPA claims, which flow from alleged trademark rights, Defendants' use of VGJ.com and YJX.com was not only foreseeable, it was the very reason for the assignment.  Hence, Defendants enjoy an implied license from Novo Point that defeats any ACPA claim.  *See McCoy v. Misuboshi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995) (implied license available even through involuntary sale).  Defendants have not injured Baron, Novo Point, or Plaintiff.  *Id.*  Any alleged injury to Baron or Novo Point (and by assignment, Plaintiff) was self-inflicted.  *See Netsphere, Inc. v. Baron*, 703 F.3d 296, 313 (5th Cir. 2012) ("the record supports that the circumstances that led to the appointment of a receiver were primarily of Baron's own making") ("*Netsphere I*").

With only Baron and Novo Point to blame, Plaintiff is allegedly the "assignee" of nonexistent rights and, thus, has no standing to bring this case.  *See PEMEX*, 923 F. Supp. 2d at 965 (S.D. Tex. 2013).  For this independent reason, Plaintiff's claims fail.

### 2.  Plaintiff's Claims Are Barred by Collateral Estoppel.

The Fifth Circuit decision in *Netsphere I* and the Northern District of Texas' decisions in *Netsphere II,* and *Vogel* collaterally estop Plaintiff's claims.  To establish collateral estoppel under federal law, Defendant must show: (1) the issue is identical to the issue involved in the prior litigation; (2) the issue was actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation was a crucial and necessary part of the judgment.

*Rabo Agrifinance, Inc. v. Terra XXI, Ltd.,* 583 F.3d 348, 353 (5th Cir. 2009).  Here, all three prongs are met.

The issues Plaintiff raises in its Complaint have been litigated and decided against Plaintiff's predecessors-in-interest.  Plaintiff alleges that the domain names at issue were "improperly" placed under the control of a receivership then sold pursuant to "Improper Receivership Sale Orders."  (ECF 1 ¶¶ 240-41.)  But in *Netsphere I*, the Fifth Circuit held that the district court entered the Receivership Order to bring a halt to Baron's "longstanding vexatious litigation tactics," and rejected Baron's contention that the appointment of the Receiver was in bad faith or collusive.  *Netsphere I,* 703 F.3d at 310-13 ("[W]e hold, based on this record, that in creating the receivership there was no malice nor wrongful purpose, and only an effort to conserve property in which the court believed it was interested in maintaining for unpaid attorney fees and to control Baron's vexatious litigation tactics.") (internal quotations omitted).

Further, on remand, the Northern District of Texas ratified the domain name sales Plaintiff challenges, finding:

> [Vogel's law firm] developed a system for determining the value of domain names that allowed it to make choices regarding the fate of individual names: whether to develop, to park, to sell or to let lapse.  This was critical because it enabled counsel … to identify money losing names that should be culled from the portfolios.  Although Baron may have elected to run these businesses differently, all of the actions were reasonable and prudent ….

*Netsphere II*, 2013 WL 3327858, at *16.  On March 31, 2016, the Northern District of Texas again gave *post hoc* approval to the Receiver's actions, stating that "any claim by Plaintiffs based on the wrongful establishment or continuation of the receivership or payment of receivership expenses is an impermissible collateral attack of prior orders through this suit."  *Vogel*, 2016 WL 1273465 at *6.

Plaintiff's claims are just such "an impermissible collateral attack of prior orders" entered by the Northern District of Texas authorizing the sale of Novo Point's domain names.  *Id.*; *see also Recoveredge LP v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995) ("Collateral estoppel will apply in a second proceeding that involves separate claims if the claims involve the same issue and the subject matter of the suits may be different as long as the requirements for collateral estoppel are met." (internal citations omitted)).  For this reason alone, Plaintiff's claims fail.

### 3. __Plaintiff Cannot Establish Bad Faith.__

As part of its claim of violation of the ACPA, Plaintiff must establish that Defendants' owners "had a bad faith intent to profit from using the [] domain name."  *Lamparello v. Falwell*, 420 F.3d 309, 318 (4th Cir. 2005) (quoting *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001)).  Here, the owners purchased VGJ.com and YJX.com in good faith.  (Huang Decl. at ¶¶ 4-5; Lin Decl. at ¶¶ 4-5.)  Indeed, the domain names were originally purchased in good faith from Novo Point, Plaintiff's predecessor in interest, who was authorized to sell the domain name by the Northern District of Texas.  *See* February 4, 2011 Order Granting the Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. Feb. 4, 2011), ECF No. 288.

Plaintiff's allegations confirm that Defendants' owners acted in good faith.  Specifically, Plaintiff alleges that the owners are bona fide purchasers for value of the VGJ.com and YJX.com domain names, stating that "the Northern District of Texas issued several orders permitting the receivership to sell at least some of the Subject Domain Names."  (ECF 1 ¶ 241.)  Contrary to Plaintiff's assertion, the owners did not know that Nelson allegedly did not have authority to manage and transfer the domain names, and acted in good faith in acquiring the domain names. (*See id.* ¶ 245.)  For this independent reason, Plaintiff's ACPA claims fail.

4.      **Plaintiff's Other Claims Fail.**

Plaintiff's conversion claim fails because conversion requires a transfer done without permission.  As discussed above, however, the owners' predecessor-in-interest purchased the VGJ.com and YJX.com domain names with the authorization of a court order, and Domain Capital is a bona fide purchaser of the domain, with no notice of any wrongdoing in the transfer of the domain name.  *See Fed. Ins. Co. v. Smith*, 144 F. Supp. 2d 507, 519-20 and n.28 (E.D. Va. 2001) *aff'd*, 63 F. App'x 630 (4th Cir. 2003) (noting that a transferee is not liable for conversion where it takes possession for valuable consideration).

Similarly, Plaintiff's quiet title claim fails because Plaintiff must "prove that [it] has superior title to the property."  *See Gallant v. Deutsche Bank Nat. Trust Co.*, 766 F. Supp. 2d 714, 719 (W.D. Va. 2011).  Because the owners are bona fide purchasers, they has superior title, and Plaintiff's quiet title claim fails.

As set forth above, Defendants' owners have multiple, independent defenses to Plaintiff's claims.  This factor weighs heavily in favor of setting aside the default.

F.      **The Court Should Restore the Parties to the Position They Were in Before the Judgment.**

The Court should order the VGJ.com and YJX.com domain names returned to their Chinese owners, consistent with the status quo before the Judgment was entered.  Defendants' owners understand that in early June 2016, the VGJ.com and YJX.com domain names were transferred to Plaintiff, awarding Plaintiff the final relief it sought in the Judgment.  Because the Judgment should be set aside, the Court should also order that the VGJ.com and YJX.com domain names be returned to their Chinese owners during the pendency of this litigation, consistent with the procedure contemplated by the ACPA.

After setting aside a Judgment, the Court should "restore the parties to the *status quo ante*." *In re Graziadei*, 32 F.3d 1408, 1411 (9th Cir. 1994) (italics in original); *see also Vander Zee v. Karabatsos*, 683 F.2d 832 (4th Cir. 1982) (noting that if judgment is deemed void, then Court should order restitution of payments already made on void judgment); *Belcastro v. Task Indus., Inc.*, 182 F.3d 924 (9th Cir. 1999) (italics in original) (ordering restitution of funds; "because [the movant] requested that the district court undo the effects of the 1995 default judgment it held void, the district court was required to restore the parties to the *status quo ante*."); *Watts v. Pinckney*, 752 F.2d 406, 410 (9th Cir. 1985) (granting Rule 60 motion and finding that movant was entitled to restitution of amounts paid under vacated judgment); *Gen. Tel. Corp. v. Gen. Tel. Answering Serv.*, 277 F.2d 919, 921 (5th Cir. 1960) (setting aside judgment prohibiting use of words "General Telephone" by defendants).

Here, in setting aside the Judgment, the Court should return the domain name to Mr. Huang and Ms. Ling, the registrants of VGJ.com and YJX.com, respectively, at the inception of this litigation.  *See Belcastro*, 182 F. 3d at 942 (italics in original) (after setting aside judgment under Rule 60(b) Court will "undo the effect of that order and restore the parties to the *status quo ante*."); *In re Graziadei*, 32 F.3d at 1411 (same).  That is also the posture contemplated by the ACPA.  The ACPA provides that when the registrar receives a copy of the Complaint in an ACPA case, it "shall" (a) deposit with the court documents sufficient to establish the court's control and authority regarding the disposition of the registration and use of the domain name to the court, and (b) "not transfer, suspend, or otherwise modify the domain name during the pendency of the action, except upon order of the court."  15 U.S.C. § 1125(d)(2)(D)(i)(I) and (d)(2)(D)(i)(II).  Accordingly, the ACPA contemplates that when an action is filed against a domain name, that domain name retains its registry status pending the outcome of the case.

The Court should not permit Plaintiff to benefit from the Judgment by maintaining control over VGJ.com and YJX.com.  Indeed, such a result would eviscerate the purpose of setting aside the Judgment, as leaving the domain name in Plaintiff's control would effectively maintain and enforce the Judgment.  As set forth above, Plaintiff's claims fail on the merits. Plaintiff's predecessors transferred their interest in the VGJ.com and YJX.com domain names pursuant to orders entered by the Northern District of Texas.  *See supra* at II.E.1 & II.E.2.  Those sales have not been invalidated.  *See id.*  Defendants' owners purchased the domain names for substantial value (Huang Decl. at ¶ 4; Lin Decl. at ¶ 4.)

Plaintiff should not be entitled to take advantage of the ACPA's substituted service provisions to obtain a Judgment where it has no copyright claim to the *res* at issue.  For all these reasons, the Court should set aside the Judgment and order Uniregistrar Corp., the currently listed registrar of the VGJ.com and YJX.com domain names, to take all steps within its power to transfer the domain back to their owners, the holder of the domains before Plaintiff filed this action.

### III.  CONCLUSION

WHEREFORE, for the foregoing reasons, *in rem* Defendants VGJ.com and YJX.com, and their respective owners, respectfully request that the Court GRANT this motion setting aside the Judgment (ECF 43) and order Uniregistrar Corp., the current registrar of the VGJ.com and YJX.com domain names, to take all steps within its power to transfer the domain back Mr. Huang and Ms. Lin.  Should the Court grant this motion, Defendants anticipate they will move to dismiss under Federal Rule 12, or in the alternative, seek to transfer to the Northern District of Texas.

Dated:  July 18, 2016

Respectfully submitted,

*/s/ Eric Y. Wu*
Lora A. Brzezynski, VSB No. 36151
Claire M. Maddox, VSB No. 71230
Eric Y. Wu, VSB No. 82829
Dentons US LLP
1900 K Street, NW
Washington, DC  20006
202-496-7500 (phone)
202-496-7756 (fax)
lora.brzezynski@dentons.com
claire.maddox@dentons.com
eric.wu@dentons.com

Of Counsel:

Steven M. Geiszler
Zunxuan D. Chen
Dentons US LLP
2000 McKinney Avenue
Suite 1900
Dallas, TX 75201-1858
214-259-0900 (phone)
214-259-0910 (fax)
steven.geiszler@dentons.com
digger.chen@dentons.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 18th day of July, 2016, I will electronically

file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a

notification of such filing (NEF) to the following:

Rebecca J. Stempien Coyle (VSB 71483)
Levy & Grandinetti
Suite 304
1120 Connecticut Ave., N.W.
Washington, D.C. 20036
(202) 429-4560
Fax: (202) 429-4564
mail@levygrandinetti.com

*Counsel for Associated Recovery, LLC*


Dated:  July 18, 2016


/s/ Eric Y. Wu
_____
Eric Y. Wu, VSB No. 82829
Dentons US LLP
1900 K Street, NW
Washington, DC  20006
202-496-7500 (phone)
202-496-7756 (fax)
eric.wu@dentons.com

*Counsel for Defendants*

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

ASSOCIATED RECOVERY, LLC, )
)
Plaintiff, )
)
v. ) Case No. 1:15-cv-01723-AJT-JFA
)
JOHN DOES 1-44, )
)
Defendants in rem. )

### DECLARATION OFHUOCHUN HUANG

I, Huochun Huang, pursuant to 28 U.S.C. § 1746, declare:

1.      I am over the age of 18 years old. I have personal knowledge of the matters set

forth in this declaration and, if called upon, I will testify competently to them.

2.      I am the owner of domain name VGJ.com

3.      On July9, 2015, I purchased the VGJ.com domain name.

4.      I gave substantial value for the VGJ.com domain name and the seller caused the

VGJ.com domain name to be transferred to registrant eName.com.

5.      I immediately provided accurate registrant contact information to

eName.com, listing me as the registrant.

6.      I do not subscribe to the Washington Times. I did not receive notice of this

action published in any newspaper.  I did not receive an email or paper mail about this

action.

7.      I only became aware of this lawsuit when I received an email on June 13,

2016 from eName.

8.     I then immediately searched eName.com and found out VGJ.com has been transferred.

9.     As soon as I became aware of the situation of this matter, I immediately searched for more information about the reason for the transfer.  Once I learned of the U.S. litigation and how it threatened my ownership, I quickly sought to retain counsel in the United States to defend my rights with respect to the VGJ.com domain name.

10.     My counsel reviewed this declaration with me in Chinese and in English.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this ⟨14⟩ th day of July, 2016.

Huochun Huang

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

ASSOCIATED RECOVERY, LLC,          )
                                   )
            *Plaintiff,*           )
                                   )
v.                                 )  Case No. 1:15-cv-01723-AJT-JFA
                                   )
JOHN DOES 1-44,                    )
                                   )
            *Defendants in rem.*   )

## DECLARATION OF CHUNMEI LIN

I, Chunmei Lin, pursuant to 28 U.S.C. § 1746, declare:

1.     I am over the age of 18 years old. I have personal knowledge of the matters set forth in this declaration and, if called upon, I will testify competently to them.

2.     I am the owner of domain name YJX.com

3.     On January 29, 2013, I purchased the YJX.com domain name.

4.     I gave substantial value for the YJX.com domain name and the seller caused the YJX.com domain name to be transferred to registrant eName.com.

5.     I immediately provided accurate registrant contact information to eName.com, listing me as the registrant.

6.     I do not subscribe to the Washington Times. I did not receive notice of this action published in any newspaper. I did not receive an email or paper mail about this action.

7.     I only became aware of this lawsuit on or about June 27, 2016 when someone questioned me that YJX.com is in auction sale.

8.    I immediately searched eName.com and found that someone had transferred YJX.com, and eName.com told me that YJX.com domain name was subject to a default judgment in this lawsuit.

9.    As soon as I became aware of this situation, I immediately sought to retain counsel in the United States to defend my rights with respect to the YJX.com domain name.

10.    My counsel reviewed this declaration with me in Chinese and in English.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this ___14___ th day of July, 2016.

Chunmei Lin

# Exhibit C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### Dallas Division

ASSOCIATED RECOVERY, LLC          )
1623 Central Avenue, Suite 201    )
Cheyenne, Wyoming 82001,          )
                                  )
        *Plaintiff,*              )
                                  )    Civil Action No.
    v.                            )
                                  )
JOHN DOES 1-44,                   )
                                  )
        *Defendants in rem.*      )
_____)

In re:

| | | |
|---|---|---|
| 744.COM | OCU.COM | YEY.COM |
| 028.COM | PIXIE.COM | YGX.COM |
| 3DCAMERA.COM | QMH.COM | YJR.COM |
| FNY.COM | RUTEN.COM | YJX.COM |
| FX2.COM | SDU.COM | YLZ.COM |
| FXF.COM | SQG.COM | YQP.COM |
| JTZ.COM | TAOLV.COM | YQT.COM |
| KGJ.COM | UHW.COM | YRN.COM |
| KMQ.COM | VCZ.COM | YTE.COM |
| KOU.COM | VGJ.COM | YYG.COM |
| KXQ.COM | WYD.COM | ZDP.COM |
| KXW.COM | XAQ.COM | ZHD.COM |
| LNM.COM | XFF.COM | ZULIN.COM |
| LUOHE.COM | XSG.COM | ZZM.COM |

| MEQ.COM | YCX.COM | |
|---------|---------|---|

## AMENDED COMPLAINT

Plaintiff Associated Recovery, LLC, by counsel, alleges as follows for its Complaint against Defendants:

## NATURE OF THE SUIT

1.      This is an action for violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) and for the return of Plaintiff's property under Texas and Virginia law.

2.      Associated Recovery, LLC ("Associated Recovery" or the "Plaintiff") seeks injunctive and other equitable relief as a result of the actions of the Defendants John Does, persons of unknown identity, who gained unauthorized control of the Plaintiff's and/or the Plaintiff's predecessor-in-interest's domain names, causing irreparably injury to the Plaintiff.

## PARTIES

3.      The Plaintiff is a Limited Liability Company organized and existing under the laws of Wyoming with a principal business address of 1623 Central Avenue, Suite 201, Cheyenne, Wyoming 82001.  The Plaintiff's predecessors-in-interest include Novo Point LLC ("Novo Point").  Novo Point's predecessor's-in-interest include Jeffrey Baron ("Baron") and Ondova Ltd. ("Ondova").  Baron acquired the Subject Domain Names, either on his own behalf or on behalf of Ondova, at various times in or around 2001 to 2004.  By 2010 Novo Point was the registrant of the Subject Domain Name and Novo Point remained the registrant and used the domain names to operate e-commerce websites until sometime in 2012 when the Subject

2

Domain Names were wrongfully transferred from Novo Point. Novo Point was, and now the Plaintiff is, the rightful owner of the Subject Domain Names.

4.      The Plaintiff is the assignee for consideration of the rights to recover the Subject Domain Names and damages associated with the loss of their profitable use. The Plaintiff brings and files this action as the transferee of all rights of Baron and Novo Point in the claims contained herein.

5.      744.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "ID Shield Service" of "5/F Hong Kong Trade Centre, 161-167, DesVoeux Road Central, Hong Kong, 999077, China." Upon information and belief, "ONLINEINC, INC." is the name of the domain name registrar to which 744.COM was transferred without authorization, and is the current registrar for 744.COM. A copy of the current domain name registration record for 744.com is attached as Exhibit 1.

6.      028.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "Liuxiaosheng" of "Jiajiahao building 18 floor, shen zhen shi, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which 028.COM was transferred without authorization, and is the current registrar for 028.COM. A copy of the current domain name registration record for 028.com is attached as Exhibit 2.

7.      3DCAMERA.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "taesong chong" of "D-805 central star, bujeion jin-gu, busan, Korea." Upon information and belief, "ENOM, Inc." is the name of the domain name registrar to which

3

3DCAMERA.COM was transferred without authorization, and is the current registrar for 3DCAMERA.COM.  A copy of the current domain name registration record for 3dcamera .com is attached as Exhibit 3.

8.    FNY.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "zhiqiangjin" of "wenyi road no.75, Hangzhoushi, Zhejiang, China." Upon information and belief, "ENmae Technology Co., Ltd." is the name of the domain name registrar to which FNY.COM was transferred without authorization, and is the current registrar for FNY.COM. A copy of the current domain name registration record for fny.com is attached as Exhibit 4.

9.    FX2.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "xiafeng lin" of "132 jiuer road 5/f, shishi, fajian, China" Upon information and belief, "MAFF Inc." is the name of the domain name registrar to which FX2.COM was transferred without authorization, and is the current registrar for FX2.COM.  A copy of the current domain name registration record for fx2.com is attached as Exhibit 5.

10.    FXF.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "whoisguard protected" of "P.O. Box 0823-03411, Panama, Panama." Upon information and belief, "ENOM, Inc." is the name of the domain name registrar to which FXF.COM was transferred without authorization, and is the current registrar for FXF.COM.  A copy of the current domain name registration record for fxf.com is attached as Exhibit 6.

4

11.     JTZ.COM is an Internet domain name which, according to records in the

WHOIS database of domain name registrations, is currently registered in the name of

"liuming" of "Chang Su, A2-505 Linhai mountain villa, ShenZhen, 518003, China." Upon

information and belief, "GoDaddy.Com, LLC" is the name of the domain name registrar to

which JTZ.COM was transferred without authorization, and is the current registrar for

JTZ.COM. A copy of the current domain name registration record for JTZ.com is attached

as Exhibit 7.

12.     KGJ.COM is an Internet domain name which, according to records in the

WHOIS database of domain name registrations, is currently registered in the name of

"XiaoFeng Lin" of "132 Jiuer Road, 5/F ShiShi FuJian, 3627000 China."  Upon information and

belief, "MAFF, Inc." is the name of the domain name registrar to which KGJ.COM was

transferred without authorization, and is the current registrar for KGJ.COM.  A copy of the

current domain name registration record for KGJ.com is attached as Exhibit 8.

13.     KMQ.COM is an Internet domain name which, according to records in the

WHOIS database of domain name registrations, is currently registered in the name of

"LinXiaoFeng" of "Xi# 215, quan zhou shi, fu jian, 362000 China." Upon information and

belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which

KMQ.COM was transferred without authorization, and is the current registrar for KMQ.COM.

A copy of the current domain name registration record for kmq.com is attached as

Exhibit 9.

14.     KOU.COM is an Internet domain name which, according to records in the

WHOIS database of domain name registrations, is currently registered in the name of

"WHOIS AGENT" of "17F, No.138 Zhognshan Avenue, Guangzhou, GD, 510000, China."

Upon information and belief, "Guangzhou Ming Yang Information Technology Co., Ltd." is the name of the domain name registrar to which KOU.COM was transferred without authorization, and is the current registrar for KOU.COM.  A copy of the current domain name registration record for kou.com is attached as Exhibit 10.

15.   KXQ.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "LinXiaoFeng" of "Xi# 215, quan zhou shi, fu jian, 362000 China."  Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which KXQ.COM was transferred without authorization, and is the current registrar for KXQ.COM. A copy of the current domain name registration record for kxq.com is attached as Exhibit 11.

16.   KXW.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "Xiamen eName Network Co., Ltd." of "Software Park wanghai Road No. 19, 603, Xiamenshi Fujian 361000 China."  Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which KXW.COM was transferred without authorization, and is the current registrar forKXW.COM.  A copy of the current domain name registration record for sdu.com is attached as Exhibit 12.

17.   LNM.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is registered without any information concerning the registration.  Upon information and belief, "MAFF Inc." is the name of the domain name registrar to which LNM.COM was transferred without authorization, and is the

current registrar for LNM.COM.  A copy of the current domain name registration record for

lnm.com is attached as Exhibit 13.

18.    LUOHE.COM is an Internet domain name which, according to records in

the WHOIS database of domain name registrations, is currently registered in the name

of " xuhao " of "shenyang,liaoning,zhongguo, Shenyangshi, Liaoning, 200000 China"

Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name

registrar to which LUOHE.COM was transferred without authorization, and is the current

registrar for LUOHE.COM.  A copy of the current domain name registration record for

luohe.com is attached as Exhibit 14.

19.    MEQ.COM is an Internet domain name which, according to records in the

WHOIS database of domain name registrations, is currently registered in the name of

"chenjinwu" of "kunming city, kun ming shi, yun nan, 650024 China."  Upon information and

belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which

MEQ.COM was transferred without authorization, and is the current registrar for MEQ.COM.

A copy of the current domain name registration record for meq.com is attached as

Exhibit 15.

20.    OCU.COM is an Internet domain name which, according to records in the

WHOIS database of domain name registrations, is currently registered in the name of

"Whois Privacy Corp" of "Ocean Centre, Montagu Foreshore, East Bay Street, Nassau,

Bahamas."  Upon information and belief, "Internet Domain Services BS Corp." is the name of

the domain name registrar to which OCU.COM was transferred without authorization, and is

the current registrar for OCU.COM.  A copy of the current domain name registration record

for meq.com is attached as Exhibit 16.

7

21. PIXIE.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "zhouhaijian" of "zhongdongluwujingzhidui, shui di qu, zhe jiang, 323000, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which PIXIE.COM was transferred without authorization, and is the current registrar for PIXIE.COM. A copy of the current domain name registration record for pixie.com is attached as Exhibit 17.

22. QMH.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "xucaijun, Hangzhou Xiaomai Financial Information Service Co., Ltd," of "please contact with 4.cn brokers, hang zhou shi, zhe jiang, 310019, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which QMH.COM was transferred without authorization, and is the current registrar for QMH.COM. A copy of the current domain name registration record for qmh.com is attached as Exhibit 18.

23. RUTEN.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "MrChen" of "Fujian, bei jing, bei jing, 100824, China" Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which RUTEN.COM was transferred without authorization, and is the current registrar for RUTEN.COM. A copy of the current domain name registration record for ruten.com is attached as Exhibit 19.

8

24.    SDU.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "Xiamen eName Network Co., Ltd." of "Software Park wanghai Road No. 19, 603, Xiamenshi Fujian 361000 China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which SDU.COM was transferred without authorization, and is the current registrar for SDU.COM. A copy of the current domain name registration record for sdu.com is attached as Exhibit 20.

25.    SQG.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "xucaijun, Hangzhou Xiaomai Financial Information Service Co., Ltd," of "please contact with 4.cn brokers, hang zhou shi, zhe jiang, 310019, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which SQG.COM was transferred without authorization, and is the current registrar for SQG.COM. A copy of the current domain name registration record for sqg.com is attached as Exhibit 21.

26.    TAOLV.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "qinxiaohong" of "chong qing, chong qing, 400015, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which TAOLV.COM was transferred without authorization, and is the current registrar for TAOLV.COM. A copy of the current domain name registration record for taolv.com is attached as Exhibit 22.

27.    UHW.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of

"zhaolei, Yueqing 365 Zhao Lei" of "zhe jiang, wen zhou shi, zhe jiang, 325600, China."

Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name

registrar to which UHW.COM was transferred without authorization, and is the current

registrar for UHW.COM. A copy of the current domain name registration record for

uhw.com is attached as Exhibit 23.

    28.    VCZ.COM is an Internet domain name which, according to records in the

WHOIS database of domain name registrations, is currently registered in the name of

"wangteng" of "chikanqu, zhan jiang shi, guang dong, 524000, China." Upon information and

belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which

VCZ.COM was transferred without authorization, and is the current registrar for VCZ.COM.

A copy of the current domain name registration record for uhw.com is attached as

Exhibit 24.

    29.    VGJ.COM is an Internet domain name which, according to records in the

WHOIS database of domain name registrations is currently registered in the name of

"Xiamen eName Network Co., Ltd." of "Software Park wanghai Road No. 19, 603,

Xiamenshi Fujian 361000 China." Upon information and belief, "EName Technology Co.,

Ltd." is the name of the domain name registrar to which VGJ.COM was transferred without

authorization, and is the current registrar for VGJ.COM. A copy of the current domain name

registration record for vgj.com is attached as Exhibit 25.

    30.    WYD.COM is an Internet domain name which, according to records in the

WHOIS database of domain name registrations is currently registered in the name of

"hanjim" of "shenzhen baoan, shen zhen shi, guang dong, 518100, China." Upon information

and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which

WYD.COM was transferred without authorization, and is the current registrar for WYD.COM.

A copy of the current domain name registration record for wyd.com is attached as

Exhibit 26.

31.   XAQ.COM is an Internet domain name which, according to records in the

WHOIS database of domain name registrations, is currently registered in the name of

"LinXiaoFeng" of "Xi# 215, quan zhou shi, fu jian, 362000 China." Upon information and

belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which

XAQ.COM was transferred without authorization, and is the current registrar for XAQ.COM.

A copy of the current domain name registration record for xaq.com is attached as

Exhibit 27.

32.   XFF.COM is an Internet domain name which, according to records in the

WHOIS database of domain name registrations, is currently registered in the name of

"wuxizhen" of "wuyidadao, Changshashi, Hunan, 400000 China." Upon information and

belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which

XFF.COM was transferred without authorization, and is the current registrar for XFF.COM. A

copy of the current domain name registration record for xaq.com is attached as Exhibit 28.

33.   XSG.COM is an Internet domain name which, according to records in the

WHOIS database of domain name registrations, is currently registered in the name of

"xucaijun, Hangzhou Xiaomai Financial Information Service Co., Ltd," of "please contact

with 4.cn brokers, hang zhou shi, zhe jiang, 310019, China." Upon information and belief,

"EName Technology Co., Ltd." is the name of the domain name registrar to which XSG.COM

was transferred without authorization, and is the current registrar for XSG.COM.  A copy of

the current domain name registration record for xsg.com is attached as Exhibit 29.

34.    YCX.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "xucaijun, Hangzhou Xiaomai Financial Information Service Co., Ltd," of "please contact with 4.cn brokers, hang zhou shi, zhe jiang, 310019, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which YCX.COM was transferred without authorization, and is the current registrar for YCX.COM. A copy of the current domain name registration record for ycx.com is attached as Exhibit 30.

35.    YEY.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "YinSi BaoHu Yi KaiQi (Hidden by Whois Privacy Protection Service)" of "3/F.,HiChina Mansion,No.27 Gulouwai Avenue,Dongcheng District,Beijing 100120,China."  Upon information and belief, "HiChina Zhicheng Technology Ltd." is the name of the domain name registrar to which YEY.COM was transferred without authorization, and is the current registrar for YEY.COM. A copy of the current domain name registration record for yey.com is attached as Exhibit 31.

36.    YGX.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "xucaijun, Hangzhou Xiaomai Financial Information Service Co., Ltd," of "please contact with 4.cn brokers, hang zhou shi, zhe jiang, 310019, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which YGX.COM was transferred without authorization, and is the current registrar for YGX.COM. A copy of the current domain name registration record for ygx.com is attached as Exhibit 32.

37.     YJR.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "huangxuming, guangdong united foods co.,ltd." of "Rongsheng Technology Park,University Road, Shantou, Guangdong, 515021, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which YJR.COM was transferred without authorization, and is the current registrar for YJR.COM. A copy of the current domain name registration record for yjr.com is attached as Exhibit 33.

38.     YJX.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "linchunmei" of "ruanjian yuan, Guangzhoushi, Guangdong, 510665, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which YJX.COM was transferred without authorization, and is the current registrar for YJX.COM. A copy of the current domain name registration record for yjx.com is attached as Exhibit 34.

39.     YLZ.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "ChenLongshui, Bozong Net.Ltd" of "shen zhen shi, guang dong, 518000, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which YLZ.COM was transferred without authorization, and is the current registrar for YLZ.COM. A copy of the current domain name registration record for ylz.com is attached as Exhibit 35.

40.     YQP.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of

"xucaijun, Hangzhou Xiaomai Financial Information Service Co., Ltd," of "please contact with 4.cn brokers, hang zhou shi, zhe jiang, 310019, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which YQP.COM was transferred without authorization, and is the current registrar for YQP.COM. A copy of the current domain name registration record for yqp.com is attached as Exhibit 36.

41. YQT.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "xucaijun, Hangzhou Xiaomai Financial Information Service Co., Ltd," of "please contact with 4.cn brokers, hang zhou shi, zhe jiang, 310019, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which YQT.COM was transferred without authorization, and is the current registrar for YQT.COM. A copy of the current domain name registration record for yqt.com is attached as Exhibit 37.

42. YRN.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations is currently registered in the name of "hanjim" of "shenzhen baoan, shen zhen shi, guang dong, 518100, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which YRN.COM was transferred without authorization, and is the current registrar for YRN.COM. A copy of the current domain name registration record for yrn.com is attached as Exhibit 38.

43. YTE.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations is currently registered in the name of "Lior Navi" of "Hanasi 6, Haifa, 34323, Israel." Upon information and belief, "GoDaddy.com, LLC" is the name of the domain name registrar to which YTE.COM was transferred without

authorization, and is the current registrar for YTE.COM.  A copy of the current domain name registration record for yte.com is attached as Exhibit 39.

44.   YYG.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations is currently registered in the name of "liweiliu" of "Xin Gang Xi Lu, guang zhou shi, guang dong 510000, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which YYG.COM was transferred without authorization, and is the current registrar for YYG.COM. A copy of the current domain name registration record for yyg.com is attached as Exhibit 40.

45.   ZDP.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "xucaijun, Hangzhou Xiaomai Financial Information Service Co., Ltd," of "please contact with 4.cn brokers, hang zhou shi, zhe jiang, 310019, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which ZDP.COM was transferred without authorization, and is the current registrar for ZDP.COM.  A copy of the current domain name registration record for zdp.com is attached as Exhibit 41.

46.   ZHD.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "xucaijun, Hangzhou Xiaomai Financial Information Service Co., Ltd," of "please contact with 4.cn brokers, hang zhou shi, zhe jiang, 310019, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which ZHD.COM was transferred without authorization, and is the current registrar for ZHD.COM.  A copy of the current domain name registration record for zhd.com is attached as Exhibit 42.

47.     ZULIN,COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "chenyanglong" of "Fuzhoushi, Fuzhoushi, Fugijan, 100084, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which ZULIN.COM was transferred without authorization, and is the current registrar for ZULIN.COM.  A copy of the current domain name registration record for zulin.com is attached as Exhibit 43.

48.     ZZM.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "wuxizhen" of "wuyidadao, Changshashi, Hunan, 400000, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which ZZM.COM was transferred without authorization, and is the current registrar for ZZM.COM. A copy of the current domain name registration record for zzm.com is attached as Exhibit 44.

49.     Interested party John Doe 1 is a person or persons of unknown identity located in China that gained unauthorized access to and control of Subject Domain Name 744.COM.  The Plaintiff is presently unaware of the true name of John Doe 1.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

50.     Interested party John Doe 2 is a person or persons of unknown identity located in South Korea that gained unauthorized access to and control of Subject Domain Name 028.COM. The Plaintiff is presently unaware of the true name of John Doe 2.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

51.     Interested party John Doe 3 is a person or persons of unknown identity located in

16

Panama that gained unauthorized access to and control of Subject Domain Name

3DCAMERA.COM.  The Plaintiff is presently unaware of the true name of John Doe 3.  The

Plaintiff will amend this Complaint upon discovery of the identities of such fictitious

Defendant.

52.    Interested party John Doe 4 is a person or persons of unknown identity located in

the Bahamas that gained unauthorized access to and control of Subject Domain Name

FNY.COM.  The Plaintiff is presently unaware of the true name of John Doe 4.  The Plaintiff

will amend this Complaint upon discovery of the identities of such fictitious Defendant.

53.    Interested party John Doe 5 is a person or persons of unknown identity located in

Israel that gained unauthorized access to and control of Subject Domain Name FX2.COM.

The Plaintiff is presently unaware of the true name of John Doe 5.  The Plaintiff will amend

this Complaint upon discovery of the identities of such fictitious Defendant.

54.    Interested party John Doe 6 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name

FXF.COM.  The Plaintiff is presently unaware of the true name of John Doe 6.  The Plaintiff

will amend this Complaint upon discovery of the identities of such fictitious Defendant.

55.    Interested party John Doe 7 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name

JTZ.COM.  The Plaintiff is presently unaware of the true name of John Doe 7.  The Plaintiff

will amend this Complaint upon discovery of the identities of such fictitious Defendant.

56.    Interested party John Doe 8 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name

KGJ.COM.  The Plaintiff is presently unaware of the true name of John Doe 8.  The Plaintiff

will amend this Complaint upon discovery of the identities of such fictitious Defendant.

57.    Interested party John Doe 9 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name KMQ.COM.  The Plaintiff is presently unaware of the true name of John Doe 9.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

58.    Interested party John Doe 10 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name KOU.COM.  The Plaintiff is presently unaware of the true name of John Doe 10.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

59.    Interested party John Doe 11 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name KXQ.COM.  The Plaintiff is presently unaware of the true name of John Doe 11.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

60.    Interested party John Doe 12 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name KXW.COM.  The Plaintiff is presently unaware of the true name of John Doe 12.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

61.    Interested party John Doe 13 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name LNM.COM.  The Plaintiff is presently unaware of the true name of John Doe 13.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

62.    Interested party John Doe 14 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name

LUOHE.COM.  The Plaintiff is presently unaware of the true name of John Doe 14.  The

Plaintiff will amend this Complaint upon discovery of the identities of such fictitious

Defendant.

63.    Interested party John Doe 15 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name

MEQ.COM.  The Plaintiff is presently unaware of the true name of John Doe 15.  The Plaintiff

will amend this Complaint upon discovery of the identities of such fictitious Defendant.

64.    Interested party John Doe 16 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name

OCU.COM.  The Plaintiff is presently unaware of the true name of John Doe 16.  The Plaintiff

will amend this Complaint upon discovery of the identities of such fictitious Defendant.

65.    Interested party John Doe 17 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name

PIXIE.COM.  The Plaintiff is presently unaware of the true name of John Doe 17.  The

Plaintiff will amend this Complaint upon discovery of the identities of such fictitious

Defendant.

66.    Interested party John Doe 18 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name

QMH.COM.  The Plaintiff is presently unaware of the true name of John Doe 18.  The

Plaintiff will amend this Complaint upon discovery of the identities of such fictitious

Defendant.

67.    Interested party John Doe 19 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name RUTEN.COM. The Plaintiff is presently unaware of the true name of John Doe 19. The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

68.     Interested party John Doe 20 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name SDU.COM. The Plaintiff is presently unaware of the true name of John Doe 20. The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

69.     Interested party John Doe 21 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name SQG.COM. The Plaintiff is presently unaware of the true name of John Doe 21. The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

70.     Interested party John Doe 22 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name TAOLV.COM. The Plaintiff is presently unaware of the true name of John Doe 22. The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

71.     Interested party John Doe 23 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name UHW.COM. The Plaintiff is presently unaware of the true name of John Doe 23. The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

72.     Interested party John Doe 24 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name

VCZ.COM.  The Plaintiff is presently unaware of the true name of John Doe 24.  The Plaintiff

will amend this Complaint upon discovery of the identities of such fictitious Defendant.

73.     Interested party John Doe 25 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name

VGJ.COM.  The Plaintiff is presently unaware of the true name of John Doe 25.  The Plaintiff

will amend this Complaint upon discovery of the identities of such fictitious Defendant.

74.     Interested party John Doe 26 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name

WYD.COM.  The Plaintiff is presently unaware of the true name of John Doe 26.  The

Plaintiff will amend this Complaint upon discovery of the identities of such fictitious

Defendant.

75.     Interested party John Doe 27 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name

XAQ.COM.  The Plaintiff is presently unaware of the true name of John Doe 27.  The Plaintiff

will amend this Complaint upon discovery of the identities of such fictitious Defendant.

76.     Interested party John Doe 28 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name

XFF.COM.  The Plaintiff is presently unaware of the true name of John Doe 28.  The Plaintiff

will amend this Complaint upon discovery of the identities of such fictitious Defendant.

77.     Interested party John Doe 29 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name

XSG.COM.  The Plaintiff is presently unaware of the true name of John Doe 29.  The Plaintiff

will amend this Complaint upon discovery of the identities of such fictitious Defendant.

78.     Interested party John Doe 30 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name YCX.COM.  The Plaintiff is presently unaware of the true name of John Doe 30.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

79.     Interested party John Doe 31 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name YEY.COM.  The Plaintiff is presently unaware of the true name of John Doe 31.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

80.     Interested party John Doe 32 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name YGX.COM.  The Plaintiff is presently unaware of the true name of John Doe 32.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

81.     Interested party John Doe 33 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name YJR.COM.  The Plaintiff is presently unaware of the true name of John Doe 33.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

82.     Interested party John Doe 34 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name YJX.COM.  The Plaintiff is presently unaware of the true name of John Doe 34.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

83.     Interested party John Doe 35 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name

YYLZ.COM.  The Plaintiff is presently unaware of the true name of John Doe 35.  The

Plaintiff will amend this Complaint upon discovery of the identities of such fictitious

Defendant.

    84.    Interested party John Doe 36 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name

YQP.COM.  The Plaintiff is presently unaware of the true name of John Doe 36.  The Plaintiff

will amend this Complaint upon discovery of the identities of such fictitious Defendant.

    85.    Interested party John Doe 37 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name

YQT.COM.  The Plaintiff is presently unaware of the true name of John Doe 37.  The Plaintiff

will amend this Complaint upon discovery of the identities of such fictitious Defendant.

    86.    Interested party John Doe 38 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name

YRN.COM.  The Plaintiff is presently unaware of the true name of John Doe 38.  The Plaintiff

will amend this Complaint upon discovery of the identities of such fictitious Defendant.

    87.    Interested party John Doe 39 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name

YTE.COM.  The Plaintiff is presently unaware of the true name of John Doe 39.  The Plaintiff

will amend this Complaint upon discovery of the identities of such fictitious Defendant.

    88.    Interested party John Doe 40 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name

YYG.COM.  The Plaintiff is presently unaware of the true name of John Doe 40.  The Plaintiff

will amend this Complaint upon discovery of the identities of such fictitious Defendant.

89.     Interested party John Doe 41 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name ZDP.COM.  The Plaintiff is presently unaware of the true name of John Doe 41.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

90.     Interested party John Doe 42 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name ZHD.COM.  The Plaintiff is presently unaware of the true name of John Doe 42.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

91.     Interested party John Doe 43 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name ZULIN.COM.  The Plaintiff is presently unaware of the true name of John Doe 43.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

92.     Interested party John Doe 44 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name ZZM.COM.  The Plaintiff is presently unaware of the true name of John Doe 44.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

93.     Upon information and belief, based upon the Plaintiff's research and due diligence, most if not all of the addresses presently listed in the domain name registration records for the Defendant domain names are fictitious and do not identify actual addresses.

94.     Upon information and belief, based upon the Plaintiff's research and due diligence, most, if not all, of the names presently listed as the registrants of the Subject Domain Names are fictitious names.

24

## JURISDICTION, VENUE AND JOINDER

95.     This action arises out of John Does 1-44's violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

96.     This Court has original jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a), declaratory judgments under 28 U.S.C. §§ 2201 and 2202, supplemental jurisdiction under 28 U.S.C. § 1367, and *in rem* jurisdiction over the Defendant domain names pursuant to 15 U.S.C. § 1125(d)(2)(A) and 28 U.S.C. § 1655.

97.     This Court further has original jurisdiction under 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

98.     Jurisdiction and venue are proper in this District pursuant to this Court's Order of March 27, 2015, in Civil Action No. 3:09-cv-0988L. (Dkt. 1447).

99.     Upon information and belief, most if not all of the names identified as the current registrants of the Subject Domain Names are fictitious, most if not all of the addresses identified in the domain name registrations are fictitious, and John Does 1-44 are located outside of the United States and are not amenable to in personam jurisdiction in in the United States. Accordingly, the Plaintiff through due diligence was not able to find a person(s) who would have been a defendant in this action and *in rem* jurisdiction over the Subject Domain Names is proper pursuant to 15 U.S.C. § 1125(d)(2)(A)(i)(I).

100.    The Plaintiff is providing notice, concurrently with the filing of this complaint, to Certain Defendants of its intent to proceed *in rem* pursuant to 15 U.S.C. § 1125(d)(2)(A)(i)(II)(aa).

101.     Joinder of the Defendants and Subject Domain Names is proper under FED. R. CIV. P. 20(a)(2) in that the claims set forth herein arise out of the same series of transactions and the same questions of law are common to all of the Defendants and Subject Domain Names.

## THE PLAINTIFF'S RIGHTS

102.     Baron, either for himself or on behalf of Ondova, originally registered the Subject Domain Names at various times in or around 2001 and 2004 prior to the interests in such domain names being assigned to Novo Point.

103.     By 2010 the interests and goodwill to the Subject Domain Names was assigned to Novo Point, an e-commerce company that provides services and products to consumers through a network of Internet domain names and associated websites.

104.     Novo Point uses, and its predecessors-in-interest used, Internet domain names and e-commerce websites to advertise products for others such as furniture, watches, shoes, computers, groceries, antiques, and eyewear. Novo Point also uses it Internet domain names and e-commerce websites to provide a wide range of useful information, links to other sites, and other online services in the fields of sports, travel, shopping, politics, retail services, and videos. Novo Point, and its predecessors-in-interest, had used the Subject Domain Names in commerce for over 13 years, and had common law rights in the subject marks which, with the associated goodwill, were assigned to the Plaintiff.

105.     Baron often chose, and Novo Point and its predecessors-in-interest often uses and/or used three-letter and three-number domain names as initialisms and acronyms for its products and services, and as the trademark names of its websites, because such letter and number strings are the subject of frequent Internet searches by consumers and

are therefore valuable as e-commerce site names.

106.    On or about December 24, 2015, Novo Point assigned the Subject Domain Names, and their associated trademarks and goodwill, to the Plaintiff.  Included in the assignment was the right for the Plaintiff to sue and to recover possession of the Domain Names and recover damages for past, present and future infringements, dilution, misuse, misappropriation and other violations.

107.    Novo Point was the named registrant of the 028.com domain name and used the 028.com domain name to provide visitors with useful information, links to other sites, and/or other online services until the improper transfer of the domain name in 2012.

108.    Novo Point used the 744.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view 744.COM as a symbol of origin, and consumers came to identify 744.COM as a source indicator.

109.    Novo Point used the 744.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the 744.COM domain name.

110.    John Doe 1's misuse of the 744.COM domain name further demonstrates that the 744.COM mark is entitled to trademark protection.

111.    Novo Point used the 028.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view 028.COM as a symbol of origin, and consumers came to identify 028.COM as a source indicator.

112.      Novo Point used the 028.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the 028.COM domain name.

113.      John Doe 2's misuse of the 028.COM domain name further demonstrates that the 028.COM mark is entitled to trademark protection.

114.      Novo Point used the 3DCAMERA.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view 3DCAMERA.COM as a symbol of origin, and consumers came to identify 3DCAMERA.COM as a source indicator.

115.      Novo Point used the 3DCAMERA.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the 3DCAMERA.COM domain name.

116.      John Doe 3's misuse of the 3DCAMERA.COM domain name further demonstrates that the 3DCAMERA.COM mark is entitled to trademark protection.

117.      Novo Point used the FNY.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view FNY.COM as a symbol of origin, and consumers came to identify FNY.COM as a source indicator.

118.      Novo Point used the FNY.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark

28

protection in the FNY.COM domain name.

119.     John Doe 4's misuse of the FNY.COM domain name further demonstrates

that the FNY.COM mark is entitled to trademark protection.

120.     Novo Point used the FX2.COM domain name as more than an Internet

address. Novo Point used and promoted the domain name in a manner that made such a

visual impression that viewers would view FX2.COM as a symbol of origin, and consumers

came to identify FX2.COM as a source indicator.

121.     Novo Point used the FX2.COM domain name in U.S. Commerce in

association with the provision of services to Internet consumers and Novo Point was entitled

to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark

protection in the FX2.COM domain name.

122.     John Doe 5's misuse of the FX2.COM domain name further demonstrates

that the FX2.COM mark is entitled to trademark protection.

123.     Novo Point used the FXF.COM domain name as more than an Internet

address. Novo Point used and promoted the domain name in a manner that made such a

visual impression that viewers would view FXF.COM as a symbol of origin, and consumers

came to identify FXF.COM as a source indicator.

124.     Novo Point used the FXF.COM domain name in U.S. Commerce in

association with the provision of services to Internet consumers and Novo Point was entitled

to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark

protection in the FXF.COM domain name.

125.     John Doe 6's misuse of the FXF.COM domain name further demonstrates

that the FXF.COM mark is entitled to trademark protection.

126.     Novo Point used the JTZ.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view JTZ.COM as a symbol of origin, and consumers came to identify JTZ.COM as a source indicator.

127.     Novo Point used the JTZ.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the JTZ.COM domain name.

128.     John Doe 7's misuse of the JTZ.COM domain name further demonstrates that the JTZ.COM mark is entitled to trademark protection.

129.     Novo Point used the KGJ.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view KGJ.COM as a symbol of origin, and consumers came to identify KGJ.COM as a source indicator.

130.     Novo Point used the KGJ.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the KGJ.COM domain name.

131.     John Doe 8's misuse of the KGJ.COM domain name further demonstrates that the KGJ.COM mark is entitled to trademark protection.

132.     Novo Point used the KMQ.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view KMQ.COM as a symbol of origin, and

consumers came to identify KMQ.COM as a source indicator.

133.    Novo Point used the KMQ.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the KMQ.COM domain name.

134.    John Doe 9's misuse of the KMQ.COM domain name further demonstrates that the KMQ.COM mark is entitled to trademark protection.

135.    Novo Point used the KOU.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view KOU.COM as a symbol of origin, and consumers came to identify KOU.COM as a source indicator.

136.    Novo Point used the KOU.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the KOU.COM domain name.

137.    John Doe 10's misuse of the KOU.COM domain name further demonstrates that the KOU.COM mark is entitled to trademark protection.

138.    Novo Point used the KXQ.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view KXQ.COM as a symbol of origin, and consumers came to identify KXQ.COM as a source indicator.

139.    Novo Point used the KXQ.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled

to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the KXQ.COM domain name.

140.   John Doe 11's misuse of the KXQ.COM domain name further demonstrates that the KXQ.COM mark is entitled to trademark protection.

141.   Novo Point used the KXW.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view KXW.COM as a symbol of origin, and consumers came to identify KXW.COM as a source indicator.

142.   Novo Point used the KXW.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the KXW.COM domain name.

143.   John Doe 12's misuse of the KXW.COM domain name further demonstrates that the KXW.COM mark is entitled to trademark protection.

144.   Novo Point used the LNM.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view LNM.COM as a symbol of origin, and consumers came to identify LNM.COM as a source indicator.

145.   Novo Point used the LNM.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the LNM.COM domain name.

146.   John Doe 13's misuse of the LNM.COM domain name further demonstrates

that the LNM.COM mark is entitled to trademark protection.

147.    Novo Point used the LUOHE.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view LUOHE.COM as a symbol of origin, and consumers came to identify LUOHE.COM as a source indicator.

148.    Novo Point used the LUOHE.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the LUOHE.COM domain name.

149.    John Doe 14's misuse of the LUOHE.COM domain name further demonstrates that the LUOHE.COM mark is entitled to trademark protection.

150.    Novo Point used the MEQ.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view MEQ.COM as a symbol of origin, and consumers came to identify MEQ.COM as a source indicator.

151.    Novo Point used the MEQ.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the MEQ.COM domain name.

152.    John Doe 15's misuse of the MEQ.COM domain name further demonstrates that the MEQ.COM mark is entitled to trademark protection.

153.    Novo Point used the OCU.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a

visual impression that viewers would view OCU.COM as a symbol of origin, and consumers came to identify OCU.COM as a source indicator.

154.     Novo Point used the OCU.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the OCU.COM domain name.

155.     John Doe 16's misuse of the OCU.COM domain name further demonstrates that the OCU.COM mark is entitled to trademark protection.

156.     Novo Point used the PIXIE.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view PIXIE.COM as a symbol of origin, and consumers came to identify PIXIE.COM as a source indicator.

157.     Novo Point used the PIXIE.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the PIXIE.COM domain name.

158.     John Doe 17's misuse of the PIXIE.COM domain name further demonstrates that the PIXIE.COM mark is entitled to trademark protection.

159.     Novo Point used the QMH.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view QMH.COM as a symbol of origin, and consumers came to identify QMH.COM as a source indicator.

160.    Novo Point used the QMH.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the QMH.COM domain name.

161.    John Doe 18's misuse of the QMH.COM domain name further demonstrates that the QMH.COM mark is entitled to trademark protection.

162.    Novo Point used the RUTEN.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view RUTEN.COM as a symbol of origin, and consumers came to identify RUTEN.COM as a source indicator.

163.    Novo Point used the RUTEN.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the RUTEN.COM domain name.

164.    John Doe 19's misuse of the RUTEN.COM domain name further demonstrates that the RUTEN.COM mark is entitled to trademark protection.

165.    Novo Point used the SDU.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view SDU.COM as a symbol of origin, and consumers came to identify SDU.COM as a source indicator.

166.    Novo Point used the SDU.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled

to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the SDU.COM domain name.

167.   John Doe 20's misuse of the SDU.COM domain name further demonstrates that the SDU.COM mark is entitled to trademark protection.

168.   Novo Point used the SQG.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view SQG.COM as a symbol of origin, and consumers came to identify SQG.COM as a source indicator.

169.   Novo Point used the SQG.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the SQG.COM domain name.

170.   John Doe 21's misuse of the SQG.COM domain name further demonstrates that the SQG.COM mark is entitled to trademark protection.

171.   Novo Point used the TAOLV.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view TAOLV.COM as a symbol of origin, and consumers came to identify TAOLV.COM as a source indicator.

172.   Novo Point used the TAOLV.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the TAOLV.COM domain name.

173.     John Doe 22's misuse of the TAOLV.COM domain name further demonstrates that the TAOLV.COM mark is entitled to trademark protection.

174.     Novo Point used the UHW.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view UHW.COM as a symbol of origin, and consumers came to identify UHW.COM as a source indicator.

175.     Novo Point used the UHW.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the UHW.COM domain name.

176.     John Doe 23's misuse of the UHW.COM domain name further demonstrates that the UHW.COM mark is entitled to trademark protection.

177.     Novo Point used the VCZ.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view VCZ.COM as a symbol of origin, and consumers came to identify VCZ.COM as a source indicator.

178.     Novo Point used the VCZ.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the VCZ.COM domain name.

179.     John Doe 24's misuse of the VCZ.COM domain name further demonstrates that the VCZ.COM mark is entitled to trademark protection.

180.     Novo Point used the VGJ.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view VGJ.COM as a symbol of origin, and consumers came to identify VGJ.COM as a source indicator.

181.     Novo Point used the VGJ.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the VGJ.COM domain name.

182.     John Doe 25's misuse of the VGJ.COM domain name further demonstrates that the VGJ.COM mark is entitled to trademark protection.

183.     Novo Point used the WYD.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view WYD.COM as a symbol of origin, and consumers came to identify WYD.COM as a source indicator.

184.     Novo Point used the WYD.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the WYD.COM domain name.

185.     John Doe 26's misuse of the WYD.COM domain name further demonstrates that the WYD.COM mark is entitled to trademark protection.

186.     Novo Point used the XAQ.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a

visual impression that viewers would view XAQ.COM as a symbol of origin, and consumers came to identify XAQ.COM as a source indicator.

187.     Novo Point used the XAQ.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the XAQ.COM domain name.

188.     John Doe 27's misuse of the XAQ.COM domain name further demonstrates that the XAQ.COM mark is entitled to trademark protection.

189.     Novo Point used the XFF.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view XFF.COM as a symbol of origin, and consumers came to identify XFF.COM as a source indicator.

190.     Novo Point used the XFF.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the XFF.COM domain name.

191.     John Doe 28's misuse of the XFF.COM domain name further demonstrates that the XFF.COM mark is entitled to trademark protection.

192.     Novo Point used the XSG.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view XSG.COM as a symbol of origin, and consumers came to identify XSG.COM as a source indicator.

193.     Novo Point used the XSG.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the XSG.COM domain name.

194.     John Doe 29's misuse of the XSG.COM domain name further demonstrates that the XSG.COM mark is entitled to trademark protection.

195.     Novo Point used the YCX.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YCX.COM as a symbol of origin, and consumers came to identify YCX.COM as a source indicator.

196.     Novo Point used the YCX.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YCX.COM domain name.

197.     John Doe 30's misuse of the YCX.COM domain name further demonstrates that the YCX.COM mark is entitled to trademark protection.

198.     Novo Point used the YEY.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YEY.COM as a symbol of origin, and consumers came to identify YEY.COM as a source indicator.

199.     Novo Point used the YEY.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled

to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YEY.COM domain name.

200.    John Doe 31's misuse of the YEY.COM domain name further demonstrates that the YEY.COM mark is entitled to trademark protection.

201.    Novo Point used the YGX.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YGX.COM as a symbol of origin, and consumers came to identify YGX.COM as a source indicator.

202.    Novo Point used the YGX.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YGX.COM domain name.

203.    John Doe 32's misuse of the YGX.COM domain name further demonstrates that the YGX.COM mark is entitled to trademark protection.

204.    Novo Point used the YJR.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YJR.COM as a symbol of origin, and consumers came to identify YJR.COM as a source indicator.

205.    Novo Point used the YJR.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YJR.COM domain name.

206.     John Doe 33's misuse of the YJR.COM domain name further demonstrates that the YJR.COM mark is entitled to trademark protection.

207.     Novo Point used the YJX.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YJX.COM as a symbol of origin, and consumers came to identify YJX.COM as a source indicator.

208.     Novo Point used the YJX.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YJX.COM domain name.

209.     John Doe 34's misuse of the YJX.COM domain name further demonstrates that the YJX.COM mark is entitled to trademark protection.

210.     Novo Point used the YLZ.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YLZ.COM as a symbol of origin, and consumers came to identify YLZ.COM as a source indicator.

211.     Novo Point used the YLZ.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YLZ.COM domain name.

212.     John Doe 35's misuse of the YLZ.COM domain name further demonstrates that the YLZ.COM mark is entitled to trademark protection.

213.    Novo Point used the Y Q P .COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YQP.COM as a symbol of origin, and consumers came to identify YQP.COM as a source indicator.

214.    Novo Point used the YQP.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YQP.COM domain name.

215.    John Doe 36's misuse of the YQP.COM domain name further demonstrates that the YQP.COM mark is entitled to trademark protection.

216.    Novo Point used the YQT.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YQT.COM as a symbol of origin, and consumers came to identify YQT.COM as a source indicator.

217.    Novo Point used the YQT.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YQT.COM domain name.

218.    John Doe 37's misuse of the YQT.COM domain name further demonstrates that the YQT.COM mark is entitled to trademark protection.

219.    Novo Point used the YRN.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a

visual impression that viewers would view YRN.COM as a symbol of origin, and consumers came to identify YRN.COM as a source indicator.

220.     Novo Point used the YRN.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YRN.COM domain name.

221.     John Doe 38's misuse of the YRN.COM domain name further demonstrates that the YRN.COM mark is entitled to trademark protection.

222.     Novo Point used the YTE.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YTE.COM as a symbol of origin, and consumers came to identify YTE.COM as a source indicator.

223.     Novo Point used the YTE.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YTE.COM domain name.

224.     John Doe 39's misuse of the YTE.COM domain name further demonstrates that the YTE.COM mark is entitled to trademark protection.

225.     Novo Point used the YYG.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YYG.COM as a symbol of origin, and consumers came to identify YYG.COM as a source indicator.

44

226.     Novo Point used the YYG.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YYG.COM domain name.

227.     John Doe 40's misuse of the YYG.COM domain name further demonstrates that the YYG.COM mark is entitled to trademark protection.

228.     Novo Point used the ZDP.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view ZDP.COM as a symbol of origin, and consumers came to identify ZDP.COM as a source indicator.

229.     Novo Point used the ZDP.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the ZDP.COM domain name.

230.     John Doe 41's misuse of the ZDP.COM domain name further demonstrates that the ZDP.COM mark is entitled to trademark protection.

231.     Novo Point used the ZHD.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view ZHD.COM as a symbol of origin, and consumers came to identify ZHD.COM as a source indicator.

232.     Novo Point used the ZHD.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled

45

to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the ZHD.COM domain name.

233. John Doe 42's misuse of the ZHD.COM domain name further demonstrates that the ZHD.COM mark is entitled to trademark protection.

234. Novo Point used the ZULIN.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view ZULIN.COM as a symbol of origin, and consumers came to identify ZULIN.COM as a source indicator.

235. Novo Point used the ZULIN.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the ZULIN.COM domain name.

236. John Doe 43's misuse of the ZULIN.COM domain name further demonstrates that the ZULIN.COM mark is entitled to trademark protection.

237. Novo Point used the ZZM.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view ZZM.COM as a symbol of origin, and consumers came to identify ZZM.COM as a source indicator.

238. Novo Point used the ZZM.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the ZZM.COM domain name.

46

239.     John Doe 44's misuse of the ZZM.COM domain name further demonstrates that the ZZM.COM mark is entitled to trademark protection.

## UNLAWFUL TRANSFER AND REGISTRATION
## OF THE SUBJECT DOMAIN NAMES

240.     By 2010 Baron, among others, was involved in a litigation in the United States District Court for the Northern District of Texas regarding domain names.  The Subject Domain Names were not the subject of the complaint in that action.  Then, in November 2010, the Northern District of Texas improperly placed the Subject Domain Names, and other domain names, under the control of a receivership.  The United States Court of Appeal for the Fifth Circuit ultimately issued an opinion and order on December 18, 2012 holding that the District Court lacked subject matter jurisdiction to enter the receivership and the order appointing the receivership was vacated.  The Fifth Circuit's opinion further required the Northern District of Texas to wind-down the receivership.  The Fifth Circuit issued its mandate on this opinion and order on April 19, 2013.

241.     From about February 2011 to at least May 2012, while the appeal to the Fifth Circuit was pending but prior to the receivership being reversed and vacated by the Fifth Circuit, the Northern District of Texas issued several orders permitting the receivership to sell at least some of the Subject Domain Names (the "Improper Receivership Sale Orders").  Baron and Novo Point were not informed which domain names were included or contemplated by any of the Improper Receivership Sale Orders, when they were sold or to whom they were sold at the time of any of the sales.  As a result of the Improper Receivership Sale Orders, each of the Subject Domain Names were sold by the receivership, without the authorization of Baron or Novo Point (the "Transfers of Control").

242.     The Fifth Circuit issued mandates in or about April 2013, reversing the Improper Receivership Sale Orders, based on its ruling that the receivership was improper, the Northern District of Texas lacked subject matter jurisdiction to order the receivership, and reversing and vacating the receivership.

243.     Although the Fifth Circuits' mandates were issued in or about April, 2013, the District Court did not wind-down and terminate the receivership until March 2015.

244.     On information and belief, based upon the due diligence research of the Plaintiff, the Transfers of Control were enabled by Damon Nelson ("Nelson"), an individual appointed by the Northern District of Texas to assist the receivership in valuing and managing Baron's and Novo Point's domain name portfolio and appointed Nelson as "the permanent Manager" of Novo Point after a motion by the receivership to do so.   Neither Baron nor Novo Point ever gave, offered, or otherwise permitted Nelson to act with authority to effect the sale or transfer of any of Baron's or Novo Point's domain names, including the Subject Domain Names.  Novo Point never consented to the appointment of Nelson as "Permanent Manager."

245.     Upon information and belief one or more unknown individuals or entities (the "Transferees") solicited Nelson, will full knowledge of Baron's and/or Novo Point's ownership of and trademark rights in the Subject Domain Names and with full knowledge of Nelson's lack of authority.

246.     Upon information and belief the Transferees were aware of Baron's and Novo Point's claims to ownership of the Subject Domain Names and that Baron and Novo Point had appealed the seizure of the domain names, based on the court's lack of jurisdiction over those assets, and that an appeal had been pending for nearly two years and would be determined at any moment.

247.     Upon information and belief the Transfers of Control were made without any purported transfer of goodwill or trademark rights, with an express disclaimer of any warranties, and with the Transferees' knowledge of a) Baron's and/or Novo Point's superior rights in the Subject Domain Names; b) the likely lack of authority for transfer of any rights concerning the Subject Domain Names; c) the appeal pending at the time of the Transfers of Control; 4) the fact that a reversal by the Fifth Circuit Court of Appeals would likely render any transfer void; and 5) the expectation that Baron and Novo Point would initiate legal action against the transferees to reclaim their property.

248.     Upon information and belief the Transferees requested that they receive representations and warranties from Nelson regarding the title of the Subject Domain Names and indemnification from claims of Baron and Novo Point and that Nelson refused to provide same.

249.     Upon information and belief, the consideration given to Nelson, and ultimately placed into back accounts under the control of the receivership, for the Transfers of Control was less than 1 % of the value of the Subject Domain Names.

250.     On November 9, 2012, the Fifth Circuit enjoined the closing of any sales of Baron and Novo Point's domain names prior to November 30, 2012.

251.     Upon information and belief, when the Transferees obtained possession and control of the Subject Domain Names, it changed the registrant information and the technical settings for the domain names were changed thereby disabling Novo Point's associated e-commerce websites.

252.     Upon information and belief, the Transferees offered the Subject Domain Names for sale.

253.     The registration and use of the Subject Domain Names by the Transferees and/or the Defendants is without authorization from Baron, Novo Point or the Plaintiff.

254.     The Subject Domain Names do not reflect the trademark or intellectual property rights of the Defendants.

255.     Upon information and belief and based upon the Plaintiff's due diligence, the Subject Domain Names do not reflect the legal name of the current registrant(s) of the domain names.

256.     Upon information and belief most, if not all, of the current registrants of the Subject Domain Names have not engaged in bona fide noncommercial or fair use of Baron's, Novo Points' or the Plaintiff's trademarks in a website accessible under the Subject Domain Names.

257.     Upon information and belief the Transferees and some, if not all, of the Defendants who currently control the Subject Domain Names offered or are offing to sell the Subject Domain Names to third parties for financial gain without having used, or having an intent to use, the domain names in the bona fide offering of any goods or services. Many of the web pages displayed at the Subject Domain Names advertise the domain names for sale.

258.     The registrants provided material and misleading false contact information in the domain name registrations when changing the registrant for the Subject Domain Names from Novo Point to the current registrant(s).

259.     The Transferees and the Defendants transferred the Subject Domain Names without authorization from Baron, Novo Point or the Plaintiff and thereby registered multiple domain names which assignee knew were identical to, and reflective of, Novo Point's, and the Plaintiff's, trademarks.

## FIRST CLAIM FOR RELIEF

### Violation of the Federal Anticybersquatting
### Consumer Protection Act

260.    The Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1-259, as though fully set forth herein.

261.    The Plaintiff's trademarks are famous and/or distinctive and were famous and/or distinctive prior to the time that control of the Subject Domain Names was transferred away from the Plaintiff's predecessor-in-interest, Novo Point, without authorization, to the Transferees.

262.    The Plaintiff's trademarks are famous and/or distinctive and were famous and/or distinctive prior to the time that the Defendants John Does 1-44 transferred the Subject Domain Names aware from the Plaintiff or Novo Point without authorization and thereby registered the Subject Domain Names.

263.    The aforesaid acts by Transferees constitute registration, trafficking, or use of domain names that are identical to the Plaintiff's trademarks, with bad faith intent to profit therefrom.

264.    The aforesaid acts by the Defendants John Does 1-44 constitute registration, trafficking, or use of domain names that are identical to the Plaintiff's trademarks, with bad faith intent to profit therefrom.

265.    The Plaintiff, despite its due diligence, has been unable to find a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(2)(A)(i)(I).

51

266.      The aforesaid acts by the registrant(s) of the domain names constitute

unlawful cyberpiracy in violation of the Anti-Cybersquatting Consumer Protection Act,

15 U.S.C. § 1125(d)(l).

267.      The aforesaid acts have caused, and are causing, great and irreparable harm to

the Plaintiff and the public. Unless permanently restrained and enjoined by this Court, said

irreparable harm will continue. Thus, pursuant to 15 U.S.C. § 1125(d)(2)(D)(i), the Plaintiff is

entitled to an order transferring the Subject Domain Name registrations to the Plaintiff.

## SECOND CLAIM FOR RELIEF

### Quiet Title

268.      The Plaintiff repeats and realleges each and every allegation set forth in the

foregoing paragraphs 1-267, as though fully set forth herein.

269.      The Plaintiff has valid legal and equitable title to the Subject Domain Names.

270.      The Plaintiff's title to the Subject Domain Names is superior to any claim of

title by the John Does 1-44.

271.      Through their control of the Subject Domain Names, John Does 1-44 have

asserted a claim that constitutes a cloud on the Plaintiff's title.

272.      The Plaintiff's good title to the Subject Domain Names should not be

subjected to various futures claims against that title.

## THIRD CLAIM FOR RELIEF

### Conversion

273.      The Plaintiff repeats and realleges each and every allegation set forth in the

foregoing paragraphs 1-272, as though fully set forth herein.

52

274.     The Plaintiff has property rights in and is the owner of the Subject Domain Names.

275.     The Defendants have taken control of the Subject Domain Names and are wrongfully exercising control and authority over the Subject Domain Names.

276.     The control and authority exercised by the Defendants deprives the Plaintiff of control and the income and business generated from the Subject Domain Names.

277.     The Defendants are wrongfully exerting domino over the Plaintiff's property in denial of the Plaintiff's rights.

## FOURTH CLAIM FOR RELIEF

### Declaratory Judgment

278.  The Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1-277, as though fully set forth herein.

Each of the foregoing paragraphs is incorporated by reference.

279.  The Plaintiff asks this Court to declare that:

(a)  The Plaintiff is the lawful owner of the Subject Domain Names with the only right to use, possess, and control the Subject Domain Names and the Plaintiff is entitled to a Declaration from the Court declaring the same; and

(b)  The Defendants do not have any right whatsoever to use, possess, or control the Subject Domain Names and the Plaintiff is entitled to a Declaration from the Court declaring the same.

280.  An actual and justiciable controversy exists between Defendants and Plaintiff as to who is entitled to use, possess and control the Subject Domain Names and Defendants do not.

## FIFTH CLAIM FOR RELIEF

### Violation of the Texas Theft Liability Act

281.  The Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1-280, as though fully set forth herein.

282.  Each of the foregoing paragraphs is incorporated by reference.

283.  The Defendants unlawfully appropriated the Subject Domain Names with the intent to deprive the rightful owner of the property, the Plaintiff, without the Plaintiff's effective consent.

284.  The Defendants brought about a transfer or purported transfer of title to or other nonpossessory interest in property, whether to the Defendants or another, or, did acquire or otherwise exercise control over property other than real property.

285.  The Defendants acted intentionally with respect to the nature of their conduct as their conscious objective and desire was to effectuate the transfer of the Subject Domain Names to themselves or another in violation of the Plaintiff's greater right to possession than the Defendants.

286.  The Plaintiff is entitled to reasonable and necessary attorney's fees and court costs.

## SIXTH CLAIM FOR RELIEF

### Unjust Enrichment

287.  The Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1-286, as though fully set forth herein.

288.  As a result of their intentional wrongful actions, all the Defendants were unjustly enriched by the procurement of the Subject Domain Names if they are not disgorged of same. Without disgorgement, the Defendants would be allowed to keep the valuable Subject Domain Names.

289.  Under Texas law, and under fundamental principles of justice and fairness, the Plaintiff has suffered pecuniary harm and requests the Defendants be ordered to disgorge the unjustly obtained Subject Domain Names.

## SEVENTH CLAIM FOR RELIEF

### Misappropriation

290.  The Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1-289, as though fully set forth herein.

291.  The acquisition of the Subject Domain Names involved extensive time, labor, skill and money which created the trade value the Defendants misappropriated in violation of the Plaintiff's property right.

292.  The Defendants gained a special advantage over the Plaintiff because the Defendants were not burdened by the development expenses incurred by the Plaintiff's predecessors-in-interest.

293.  The Defendants have appropriated the trade value of the Subject Domain names at little or no cost and have, in essence, "reaped where they have not sown."

294.  The Defendants' actions have injured the Plaintiff as the Plaintiff is unable to use and exercise control over the Subject Domain Names.

295.  The Plaintiff is being harmed through the loss of prospective traffic to his business, loss of income and loss of business and personal emails resulting in loss of prospective business opportunities unless enjoined.

## EIGHTH CLAIM FOR RELIEF

### Fraudulent Conveyance

296.  The Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1-295, as though fully set forth herein.

297. The Defendants did not take the Subject Domain Names in good faith or for a reasonable value.

298.     Transfers of Control were not within the range of values for which the Defendants would have sold the assets in an arm's length transaction, receiving a reasonably equivalent value in exchange for the transfer.

299.     The Defendants had actual or constructive knowledge of the Plaintiff's predecessors-in-interests' rights in and to the Subject Domain Names.at the time the Defendants entered into transactions to obtain control of them.

300.     The Defendants engaged in the transactions with Nelson with full knowledge that Nelson may not have any authority to transfer or convey any rights.

301.     The Transfers of Control to the Defendants were made without any authorization from the Plaintiff, Baron, or Novo Point and are tantamount to thefts.

302.     Transferees acquired no rights in and to the Subject Domain Names and Third Party Transferees acquired no greater rights than the original Transferees.

303.     As a result of the transfers of the Subject Domain Names, the debtor became insolvent.

304.     The Plaintiff is entitled to avoidance of the transfers of the Subject Domain Names.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully requests of this Court:

1.     That judgment be entered in favor of the Plaintiff on its claims for violation of the Anticybersquatting Consumer Protection Act and for relief under the laws of quiet title and conversion; and

2.      Enter an order declaring that the Plaintiff, Associated Recovery, LLC, is

the only entity with any rights to ownership of the Subject Domain Names; and

3.      Enter an order declaring that the Defendants do not have any rights to

the Subject Domain Names; and

4.      Enter an order directing the Subject Domain Names be promptly

transferred to the Plaintiff; and

5.      Enter an order that any other domain names registered by the

Defendants of the Subject Domain Names that resemble or include the Plaintiffs'

trademarks be transferred to the Plaintiff; and

6.      Award the Plaintiff his fees and costs, including reasonable attorney

fees, in connection with this action pursuant to 15 U.S.C. 1117(a); and

7.      That the Court grant such other relief to the Plaintiff as the Court deems

just and proper.

Dated:  May 20, 2016                    Respectfully submitted,

                                         /s/ Anthony Famer
                                        Anthony Marquis Farmer  (TSB 24057844)
                                        THE FARMER LAW GROUP, PLLC
                                        400 South Zang Avenue, Suite 350
                                        Dallas, Texas 75208-6604
                                        Telephone (214) 948-8333
                                        afarmer@farmerlawgroup.com
                                                and
                                        Paul Grandinetti
                                        Rebecca J. Stempien Coyle
                                        LEVY & GRANDINETTI
                                        1120 Connecticut Avenue, N.W., Suite 304
                                        Washington, D.C. 20036
                                        Telephone (202) 429-4560
                                        Facsimile (202) 429-4564
                                        mail@levygrandinetti.com
                                        Attorneys for Associated Recovery, LLC

# Exhibit D

**Geiszler, Steven M.**

**Subject:**                              FW: Exclusive LLL.com Portfolio Pricing



The Premium Domain eNewsletter            ryan@outcomebrokerage.com        404-713-2126

Hello Friends,



Below is an update on our new **Exclusive Domain Portfolio** for
sale.  Please respond to this email to inquire on the most recent
offers and asking prices for these domains.  Please direct all
inquiries to ryan@outcomebrokerage.com.

**744.com**

9 bids

**FXF.com**

6 bids

**KOU.com**

9 bids

**YJX.com**

8 bids

**SDU.com**

4 bids

**UHW.com**

3 bids

**YEY.com**

7 bids

**VGJ.com**

3 bids


**Ruten.com**

3 bids



Best Regards,

*Ryan Colby*

ryan@outcomebrokerage.com

**404.713.2126**


LinkedIN

Twitter

Facebook

Forward to a Friend   |   Follow us on Twitter   |   Follow us on Facebook   |   Subscribe

*why did I get this?*   unsubscribe from this list   update subscription preferences

Outcome Brokerage, LLC · 3567 S. Fed. Highway, Suite #H · Boynton Beach, FL 33435 · USA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| ASSOCIATED RECOVERY, LLC, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-01723-AJT-JFA |
| | ) | |
| JOHN DOES 1-44, | ) | |
| | ) | |
| *Defendants in rem.* | ) | |

## <u>NOTICE OF HEARING</u>

PLEASE TAKE NOTICE that Defendants VGJ.com and YJX.com, through their

counsel, on July 29, 2016, at 10:00 am, or as soon thereafter as counsel may be heard, will

present their Motion to Set Aside Default Judgments Regarding VGJ.com and YJX.com and

Return Those Domain Names to Their Prior Owners, filed and served on the Plaintiff on July 18,

2016, and request an Order granting said Motion.

Dated:  July 18, 2016

Of Counsel:

Steven M. Geiszler
Zunxuan D. Chen
Dentons US LLP
2000 McKinney Avenue
Suite 1900
Dallas, TX 75201-1858
214-259-0900 (phone)
214-259-0910 (fax)
steven.geiszler@dentons.com
digger.chen@dentons.com

Respectfully submitted,

*/s/ Eric Y. Wu*
Lora A. Brzezynski, VSB No. 36151
Claire M. Maddox, VSB No. 71230
Eric Y. Wu, VSB No. 82829
Dentons US LLP
1900 K Street, NW
Washington, DC  20006
202-496-7500 (phone)
202-496-7756 (fax)
lora.brzezynski@dentons.com
claire.maddox@dentons.com
eric.wu@dentons.com

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 18th day of July 2016, I will electronically

file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a

notification of such filing (NEF) to the following:

Rebecca J. Stempien Coyle (VSB 71483)
Levy & Grandinetti
Suite 304
1120 Connecticut Ave., N.W.
Washington, D.C. 20036
(202) 429-4560
Fax: (202) 429-4564
mail@levygrandinetti.com

*Counsel for Associated Recovery, LLC*


Dated:  July 18, 2016


*/s/ Eric Y. Wu*
Eric Y. Wu, VSB No. 82829
Dentons US LLP
1900 K Street, NW
Washington, DC  20006
202-496-7500 (phone)
202-496-7756 (fax)
eric.wu@dentons.com

*Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| ASSOCIATED RECOVERY, LLC, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-01723-AJT-JFA |
| | ) | |
| JOHN DOES 1-44, | ) | |
| | ) | |
| *Defendants in rem*. | ) | |

**DEFENDANT 744.COM'S MOTION TO SET ASIDE DEFAULT JUDGMENT AND
RETURN DOMAIN NAME TO PRIOR OWNER**

*In rem* Defendant 744.com, pursuant to Federal Rule of Civil Procedure 60(b), hereby

request to set aside the Judgment entered on May 18, 2016 [ECF 43]. Pursuant to Local Civil

Rule 7(E), Defendant's counsel called Plaintiff's counsel to meet and confer in good faith

regarding this Motion, and Plaintiff's counsel informed Defendant's counsel that she was unable

to obtain authorization from the client regarding any aspect of this Motion.

The basis for this motion is set forth more fully in the accompanying Memorandum in

Support of Defendant 744.com's Motion to Set Aside Default Judgment and Return Domain

Name to Prior Owner.

WHEREFORE, Defendants respectfully request that the Court grant this Motion and set

aside the Judgment entered on May 18, 2016, 2016 (ECF 43) with respect to the 744.com

domain name.  Defendant further requests that the Court further order Uniregistrar Corp., the

current registrar of the 744.com domain name, to take all steps within its power to transfer the

domain back to Hao Wang.

Dated:  July 19, 2016

Of Counsel:

Steven M. Geiszler
Zunxuan D. Chen
Dentons US LLP
2000 McKinney Avenue
Suite 1900
Dallas, TX 75201-1858
214-259-0900 (phone)
214-259-0910 (fax)
steven.geiszler@dentons.com
digger.chen@dentons.com

Respectfully submitted,

/s/ Eric Y. Wu
Lora A. Brzezynski, VSB No. 36151
Claire M. Maddox, VSB No. 71230
Eric Y. Wu, VSB No. 82829
Dentons US LLP
1900 K Street, NW
Washington, DC  20006
202-496-7500 (phone)
202-496-7756 (fax)
lora.brzezynski@dentons.com
claire.maddox@dentons.com
eric.wu@dentons.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 19th day of July, 2016, I will electronically

file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a

notification of such filing (NEF) to the following:

Rebecca J. Stempien Coyle (VSB 71483)
Levy & Grandinetti
Suite 304
1120 Connecticut Ave., N.W.
Washington, D.C. 20036
(202) 429-4560
Fax: (202) 429-4564
mail@levygrandinetti.com

*Counsel for Associated Recovery, LLC*


Dated:  July 19, 2016


                                                        */s/ Eric Y. Wu*
                                                        Eric Y. Wu, VSB No. 82829
                                                        Dentons US LLP
                                                        1900 K Street, NW
                                                        Washington, DC  20006
                                                        202-496-7500 (phone)
                                                        202-496-7756 (fax)
                                                        eric.wu@dentons.com

                                                        *Counsel for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| ASSOCIATED RECOVERY, LLC, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-01723-AJT-JFA |
| | ) | |
| JOHN DOES 1-44, | ) | |
| | ) | |
| *Defendants in rem*. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT 744.COM'S MOTION TO SET
ASIDE DEFAULT JUDGMENT AND RETURN DOMAIN NAME TO PRIOR OWNER**

*In rem* Defendant 744.com, pursuant to Federal Rule of Civil Procedure 60(b), submits

this Memorandum in Support of its Motion to Set Aside Default Judgment and Return Domain

Name to Prior Owner.  Defendant is one of the domain names against which Plaintiff has

brought this *in rem* action.  Defendant respectfully asks the Court to set aside the Default

Judgment.  Defendant also seeks the return of the domain names to its Chinese prior owner to

maintain the status quo.  Defendant's counsel met and conferred in good faith with Plaintiff's

counsel regarding this motion pursuant to Local Civil Rule 7(E), and Plaintiff's counsel informed

Defendant's counsel that she was unable to obtain authorization from the client regarding any

aspect of this Motion.

## I.  STATEMENT OF FACTS

### A.    The *Netsphere* Litigation.

This dispute is related to litigation in the Northern District of Texas styled *Netsphere, Inc.

v. Baron*.  The *Netsphere* litigation arose from a business dispute between Jeffrey Baron,

Plaintiff's alleged predecessor in interest, and his business partner.  In the Texas Litigation, the

Texas court found that Baron repeatedly engaged in vexatious and abusive litigation conduct. *Netsphere, Inc. v. Baron*, 703 F.3d 296, 302 (5th Cir. 2012) (*Netsphere I*).  In response to that conduct, the Northern District of Texas appointed Peter S. Vogel ("Vogel" or "Receiver") as the receiver for companies controlled by Baron.  *See* Order Appointing Receiver, *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. Nov. 24, 2010), ECF 130.

In response to Baron's continuing misconduct, the Northern District of Texas granted a motion by the Receiver to permit the sale of domain names owned by Baron's businesses, including Novo Point, LLC ("Novo Point") for the purpose of paying Novo Point's creditors. *See* February 4, 2011 Order Granting the Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. Feb. 4, 2011), ECF 288.  The Northern District further granted the Receiver's motion to appoint Damon Nelson ("Nelson") as permanent manager of Novo Point to assist the Receiver in selling Novo Point's domain names. *See* Order Granting the Receiver's Motion to Appoint Damon Nelson as Permanent Manager of the LLCs and For Turnover of LLC Materials to Damon Nelson, *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. Apr. 22, 2011), ECF 473.  Mr. Nelson thus worked under the direction of the Receiver.

Although the Northern District of Texas eventually terminated the receivership, the court explicitly "retain[ed] exclusive jurisdiction . . . over any disputes that may arise concerning . . . any controversy that arises from or relates to the Receivership or actions of the Receiver or his professionals." *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. March 27, 2015), ECF 1447 at 21.  *See also Baron v. Vogel*, No. 3:15-CV-232-L, 2016 WL 1273465, at *3 (N.D. Tex. Mar. 31, 2016) (noting that Northern District of Texas retains exclusive jurisdiction "over

2

any disputes that might arise . . . from or relate[ ] to the receivership or actions of the receiver or his professionals").

On April 15, 2016, this Court granted the undersigned counsel's motion to transfer a portion of this case related to 28 domain names to the Northern District of Texas. (*See* ECF 40.) On July 1, 2016, this Court set aside three default judgments and transferred three more domain names (JTZ.com, OCU.com, YTE.com) to the Northern District of Texas. (*See* ECF 59.)

## B.   Purchase of 744.com.

Pursuant to the Northern District of Texas's order authorizing the sale of Novo Point's domain names, Nelson sold the domain names that are the subject of this litigation, including 744.com, in 2012. (*See* ECF 1 ¶ 241.) The seller of the domain names in the agreements was Novopoint, LLC [*sic*], and Nelson authorized the sale and signing on behalf of Novo Point. *Id.* Plaintiff filed this lawsuit attempting to unwind this sale. (*See* ECF 1 ¶¶ 240-41.)

In October 2013, Hao Wang purchased the 744.com domain name. (*See* Declaration of Hao Wang ("Wang Decl.") at ¶ 3, attached hereto as Exhibit A.) Mr. Wang gave value for 744.com, and the seller caused the domain name to be transferred to OnlineNIC, a duly accredited ICAN registrar. (*See id.* at ¶ 4.) Mr. Wang immediately provided accurate registrant contact information to OnlineNIC. (*See id.* at ¶ 5.) Plaintiff admits that it has not used the 744 mark since 2012. (ECF 1 ¶ 3.)

## C.   Service of Complaint.

On December 31, 2015, Plaintiff filed this *in rem* action against various John Doe Defendants and domain names, alleging a violation of the Federal Anticybersquatting Consumer Protection Act ("ACPA") and other claims. (*See* ECF 1.) On January 20, 2016, Plaintiff filed a Motion for an Order to Publish Notice of Action. (*See* ECF 3; ECF 4.) In its Memorandum in support of that motion, Plaintiff alleged to have sent the notices "to the postal and e-mail

addresses set forth in the registrations for the Domain Names." (ECF 4 at 4.)  The Declaration in support of the motion further clarified that Plaintiff had sent copies of the Complaint "to each of the defendants via e-mail, using the e-mail addresses provided on the Whois records for each of the Internet domain names at issue," and further directed a letter to be sent "to each postal and e-mail addresses set forth in the registrations for the Domain Names" on December 31, 2015. (ECF 4-1 ¶ 4.)  Neither Plaintiff's Memorandum nor Declaration, however, include a certificate of service related to sending the Complaint.  Nor does Plaintiff identify the specific addresses to which it allegedly sent the Complaint.  Rather, the Memorandum attaches only "representative copies" of the notices, which relate to just two of the domain names at issue.  (*Id.* at Composite Attachment 1 and Attachment 2.)

On January 27, 2016, this Court issued an Order to Publish Notice of Action and directed that a copy of the order be published in *The Washington Times* "within fourteen (14) days after entry of this Order." (ECF 6, ¶ 1.)  The Court further ordered that "[a]ny answer or other response to the Complaint should be filed . . . within twenty-one (21) days from the date of publication of this Order in The Washington Times." (ECF 6, ¶ 2(C).)  Plaintiff advised the Court that it published the Court's order in *The Washington Times* on February 3, 2016.  (*See* ECF 7; ECF 7-1.)  Mr. Wang did not receive any email notice from Plaintiff regarding this litigation, nor does he subscribe to the *Washington Times*.  (Wang Decl. at ¶¶ 6-7.)

**D.**    **Entry of Default and Other Defendants' Motion to Set Aside.**

On February 25, 2016, Plaintiff sought an entry of default against certain domain names, including 744.com. (ECF  9.)  The Clerk granted the entry of default on February 26, 2016 (ECF 10), and then granted an amended entry of default on February 29, 2016 (ECF 12).

In late April and early March 2016, the domain names yyg.com, yrn.com, vcz.com, fny.com, zhd.com, and zulin.com, via their respective owners retained the undersigned counsel

4

to set aside the default entered in this matter.  The undersigned immediately prepared and filed a Motion to Set Aside Default.  (*See* ECF 13.)  In that motion, those defendants argued that they acted promptly to lift the default, had a meritorious defense, and that Plaintiff would not be prejudiced by setting aside the default.  (*See* ECF 14.)  The Magistrate Judge granted those defendants' motion on March 18, 2016, setting aside the default as to domain names yyg.com, yrn.com, vcz.com, fny.com, zhd.com, and zulin.com.  (*See* ECF 27.)  744.com remained in default because its owner, Mr. Wang, was not aware or this litigation or its threat to his ownership.  (Wang Decl. at ¶ 7.)

On March 25, 2016, certain domain names, including yyg.com, yrn.com, vcz.com, fny.com, zhd.com, and zulin.com, filed a Motion to Dismiss or in the Alternative, to Transfer Venue.  (*See* ECF 30.)  On April 15, 2016, the Court granted that motion, transferring Plaintiff's claims against those domain names to the Northern District of Texas.  (*See* ECF 40.)

On May 18, 2016, the Court granted Plaintiff's Motion for Default Judgment against 744.com and other domain name defendants.  (*See* ECF 42.)  The same day, the Court entered a Default Judgment (the "Default Judgment").  (*See* ECF 43.)  In early June 2016, the defaulted domain name was transferred to Plaintiff pursuant to the Judgment.  Defendant understands that Uniregistrar Corp. is the current registrar of 744.com.

**E.**     **Other Prior Defendants' Motions to Set Aside Default Judgment.**

Other defendants, JTZ.com, OCU.com, and YTE.com, filed motions to set aside the Default Judgment with respect to those domain names.  (ECF 45, 48, 51).  At a hearing on July 1, 2016, the Court granted those motions and transferred *in rem* Defendants JTZ.com, OCU.com, and YTE.com to the Northern District of Texas.  (ECF 58, 59).

### F.    Representation of 744.com

Mr. Wang first learned of this litigation on July 9, 2016, when he learned that he had

been delisted as registrant of 744.com, following which he searched for more information and

retained counsel.  (Wang Decl. at ¶¶ 7-9.)  The undersigned thereafter worked diligently to

obtain the facts necessary to file this Motion.  *In rem* Defendant 744.com now files this Motion

to Set Aside Default Judgment.[1]

## II. ARGUMENT

The court should set aside the judgment under Rule 60(b)(1).  Under that Rule, the Court

may relieve a party from a final judgment for "mistake, inadvertence, surprise, or excusable

neglect."  Fed. R. Civ. P. 60(b)(1).  "[A] district court should consider whether the moving party

has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility

of the defaulting party, the prejudice to the party, whether there is a history of dilatory action,

and the availability of sanctions less drastic."  *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d

198, 204-05 (4th Cir. 2006); *see also Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*,

616 F.3d 413, 420 (4th Cir. 2010) ("[W]e have analyzed Rule 55(c) and Rule 60(b) motions

using the same factors.").  The decision to set aside a judgment under Rule 60 is committed to

the discretion of the Court.  *Payne*, 439 F.3d at 204.

### A.    Courts Have a Strong Preference to Decide Cases On the Merits.

The Fourth Circuit has "repeatedly expressed a strong preference that, as a general

matter, defaults are to be avoided and that claims and defenses be disposed of on their merits."

---

[1] The undersigned counsel are aware that this is now the fifth motion seeking to set aside the
default judgment entered in this action.  Counsel has not filed seriatim motions to annoy or delay
in any way the proceedings.  As to be expected with multiple domain owners who live outside
the United States in different locations, they have learned of the lawsuit and have sought our
assistance at varied times.  Promptly upon being contacted by this new domain owner, we
immediately began preparation of the supporting declaration and a motion to file with the Court.

*Saurikit, LLC v. cydia.com*, No. 1:11CV0888 JCC/JFA, 2011 WL 5843638, at *2 (E.D. Va. Nov.

21, 2011) (quoting *Colleton*, 616 F.3d at 417).  Any doubts about whether relief should be

granted, moreover, should be resolved in favor of setting aside the default so that the case may

be heard on the merits.  *Tolson v. Hodge*, 411 F.2d 123 (4th Cir. 1969) ("It has been held in an

extensive line of decisions that Rules 55(c) and 60(b) are to be liberally construed in order to

provide relief from the onerous consequences of defaults and default judgments.").  "There is

much more reason for liberality in reopening a judgment when the merits of the case never have

been considered than there is when the judgment comes after a full trial on the merits."  Wright

& Miller, § 2857 Discretion of the Court, 11 FED. PRAC. & PROC. CIV. (3d ed.).  Here, the parties

dispute their respective rights and ownership interests in the 744.com domain name.  Defendant

should have an opportunity to address those issues.  Further, all relevant factors weigh in favor of

setting aside the Default Judgment.

**B.      Defendant Was Unaware of the Nature of This Action.**

Under Rule 60, courts give particular weight to a defendant's lack of notice.  *Marshall v.*

*Boyd*, 658 F.2d 552 (8th Cir. 1981) (failure to give notice is strong factor weighing in favor of

setting aside judgment); *Lutomski v. Panther Valley*, 653 F.2d 270 (6th Cir. 1981) (same);

*Wilson v. Moore*, 564 F.2d 366 (9th Cir. 1977) (same).

Indeed, courts have found that a lack of notice justifies relief from default, even where

the defendant was properly served.  In *Avon Contractors, Inc. v. Sec'y of Labor*, 372 F.3d 171

(3d Cir. 2004), the respondent moved to set aside a default under Rule 60(b).  Although the

respondent had been properly served via certified mail, one of its employees had destroyed the

mail.  The Third Circuit lifted the judgment, reasoning that the respondent's failure to answer

was due to excusable neglect.  *See also Colleton*, 616 F.3d at 420 (although corporation was

properly served by process mailed to its agent designated for acceptance of service of process,

excusable neglect existed where agent mishandled process and defendant did not receive notice of lawsuit).

Here, the owner of 744.com did not receive emails or regular mail from Plaintiff's counsel related to this action. (Wang Decl. at ¶ 6.) His first notice was after he had been delisted as registrant of 744.com. (Wang Decl. at ¶ 7.) He purchased the domain names for substantial value. (Wang Decl. at ¶ 4.) Thus, he did not know that his rights and ownership interest in 744.com were threatened by this lawsuit until after the Judgment was entered. (Wang Decl. at ¶ 7.) And as in *Avon* and *Colleton*, Defendant's failure to respond was, *at worst*, due to excusable neglect. *See Colleton*, 616 F.3d at 420 (setting aside default for excusable neglect where party was properly served, but agent for service mishandled process); *Avon*, 372 F.2d at 175 (finding excusable neglect under Rule 60(b) where party was properly served, but employee destroyed service of process, reasoning that opposing party would not suffer prejudice from opening default judgment). For this reason, the Court should set aside the Default Judgment with respect to 744.com.

## C.     Defendant Promptly Filed This Motion.

Upon discovering that his ownership interest in 744.com was threatened, the Defendant owner immediately sought to retain counsel in the United States and promptly filed this motion to set aside the entry of default, mere weeks after the Judgment was entered. (Wang Decl. at ¶¶ 7-9.) Defendant's owner has not delayed in responding to this action in bad faith. Thus, this factor weights in favor of setting aside the Judgment.

## D.     Plaintiff Will Not Be Prejudiced By Setting Aside the Default Judgment.

In determining whether setting aside the default would prejudice the non-defaulting party, courts consider whether the delay:

(1) made it impossible for the non-defaulting party to present some of its evidence; (2) made it more difficult for the non-defaulting party to proceed with trial; (3) hampered the non-defaulting party's ability to complete discovery; and (4) was used by the defaulting party to collude or commit a fraud.

*Saurikit*, 2011 WL 5843638, at *5 (citing *Vick v. Wong*, 263 F.R.D. 325, 330 (E.D. Va. 2009)).

"In the context of a motion to set aside an entry of default, as in other contexts, delay in and of itself does not constitute prejudice to the opposing party." *Colleton*, 616 F.3d at 418.

Here, Defendant's owner filed this Motion soon after the Judgment was entered. Plaintiff's ability to present its case and gather evidence has not been prejudiced. *See Avon*, 372 F.2d at 175 (finding excusable neglect under Rule 60(b) where party was properly served, reasoning that opposing party would not suffer prejudice by opening default judgment). Indeed, as discussed above, the Court only recently transferred Plaintiff's claims against other several similarly situated domain names to the Northern District of Texas (*see* ECF 40), where that court has yet to rule on the other transferred defendants' Rule 12(b) motion or Plaintiff's motion to file an amended complaint. Moreover, **Plaintiff's Proposed Amended Complaint in the Northern District of Texas includes claims against movant Defendant 744.com**, a copy of which is provided here as Exhibit B. In both the motion and Amended Complaint, Plaintiff is represented by the same counsel appearing here: Paul Grandinetti and Rebecca Stempien Coyle. *See* Exhibit B at 57. Indeed, save for the change in court name and docket number, and the addition of Texas-specific causes of action, the Texas complaint is a copy of Plaintiff's Complaint in this Court. Plaintiff's willingness to file the Texas complaint and voluntarily pursue its claims against the Defendant in Texas is sufficient reason for this Court to set aside the Default Judgment.

By contrast, 744.com's owner will suffer serious injury to his ownership interest in the 744.com domain name if the Court does not set aside the Judgment. Indeed, Defendant's owner

understands that Plaintiff has already put 744.com up for auction online.  *See* Exhibit C (online

auction posting for 744.com, as well as other domain names subject to the Default Judgment).

Plaintiff intends to sell the domain names, which reflects their lack of importance to Plaintiff.

Defendant, on the other hand, seeks to maintain ownership of 744.com.  To prevent the domain

name from being sold to a third party, the Court should return 744.com to its prior owner, Mr.

Wang.[2]  Thus, this factor weights in favor of setting aside the Default Judgment.

### E.     Defendant Has A Meritorious Defense.

"[A]ll that is necessary to establish the existence of a 'meritorious defense' is a

presentation or proffer of evidence, which, if believed, would permit either the Court or the jury

to find for the defaulting party."  *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982); *see*

*also Cent. Operating Co. v. Util. Workers of Am., AFL-CIO*, 491 F.2d 245, 253 (4th Cir. 1974)

("[A] party is not required to establish a meritorious defense by a preponderance of the evidence.

The purpose of the motion was only to open the default judgment so that there may be a trial on

the merits; he did not seek a judgment in his favor.").

#### 1.     Plaintiff Lacks Standing.

Neither Baron nor Novo Point could bring this suit.  Plaintiff is allegedly their assignee.[3]

(ECF 1 ¶¶ 3 & 4.)  Thus, Plaintiff's claims are likewise barred.  "[T]he only injury sufficient to

---

[2] The undersigned counsel respectfully submit that the Court should consider temporarily enjoining Plaintiff from auctioning or otherwise transferring any more of the domain names subject to the Default Judgment, as it is foreseeable that other foreign owners may soon seek relief.  A 90-day injunction, for example, should give adequate time for others to appear without unduly prejudicing Plaintiff, who appears intent on selling, and not keeping, the domain names.

[3] Baron controls Plaintiff; indeed, he attended a settlement conference as Plaintiff's representative.  He is directing this litigation through Plaintiff as a collateral attack on the sale of 744.com pursuant to the Northern District of Texas's orders.  His conduct caused the Northern District of Texas to appoint the Receiver.  *See* February 4, 2011 Order Granting the Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere, Inc. v. Baron*, No. 3:09-CV-

support an assignee's standing to assert an assigned claim is an injury suffered by the assignor, and that injury must satisfy all the requirements of constitutional standing, i.e., the injury suffered must be an injury-in-fact that is causally traceable to a named defendant and likely to be redressed by the court action." *PEMEX Exploracion y Produccion v. Murphy Energy Corp.*, 923 F. Supp. 2d 961, 965 (S.D. Tex. 2013). "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). These elements are "(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury." *Croft v. Gov. of Texas*, 562 F.3d 735, 745 (5th Cir. 2009) (citing *Lujan*, 504 U.S. at 560–61). The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

Plaintiff's allegations lack at least two requisite elements. First, there was no injury in fact. Although the Fifth Circuit vacated the receivership, the sales of domain names to raise funds needed to pay the receivership fees occurred under the court's authority. *See Baron v. Vogel*, No. 3:15-cv-232-L, 2016 WL 1273465, *5 (N.D. Tex. Mar. 31, 2016) (finding no *ultra vires* acts by court-appointed receiver) ("*Vogel I*"). Neither the Fifth Circuit nor the Northern District entered any order voiding the sales. Further, the Northern District of Texas implicitly authorized the sales *post hoc* when it authorized payment of the receivership fees using, in part, funds raised through the sales. *See generally Netsphere, Inc. v. Baron*, No. 3:09-cv-988-F, 2013 WL 3327858 (N.D. Tex. May 29, 2013) ("*Netsphere II*").

Second, there is no causal connection between the alleged injury and the conduct about which Plaintiff complains. Assuming, *arguendo*, there were an injury, it was not caused by

---

0988-F (N.D. Tex. Feb. 4, 2011), ECF No. 288. Baron cannot obtain a second bite at the apple by challenging those orders by using Plaintiff as a proxy in this litigation.

Defendant's owner, who is a bona fide purchaser for value of 744.com. *See EDS Corp. v. Southwestern Bell Tel.*, 674 F.2d 453, 459 (5th Cir. 1982) ("A bona fide purchaser … is one who buys property in good faith for valuable consideration and without knowledge (actual or imputed) of outstanding claims in a third party or parties."). Indeed, 744.com was transferred pursuant to a contract, signed by Damon Nelson on behalf of Novo Point, without notice or mention of any alleged third-party interests.

Plaintiff's claims under the ACPA, for quiet title, and conversion all flow from Defendant's acquisition and use of domain names that were sold pursuant to the authorization of the Northern District of Texas. The quiet title and conversion claims are extinguished by that court's orders authorizing the sales and subsequent orders authorizing payments. As for the ACPA claims, which flow from alleged trademark rights, Defendant's owner's use of 744.com was not only foreseeable, it was the very reason for the assignment. Hence, Defendant enjoys an implied license from Novo Point that defeats any ACPA claim. *See McCoy v. Misuboshi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995) (implied license available even through involuntary sale). Defendant has not injured Baron, Novo Point, or Plaintiff. *Id.* Any alleged injury to Baron or Novo Point (and by assignment, Plaintiff) was self-inflicted. *See Netsphere, Inc. v. Baron*, 703 F.3d 296, 313 (5th Cir. 2012) ("the record supports that the circumstances that led to the appointment of a receiver were primarily of Baron's own making") ("*Netsphere I*").

With only Baron and Novo Point to blame, Plaintiff is allegedly the "assignee" of nonexistent rights and, thus, has no standing to bring this case. *See PEMEX*, 923 F. Supp. 2d at 965 (S.D. Tex. 2013). For this independent reason, Plaintiff's claims fail.

## 2.  **Plaintiff's Claims Are Barred by Collateral Estoppel.**

The Fifth Circuit decision in *Netsphere I* and the Northern District of Texas' decisions in *Netsphere II*, and *Vogel* collaterally estop Plaintiff's claims. To establish collateral estoppel

under federal law, Defendant must show: (1) the issue is identical to the issue involved in the prior litigation; (2) the issue was actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation was a crucial and necessary part of the judgment. *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 583 F.3d 348, 353 (5th Cir. 2009).  Here, all three prongs are met.

The issues Plaintiff raises in its Complaint have been litigated and decided against Plaintiff's predecessors-in-interest.  Plaintiff alleges that the domain names at issue were "improperly" placed under the control of a receivership then sold pursuant to "Improper Receivership Sale Orders."  (ECF 1 ¶¶ 240-41.)  But in *Netsphere I*, the Fifth Circuit held that the district court entered the Receivership Order to bring a halt to Baron's "longstanding vexatious litigation tactics," and rejected Baron's contention that the appointment of the Receiver was in bad faith or collusive.  *Netsphere I*, 703 F.3d at 310-13 ("[W]e hold, based on this record, that in creating the receivership there was no malice nor wrongful purpose, and only an effort to conserve property in which the court believed it was interested in maintaining for unpaid attorney fees and to control Baron's vexatious litigation tactics.") (internal quotations omitted).

Further, on remand, the Northern District of Texas ratified the domain name sales Plaintiff challenges, finding:

> [Vogel's law firm] developed a system for determining the value of domain names that allowed it to make choices regarding the fate of individual names: whether to develop, to park, to sell or to let lapse.  This was critical because it enabled counsel … to identify money losing names that should be culled from the portfolios. Although Baron may have elected to run these businesses differently, all of the actions were reasonable and prudent ….

*Netsphere II*, 2013 WL 3327858, at *16.  On March 31, 2016, the Northern District of Texas again gave *post hoc* approval to the Receiver's actions, stating that "any claim by Plaintiffs based

on the wrongful establishment or continuation of the receivership or payment of receivership expenses is an impermissible collateral attack of prior orders through this suit." *Vogel*, 2016 WL 1273465 at *6.

Plaintiff's claims are just such "an impermissible collateral attack of prior orders" entered by the Northern District of Texas authorizing the sale of Novo Point's domain names. *Id.*; *see also Recoveredge LP v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995) ("Collateral estoppel will apply in a second proceeding that involves separate claims if the claims involve the same issue and the subject matter of the suits may be different as long as the requirements for collateral estoppel are met." (internal citations omitted)).  For this reason alone, Plaintiff's claims fail.

**3.      Plaintiff Cannot Establish Bad Faith.**

As part of its claim of violation of the ACPA, Plaintiff must establish that Defendant's owner "had a bad faith intent to profit from using the [] domain name." *Lamparello v. Falwell*, 420 F.3d 309, 318 (4th Cir. 2005) (quoting *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001)).  Here, the owner purchased 744.com in good faith.  (Wang Decl. at ¶¶ 4-5.)  Indeed, the domain name was originally purchased in good faith from Novo Point, Plaintiff's predecessor in interest, who was authorized to sell the domain name by the Northern District of Texas.  *See* February 4, 2011 Order Granting the Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. Feb. 4, 2011), ECF No. 288.

Plaintiff's allegations confirm that Defendant's owner acted in good faith.  Specifically, Plaintiff alleges that the owner is a bona fide purchaser for value of the 744.com domain name, stating that "the Northern District of Texas issued several orders permitting the receivership to sell at least some of the Subject Domain Names."  (ECF 1 ¶ 241.)  Contrary to Plaintiff's assertion, the owner did not know that Nelson allegedly did not have authority to manage and

transfer the domain names, and acted in good faith in acquiring the domain names.  (*See id.* ¶ 245.)  For this independent reason, Plaintiff's ACPA claims fail.

### 4.   Plaintiff's Other Claims Fail.

Plaintiff's conversion claim fails because conversion requires a transfer done without permission.  As discussed above, however, the owner's predecessor-in-interest purchased the 744.com domain name with the authorization of a court order, and Mr. Wang is a bona fide purchaser of the domain, with no notice of any wrongdoing in the transfer of the domain name. *See Fed. Ins. Co. v. Smith*, 144 F. Supp. 2d 507, 519-20 and n.28 (E.D. Va. 2001) *aff'd*, 63 F. App'x 630 (4th Cir. 2003) (noting that a transferee is not liable for conversion where it takes possession for valuable consideration).

Similarly, Plaintiff's quiet title claim fails because Plaintiff must "prove that [it] has superior title to the property."  *See Gallant v. Deutsche Bank Nat. Trust Co.*, 766 F. Supp. 2d 714, 719 (W.D. Va. 2011).  Because Mr. Wang is a bona fide purchaser, he has superior title, and Plaintiff's quiet title claim fails.

As set forth above, Defendant's owner has multiple, independent defenses to Plaintiff's claims.  This factor weighs heavily in favor of setting aside the default.

### F.   The Court Should Restore the Parties to the Position They Were in Before the Judgment.

The Court should order the 744.com domain name returned to its prior owner, Mr. Wang, consistent with the status quo before the Judgment was entered.  Mr. Wang understands that in early June 2016, the 744.com domain name was transferred to Plaintiff, awarding Plaintiff the final relief it sought in the Judgment.  Because the Judgment should be set aside, the Court should also order that the 744.com domain name be returned to Mr. Wang during the pendency of this litigation, consistent with the procedure contemplated by the ACPA.

After setting aside a Judgment, the Court should "restore the parties to the *status quo ante*." *In re Graziadei*, 32 F.3d 1408, 1411 (9th Cir. 1994) (italics in original); *see also Vander Zee v. Karabatsos*, 683 F.2d 832 (4th Cir. 1982) (noting that if judgment is deemed void, then Court should order restitution of payments already made on void judgment); *Belcastro v. Task Indus., Inc.*, 182 F.3d 924 (9th Cir. 1999) (italics in original) (ordering restitution of funds; "because [the movant] requested that the district court undo the effects of the 1995 default judgment it held void, the district court was required to restore the parties to the *status quo ante*."); *Watts v. Pinckney*, 752 F.2d 406, 410 (9th Cir. 1985) (granting Rule 60 motion and finding that movant was entitled to restitution of amounts paid under vacated judgment); *Gen. Tel. Corp. v. Gen. Tel. Answering Serv.*, 277 F.2d 919, 921 (5th Cir. 1960) (setting aside judgment prohibiting use of words "General Telephone" by defendants).

Here, in setting aside the Judgment, the Court should return the domain name to Mr. Wang, the registrant of 744.com at the inception of this litigation. *See Belcastro*, 182 F. 3d at 942 (italics in original) (after setting aside judgment under Rule 60(b) Court will "undo the effect of that order and restore the parties to the *status quo ante*."); *In re Graziadei*, 32 F.3d at 1411 (same). That is also the posture contemplated by the ACPA. The ACPA provides that when the registrar receives a copy of the Complaint in an ACPA case, it "shall" (a) deposit with the court documents sufficient to establish the court's control and authority regarding the disposition of the registration and use of the domain name to the court, and (b) "not transfer, suspend, or otherwise modify the domain name during the pendency of the action, except upon order of the court." 15 U.S.C. § 1125(d)(2)(D)(i)(I) and (d)(2)(D)(i)(II). Accordingly, the ACPA contemplates that when an action is filed against a domain name, that domain name retains its registry status pending the outcome of the case.

The Court should not permit Plaintiff to benefit from the Judgment by maintaining control over 744.com. Indeed, such a result would eviscerate the purpose of setting aside the Judgment, as leaving the domain name in Plaintiff's control would effectively maintain and enforce the Judgment. As set forth above, Plaintiff's claims fail on the merits. Plaintiff's predecessors transferred their interest in the 744.com domain name pursuant to orders entered by the Northern District of Texas. *See supra* at II.E.1 & II.E.2. Those sales have not been invalidated. *See id.* Defendant's owner purchased the domain name for substantial value (Wang Decl. at ¶ 4.)

Plaintiff should not be entitled to take advantage of the ACPA's substituted service provisions to obtain a Judgment where it has no copyright claim to the *res* at issue. For all these reasons, the Court should set aside the Judgment and order Uniregistrar Corp., the currently listed registrar of the 744.com domain name, to take all steps within its power to transfer the domain back to their owners, the holder of the domains before Plaintiff filed this action.

## III.  CONCLUSION

WHEREFORE, for the foregoing reasons, *in rem* Defendant 744.com and its owner respectfully request that the Court GRANT this motion setting aside the Judgment (ECF 43) and order Uniregistrar Corp., the current registrar of the 744.com domain name, to take all steps within its power to transfer the domain back to Mr. Wang. Should the Court grant this motion, Defendant anticipates it will move to dismiss under Federal Rule 12, or in the alternative, seek to transfer to the Northern District of Texas.

Dated:  July 19, 2016

Respectfully submitted,

*/s/ Eric Y. Wu*
Lora A. Brzezynski, VSB No. 36151
Claire M. Maddox, VSB No. 71230
Eric Y. Wu, VSB No. 82829
Dentons US LLP
1900 K Street, NW
Washington, DC  20006
202-496-7500 (phone)
202-496-7756 (fax)
lora.brzezynski@dentons.com
claire.maddox@dentons.com
eric.wu@dentons.com

Of Counsel:

Steven M. Geiszler
Zunxuan D. Chen
Dentons US LLP
2000 McKinney Avenue
Suite 1900
Dallas, TX 75201-1858
214-259-0900 (phone)
214-259-0910 (fax)
steven.geiszler@dentons.com
digger.chen@dentons.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 19th day of July, 2016, I will electronically

file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a

notification of such filing (NEF) to the following:

> Rebecca J. Stempien Coyle (VSB 71483)
> Levy & Grandinetti
> Suite 304
> 1120 Connecticut Ave., N.W.
> Washington, D.C. 20036
> (202) 429-4560
> Fax: (202) 429-4564
> mail@levygrandinetti.com
>
> *Counsel for Associated Recovery, LLC*

Dated:  July 19, 2016

> */s/ Eric Y. Wu*
> _____
> Eric Y. Wu, VSB No. 82829
> Dentons US LLP
> 1900 K Street, NW
> Washington, DC  20006
> 202-496-7500 (phone)
> 202-496-7756 (fax)
> eric.wu@dentons.com
>
> *Counsel for Defendant*

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| ASSOCIATED RECOVERY, LLC, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-01723-AJT-JFA |
| | ) | |
| JOHN DOES 1-44, | ) | |
| | ) | |
| *Defendants in rem.* | ) | |

## DECLARATION OF HAO WANG

I, Hao Wang, pursuant to 28 U.S.C. § 1746, declare:

1.      I am over the age of 18 years old. I have personal knowledge of the matters set forth in this declaration and, if called upon, I will testify competently to them.

2.      I am the owner of domain name 744.com

3.      On or about October, 2013, I purchased the 744.com domain name.

4.      I gave substantial value for the 744.com domain name and the seller caused the 744.com domain name to be transferred to registrant OnlineNIC.

5.      I immediately provided accurate registrant contact information to OnlineNIC, listing me as the registrant.

6.      I do not subscribe to the Washington Times. I did not receive notice of this action published in any newspaper. I did not receive an email or paper mail about this action.

7.      I only became aware of this lawsuit on or about July 9, 2016 when I found out that 744.com was longer listed at OnlineNIC.

8.      I immediately contacted OnlineNIC and OnlineNIC forwarded a letter from VeriSign stating that domain name 744.com was subject to a default judgment in this lawsuit.

9.      As soon as I became aware of this situation, I immediately sought to retain counsel in the United States to defend my rights with respect to the 744.com domain name.

10.     My counsel reviewed this declaration with me in Chinese and in English.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _____th day of July, 2016.

王 浩

Hao Wang

2016.7.19

# Exhibit B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### Dallas Division

ASSOCIATED RECOVERY, LLC )
1623 Central Avenue, Suite 201 )
Cheyenne, Wyoming 82001, )
)
    *Plaintiff*, )
)    Civil Action No.
    v. )
)
JOHN DOES 1-44, )
)
    *Defendants in rem.* )
)

In re:

| | | |
|---|---|---|
| 744.COM | OCU.COM | YEY.COM |
| 028.COM | PIXIE.COM | YGX.COM |
| 3DCAMERA.COM | QMH.COM | YJR.COM |
| FNY.COM | RUTEN.COM | YJX.COM |
| FX2.COM | SDU.COM | YLZ.COM |
| FXF.COM | SQG.COM | YQP.COM |
| JTZ.COM | TAOLV.COM | YQT.COM |
| KGJ.COM | UHW.COM | YRN.COM |
| KMQ.COM | VCZ.COM | YTE.COM |
| KOU.COM | VGJ.COM | YYG.COM |
| KXQ.COM | WYD.COM | ZDP.COM |
| KXW.COM | XAQ.COM | ZHD.COM |
| LNM.COM | XFF.COM | ZULIN.COM |
| LUOHE.COM | XSG.COM | ZZM.COM |

| MEQ.COM | YCX.COM | |
|---------|---------|---|

## AMENDED COMPLAINT

Plaintiff Associated Recovery, LLC, by counsel, alleges as follows for its Complaint against Defendants:

## NATURE OF THE SUIT

1.      This is an action for violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) and for the return of Plaintiff's property under Texas and Virginia law.

2.      Associated Recovery, LLC ("Associated Recovery" or the "Plaintiff") seeks injunctive and other equitable relief as a result of the actions of the Defendants John Does, persons of unknown identity, who gained unauthorized control of the Plaintiff's and/or the Plaintiff's predecessor-in-interest's domain names, causing irreparably injury to the Plaintiff.

## PARTIES

3.      The Plaintiff is a Limited Liability Company organized and existing under the laws of Wyoming with a principal business address of 1623 Central Avenue, Suite 201, Cheyenne, Wyoming 82001. The Plaintiff's predecessors-in-interest include Novo Point LLC ("Novo Point"). Novo Point's predecessor's-in-interest include Jeffrey Baron ("Baron") and Ondova Ltd. ("Ondova"). Baron acquired the Subject Domain Names, either on his own behalf or on behalf of Ondova, at various times in or around 2001 to 2004. By 2010 Novo Point was the registrant of the Subject Domain Name and Novo Point remained the registrant and used the domain names to operate e-commerce websites until sometime in 2012 when the Subject

2

Domain Names were wrongfully transferred from Novo Point.  Novo Point was, and now the Plaintiff is, the rightful owner of the Subject Domain Names.

4.      The Plaintiff is the assignee for consideration of the rights to recover the Subject Domain Names and damages associated with the loss of their profitable use.  The Plaintiff brings and files this action as the transferee of all rights of Baron and Novo Point in the claims contained herein.

5.      744.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "ID Shield Service" of "5/F Hong Kong Trade Centre, 161-167, DesVoeux Road Central, Hong Kong, 999077, China." Upon information and belief, "ONLINEINC, INC." is the name of the domain name registrar to which 744.COM was transferred without authorization, and is the current registrar for 744.COM.  A copy of the current domain name registration record for 744.com is attached as Exhibit 1.

6.      028.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "Liuxiaosheng" of "Jiajiahao building 18 floor, shen zhen shi, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which 028.COM was transferred without authorization, and is the current registrar for 028.COM.  A copy of the current domain name registration record for 028.com is attached as Exhibit 2.

7.      3DCAMERA.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "taesong chong" of "D-805 central star, bujeion jin-gu, busan, Korea." Upon information and belief, "ENOM, Inc." is the name of the domain name registrar to which

3

3DCAMERA.COM was transferred without authorization, and is the current registrar for 3DCAMERA.COM. A copy of the current domain name registration record for 3dcamera.com is attached as Exhibit 3.

8.   FNY.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "zhiqiangjin" of "wenyi road no.75, Hangzhoushi, Zhejiang, China." Upon information and belief, "ENmae Technology Co., Ltd." is the name of the domain name registrar to which FNY.COM was transferred without authorization, and is the current registrar for FNY.COM. A copy of the current domain name registration record for fny.com is attached as Exhibit 4.

9.   FX2.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "xiafeng lin" of "132 jiuer road 5/f, shishi, fajian, China" Upon information and belief, "MAFF Inc." is the name of the domain name registrar to which FX2.COM was transferred without authorization, and is the current registrar for FX2.COM. A copy of the current domain name registration record for fx2.com is attached as Exhibit 5.

10.   FXF.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "whoisguard protected" of "P.O. Box 0823-03411, Panama, Panama." Upon information and belief, "ENOM, Inc." is the name of the domain name registrar to which FXF.COM was transferred without authorization, and is the current registrar for FXF.COM. A copy of the current domain name registration record for fxf.com is attached as Exhibit 6.

11.     JTZ.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "liuming" of "Chang Su, A2-505 Linhai mountain villa, ShenZhen, 518003, China." Upon information and belief, "GoDaddy.Com, LLC" is the name of the domain name registrar to which JTZ.COM was transferred without authorization, and is the current registrar for JTZ.COM. A copy of the current domain name registration record for JTZ.com is attached as Exhibit 7.

12.     KGJ.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "XiaoFeng Lin" of "132 Jiuer Road, 5/F ShiShi FuJian, 3627000 China." Upon information and belief, "MAFF, Inc." is the name of the domain name registrar to which KGJ.COM was transferred without authorization, and is the current registrar for KGJ.COM. A copy of the current domain name registration record for KGJ.com is attached as Exhibit 8.

13.     KMQ.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "LinXiaoFeng" of "Xi# 215, quan zhou shi, fu jian, 362000 China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which KMQ.COM was transferred without authorization, and is the current registrar for KMQ.COM. A copy of the current domain name registration record for kmq.com is attached as Exhibit 9.

14.     KOU.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "WHOIS AGENT" of "17F, No.138 Zhognshan Avenue, Guangzhou, GD, 510000, China."

5

Upon information and belief, "Guangzhou Ming Yang Information Technology Co., Ltd." is the name of the domain name registrar to which KOU.COM was transferred without authorization, and is the current registrar for KOU.COM. A copy of the current domain name registration record for kou.com is attached as Exhibit 10.

15.     KXQ.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "LinXiaoFeng" of "Xi# 215, quan zhou shi, fu jian, 362000 China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which KXQ.COM was transferred without authorization, and is the current registrar for KXQ.COM. A copy of the current domain name registration record for kxq.com is attached as Exhibit 11.

16.     KXW.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "Xiamen eName Network Co., Ltd." of "Software Park wanghai Road No. 19, 603, Xiamenshi Fujian 361000 China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which KXW.COM was transferred without authorization, and is the current registrar forKXW.COM. A copy of the current domain name registration record for sdu.com is attached as Exhibit 12.

17.     LNM.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is registered without any information concerning the registration. Upon information and belief, "MAFF Inc." is the name of the domain name registrar to which LNM.COM was transferred without authorization, and is the

6

current registrar for LNM.COM. A copy of the current domain name registration record for lnm.com is attached as Exhibit 13.

18. LUOHE.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of " xuhao " of "shenyang,liaoning,zhongguo, Shenyangshi, Liaoning, 200000 China" Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which LUOHE.COM was transferred without authorization, and is the current registrar for LUOHE.COM. A copy of the current domain name registration record for luohe.com is attached as Exhibit 14.

19. MEQ.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "chenjinwu" of "kunming city, kun ming shi, yun nan, 650024 China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which MEQ.COM was transferred without authorization, and is the current registrar for MEQ.COM. A copy of the current domain name registration record for meq.com is attached as Exhibit 15.

20. OCU.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "Whois Privacy Corp" of "Ocean Centre, Montagu Foreshore, East Bay Street, Nassau, Bahamas." Upon information and belief, "Internet Domain Services BS Corp." is the name of the domain name registrar to which OCU.COM was transferred without authorization, and is the current registrar for OCU.COM. A copy of the current domain name registration record for meq.com is attached as Exhibit 16.

7

21. PIXIE.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "zhouhaijian" of "zhongdongluwujingzhidui, shui di qu, zhe jiang, 323000, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which PIXIE.COM was transferred without authorization, and is the current registrar for PIXIE.COM. A copy of the current domain name registration record for pixie.com is attached as Exhibit 17.

22. QMH.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "xucaijun, Hangzhou Xiaomai Financial Information Service Co., Ltd," of "please contact with 4.cn brokers, hang zhou shi, zhe jiang, 310019, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which QMH.COM was transferred without authorization, and is the current registrar for QMH.COM. A copy of the current domain name registration record for qmh.com is attached as Exhibit 18.

23. RUTEN.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "MrChen" of "Fujian, bei jing, bei jing, 100824, China" Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which RUTEN.COM was transferred without authorization, and is the current registrar for RUTEN.COM. A copy of the current domain name registration record for ruten.com is attached as Exhibit 19.

24.   SDU.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "Xiamen eName Network Co., Ltd." of "Software Park wanghai Road No. 19, 603, Xiamenshi Fujian 361000 China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which SDU.COM was transferred without authorization, and is the current registrar for SDU.COM. A copy of the current domain name registration record for sdu.com is attached as Exhibit 20.

25.   SQG.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "xucaijun, Hangzhou Xiaomai Financial Information Service Co., Ltd," of " please contact with 4.cn brokers, hang zhou shi, zhe jiang, 310019, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which SQG.COM was transferred without authorization, and is the current registrar for SQG.COM. A copy of the current domain name registration record for sqg.com is attached as Exhibit 21.

26.   TAOLV.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "qinxiaohong" of " chong qing, chong qing, 400015, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which TAOLV.COM was transferred without authorization, and is the current registrar for TAOLV.COM. A copy of the current domain name registration record for taolv.com is attached as Exhibit 22.

27.   UHW.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of

"zhaolei, Yueqing 365 Zhao Lei" of "zhe jiang, wen zhou shi, zhe jiang, 325600, China."

Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name

registrar to which UHW.COM was transferred without authorization, and is the current

registrar for UHW.COM. A copy of the current domain name registration record for

uhw.com is attached as Exhibit 23.

28.   VCZ.COM is an Internet domain name which, according to records in the

WHOIS database of domain name registrations, is currently registered in the name of

"wangteng" of "chikanqu, zhan jiang shi, guang dong, 524000, China." Upon information and

belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which

VCZ.COM was transferred without authorization, and is the current registrar for VCZ.COM.

A copy of the current domain name registration record for uhw.com is attached as

Exhibit 24.

29.   VGJ.COM is an Internet domain name which, according to records in the

WHOIS database of domain name registrations is currently registered in the name of

"Xiamen eName Network Co., Ltd." of "Software Park wanghai Road No. 19, 603,

Xiamenshi Fujian 361000 China." Upon information and belief, "EName Technology Co.,

Ltd." is the name of the domain name registrar to which VGJ.COM was transferred without

authorization, and is the current registrar for VGJ.COM. A copy of the current domain name

registration record for vgj.com is attached as Exhibit 25.

30.   WYD.COM is an Internet domain name which, according to records in the

WHOIS database of domain name registrations is currently registered in the name of

"hanjim" of "shenzhen baoan, shen zhen shi, guang dong, 518100, China." Upon information

and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which

WYD.COM was transferred without authorization, and is the current registrar for WYD.COM. A copy of the current domain name registration record for wyd.com is attached as Exhibit 26.

31.   XAQ.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "LinXiaoFeng" of "Xi# 215, quan zhou shi, fu jian, 362000 China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which XAQ.COM was transferred without authorization, and is the current registrar for XAQ.COM. Acopy of the current domain name registration record for xaq.com is attached as Exhibit 27.

32.   XFF.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "wuxizhen" of "wuyidadao, Changshashi, Hunan, 400000 China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which XFF.COM was transferred without authorization, and is the current registrar for XFF.COM. A copy of the current domain name registration record for xaq.com is attached as Exhibit 28.

33.   XSG.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "xucaijun, Hangzhou Xiaomai Financial Information Service Co., Ltd," of "please contact with 4.cn brokers, hang zhou shi, zhe jiang, 310019, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which XSG.COM was transferred without authorization, and is the current registrar for XSG.COM. A copy of the current domain name registration record for xsg.com is attached as Exhibit 29.

11

34.   YCX.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "xucaijun, Hangzhou Xiaomai Financial Information Service Co., Ltd," of "please contact with 4.cn brokers, hang zhou shi, zhe jiang, 310019, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which YCX.COM was transferred without authorization, and is the current registrar for YCX.COM. A copy of the current domain name registration record for ycx.com is attached as Exhibit 30.

35.   YEY.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "YinSi BaoHu Yi KaiQi (Hidden by Whois Privacy Protection Service)" of "3/F.,HiChina Mansion,No.27 Gulouwai Avenue,Dongcheng District,Beijing 100120,China." Upon information and belief, "HiChina Zhicheng Technology Ltd." is the name of the domain name registrar to which YEY.COM was transferred without authorization, and is the current registrar for YEY.COM. A copy of the current domain name registration record for yey.com is attached as Exhibit 31.

36.   YGX.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "xucaijun, Hangzhou Xiaomai Financial Information Service Co., Ltd," of "please contact with 4.cn brokers, hang zhou shi, zhe jiang, 310019, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which YGX.COM was transferred without authorization, and is the current registrar for YGX.COM. A copy of the current domain name registration record for ygx.com is attached as Exhibit 32.

37.    YJR.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "huangxuming, guangdong united foods co.,ltd." of "Rongsheng Technology Park,University Road, Shantou, Guangdong, 515021, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which YJR.COM was transferred without authorization, and is the current registrar for YJR.COM. A copy of the current domain name registration record for yjr.com is attached as Exhibit 33.

38.    YJX.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "linchunmei" of "ruanjian yuan, Guangzhoushi, Guangdong, 510665, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which YJX.COM was transferred without authorization, and is the current registrar for YJX.COM. A copy of the current domain name registration record for yjx.com is attached as Exhibit 34.

39.    YLZ.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "ChenLongshui, Bozong Net.Ltd" of "shen zhen shi, guang dong, 518000, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which YLZ.COM was transferred without authorization, and is the current registrar for YLZ.COM. A copy of the current domain name registration record for ylz.com is attached as Exhibit 35.

40.    YQP.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of

"xucaijun, Hangzhou Xiaomai Financial Information Service Co., Ltd," of "please contact with 4.cn brokers, hang zhou shi, zhe jiang, 310019, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which YQP.COM was transferred without authorization, and is the current registrar for YQP.COM. A copy of the current domain name registration record for yqp.com is attached as Exhibit 36.

41.   YQT.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "xucaijun, Hangzhou Xiaomai Financial Information Service Co., Ltd," of "please contact with 4.cn brokers, hang zhou shi, zhe jiang, 310019, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which YQT.COM was transferred without authorization, and is the current registrar for YQT.COM. A copy of the current domain name registration record for yqt.com is attached as Exhibit 37.

42.   YRN.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations is currently registered in the name of "hanjim" of "shenzhen baoan, shen zhen shi, guang dong, 518100, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which YRN.COM was transferred without authorization, and is the current registrar for YRN.COM. A copy of the current domain name registration record for yrn.com is attached as Exhibit 38.

43.   YTE.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations is currently registered in the name of "Lior Navi" of "Hanasi 6, Haifa, 34323, Israel." Upon information and belief, "GoDaddy.com, LLC" is the name of the domain name registrar to which YTE.COM was transferred without

authorization, and is the current registrar for YTE.COM.  A copy of the current domain name registration record for yte.com is attached as Exhibit 39.

44.    YYG.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations is currently registered in the name of "liweiliu" of "Xin Gang Xi Lu, guang zhou shi, guang dong 510000, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which YYG.COM was transferred without authorization, and is the current registrar for YYG.COM. A copy of the current domain name registration record for yyg.com is attached as Exhibit 40.

45.    ZDP.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "xucaijun, Hangzhou Xiaomai Financial Information Service Co., Ltd," of "please contact with 4.cn brokers, hang zhou shi, zhe jiang, 310019, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which ZDP.COM was transferred without authorization, and is the current registrar for ZDP.COM.  A copy of the current domain name registration record for zdp.com is attached as Exhibit 41.

46.    ZHD.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "xucaijun, Hangzhou Xiaomai Financial Information Service Co., Ltd," of "please contact with 4.cn brokers, hang zhou shi, zhe jiang, 310019, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which ZHD.COM was transferred without authorization, and is the current registrar for ZHD.COM.  A copy of the current domain name registration record for zhd.com is attached as Exhibit 42.

47.    ZULIN,COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "chenyanglong" of "Fuzhoushi, Fuzhoushi, Fugijan, 100084, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which ZULIN.COM was transferred without authorization, and is the current registrar for ZULIN.COM.  A copy of the current domain name registration record for zulin.com is attached as Exhibit 43.

48.    ZZM.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "wuxizhen" of "wuyidadao, Changshashi, Hunan, 400000, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which ZZM.COM was transferred without authorization, and is the current registrar for ZZM.COM. A copy of the current domain name registration record for zzm.com is attached as Exhibit 44.

49.    Interested party John Doe 1 is a person or persons of unknown identity located in China that gained unauthorized access to and control of Subject Domain Name 744.COM.  The Plaintiff is presently unaware of the true name of John Doe 1.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

50.    Interested party John Doe 2 is a person or persons of unknown identity located in South Korea that gained unauthorized access to and control of Subject Domain Name 028.COM. The Plaintiff is presently unaware of the true name of John Doe 2.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

51.    Interested party John Doe 3 is a person or persons of unknown identity located in

16

Panama that gained unauthorized access to and control of Subject Domain Name

3DCAMERA.COM.  The Plaintiff is presently unaware of the true name of John Doe 3.  The

Plaintiff will amend this Complaint upon discovery of the identities of such fictitious

Defendant.

52.     Interested party John Doe 4 is a person or persons of unknown identity located in

the Bahamas that gained unauthorized access to and control of Subject Domain Name

FNY.COM.  The Plaintiff is presently unaware of the true name of John Doe 4.  The Plaintiff

will amend this Complaint upon discovery of the identities of such fictitious Defendant.

53.     Interested party John Doe 5 is a person or persons of unknown identity located in

Israel that gained unauthorized access to and control of Subject Domain Name FX2.COM.

The Plaintiff is presently unaware of the true name of John Doe 5.  The Plaintiff will amend

this Complaint upon discovery of the identities of such fictitious Defendant.

54.     Interested party John Doe 6 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name

FXF.COM.  The Plaintiff is presently unaware of the true name of John Doe 6.  The Plaintiff

will amend this Complaint upon discovery of the identities of such fictitious Defendant.

55.     Interested party John Doe 7 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name

JTZ.COM.  The Plaintiff is presently unaware of the true name of John Doe 7.  The Plaintiff

will amend this Complaint upon discovery of the identities of such fictitious Defendant.

56.     Interested party John Doe 8 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name

KGJ.COM.  The Plaintiff is presently unaware of the true name of John Doe 8.  The Plaintiff

will amend this Complaint upon discovery of the identities of such fictitious Defendant.

57.      Interested party John Doe 9 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name KMQ.COM.  The Plaintiff is presently unaware of the true name of John Doe 9.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

58.      Interested party John Doe 10 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name KOU.COM.  The Plaintiff is presently unaware of the true name of John Doe 10.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

59.      Interested party John Doe 11 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name KXQ.COM.  The Plaintiff is presently unaware of the true name of John Doe 11.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

60.      Interested party John Doe 12 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name KXW.COM.  The Plaintiff is presently unaware of the true name of John Doe 12.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

61.      Interested party John Doe 13 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name LNM.COM.  The Plaintiff is presently unaware of the true name of John Doe 13.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

62.      Interested party John Doe 14 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name LUOHE.COM.  The Plaintiff is presently unaware of the true name of John Doe 14.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

63.     Interested party John Doe 15 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name MEQ.COM.  The Plaintiff is presently unaware of the true name of John Doe 15.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

64.     Interested party John Doe 16 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name OCU.COM.  The Plaintiff is presently unaware of the true name of John Doe 16.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

65.     Interested party John Doe 17 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name PIXIE.COM.  The Plaintiff is presently unaware of the true name of John Doe 17.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

66.     Interested party John Doe 18 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name QMH.COM.  The Plaintiff is presently unaware of the true name of John Doe 18.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

67.     Interested party John Doe 19 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name RUTEN.COM. The Plaintiff is presently unaware of the true name of John Doe 19. The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

68.   Interested party John Doe 20 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name SDU.COM. The Plaintiff is presently unaware of the true name of John Doe 20. The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

69.   Interested party John Doe 21 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name SQG.COM. The Plaintiff is presently unaware of the true name of John Doe 21. The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

70.   Interested party John Doe 22 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name TAOLV.COM. The Plaintiff is presently unaware of the true name of John Doe 22. The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

71.   Interested party John Doe 23 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name UHW.COM. The Plaintiff is presently unaware of the true name of John Doe 23. The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

72.   Interested party John Doe 24 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name

VCZ.COM.  The Plaintiff is presently unaware of the true name of John Doe 24.  The Plaintiff

will amend this Complaint upon discovery of the identities of such fictitious Defendant.

73.     Interested party John Doe 25 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name

VGJ.COM.  The Plaintiff is presently unaware of the true name of John Doe 25.  The Plaintiff

will amend this Complaint upon discovery of the identities of such fictitious Defendant.

74.     Interested party John Doe 26 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name

WYD.COM.  The Plaintiff is presently unaware of the true name of John Doe 26.  The

Plaintiff will amend this Complaint upon discovery of the identities of such fictitious

Defendant.

75.     Interested party John Doe 27 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name

XAQ.COM.  The Plaintiff is presently unaware of the true name of John Doe 27.  The Plaintiff

will amend this Complaint upon discovery of the identities of such fictitious Defendant.

76.     Interested party John Doe 28 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name

XFF.COM.  The Plaintiff is presently unaware of the true name of John Doe 28.  The Plaintiff

will amend this Complaint upon discovery of the identities of such fictitious Defendant.

77.     Interested party John Doe 29 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name

XSG.COM.  The Plaintiff is presently unaware of the true name of John Doe 29.  The Plaintiff

will amend this Complaint upon discovery of the identities of such fictitious Defendant.

78.     Interested party John Doe 30 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name YCX.COM.  The Plaintiff is presently unaware of the true name of John Doe 30.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

79.     Interested party John Doe 31 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name YEY.COM.  The Plaintiff is presently unaware of the true name of John Doe 31.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

80.     Interested party John Doe 32 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name YGX.COM.  The Plaintiff is presently unaware of the true name of John Doe 32.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

81.     Interested party John Doe 33 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name YJR.COM.  The Plaintiff is presently unaware of the true name of John Doe 33.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

82.     Interested party John Doe 34 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name YJX.COM.  The Plaintiff is presently unaware of the true name of John Doe 34.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

83.     Interested party John Doe 35 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name

YYLZ.COM.  The Plaintiff is presently unaware of the true name of John Doe 35.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

84.     Interested party John Doe 36 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name YQP.COM.  The Plaintiff is presently unaware of the true name of John Doe 36.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

85.     Interested party John Doe 37 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name YQT.COM.  The Plaintiff is presently unaware of the true name of John Doe 37.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

86.     Interested party John Doe 38 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name YRN.COM.  The Plaintiff is presently unaware of the true name of John Doe 38.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

87.     Interested party John Doe 39 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name YTE.COM.  The Plaintiff is presently unaware of the true name of John Doe 39.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

88.     Interested party John Doe 40 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name YYG.COM.  The Plaintiff is presently unaware of the true name of John Doe 40.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

23

89.    Interested party John Doe 41 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name ZDP.COM.  The Plaintiff is presently unaware of the true name of John Doe 41.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

90.    Interested party John Doe 42 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name ZHD.COM.  The Plaintiff is presently unaware of the true name of John Doe 42.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

91.    Interested party John Doe 43 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name ZULIN.COM.  The Plaintiff is presently unaware of the true name of John Doe 43.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

92.    Interested party John Doe 44 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name ZZM.COM.  The Plaintiff is presently unaware of the true name of John Doe 44.  The Plaintiff will amend this Complaint upon discovery of the identities of such fictitious Defendant.

93.    Upon information and belief, based upon the Plaintiff's research and due diligence, most if not all of the addresses presently listed in the domain name registration records for the Defendant domain names are fictitious and do not identify actual addresses.

94.    Upon information and belief, based upon the Plaintiff's research and due diligence, most, if not all, of the names presently listed as the registrants of the Subject Domain Names are fictitious names.

## JURISDICTION, VENUE AND JOINDER

95.     This action arises out of John Does 1-44's violation of the Anticybersquatting

Consumer Protection Act, 15 U.S.C. § 1125(d).

96.     This Court has original jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C.

§§ 1331 and 1338(a), declaratory judgments under 28 U.S.C. §§ 2201 and 2202, supplemental

jurisdiction under 28 U.S.C. § 1367, and *in rem* jurisdiction over the Defendant domain names

pursuant to 15 U.S.C. § 1125(d)(2)(A) and 28 U.S.C. § 1655.

97.     This Court further has original jurisdiction under 28 U.S.C. § 1332, as the parties

are completely diverse in citizenship and the amount in controversy exceeds $75,000.

98.     Jurisdiction and venue are proper in this District pursuant to this Court's

Order of March 27, 2015, in Civil Action No. 3:09-cv-0988L.

(Dkt. 1447).

99.     Upon information and belief, most if not all of the names identified as the

current registrants of the Subject Domain Names are fictitious, most if not all of

the addresses identified in the domain name registrations are fictitious, and

John Does 1-44 are located outside of the United States and are not amenable to in

personam jurisdiction in in the United States. Accordingly, the Plaintiff through due

diligence was not able to find a person(s) who would have been a defendant in this action and

*in rem* jurisdiction over the Subject Domain Names is proper pursuant to 15 U.S.C.

§ 1125(d)(2)(A)(i)(I).

100.    The Plaintiff is providing notice, concurrently with the filing of this

complaint, to Certain Defendants of its intent to proceed *in rem* pursuant to 15 U.S.C.

§ 1125(d)(2)(A)(i)(II)(aa).

101.     Joinder of the Defendants and Subject Domain Names is proper under FED. R. CIV. P. 20(a)(2) in that the claims set forth herein arise out of the same series of transactions and the same questions of law are common to all of the Defendants and Subject Domain Names.

## THE PLAINTIFF'S RIGHTS

102.     Baron, either for himself or on behalf of Ondova, originally registered the Subject Domain Names at various times in or around 2001 and 2004 prior to the interests in such domain names being assigned to Novo Point.

103.     By 2010 the interests and goodwill to the Subject Domain Names was assigned to Novo Point, an e-commerce company that provides services and products to consumers through a network of Internet domain names and associated websites.

104.     Novo Point uses, and its predecessors-in-interest used, Internet domain names and e-commerce websites to advertise products f o r  o t h e r s such as furniture, watches, shoes, computers, groceries, antiques, and eyewear. Novo Point also uses it Internet domain names and e-commerce websites to provide a wide range of useful information, links to other sites, and other online services in the fields of sports, travel, shopping, politics, retail services, and videos. Novo Point, and its predecessors-in-interest, had used the Subject Domain Names in commerce for over 13 years, and had common law rights in the subject marks which, with the associated goodwill, were assigned to the Plaintiff.

105.     Baron often c h o s e, and Novo Point and its predecessors-in-interest often uses and/or used three-letter and three-number domain names as initialisms and acronyms for its products and services, and as the trademark names of its websites, because such letter and number strings are the subject of frequent Internet searches by consumers and

are therefore valuable as e-commerce site names.

106.     On or about December 24, 2015, Novo Point assigned the Subject Domain Names, and their associated trademarks and goodwill, to the Plaintiff.  Included in the assignment was the right for the Plaintiff to sue and to recover possession of the Domain Names and recover damages for past, present and future infringements, dilution, misuse, misappropriation and other violations.

107.     Novo Point was the named registrant of the 028.com domain name and used the 028.com domain name to provide visitors with useful information, links to other sites, and/or other online services until the improper transfer of the domain name in 2012.

108.     Novo Point used the 744.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view 744.COM as a symbol of origin, and consumers came to identify 744.COM as a source indicator.

109.     Novo Point used the 744.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the 744.COM domain name.

110.     John Doe 1's misuse of the 744.COM domain name further demonstrates that the 744.COM mark is entitled to trademark protection.

111.     Novo Point used the 028.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view 028.COM as a symbol of origin, and consumers came to identify 028.COM as a source indicator.

27

112.      Novo Point used the 028.COM domain name in U.S. Commerce in
association with the provision of services to Internet consumers and Novo Point was entitled
to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark
protection in the 028.COM domain name.

113.      John Doe 2's misuse of the 028.COM domain name further demonstrates that
the 028.COM mark is entitled to trademark protection.

114.      Novo Point used the 3 DCAMERA.COM domain name as more than an
Internet address. Novo Point used and promoted the domain name in a manner that made
such a visual impression that viewers would view 3 DCAMERA.COM as a symbol of origin,
and consumers came to identify 3 DCAMERA.COM as a source indicator.

115.      Novo Point used the 3 DCAMERA.COM domain name in U.S. Commerce
in association with the provision of services to Internet consumers and Novo Point was
entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark
protection in the 3 DCAMERA.COM domain name.

116.      John Doe 3's misuse of the 3 DCAMERA.COM domain name further
demonstrates that the 3 DCAMERA.COM mark is entitled to trademark protection.

117.      Novo Point used the F N Y .COM domain name as more than an Internet
address. Novo Point used and promoted the domain name in a manner that made such a
visual impression that viewers would view F N Y .COM as a symbol of origin, and
consumers came to identify F N Y .COM as a source indicator.

118.      Novo Point used the FNY.COM domain name in U.S. Commerce in
association with the provision of services to Internet consumers and Novo Point was entitled
to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark

protection in the FNY.COM domain name.

119.   John Doe 4's misuse of the FNY.COM domain name further demonstrates that the FNY.COM mark is entitled to trademark protection.

120.   Novo Point used the FX2.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view FX2.COM as a symbol of origin, and consumers came to identify FX2.COM as a source indicator.

121.   Novo Point used the FX2.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the FX2.COM domain name.

122.   John Doe 5's misuse of the FX2.COM domain name further demonstrates that the FX2.COM mark is entitled to trademark protection.

123.   Novo Point used the FXF.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view FXF.COM as a symbol of origin, and consumers came to identify FXF.COM as a source indicator.

124.   Novo Point used the FXF.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the FXF.COM domain name.

125.   John Doe 6's misuse of the FXF.COM domain name further demonstrates that the FXF.COM mark is entitled to trademark protection.

126.     Novo Point used the JTZ.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view JTZ.COM as a symbol of origin, and consumers came to identify JTZ.COM as a source indicator.

127.     Novo Point used the JTZ.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the JTZ.COM domain name.

128.     John Doe 7's misuse of the JTZ.COM domain name further demonstrates that the JTZ.COM mark is entitled to trademark protection.

129.     Novo Point used the KGJ.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view KGJ.COM as a symbol of origin, and consumers came to identify KGJ.COM as a source indicator.

130.     Novo Point used the KGJ.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the KGJ.COM domain name.

131.     John Doe 8's misuse of the KGJ.COM domain name further demonstrates that the KGJ.COM mark is entitled to trademark protection.

132.     Novo Point used the KMQ.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view KMQ.COM as a symbol of origin, and

consumers came to identify KMQ.COM as a source indicator.

133.     Novo Point used the KMQ.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the KMQ.COM domain name.

134.     John Doe 9's misuse of the KMQ.COM domain name further demonstrates that the KMQ.COM mark is entitled to trademark protection.

135.     Novo Point used the KOU.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view KOU.COM as a symbol of origin, and consumers came to identify KOU.COM as a source indicator.

136.     Novo Point used the KOU.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the KOU.COM domain name.

137.     John Doe 10's misuse of the KOU.COM domain name further demonstrates that the KOU.COM mark is entitled to trademark protection.

138.     Novo Point used the KXQ.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view KXQ.COM as a symbol of origin, and consumers came to identify KXQ.COM as a source indicator.

139.     Novo Point used the KXQ.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled

to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark

protection in the KXQ.COM domain name.

140.    John Doe 11's misuse of the KXQ.COM domain name further demonstrates

that the KXQ.COM mark is entitled to trademark protection.

141.    Novo Point used the KXW.COM domain name as more than an Internet

address. Novo Point used and promoted the domain name in a manner that made such a

visual impression that viewers would view KXW.COM as a symbol of origin, and

consumers came to identify KXW.COM as a source indicator.

142.    Novo Point used the KXW.COM domain name in U.S. Commerce in

association with the provision of services to Internet consumers and Novo Point was entitled

to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark

protection in the KXW.COM domain name.

143.    John Doe 12's misuse of the KXW.COM domain name further demonstrates

that the KXW.COM mark is entitled to trademark protection.

144.    Novo Point used the LNM.COM domain name as more than an Internet

address. Novo Point used and promoted the domain name in a manner that made such a

visual impression that viewers would view LNM.COM as a symbol of origin, and consumers

came to identify LNM.COM as a source indicator.

145.    Novo Point used the LNM.COM domain name in U.S. Commerce in

association with the provision of services to Internet consumers and Novo Point was entitled

to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark

protection in the LNM.COM domain name.

146.    John Doe 13's misuse of the LNM.COM domain name further demonstrates

that the LNM.COM mark is entitled to trademark protection.

147.   Novo Point used the LUOHE.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view LUOHE.COM as a symbol of origin, and consumers came to identify LUOHE.COM as a source indicator.

148.   Novo Point used the LUOHE.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the LUOHE.COM domain name.

149.   John Doe 14's misuse of the LUOHE.COM domain name further demonstrates that the LUOHE.COM mark is entitled to trademark protection.

150.   Novo Point used the MEQ.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view MEQ.COM as a symbol of origin, and consumers came to identify MEQ.COM as a source indicator.

151.   Novo Point used the MEQ.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the MEQ.COM domain name.

152.   John Doe 15's misuse of the MEQ.COM domain name further demonstrates that the MEQ.COM mark is entitled to trademark protection.

153.   Novo Point used the OCU.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a

visual impression that viewers would view OCU.COM as a symbol of origin, and consumers came to identify OCU.COM as a source indicator.

154.    Novo Point used the OCU.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the OCU.COM domain name.

155.    John Doe 16's misuse of the OCU.COM domain name further demonstrates that the OCU.COM mark is entitled to trademark protection.

156.    Novo Point used the PIXIE.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view PIXIE.COM as a symbol of origin, and consumers came to identify PIXIE.COM as a source indicator.

157.    Novo Point used the PIXIE.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the PIXIE.COM domain name.

158.    John Doe 17's misuse of the PIXIE.COM domain name further demonstrates that the PIXIE.COM mark is entitled to trademark protection.

159.    Novo Point used the QMH.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view QMH.COM as a symbol of origin, and consumers came to identify QMH.COM as a source indicator.

160.      Novo Point used the QMH.COM domain name in U.S. Commerce in
association with the provision of services to Internet consumers and Novo Point was entitled
to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark
protection in the QMH.COM domain name.

161.      John Doe 18's misuse of the QMH.COM domain name further demonstrates
that the QMH.COM mark is entitled to trademark protection.

162.      Novo Point used the RUTEN.COM domain name as more than an Internet
address. Novo Point used and promoted the domain name in a manner that made such a
visual impression that viewers would view RUTEN.COM as a symbol of origin, and
consumers came to identify RUTEN.COM as a source indicator.

163.      Novo Point used the RUTEN.COM domain name in U.S. Commerce in
association with the provision of services to Internet consumers and Novo Point was entitled
to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark
protection in the RUTEN.COM domain name.

164.      John Doe 19's misuse of the RUTEN.COM domain name further
demonstrates that the RUTEN.COM mark is entitled to trademark protection.

165.      Novo Point used the SDU.COM domain name as more than an Internet
address. Novo Point used and promoted the domain name in a manner that made such a
visual impression that viewers would view SDU.COM as a symbol of origin, and consumers
came to identify SDU.COM as a source indicator.

166.      Novo Point used the SDU.COM domain name in U.S. Commerce in
association with the provision of services to Internet consumers and Novo Point was entitled

to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the SDU.COM domain name.

167.    John Doe 20's misuse of the SDU.COM domain name further demonstrates that the SDU.COM mark is entitled to trademark protection.

168.    Novo Point used the SQG.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view SQG.COM as a symbol of origin, and consumers came to identify SQG.COM as a source indicator.

169.    Novo Point used the SQG.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the SQG.COM domain name.

170.    John Doe 21's misuse of the SQG.COM domain name further demonstrates that the SQG.COM mark is entitled to trademark protection.

171.    Novo Point used the TAOLV.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view TAOLV.COM as a symbol of origin, and consumers came to identify TAOLV.COM as a source indicator.

172.    Novo Point used the TAOLV.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the TAOLV.COM domain name.

173.     John Doe 22's misuse of the TAOLV.COM domain name further demonstrates that the TAOLV.COM mark is entitled to trademark protection.

174.     Novo Point used the UHW.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view UHW.COM as a symbol of origin, and consumers came to identify UHW.COM as a source indicator.

175.     Novo Point used the UHW.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the UHW.COM domain name.

176.     John Doe 23's misuse of the UHW.COM domain name further demonstrates that the UHW.COM mark is entitled to trademark protection.

177.     Novo Point used the VCZ.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view VCZ.COM as a symbol of origin, and consumers came to identify VCZ.COM as a source indicator.

178.     Novo Point used the VCZ.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the VCZ.COM domain name.

179.     John Doe 24's misuse of the VCZ.COM domain name further demonstrates that the VCZ.COM mark is entitled to trademark protection.

180.     Novo Point used the VGJ.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view VGJ.COM as a symbol of origin, and consumers came to identify VGJ.COM as a source indicator.

181.     Novo Point used the VGJ.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the VGJ.COM domain name.

182.     John Doe 25's misuse of the VGJ.COM domain name further demonstrates that the VGJ.COM mark is entitled to trademark protection.

183.     Novo Point used the WYD.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view WYD.COM as a symbol of origin, and consumers came to identify WYD.COM as a source indicator.

184.     Novo Point used the WYD.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the WYD.COM domain name.

185.     John Doe 26's misuse of the WYD.COM domain name further demonstrates that the WYD.COM mark is entitled to trademark protection.

186.     Novo Point used the XAQ.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a

38

visual impression that viewers would view XAQ.COM as a symbol of origin, and consumers came to identify XAQ.COM as a source indicator.

187.     Novo Point used the XAQ.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the XAQ.COM domain name.

188.     John Doe 27's misuse of the XAQ.COM domain name further demonstrates that the XAQ.COM mark is entitled to trademark protection.

189.     Novo Point used the XFF.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view XFF.COM as a symbol of origin, and consumers came to identify XFF.COM as a source indicator.

190.     Novo Point used the XFF.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the XFF.COM domain name.

191.     John Doe 28's misuse of the XFF.COM domain name further demonstrates that the XFF.COM mark is entitled to trademark protection.

192.     Novo Point used the XSG.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view XSG.COM as a symbol of origin, and consumers came to identify XSG.COM as a source indicator.

193.     Novo Point used the XSG.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the XSG.COM domain name.

194.     John Doe 29's misuse of the XSG.COM domain name further demonstrates that the XSG.COM mark is entitled to trademark protection.

195.     Novo Point used the YCX.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YCX.COM as a symbol of origin, and consumers came to identify YCX.COM as a source indicator.

196.     Novo Point used the YCX.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YCX.COM domain name.

197.     John Doe 30's misuse of the YCX.COM domain name further demonstrates that the YCX.COM mark is entitled to trademark protection.

198.     Novo Point used the YEY.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YEY.COM as a symbol of origin, and consumers came to identify YEY.COM as a source indicator.

199.     Novo Point used the YEY.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled

to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YEY.COM domain name.

200.     John Doe 31's misuse of the YEY.COM domain name further demonstrates that the YEY.COM mark is entitled to trademark protection.

201.     Novo Point used the YGX.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YGX.COM as a symbol of origin, and consumers came to identify YGX.COM as a source indicator.

202.     Novo Point used the YGX.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YGX.COM domain name.

203.     John Doe 32's misuse of the YGX.COM domain name further demonstrates that the YGX.COM mark is entitled to trademark protection.

204.     Novo Point used the YJR.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YJR.COM as a symbol of origin, and consumers came to identify YJR.COM as a source indicator.

205.     Novo Point used the YJR.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YJR.COM domain name.

41

206.     John Doe 33's misuse of the YJR.COM domain name further demonstrates that the YJR.COM mark is entitled to trademark protection.

207.     Novo Point used the YJX.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YJX.COM as a symbol of origin, and consumers came to identify YJX.COM as a source indicator.

208.     Novo Point used the YJX.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YJX.COM domain name.

209.     John Doe 34's misuse of the YJX.COM domain name further demonstrates that the YJX.COM mark is entitled to trademark protection.

210.     Novo Point used the YLZ.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YLZ.COM as a symbol of origin, and consumers came to identify YLZ.COM as a source indicator.

211.     Novo Point used the YLZ.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YLZ.COM domain name.

212.     John Doe 35's misuse of the YLZ.COM domain name further demonstrates that the YLZ.COM mark is entitled to trademark protection.

213.    Novo Point used the Y Q P .COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YQP.COM as a symbol of origin, and consumers came to identify YQP.COM as a source indicator.

214.    Novo Point used the YQP.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YQP.COM domain name.

215.    John Doe 36's misuse of the YQP.COM domain name further demonstrates that the YQP.COM mark is entitled to trademark protection.

216.    Novo Point used the YQT.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YQT.COM as a symbol of origin, and consumers came to identify YQT.COM as a source indicator.

217.    Novo Point used the YQT.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YQT.COM domain name.

218.    John Doe 37's misuse of the YQT.COM domain name further demonstrates that the YQT.COM mark is entitled to trademark protection.

219.    Novo Point used the YRN.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a

visual impression that viewers would view YRN.COM as a symbol of origin, and consumers came to identify YRN.COM as a source indicator.

220.    Novo Point used the YRN.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YRN.COM domain name.

221.    John Doe 38's misuse of the YRN.COM domain name further demonstrates that the YRN.COM mark is entitled to trademark protection.

222.    Novo Point used the YTE.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YTE.COM as a symbol of origin, and consumers came to identify YTE.COM as a source indicator.

223.    Novo Point used the YTE.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YTE.COM domain name.

224.    John Doe 39's misuse of the YTE.COM domain name further demonstrates that the YTE.COM mark is entitled to trademark protection.

225.    Novo Point used the YYG.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YYG.COM as a symbol of origin, and consumers came to identify YYG.COM as a source indicator.

44

226.    Novo Point used the YYG.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YYG.COM domain name.

227.    John Doe 40's misuse of the YYG.COM domain name further demonstrates that the YYG.COM mark is entitled to trademark protection.

228.    Novo Point used the ZDP.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view ZDP.COM as a symbol of origin, and consumers came to identify ZDP.COM as a source indicator.

229.    Novo Point used the ZDP.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the ZDP.COM domain name.

230.    John Doe 41's misuse of the ZDP.COM domain name further demonstrates that the ZDP.COM mark is entitled to trademark protection.

231.    Novo Point used the ZHD.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view ZHD.COM as a symbol of origin, and consumers came to identify ZHD.COM as a source indicator.

232.    Novo Point used the ZHD.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled

45

to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the ZHD.COM domain name.

233.    John Doe 42's misuse of the ZHD.COM domain name further demonstrates that the ZHD.COM mark is entitled to trademark protection.

234.    Novo Point used the ZULIN.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view ZULIN.COM as a symbol of origin, and consumers came to identify ZULIN.COM as a source indicator.

235.    Novo Point used the ZULIN.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the ZULIN.COM domain name.

236.    John Doe 43's misuse of the ZULIN.COM domain name further demonstrates that the ZULIN.COM mark is entitled to trademark protection.

237.    Novo Point used the ZZM.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view ZZM.COM as a symbol of origin, and consumers came to identify ZZM.COM as a source indicator.

238.    Novo Point used the ZZM.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the ZZM.COM domain name.

239.     John Doe 44's misuse of the ZZM.COM domain name further demonstrates that the ZZM.COM mark is entitled to trademark protection.

## UNLAWFUL TRANSFER AND REGISTRATION
## OF THE SUBJECT DOMAIN NAMES

240.      By 2010 Baron, among others, was involved in a litigation in the United States District Court for the Northern District of Texas regarding domain names.  The Subject Domain Names were not the subject of the complaint in that action.  Then, in November 2010, the Northern District of Texas improperly placed the Subject Domain Names, and other domain names, under the control of a receivership.  The United States Court of Appeal for the Fifth Circuit ultimately issued an opinion and order on December 18, 2012 holding that the District Court lacked subject matter jurisdiction to enter the receivership and the order appointing the receivership was vacated.  The Fifth Circuit's opinion further required the Northern District of Texas to wind-down the receivership.  The Fifth Circuit issued its mandate on this opinion and order on April 19, 2013.

241.      From about February 2011 to at least May 2012, while the appeal to the Fifth Circuit was pending but prior to the receivership being reversed and vacated by the Fifth Circuit, the Northern District of Texas issued several orders permitting the receivership to sell at least some of the Subject Domain Names (the "Improper Receivership Sale Orders").  Baron and Novo Point were not informed which domain names were included or contemplated by any of the Improper Receivership Sale Orders, when they were sold or to whom they were sold at the time of any of the sales.  As a result of the Improper Receivership Sale Orders, each of the Subject Domain Names were sold by the receivership, without the authorization of Baron or Novo Point (the "Transfers of Control").

242.    The Fifth Circuit issued mandates in or about April 2013, reversing the Improper
Receivership Sale Orders, based on its ruling that the receivership was improper, the Northern
District of Texas lacked subject matter jurisdiction to order the receivership, and reversing and
vacating the receivership.

243.    Although the Fifth Circuits' mandates were issued in or about April, 2013, the
District Court did not wind-down and terminate the receivership until March 2015.

244.    On information and belief, based upon the due diligence research of the Plaintiff,
the Transfers of Control were enabled by Damon Nelson ("Nelson"), an individual appointed by
the Northern District of Texas to assist the receivership in valuing and managing Baron's and
Novo Point's domain name portfolio and appointed Nelson as "the permanent Manager" of Novo
Point after a motion by the receivership to do so.   Neither Baron nor Novo Point ever gave,
offered, or otherwise permitted Nelson to act with authority to effect the sale or transfer of any of
Baron's or Novo Point's domain names, including the Subject Domain Names.  Novo Point never
consented to the appointment of Nelson as "Permanent Manager."

245.    Upon information and belief one or more unknown individuals or entities (the
"Transferees") solicited Nelson, will full knowledge of Baron's and/or Novo Point's ownership of
and trademark rights in the Subject Domain Names and with full knowledge of Nelson's lack of
authority.

246.    Upon information and belief the Transferees were aware of Baron's and Novo
Point's claims to ownership of the Subject Domain Names and that Baron and Novo Point had
appealed the seizure of the domain names, based on the court's lack of jurisdiction over those
assets, and that an appeal had been pending for nearly two years and would be determined at any
moment.

247.     Upon information and belief the Transfers of Control were made without any purported transfer of goodwill or trademark rights, with an express disclaimer of any warranties, and with the Transferees' knowledge of a) Baron's and/or Novo Point's superior rights in the Subject Domain Names; b) the likely lack of authority for transfer of any rights concerning the Subject Domain Names; c) the appeal pending at the time of the Transfers of Control; 4) the fact that a reversal by the Fifth Circuit Court of Appeals would likely render any transfer void; and 5) the expectation that Baron and Novo Point would initiate legal action against the transferees to reclaim their property.

248.     Upon information and belief the Transferees requested that they receive representations and warranties from Nelson regarding the title of the Subject Domain Names and indemnification from claims of Baron and Novo Point and that Nelson refused to provide same.

249.     Upon information and belief, the consideration given to Nelson, and ultimately placed into back accounts under the control of the receivership, for the Transfers of Control was less than 1 % of the value of the Subject Domain Names.

250.     On November 9, 2012, the Fifth Circuit enjoined the closing of any sales of Baron and Novo Point's domain names prior to November 30, 2012.

251.     Upon information and belief, when the Transferees obtained possession and control of the Subject Domain Names, it changed the registrant information and the technical settings for the domain names were changed thereby disabling Novo Point's associated e-commerce websites.

252.     Upon information and belief, the Transferees offered the Subject Domain Names for sale.

253.     The registration and use of the Subject Domain Names by the Transferees and/or the Defendants is without authorization from Baron, Novo Point or the Plaintiff.

254.     The Subject Domain Names do not reflect the trademark or intellectual property rights of the Defendants.

255.     Upon information and belief and based upon the Plaintiff's due diligence, the Subject Domain Names do not reflect the legal name of the current registrant(s) of the domain names.

256.     Upon information and belief most, if not all, of the current registrants of the Subject Domain Names have not engaged in bona fide noncommercial or fair use of Baron's, Novo Points' or the Plaintiff's trademarks in a website accessible under the Subject Domain Names.

257.     Upon information and belief the Transferees and some, if not all, of the Defendants who currently control the Subject Domain Names offered or are offing to sell the Subject Domain Names to third parties for financial gain without having used, or having an intent to use, the domain names in the bona fide offering of any goods or services. Many of the web pages displayed at the Subject Domain Names advertise the domain names for sale.

258.     The registrants provided material and misleading false contact information in the domain name registrations when changing the registrant for the Subject Domain Names from Novo Point to the current registrant(s).

259.     The Transferees and the Defendants transferred the Subject Domain Names without authorization from Baron, Novo Point or the Plaintiff and thereby registered multiple domain names which assignee knew were identical to, and reflective of, Novo Point's, and the Plaintiff's, trademarks.

## FIRST CLAIM FOR RELIEF

### Violation of the Federal Anticybersquatting
### Consumer Protection Act

260.     The Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1-259, as though fully set forth herein.

261.     The Plaintiff's trademarks are famous and/or distinctive and were famous and/or distinctive prior to the time that control of the Subject Domain Names was transferred away from the Plaintiff's predecessor-in-interest, Novo Point, without authorization, to the Transferees.

262.     The Plaintiff's trademarks are famous and/or distinctive and were famous and/or distinctive prior to the time that the Defendants John Does 1-44 transferred the Subject Domain Names aware from the Plaintiff or Novo Point without authorization and thereby registered the Subject Domain Names.

263.     The aforesaid acts by Transferees constitute registration, trafficking, or use of domain names that are identical to the Plaintiff's trademarks, with bad faith intent to profit therefrom.

264.     The aforesaid acts by the Defendants John Does 1-44 constitute registration, trafficking, or use of domain names that are identical to the Plaintiff's trademarks, with bad faith intent to profit therefrom.

265.     The Plaintiff, despite its due diligence, has been unable to find a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(2)(A)(i)(I).

266.     The aforesaid acts by the registrant(s) of the domain names constitute

unlawful cyberpiracy in violation of the Anti-Cybersquatting Consumer Protection Act,

15 U.S.C. § l125(d)(l).

267.     The aforesaid acts have caused, and are causing, great and irreparable harm to

the Plaintiff and the public. Unless permanently restrained and enjoined by this Court, said

irreparable harm will continue. Thus, pursuant to 15 U.S.C. § l125(d)(2)(D)(i), the Plaintiff is

entitled to an order transferring the Subject Domain Name registrations to the Plaintiff.

## SECOND CLAIM FOR RELIEF

### Quiet Title

268.     The Plaintiff repeats and realleges each and every allegation set forth in the

foregoing paragraphs 1-267, as though fully set forth herein.

269.     The Plaintiff has valid legal and equitable title to the Subject Domain Names.

270.     The Plaintiff's title to the Subject Domain Names is superior to any claim of

title by the John Does 1-44.

271.     Through their control of the Subject Domain Names, John Does 1-44 have

asserted a claim that constitutes a cloud on the Plaintiff's title.

272.     The Plaintiff's good title to the Subject Domain Names should not be

subjected to various futures claims against that title.

## THIRD CLAIM FOR RELIEF

### Conversion

273.     The Plaintiff repeats and realleges each and every allegation set forth in the

foregoing paragraphs 1-272, as though fully set forth herein.

274.     The Plaintiff has property rights in and is the owner of the Subject Domain

Names.

275.     The Defendants have taken control of the Subject Domain Names and are

wrongfully exercising control and authority over the Subject Domain Names.

276.     The control and authority exercised by the Defendants deprives the Plaintiff

of control and the income and business generated from the Subject Domain Names.

277.     The Defendants are wrongfully exerting domino over the Plaintiff's property

in denial of the Plaintiff's rights.

## FOURTH CLAIM FOR RELIEF

### Declaratory Judgment

278.  The Plaintiff repeats and realleges each and every allegation set forth in the

foregoing paragraphs 1-277, as though fully set forth herein.

Each of the foregoing paragraphs is incorporated by reference.

279.  The Plaintiff asks this Court to declare that:

(a)  The Plaintiff is the lawful owner of the Subject Domain Names with the only

right to use, possess, and control the Subject Domain Names and the Plaintiff is entitled to a

Declaration from the Court declaring the same; and

(b)  The Defendants do not have any right whatsoever to use, possess, or control the

Subject Domain Names and the Plaintiff is entitled to a Declaration from the Court declaring the

same.

280.  An actual and justiciable controversy exists between Defendants and Plaintiff as to

who is entitled to use, possess and control the Subject Domain Names and Defendants do not.

## FIFTH CLAIM FOR RELIEF

### Violation of the Texas Theft Liability Act

281.  The Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1-280, as though fully set forth herein.

282.  Each of the foregoing paragraphs is incorporated by reference.

283.  The Defendants unlawfully appropriated the Subject Domain Names with the intent to deprive the rightful owner of the property, the Plaintiff, without the Plaintiff's effective consent.

284.  The Defendants brought about a transfer or purported transfer of title to or other nonpossessory interest in property, whether to the Defendants or another, or, did acquire or otherwise exercise control over property other than real property.

285.  The Defendants acted intentionally with respect to the nature of their conduct as their conscious objective and desire was to effectuate the transfer of the Subject Domain Names to themselves or another in violation of the Plaintiff's greater right to possession than the Defendants.

286.  The Plaintiff is entitled to reasonable and necessary attorney's fees and court costs.


## SIXTH CLAIM FOR RELIEF

### Unjust Enrichment

287.  The Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1-286, as though fully set forth herein.

288.  As a result of their intentional wrongful actions, all the Defendants were unjustly enriched by the procurement of the Subject Domain Names if they are not disgorged of same. Without disgorgement, the Defendants would be allowed to keep the valuable Subject Domain Names.

289.  Under Texas law, and under fundamental principles of justice and fairness, the Plaintiff has suffered pecuniary harm and requests the Defendants be ordered to disgorge the unjustly obtained Subject Domain Names.

## SEVENTH CLAIM FOR RELIEF

### Misappropriation

290.  The Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1-289, as though fully set forth herein.

291.  The acquisition of the Subject Domain Names involved extensive time, labor, skill and money which created the trade value the Defendants misappropriated in violation of the Plaintiff's property right.

292.  The Defendants gained a special advantage over the Plaintiff because the Defendants were not burdened by the development expenses incurred by the Plaintiff's predecessors-in-interest.

293.  The Defendants have appropriated the trade value of the Subject Domain names at little or no cost and have, in essence, "reaped where they have not sown."

294.  The Defendants' actions have injured the Plaintiff as the Plaintiff is unable to use and exercise control over the Subject Domain Names.

295.  The Plaintiff is being harmed through the loss of prospective traffic to his business, loss of income and loss of business and personal emails resulting in loss of prospective business opportunities unless enjoined.

## EIGHTH CLAIM FOR RELIEF

### Fraudulent Conveyance

296.  The Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1-295, as though fully set forth herein.

297.  The Defendants did not take the Subject Domain Names in good faith or for a reasonable value.

298.     Transfers of Control were not within the range of values for which the Defendants would have sold the assets in an arm's length transaction, receiving a reasonably equivalent value in exchange for the transfer.

299.     The Defendants had actual or constructive knowledge of the Plaintiff's predecessors-in-interests' rights in and to the Subject Domain Names.at the time the Defendants entered into transactions to obtain control of them.

300.     The Defendants engaged in the transactions with Nelson with full knowledge that Nelson may not have any authority to transfer or convey any rights.

301.     The Transfers of Control to the Defendants were made without any authorization from the Plaintiff, Baron, or Novo Point and are tantamount to thefts.

302.     Transferees acquired no rights in and to the Subject Domain Names and Third Party Transferees acquired no greater rights than the original Transferees.

303.     As a result of the transfers of the Subject Domain Names, the debtor became insolvent.

304.     The Plaintiff is entitled to avoidance of the transfers of the Subject Domain Names.

## **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, the Plaintiff respectfully requests of this Court:

1.     That judgment be entered in favor of the Plaintiff on its claims for violation of the Anticybersquatting Consumer Protection Act and for relief under the laws of quiet title and conversion; and

2.      Enter an order declaring that the Plaintiff, Associated Recovery, LLC, is the only entity with any rights to ownership of the Subject Domain Names; and

3.      Enter an order declaring that the Defendants do not have any rights to the Subject Domain Names; and

4.      Enter an order directing the Subject Domain Names be promptly transferred to the Plaintiff; and

5.      Enter an order that any other domain names registered by the Defendants of the Subject Domain Names that resemble or include the Plaintiffs' trademarks be transferred to the Plaintiff; and

6.      Award the Plaintiff his fees and costs, including reasonable attorney fees, in connection with this action pursuant to 15 U.S.C. 1117(a); and

7.      That the Court grant such other relief to the Plaintiff as the Court deems just and proper.

Dated:  May 20, 2016                    Respectfully submitted,

                                         /s/ Anthony Famer
                                        Anthony Marquis Farmer  (TSB 24057844)
                                        THE FARMER LAW GROUP, PLLC
                                        400 South Zang Avenue, Suite 350
                                        Dallas, Texas 75208-6604
                                        Telephone (214) 948-8333
                                        afarmer@farmerlawgroup.com
                                                and
                                        Paul Grandinetti
                                        Rebecca J. Stempien Coyle
                                        LEVY & GRANDINETTI
                                        1120 Connecticut Avenue, N.W., Suite 304
                                        Washington, D.C. 20036
                                        Telephone (202) 429-4560
                                        Facsimile (202) 429-4564
                                        mail@levygrandinetti.com
                                        Attorneys for Associated Recovery, LLC

# Exhibit C

**Geiszler, Steven M.**

**Subject:**                          FW: Exclusive LLL.com Portfolio Pricing



The Premium Domain eNewsletter          ryan@outcomebrokerage.com          404-713-2126

Hello Friends,



Below is an update on our new **Exclusive Domain Portfolio** for sale.  Please respond to this email to inquire on the most recent offers and asking prices for these domains.  Please direct all inquiries to ryan@outcomebrokerage.com.

**744.com**
9 bids

**FXF.com**
6 bids

**KOU.com**
9 bids

**YJX.com**
8 bids

**SDU.com**
4 bids

**UHW.com**
3 bids

**YEY.com**
7 bids

**VGJ.com**

3 bids

**Ruten.com**

3 bids

Best Regards,

**Ryan Colby**

ryan@outcomebrokerage.com

**404.713.2126**

LinkedIN

Twitter

Facebook

Forward to a Friend    |    Follow us on Twitter    |    Follow us on Facebook    |    Subscribe

*why did I get this?*    unsubscribe from this list    update subscription preferences

Outcome Brokerage, LLC · 3567 S. Fed. Highway, Suite #H · Boynton Beach, FL 33435 · USA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| ASSOCIATED RECOVERY, LLC, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-01723-AJT-JFA |
| | ) | |
| JOHN DOES 1-44, | ) | |
| | ) | |
| *Defendants in rem.* | ) | |

### NOTICE OF HEARING

PLEASE TAKE NOTICE that Defendant 744.com, through its counsel, on July 29, 2016,

at 10:00 am, or as soon thereafter as counsel may be heard, will present its Motion to Set Aside

Default Judgment and Return Domain Name to Prior Owner, filed and served on the Plaintiff on

July 19, 2016, and request an Order granting said Motion.

Dated:  July 19, 2016

Of Counsel:

Steven M. Geiszler
Zunxuan D. Chen
Dentons US LLP
2000 McKinney Avenue
Suite 1900
Dallas, TX 75201-1858
214-259-0900 (phone)
214-259-0910 (fax)
steven.geiszler@dentons.com
digger.chen@dentons.com

Respectfully submitted,

*/s/ Eric Y. Wu*
Lora A. Brzezynski, VSB No. 36151
Claire M. Maddox, VSB No. 71230
Eric Y. Wu, VSB No. 82829
Dentons US LLP
1900 K Street, NW
Washington, DC  20006
202-496-7500 (phone)
202-496-7756 (fax)
lora.brzezynski@dentons.com
claire.maddox@dentons.com
eric.wu@dentons.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 19th day of July 2016, I will electronically

file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a

notification of such filing (NEF) to the following:

Rebecca J. Stempien Coyle (VSB 71483)
Levy & Grandinetti
Suite 304
1120 Connecticut Ave., N.W.
Washington, D.C. 20036
(202) 429-4560
Fax: (202) 429-4564
mail@levygrandinetti.com

*Counsel for Associated Recovery, LLC*


Dated:  July 19, 2016


*/s/ Eric Y. Wu*
_____
Eric Y. Wu, VSB No. 82829
Dentons US LLP
1900 K Street, NW
Washington, DC  20006
202-496-7500 (phone)
202-496-7756 (fax)
eric.wu@dentons.com

*Counsel for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ASSOCIATED RECOVERY, LLC,                )
                                         )
            Plaintiff,                   )
                                         )
v.                                       )        Civil Action No. 1:15-cv-1723 (AJT/JFA)
                                         )
JOHN DOES 1 – 44, *et al.*,              )
                                         )
            Defendants.                  )
_____)

## ORDER

Pending before the Court are certain defendants' Motions to Set Aside Judgment [Doc.

Nos. 61, 64] (the "Motions"). The Motions are currently scheduled for a hearing on Friday, July

29, 2016. Because this hearing date presents a scheduling conflict with the Court, it is hereby

ORDERED that the hearing on the Motions [Doc. Nos. 61, 64], currently scheduled for

Friday, July 29, 2016 be, and the same hereby is, CONTINUED to **Friday, August 5, 2016 at**

**10:00 a.m.**

The Clerk is directed to forward a copy of this Order to all counsel of record.

_____
/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
July 22, 2016

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

Associated Recovery, LLC,      )
                                          )
             Plaintiff,     )
                                          )    No. 1:15-cv-1723-AJT-JFA
     v.                       )
                                          )
John Does 1-44,           )
                                          )
             Defendants.    )
                                          )

In re:

| 744.COM | LNM.COM | VGJ.COM | YQT.COM |
|---------|---------|---------|---------|
| 028.COM | LUOHE.COM | WYD.COM | YRN.COM |
| 3DCAMERA.COM | MEQ.COM | XAQ.COM | YTE.COM |
| FNY.COM | OCU.COM | XFF.COM | YYG.COM |
| FX2.COM | PIXIE.COM | XSG.COM | ZDP.COM |
| FXF.COM | QMH.COM | YCX.COM | ZHD.COM |
| JTZ.COM | RUTEN.COM | YEY.COM | ZULIN.COM |
| KGJ.COM | SDU.COM | YGX.COM | ZZM.COM |
| KMQ.COM | SQG.COM | YJR.COM | |
| KOU.COM | TAOLV.COM | YJX.COM | |
| KXQ.COM | UHW.COM | YLZ.COM | |
| KXW.COM | VCZ.COM | YQP.COM | |

### PLAINTIFF'S RESPONSE TO MOTION TO SET ASIDE
### DEFAULT JUDGMENTS REGARDING VGJ.COM AND YJX.COM
### AND RETURN THOSE DOMAIN NAMES TO THEIR PRIOR OWNERS

The Plaintiff Associated Recovery, LLC (the "Plaintiff" or "Associated Recovery"), by counsel, hereby submits this response to Defendants' Motion to Set Aside Default Judgments Regarding VGJ.com and YJX.com and Return Those Domain Names to Their Prior Owners ("VGJ and YJX's Motion to Set Aside Judgment").  ECF Nos. 61 and 62.

The Plaintiff acknowledges this Court's recent decisions on other motions to set aside default judgments and the transfer of those previously "defaulted" defendants to the Northern District of Texas, Case No. 3:16-cv-1025-L.  As the Plaintiff's counsel previously discussed with counsel for VGJ and YJX, the Plaintiff largely does not object to the setting aside of the default judgment and transfer of the matter to the Northern District of Texas.  However, the Plaintiff *does* object to the transfer of the domain names VGJ.com and YJX.com to the their alleged "prior owners."

The Plaintiff agrees that it will not sell or otherwise transfer VGJ.com until a final resolution is reached in this matter.  In regard to YJX.com, the Plaintiff's counsel has recently learned that the domain name was sold.  Therefore, if the Court grants VGJ and YJX's Motion to Set Aside Judgment as to YJX.com, the Plaintiff requests that YJX be required to reimburse the Plaintiff for the costs necessary to return the buyer's monies for the sale as well as to cover commissions and other costs that were spent to effect the sale.[1]  The Plaintiff notes that the need for this compensation would not have been necessary if YJX had appeared in a timely fashion.

Finally, the Plaintiff submits that a hearing on this matter is unlikely to lead to any further assistance to the Court and therefore requests that the hearing on this motion be waived.

---

[1] The Plaintiff will provide this figure to YJX's counsel upon the Court's granting of the Plaintiff's request.

2

As noted above, the Plaintiff is not objecting the setting aside of the default judgments against

VGJ or YJX, or their transfer to the case pending in the Northern District of Texas.  The Plaintiff

only raises an objection to the transfer of the domain names back to VGJ and YJX and requests

reimbursement from YJX.com for the purchase price, commission and other expenses paid in the

sale of the domain name YJX.com.   Moreover, the Plaintiff agrees that it will maintain the

*status quo* and not sell or transfer the domain names VGJ.com or YJX.com.

Date:   July 29, 2016

                                        Respectfully,


                                        _____/s/_____
                                        Rebecca J. Stempien Coyle  (VSB# 71483)
                                        Counsel for the Plaintiff
                                        **Associated Recovery, LLC**
                                        LEVY & GRANDINETTI
                                        1120 Connecticut Avenue, N.W., Suite 304
                                        Washington, D.C. 20036
                                        Telephone (202) 429-4560
                                        Facsimile (202) 429-4564
                                        mail@levygrandinetti.com

3

## CERTIFICATE OF SERVICE

I, Rebecca J. Stempien Coyle, certify that on July 29, 2016, I electronically filed the

foregoing PLAINTIFF'S RESPONSE TO MOTION TO SET ASIDE DEFAULT JUDGMENTS

REGARDING VGJ.COM AND YJX.COM AND RETURN THOSE DOMAIN NAMES TO

THEIR PRIOR OWNERS by using the CM/ECF system, which will then send a notification of

such filing (NEF) to the following:

>Lora Brzezynski
>Claire M. Maddox
>Eric Wu
>DENTONS US LLP
>1900 K Street, N.W.
>Washington, D.C. 20006
>lora.brzezynski@dentons.com
>claire.maddox@dentons.com
>eric.wu@dentons.com
>
>Steven M. Geiszler
>Zunxuan D. Chen
>DENTONS US LLP
>2000 McKinney Avenue
>Suite 1900
>Dallas, TX 75201-1858
>steven.geiszler@dentons.com
>digger.chen@dentons.com

>_____/s/_____
>Rebecca J. Stempien Coyle
>(VSB# 71483)
>Counsel for the Plaintiff
>**Associated Recovery, LLC**
>LEVY & GRANDINETTI
>1120 Connecticut Avenue, N.W.
>Suite 304
>Washington, D.C. 20036
>Telephone (202) 429-4560
>Facsimile (202) 429-4564
>mail@levygrandinetti.com