IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

**ASSOCIATED RECOVERY, LLC,**

               Plaintiff,

    v.

**JOHN DOES 1-44,**

               Defendants *in rem*.

**No. 3:16-CV-1025-L**

*In re:*

| 744.COM | KXW.COM | UHW.COM | YJX.COM |
|---|---|---|---|
| 028.COM | LNM.COM | VCZ.COM | YLZ.COM |
| 3DCAMERA.COM | LUOHE.COM | VGJ.COM | YQP.COM |
| FNY.COM | MEQ.COM | WYD.COM | YQT.COM |
| FX2.COM | OCU.COM | XAQ.COM | YRN.COM |
| FXF.COM | PIXIE.COM | XFF.COM | YTE.COM |
| JTZ.COM | QMH.COM | XSG.COM | YYG.COM |
| KGJ.COM | RUTEN.COM | YCX.COM | ZDP.COM |
| KMQ.COM | SDU.COM | YEY.COM | ZHD.COM |
| KOU.COM | SQG.COM | YGX.COM | ZULIN.COM |
| KXQ.COM | TAOLV.COM | YJR.COM | ZZM.COM |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' RULE 12(b) MOTION
TO DISMISS AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................. 1
II. FACTUAL BACKGROUND ............................................................................... 2
  A. *Netsphere* Receivership ........................................................................... 2
  B. Sale of Domain Names Pursuant to Receivership ..................................... 3
  C. Reversal of Receivership .......................................................................... 4
  D. Winding Down the Receivership ................................................................ 4
  E. *Baron v. Vogel* ......................................................................................... 5
  F. This Litigation ........................................................................................... 5
III. ARGUMENT AND AUTHORITIES ................................................................... 6
  A. The Court Should Dismiss this Action for Failure to State a Claim on Which Relief Can Be Granted. ................................................................... 6
  B. The Court Should Dismiss Plaintiff's Inapplicable, Time-Barred Claims. ................. 9
  C. The Court Should Dismiss this Action Because Plaintiff Lacks Standing. ................ 16
  D. The Court Should Dismiss Plaintiff's Claims Against the Domain-Name Owners for Lack of Personal Jurisdiction. ................................................. 18
    1. Applicable legal principles of personal jurisdiction ........................... 18
    2. The owners are not subject to general jurisdiction in Texas. ............... 19
    3. The owners are not subject to specific jurisdiction in Texas. .............. 20
  E. The Court Should Dismiss this Action for Failure to Join Necessary Parties. .......... 22
    1. Novo Point ...................................................................................... 23
    2. Jeffrey Baron .................................................................................. 24
    3. Peter Vogel and Damon Nelson ....................................................... 24
IV. CONCLUSION .................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Airlines Reporting Corp. v. Pishvaian*,
    155 F. Supp. 2d 659 (E.D. Va. 2001) ..................................................................12

*Aspen Tech., Inc. v. M3 Tech., Inc.*,
    569 F. App'x 259 (5th Cir. 2014) .......................................................................14

*Associated Recovery, LLC v. Does 1-44*,
    No. 1:15-cv-1723, Dkt. 36 at 6 (E.D. Va. Apr. 11, 2016) ....................................21

*Associated Recovery, LLC v. Does 1-44*,
    No. 1:15-cv-1723 (E.D. Va.) Dkt. Nos. 46, 46-1, 49, 49-1, 52, 52-1, 62, 62-1,
    62-2, 65, 65-1 ....................................................................................................21

*Baron v. Vogel*,
    No. 3:15-cv-232-L, 2016 WL 1273465 (N.D. Tex. Mar. 31, 2016)............................. *passim*

*Carson v. Dynegy, Inc.*,
    344 F.3d 446 (5th Cir. 2003) ..............................................................................11

*Chiropractic v. Nationwide Mut. Ins. Co.*,
    No. 4:15-CV-135-Y, 2016 WL 3916005 (N.D. Tex. July 20, 2016)......................15

*Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods
    (HAVEN)*, 915 F.2d 167 (5th Cir. 1990)..............................................................13

*Commonwealth Scientific & Indus. Research Org. v. Real Commc'n, Inc.*,
    No. 6:12-cv-842, Dkt. 49, at 5-7 (E.D. Tex., Aug. 8, 2014)..................................20

*Croft v. Gov. of Texas*,
    562 F.3d 735 (5th Cir.2009) ...............................................................................16

*Davis v. Bayless*,
    70 F.3d 367 (5th Cir. 1995) ................................................................................25

*DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*,
    2014 WL 4961992, at *3 (E.D. Tex. Oct. 3, 2014) ................................................6

*E. & J. Gallo Winery v. Spider Webs Ltd.*,
    286 F.3d 270 (5th Cir. 2002) ..............................................................................10

*E.E.O.C. v. Peabody W. Coal Co.*,
    400 F.3d 774 (9th Cir. 2005) ..............................................................................22

i

*EDS Corp. v. Southwestern Bell Tel.*,
   674 F.2d 453 (5th Cir. 1982) ...........................................................................17

*Express One Int'l, Inc. v. Steinbeck*,
   53 S.W.3d 895 (Tex. App. – Dallas 2001, no pet.)..............................................11

*Matter of Gober*,
   100 F.3d 1195 (5th Cir. 1996) ..........................................................................7

*Goodyear Dunlop Tires Ops. S.A. v. Brown*,
   131 S.Ct. 2846 (2011)...............................................................................19, 20

*Hanson Pipe & Products, Inc. v. Bridge Techs. LLC*,
   351 F.Supp.2d 603 (E.D. Texas. 2004)..............................................................19

*Hanson v. Denckla*,
   357 U.S. 235 (1958).........................................................................................19

*Helicopteros Nacionales de Colombia v. Hall*,
   466 U.S. 408 (1984).........................................................................................19

*Horvath v. Bank of New York, N.A.*,
   641 F.3d 617 (4th Cir.2011) ............................................................................11

*Howard v. JP Morgan Chase NA*,
   No. SA-12-CV-00440-DAE, 2013 U.S. Dist. LEXIS 54433 (W.D. Tex. Apr.
   17, 2013) .......................................................................................................11

*HS Res., Inc. v. Wingate*,
   327 F.3d 432 (5th Cir. 2003) ............................................................................22

*International Shoe Co. v. Washington*,
   326 U.S. 310 (1945).........................................................................................19

*Jaffer v. Standard Chartered Bank*,
   301 F.R.D. 256 (N.D. Tex. 2014) ................................................................23, 24

*Johnson v. Ga. Hwy Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) .............................................................................8

*Jones v. Petty-Ray Geophysical, Geosource, Inc.*,
   954 F.2d 1061 (5th Cir. 1992) ..........................................................................18

*Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*,
   723 F.2d 1173 (5th Cir. 1984) ..........................................................................12

*LST Financial, Inc. v. Four Oaks Fincorp, Inc.*,
   No. 14-cv-435, 2014 WL 3672982 (W.D. Tex. Jul. 24, 2014)..............................25

*Lujan v. Defenders of Wildlife*,
     504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).......................................................16

*Maine v. Adams*,
     277 Va. 230, 672 S.E.2d 862 (2009)...................................................................................11

*Mayo v. Hartford Life Ins. Co.*,
     354 F.3d 400 (5th Cir. 2004) .............................................................................................12

*McCoy v. Misuboshi Cutlery, Inc.*,
     67 F.3d 917 (Fed. Cir. 1995)...............................................................................................17

*Merrill Lynch, Pierce, Fenner & Smith, P.C. v. Greystone Servicing Corp.*,
     No. 3:06-CV-0575-P, 2007 U.S. Dist. LEXIS 69235 (N.D. Tex. Sep. 18,
     2007) ....................................................................................................................................14

*Hood ex rel. Mississippi v. City of Memphis*,
     570 F.3d 625 (5th Cir. 2009) ...............................................................................................22

*Mowbray v. Avery*,
     76 S.W.3d 663 (Tex. App. - Corpus Christi 2002, pet. denied) ...........................................14

*Nat'l. Union Fire Ins. Co. v. Rite Aid of S.C., Inc.*,
     210 F.3d 246 (4th Cir. 2000) ...............................................................................................24

*Neles-Jamesbury, Inc. v. Bill's Valves*,
     974 F. Supp. 979 (S.D. Tex. 1997) .......................................................................................11

*Netsphere, Inc. v. Baron*,
     No. 3:09-CV-0988-L, Dkt. 1447 WL 1400543 (N.D. Tex. Mar. 27, 2015) .................... *passim*

*Netsphere, Inc. v. Baron*,
     703 F.3d 296 (5th Cir. 2012) ......................................................................................... *passim*

*Nikols v. Chesnoff*,
     435 Fed. Appx. 766 (10th Cir. 2011).....................................................................................6

*Pemex Exploracion y Produccion v. BASF Corp.*,
     No. CIV.A. H-10-1997, 2013 WL 5514944 (S.D. Tex. Oct. 1, 2013) ...................................12

*Pemex Exploracion y Produccion v. BASF Corp.*,
     No. H-10-1997, 2013 U.S. Dist. LEXIS 144166 (S.D. Tex. Sep. 30, 2013).....................13, 14

*PEMEX Exploracion y Produccion v. Murphy Energy Corp.*,
     923 F. Supp.2d 961 (S.D. Tex. 2013) .............................................................................16, 18

*Phillips v. Frey*,
     20 F.3d 623 (5th Cir. 1994) .................................................................................................14

*Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*,
   583 F.3d 348 (5th Cir. 2009) ...........................................................................6

*Recommended Mailers Inc. v. Maryland Cas. Co.*,
   339 F. App'x 467 (5th Cir. 2009) ..................................................................15

*Recoveredge LP v. Pentecost*,
   44 F.3d 1284 (5th Cir. 1995) ...........................................................................9

*Revell v. Lidov*,
   317 F.3d 467 (5th Cir. 2002) .........................................................................20

*In re Rivera*,
   No. 13-14351-BFK, 2014 WL 287517 (Bankr. E.D. Va. Jan. 27, 2014) ..............11

*In re Rouge Indus., Inc.*,
   326 B.R. 55 (Bankr. D. Del. 2005) .................................................................23

*S. Co. v. Dauben Inc.*,
   324 F. App'x 309 (5th Cir. 2009) ...............................................................9, 10

*Sadler v. Duvall*,
   815 S.W.2d 285 (Tex. App. 1991)..................................................................10

*In re Schering Plough Corp./Intron Temodar Consumer Class Action*,
   678 F.3d 235 (3rd Cir. 2012) .........................................................................18

*SEC v. W.L. Moody & Co.*,
   374 F. Supp. 465 (S.D. Tex. 1974) ..................................................................8

*Seiferth v. Helicopteros Atuneros, Inc.*,
   472 F.3d 266 (5th Cir. 2006) .........................................................................20

*In re Sims*,
   479 B.R. 415 (Bankr. S.D. Tex. 2012) ..............................................................6

*Skelly Oil Co. v. Phillips Petroleum Co.*,
   339 U.S. 667, 70 S. Ct. 876, 94 L. Ed. 1194 (1950)..........................................13

*Southmark Corp. v. Coopers & Lybrand*,
   163 F.3d 925 (5th Cir. 1999) ...........................................................................8

*Sport Supply Gr., Inc. v. Colum. Cas. Co.*,
   335 F.3d 453 (5th Cir. 2003) .........................................................................15

*Stefano v. First Union Nat. Bank of Virginia*,
   981 F. Supp. 417 (E.D. Va. 1997) ..................................................................12

iv

*Tyler v. Tywell Mfg. Corp. (In re Tyler)*,
   Nos. 01-80343-SAF-13, 02-3530, 2003 Bankr. LEXIS 930 (U.S. Bankr. N.D.
   Tex. Aug. 5, 2003) ............................................................................................15

*U.S. Nat'l Bank Ass'n v. Johnson*,
   No. 01-10-00837-CV, 2011 Tex. App. LEXIS 10253, 2011 WL 6938507
   (Tex. App. Dec. 30, 2011) ................................................................................10

*Universal C.I.T. Credit Corp. v. Kaplan*,
   198 Va. 67, 92 S.E.2d 359 (1956)......................................................................12

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980)............................................................................................19

**Statutes**

15 U.S.C. § 1125(d)(1)(B)(ii) .................................................................................10

15 U.S.C. § 1127 (2013) .........................................................................................10

28 U.S.C. §§ 2201, 2202 .........................................................................................12

Civil Practice & Remedies Code § 16.010 .............................................................15

Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) .....................................................12

Tex. Civ. Prac. & Rem. Code §§ 134.002(2), 134.003...........................................13

Tex. Penal Code § 31.03(a).....................................................................................13

Texas Civil Practice and Remedies Code § 16.003 ............................................12, 14

Va.Code § 8.3A–118(g) ..........................................................................................12

**Other Authorities**

Fed. R. Civ. P. 12(b)(1).......................................................................................2, 18

Fed. R. Civ. P. 12(b)(2)...................................................................................2, 18, 22

Fed. R. Civ. P. 12(b)(6)...............................................................................1, 2, 6, 9

Fed. R. Civ. P. 12(b)(7)......................................................................................2, 25

Fed. R. Civ. P. 19(a) ...............................................................................................22

Fed. R. Civ. P. 19(a)(1)...........................................................................................22

Fed. R. Civ. P. 19(b) ...............................................................................................22

## I.      INTRODUCTION

The parties' dispute concerns Internet domain names that Defendants lawfully acquired, directly or indirectly, from Plaintiff Associated Recovery, LLC's predecessor-in-interest through Court-authorized sales in 2012 arising from the *Netsphere, Inc. v. Baron* litigation.  Now, years later, Plaintiff alleges that the sales were improper and the domain names should be returned because the Fifth Circuit vacated the receivership order.  Plaintiff ignores that, in *Netsphere*, the Fifth Circuit left undisturbed the then-final sales, including those in dispute here.  703 F.3d 296, 313 (5th Cir. 2012) ("*Netsphere I*").  The decision allowed use of proceeds from those sales to pay receivership fees.  *Id.* ("[C]harging the current receivership fund for reasonable receivership expense, without allowing any additional assets to be sold, is an equitable solution.").

When dismissing another related case brought by Baron and Novo Point against the receiver, Peter Vogel, the Court ruled that "any claim by Plaintiffs based on the wrongful establishment or continuation of the receivership or payment of receivership expenses is an impermissible collateral attack of prior orders through this suit."  *Baron v. Vogel*, No. 3:15-cv-232-L, 2016 WL 1273465, *6 (N.D. Tex. Mar. 31, 2016) ("*Vogel I*").  In combination with the *Netsphere*[1] decisions, the *Vogel I* ruling makes Plaintiff's new allegations untenable.

First, Plaintiff fails to state a claim upon which relief can be granted.  The case at bar is yet another "impermissible collateral attack of prior orders"—this time through the domain-name owners rather than the receiver.  The Fifth Circuit's and this Court's rulings in *Netsphere* and *Vogel*[2] on the propriety of the Receiver's actions—which include the sales of the domain names in dispute—preclude Plaintiff's claims, so this case should be dismissed under Rule 12(b)(6).

---

[1] *"Netsphere"* refers to the *Netsphere v. Baron* litigation, No. 3:09-cv-0988-F/L (N.D. Tex.), whereas *Netsphere I, Netsphere II,* and *Netsphere III* refer to three opinions in that litigation.

[2] "*Vogel*" refers to the *Baron v. Vogel* litigation, No. 3:15-cv-232-L (N.D. Tex.), whereas *Vogel I* refers to the specific Memorandum Opinion and Order dated March 31, 2016.

Second, Plaintiff's claims are either not cognizable causes of action, inapplicable to the facts pled, or are time barred.  Those flaws further warrant dismissal under Rule 12(b)(6).

Third, Plaintiff lacks standing.  It is a shell company created by Baron for the purpose of suing bona fide purchasers for value of domain names sold through the receivership.  Because this Court authorized and later ratified those sales, Baron and Novo Point had no ownership interests to transfer to Plaintiff.  Thus, as Baron and Novo Point's assignee, Plaintiff lacks standing.  Dismissal is proper under Rule 12(b)(1).

Fourth, Plaintiff asserts for the first time in its Amended Complaint *in personam* claims against the domain-name owners.  The overwhelming majority of the owners, however, are not U.S. citizens, have never been to the United States, have never consented to personal jurisdiction in any U.S. court, and who do not even speak English.  The Court should dismiss the *in personam* claims against the owners under Rule 12(b)(2).

Finally, Plaintiff failed to join necessary parties, including Novo Point and Jeffrey Baron, who have been embroiled in years of litigation in this Court.  Plaintiff also failed to join the Court-appointed manager, Damon Nelson, and receiver, Peter Vogel, who are the parties that, on Novo Point's behalf and with this Court's authorization, sold the domain names now held by Defendants.  The absence of those necessary parties warrants dismissal under Rule 12(b)(7).

## II.    FACTUAL BACKGROUND

The Court is familiar with the factual and procedural history of this case as well as the related *Netsphere* and *Vogel* cases, over which the Court presides.  Defendants provide an abbreviated summary here.

### A.    *Netsphere* Receivership

Throughout the *Netsphere* litigation, Baron repeatedly replaced counsel, refusing to pay for their services.  Judge Furgeson appointed a special master to mediate claims for any unpaid

legal fees as recommended by the bankruptcy court.  *Netsphere I*, 703 F.3d at 304.  After Baron

again fired his attorney, the bankruptcy trustee filed a motion to appoint a receiver "because of

Baron's failure to cooperate with the order to mediate the legal-fee claims and his continued

hiring and firing of lawyers in violation of the court's order," which would "expose the

bankruptcy estate to additional administrative claims and further delay the resolution of the

bankruptcy proceedings."  *Id.*  The Court appointed Peter Vogel ("Vogel" or "Receiver") as the

receiver in November 2010.  *Id.*; *see also* Order Appointing Receiver, *Netsphere* Dkt. 130 (N.D.

Tex. Nov. 24, 2010).

**B.      Sale of Domain Names Pursuant to Receivership**

To fund disbursements to the unpaid attorneys, the Court granted a motion by the

Receiver to permit sales of domain names on February 4, 2011.  *See* Order Granting the

Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere* Dkt. 288 (N.D. Tex.

Feb. 4, 2011); *see also* The Receiver's Omnibus Motion to Permit Sales of Domain Names,

*Netsphere* Dkt. 242 (Jan. 24, 2011).  The Court further granted the Receiver's motion to appoint

Damon Nelson ("Nelson") as permanent manager of Quantec, LLC and Novo Point, LLC

("Novo Point") to assist the receiver in selling the domain names.  *See* Order Granting the

Receiver's Motion to Appoint Damon Nelson as Permanent Manager of the LLCs and For

Turnover of LLC Materials to Damon Nelson, *Netsphere* Dkt. 473 (N.D. Tex. Apr. 22, 2011).

Nelson worked under Vogel's direction.  Pursuant to an order authorizing sales of the

domain names, Nelson sold the domain names that are the subject of the instant case in 2011 and

2012.  *E.g.*, App. 3-29 (Exhibits A-D: assignments and transfer agreements for domain names in-

suit); *see also* Amended Complaint ¶ 241 (Dkt. 76).  The purchases were for value (many

thousands of dollars) and pursuant to formal domain name assignment and transfer agreements.

3

*E.g.*, App. 3-29.  The seller of the domain names in the agreements was Novopoint, LLC [*sic*],

and Mr. Nelson authorized the sale and signing on behalf of Novo Point.  *Id.*

### C.      Reversal of Receivership

Baron appealed the receivership order, as well as subsequent orders entered by the Court.

*Netsphere I*, 703 F.3d at 305.  The Fifth Circuit looked at "whether a court can establish a

receivership to control a vexatious litigant."  *Id.*  Ultimately, the Fifth Circuit reversed the

appointment of the receiver with directions to vacate the receivership. *Id.* at 315. Normally when

a receivership is improper, the party that sought the receivership should be accountable for the

receivership fees and expenses.  *Id.* at 312.  But the Fifth Circuit held otherwise:

> Additionally, we hold, based on this record, that in creating the receivership
> "there was no malice nor wrongful purpose, and only an effort to conserve
> property in which [the court] believed" it was interested in maintaining for unpaid
> attorney fees and to control Baron's vexatious litigation tactics. We recognize that
> the district court was dealing with a conundrum when it decided to appoint the
> receiver — the problem was great, but standard remedies seemed inadequate. We
> also take into account that, to a large extent, **Baron's own actions resulted in
> more work and more fees for the receiver and his attorneys**. For these reasons,
> charging the current receivership fund for reasonable receivership expenses,
> **without allowing any additional assets to be sold,** is an equitable solution**.**

*Id.* at 313 (emphasis added).  Hence, the Fifth Circuit left in place the then-final sales of domain

names, forbidding only sales of "**additional** assets."  *Id.*; *see id.* at 314 ("No **further** sales of

domain names or other assets are authorized." (emphasis added)).

### D.      Winding Down the Receivership

Pursuant to the Fifth Circuit's Order, the Court wound down the receivership. *See* Order,

*Netsphere* Dkt. 1155 (N.D. Tex. Jan. 7, 2013).  When determining the fees to be paid, Judge

Furgeson observed, "Never in this Court's experience of over 40 years in the civil justice system,

both as a lawyer and a judge, has this Court observed the kind of party misconduct that has been

exhibited by Baron."  *Id.* at 3. While the Court recognized that the Fifth Circuit vacated the

4

receivership, it understood that "all Orders issued under the Receivership remain in effect until the Receivership is wound down."  No. 3:09-CV-0988-F, 2013 WL 3327858, at *6-7 (N.D. Tex. May 29, 2013) ("*Netsphere II*").

Though winding down was further delayed by the bankruptcy and other proceedings over the next two years, on March 27, 2015, the Court issued an opinion and order regarding the Receiver's request for final accounting. *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-L, Dkt. 1447, 2015 WL 1400543 (N.D. Tex. Mar. 27, 2015) ("*Netsphere III*"). Ultimately, the Court held that it could not continue with the case until related bankruptcies were resolved, and therefore closed, but did not dismiss, the case.  Order, *Netsphere* Dkt. 1448 (N.D. Tex. Mar. 27, 2015).

### E.    *Baron v. Vogel*

In 2015, Baron, Quantec, and Novo Point filed a lawsuit against receiver Peter Vogel and his law firm in Texas state court, but Vogel successfully removed the case to this Court.  The Court then quickly dismissed the *Vogel* case with prejudice, ruling that, although the Fifth Circuit vacated the receivership order, Vogel conducted his receivership duties according to the Court's authorization and was shielded by judicial immunity.  *Vogel I*, 2016 WL 1273465 at *6 ("[A]ny claim by Plaintiffs based on the wrongful establishment or continuation of the receivership or payment of receivership expenses is an impermissible collateral attack of prior orders through this suit.").

### F.    This Litigation

Plaintiff filed this suit on December 31, 2015 in the Eastern District of Virginia.  Through various motions and orders, the case was transferred to this Court.  Plaintiff alleges to be the "assignee for consideration of the rights to recover the Subject Domain Names."  Amended Complaint ¶ 4 (Dkt. 76).  But Plaintiff does not explain how it became the assignee to any interest of Novo Point or Baron.  As Novo Point and Baron are prevented by the *Vogel I* decision

from attacking the receivership, Plaintiff alleges no basis why it allegedly succeeded to greater

rights than its predecessors.  Every indication points to Baron pulling the strings in this case.

Indeed, he attended the July 13, 2016, settlement conference.  In addition, Plaintiff fails to

explain why Novo Point and/or Baron did not raise the issues now in dispute to the Court in the

*Netsphere* case during the four years since the sales occurred.

## III.   ARGUMENT AND AUTHORITIES

### A.   The Court Should Dismiss this Action for Failure to State a Claim on Which Relief Can Be Granted.

The *Netsphere I*, Netsphere *II, Netsphere III,* and *Vogel I* decisions collaterally estop

Plaintiff's claims, thus triggering Rule 12(b)(6).[3]  Collateral estoppel requires that: (1) the issue

is identical to the issue involved in the prior litigation; (2) the issue was actually litigated in the

prior litigation; and (3) the determination of the issue in the prior litigation was a crucial and

necessary part of the judgment.  *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.,* 583 F.3d 348, 353

(5th Cir. 2009).  Here, all three prongs are met.

The issues Plaintiff raises in its complaint have been litigated and decided against

Plaintiff's predecessors-in-interest.  Plaintiff alleges that the domain names at issue were

"improperly" placed under the control of a receivership then sold pursuant to "Improper

Receivership Sale Orders."  Amended Complaint ¶¶ 240-41 (Dkt. 76).  But the Fifth Circuit held

that the district court entered the Receivership Order to bring a halt to Baron's "longstanding

vexatious litigation tactics," and rejected Baron's contention that the appointment of the

Receiver was in bad faith or collusive. *Netsphere I,* 703 F.3d at 310-13 ("[W]e hold, based on

---

[3] Plaintiff's predecessors are appealing the *Vogel I* decision to the Fifth Circuit. Nevertheless, a judgment or order is final for purposes of the doctrine of collateral estoppel, even though on appeal, until that judgment or order is reversed on appeal, modified, or set aside by the rendering court. *See Nikols v. Chesnoff*, 435 Fed. Appx. 766, 770 (10th Cir. 2011); *DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, --- F. Supp. 3d ----, 2014 WL 4961992, at *3 (E.D. Tex. Oct. 3, 2014); *In re Sims*, 479 B.R. 415, 421 (Bankr. S.D. Tex. 2012).

this record, that in creating the receivership there was no malice nor wrongful purpose, and only an effort to conserve property in which the court believed it was interested in maintaining for unpaid attorney fees and to control Baron's vexatious litigation tactics.") (internal quotations omitted). The Fifth Circuit also held that "the record supports that the circumstances that led to the appointment of a receiver were primarily of Baron's own making." *Id.* Since the *Netsphere I* decision, this Court has reviewed the actions of Vogel and Nelson. The Court found Vogel's work "exemplary and entirely appropriate," *Netsphere II*, 2013 WL 3327858, at *22. Both the Fifth Circuit and this Court blamed Baron—not Vogel or Nelson—for the high fees and other expenses that Baron himself caused. *See Netsphere I*, 703 F.3d at 310-13; *Netsphere II,* 2013 WL 3327858, at *7, 15-16; 21-22; *Netsphere III*, 2015 WL 1400543, at *3.

The issues in this suit previously were presented to the Fifth Circuit and to this Court in connection with *Netsphere II*. In Baron's *Netsphere I* March 28, 2011 Fifth Circuit brief, he complained—as Associated Recovery complains here—that the Receivership was wrongful. Baron sought to "recover the costs of the receivership from those who have wrongfully provoked it." Brief at 69-71. After the panel decision in *Netsphere I,* Baron filed his objections to the Receiver's fee applications in this Court. *Netsphere* Dkt. No. 1269 (May 8, 2013). Baron argued, among other things, that Vogel should receive no fees because of alleged breaches of fiduciary duty and waste. *See id.* The next day, Baron sought leave to amend his pleadings to assert claims including "breaches of fiduciary duties, malpractice, negligence, gross negligence, fraud and other causes of action" against Vogel, the Trustee, and law firm Munsch Hardt. *Netsphere* Dkt. No. 1270 (May 9, 2013). These issues were submitted for determination and decided against Baron in *Netsphere II*. *See Netsphere II*; *see also Netsphere* Dkt. No. 1289 (N.D. Tex. May 29, 2013) (electronic order finding Baron's motion for leave to be moot, because the issues raised therein were ruled upon in *Netsphere II*); *Matter of Gober,* 100 F.3d 1195, 1203-04

(5th Cir. 1996) (explaining that an issue is 'actually litigated' when it is properly raised by the pleadings, or otherwise submitted for a determination, and determined).

Each of the foregoing rulings was crucial and necessary to the Fifth Circuit's decision in *Netsphere I* and this Court's decisions in *Netsphere II* and *Netsphere III*. In *Netsphere I,* the findings that the Receivership was not procured by any conspiracy between the professionals, there was no bad faith, and that Baron's own tactics caused the Receivership were critical to the Fifth Circuit's holding that, although the Receivership was improper, equity would permit the reasonable fees and expenses of the Receivership professionals to be charged against the Receivership estate. *See Netsphere I*, 703 F.3d at 313.

Likewise, for this Court to award the Receiver and his professionals attorneys' fees, it was required, under *Johnson v. Ga. Hwy Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), to determine the reasonableness of the award, make specific findings in support of any award of attorneys' fees, and to consider all circumstances surrounding the receivership, including the Receiver's performance. *SEC v. W.L. Moody & Co.,* 374 F. Supp. 465, 480 n.20 (S.D. Tex. 1974). The fee award, coupled with the Court's express findings of no wrongdoing set forth in the *Netsphere II*, collaterally estop Baron and Novo Point from claiming wrongdoing regarding the payment of the receivership costs. *See Southmark Corp. v. Coopers & Lybrand,* 163 F.3d 925, 932-34 (5th Cir. 1999) (partial fee disgorgement order in bankruptcy court collaterally estopped debtor from seeking to recover greater damages in subsequent suit). Furthermore, raising funds to pay receivership fees entailed selling the domain names in suit. *See* Order Granting the Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere* Dkt. 288 (N.D. Tex. Feb. 4, 2011); *see also* The Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere* Dkt. 242 (Jan. 24, 2011). By dispensing the assignment proceeds to pay

receivership fees *after* the Fifth Circuit's *Netsphere I* decision, the Court gave *post hoc* approval of, or ratified, the assignments.  Specifically, the Court found:

> [Vogel's law firm] developed a system for determining the value of domain names that allowed it to make choices regarding the fate of individual names: whether to develop, to park, to sell or to let lapse.  This was critical because it enabled counsel … to identify money losing names that should be culled from the portfolios.  Although Baron may have elected to run these businesses differently, all of the actions were reasonable and prudent ….

*Netsphere II*, 2013 WL 3327858, at *16.  The Court again gave *post hoc* approval of the Receiver's actions in the recent *Vogel I* decision.  2016 WL 1273465 at *6.

Associated Recovery's claims, which were allegedly assigned by Novo Point, are barred by such rulings by this Court and the Fifth Circuit in *Netsphere* and *Vogel*.  *See Recoveredge LP v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995) ("Collateral estoppel will apply in a second proceeding that involves separate claims if the claims involve the same issue and the subject matter of the suits may be different as long as the requirements for collateral estoppel are met." (internal citations omitted)).  Hence, the Court should dismiss this case under Rule 12(b)(6).

### B.    The Court Should Dismiss Plaintiff's Inapplicable, Time-Barred Claims.

Another Rule 12(b)(6) basis for dismissal is that Plaintiff's various causes of action are either inapplicable to the facts pled or time barred.  Below each cause of action is taken in turn.

**ACPA:**  Plaintiff's first claim is an alleged violation of the Federal Anticybersquatting Consumer Protection Act.  (Dkt. 76, ¶¶ 260-67).  To prevail on an ACPA claim, Plaintiff must prove that (1) its mark "is a distinctive or famous mark entitled to protection;" (2) Defendant's "domain names are 'identical or confusingly similar to' [Plaintiff]'s mark"; and (3) Defendant "registered the domain names with the bad faith intent to profit from them."  *S. Co. v. Dauben Inc.*, 324 F. App'x 309, 314 (5th Cir. 2009).  Plaintiff fails at least the first and third prongs.

Plaintiff cannot prove the first prong because Plaintiff has no mark entitled to protection. Plaintiff admits it has not used any of the disputed marks (i.e., domain names) since 2012. (Dkt. 76, ¶ 240-41). "A mark shall be deemed to be abandoned … [w]hen its use has been discontinued with intent not to resume such use.  Intent not to resume may be inferred from circumstances.  Nonuse for 3 consecutive years shall be prima facie evidence of abandonment." 15 U.S.C. § 1127 (2013).  Here, Plaintiff makes no assertion that it or its predecessors-in-interest ever sought to register any of the marks at issue.  And Plaintiff admits the alleged marks at issue have not been used for over three consecutive years prior to Plaintiff filing suit, thus the nonuse admitted by Plaintiff establishes a case of prima facie abandonment of the marks.

Plaintiff cannot prove the third prong because there can be no bad-faith intent where ACPA's safe harbor provision applies.  15 U.S.C. § 1125(d)(1)(B)(ii) ("Bad faith intent described under subparagraph (A) shall not be found in any case in which the court determines that the [defendant] believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful.");  *see also E. & J. Gallo Winery v. Spider Webs Ltd.*, 286 F.3d 270, 275 (5th Cir. 2002); *Dauben Inc.*, 324 F. App'x at 315.  The Court-approved, lawful sale of the domain names falls under the ACPA safe harbor provision.  Given the Court-approved sale, Defendants had reasonable grounds to believe the purchase and use of the domain names were lawful.

**Quiet Title:**  Plaintiff's second claim is for quiet title.  (Dkt. 76, ¶¶ 268-72).  To state a quiet title claim, a plaintiff must show: (1) an interest in a specific property; (2) title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable.  *U.S. Nat'l Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011 Tex. App. LEXIS 10253, 2011 WL 6938507, at *3 (Tex. App. Dec. 30, 2011) (citing *Sadler v. Duvall*, 815 S.W.2d 285, 293 n. 2 (Tex. App. 1991)).  A plaintiff further "must allege right, title,

10

or ownership in himself or herself with sufficient certainty to enable the court to see he or she

has a right of ownership that will warrant judicial interference." *Howard v. JP Morgan Chase*

*NA*, No. SA-12-CV-00440-DAE, 2013 U.S. Dist. LEXIS 54433, at *16-17 (W.D. Tex. Apr. 17,

2013).  Plaintiff cannot do so here, as this Court ratified the Receiver's sales of the domain

names, thus transferring Novo Point's (Plaintiff's predecessor) ownership rights to third parties.

Plaintiff also cannot prove at least the third element because each Defendant has a valid claim to

its domain name via the Court-authorized receivership sales, thus Defendants have a valid and

enforceable claim to the domain names through the Court's authority.[4]

    **Conversion:**  Plaintiff's third claim is conversion.  (Dkt. 76, ¶¶ 273-77).  But "Texas law

has never recognized a cause of action for conversion of intangible property except in cases

where an underlying intangible right has been merged into a document and that document has

been converted." *Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 901 (Tex. App. – Dallas

2001, no pet.); *see Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003) (explaining that

Texas conversion law "concerns only physical property"); *Neles-Jamesbury, Inc. v. Bill's Valves*,

974 F. Supp. 979, 982 (S.D. Tex. 1997) (holding that Texas law does not recognize a claim for

conversion of a trademark because plaintiff did not allege that defendants converted any

document representing plaintiff's intangible rights).[5]  There can be no claim for conversion

---

[4] Plaintiff's quiet title allegation also fails under Virginia law.  "[A]n action to quiet title is based
on the premise that a person with good title to certain real or personal property should not be
subjected to various future claims against that title." *Horvath v. Bank of New York, N.A.*, 641
F.3d 617, 622 (4th Cir.2011) (quoting *Maine v. Adams*, 277 Va. 230, 672 S.E.2d 862, 866
(2009)). The Plaintiff must show that she has rights that are superior to others asserting an
interest in the property. *In re Rivera*, No. 13-14351-BFK, 2014 WL 287517, at *5 (Bankr. E.D.
Va. Jan. 27, 2014)

[5] Plaintiff's conversion allegation also fails under Virginia law.  To assert a claim for conversion,
a plaintiff must prove by a preponderance of the evidence (i) the ownership or right to possession
of the property at the time of the conversion and (ii) the wrongful exercise of dominion or
control by defendant over the plaintiff's property, thus depriving plaintiff of possession.

because the Court's orders authorized the sale of the domain names and authorized the receivership payments, thus terminating any claim of conversion by the Plaintiff.

Furthermore, under Texas law the statute of limitations for claims for conversion is the two-year period provided by Texas Civil Practice and Remedies Code § 16.003:  "[A] person must bring suit for trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining the personal property of another, personal injury, forcible entry and detainer, and forcible detainer not later than two years after the day the cause of action accrues."  Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a); *Pemex Exploracion y Produccion v. BASF Corp.*, No. CIV.A. H-10-1997, 2013 WL 5514944, at *10 (S.D. Tex. Oct. 1, 2013); *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 410 (5th Cir. 2004) ("The applicable limitations period for [plaintiff's] claim—whether it is formally labeled 'unjust enrichment' or 'conversion'—is two years.").  Again, Plaintiff admits the relevant sales occurred in 2011 or 2012.  (Dkt. 76, ¶¶ 240-41); *see Netsphere I* (issued Dec. 18, 2012 and prohibiting any "further" sales).  The statute of limitations commenced running no later than the 2012 receivership sales of the domain names. The two-year statute of limitations expired well before Plaintiff's Original Complaint on December 31, 2015.[6]

**Declaratory Judgment:**  Plaintiff's fourth claim is for declaratory judgment.  (Dkt. 76, ¶¶ 278-80).  The federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, does not create a substantive cause of action.  *See Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1179 (5th Cir. 1984) ("The federal Declaratory Judgment Act . . . is procedural

---

*Universal C.I.T. Credit Corp. v. Kaplan,* 198 Va. 67, 92 S.E.2d 359, 365 (1956); *Airlines Reporting Corp. v. Pishvaian*, 155 F. Supp. 2d 659, 663–64 (E.D. Va. 2001).

[6] Plaintiff's conversion allegation would also be time barred under Virginia's three-year statute of limitations. "[U]nder the Code, an action for conversion of an instrument must be commenced within three years after the cause of action accrues."  Va.Code § 8.3A–118(g); *see Stefano v. First Union Nat. Bank of Virginia*, 981 F. Supp. 417, 421 (E.D. Va. 1997).

only[.]") (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S. Ct. 876, 94 L. Ed. 1194 (1950)).  A declaratory judgment action is merely a vehicle that allows a party to obtain "an early adjudication of an actual controversy" arising under other substantive law. *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*, 915 F.2d 167, 170-71 (5th Cir. 1990).  Plaintiff does not identify what specific judgment it seeks under this claim.  *See* (Dkt. 76, ¶¶ 278-80).  Plaintiff fails to identify any substantive right it seeks or identify any underlying cause(s) of action. *Id.*  Plaintiff merely asserts that it is the owner of the domain names and Defendants do not have the right to use them and seeks a declaration from this Court declaring the same.  *Id.*  Thus, the declaratory-judgment claim should be dismissed.

**Texas Theft Liability Act:**  Plaintiff's fifth claim is that Defendants violated the Texas Theft Liability Act (TTLA). (Dkt. 76, ¶¶ 281-86).  The elements of a TTLA claim are (1) the plaintiff had a possessory right to property; (2) the defendant unlawfully appropriated property in violation of the Texas Penal Code; and (3) the plaintiff sustained damages as a result of the theft. Tex. Civ. Prac. & Rem. Code §§ 134.002(2), 134.003; Tex. Penal Code § 31.03(a). *Pemex Exploracion y Produccion v. BASF Corp.*, No. H-10-1997, 2013 U.S. Dist. LEXIS 144166, at *27 (S.D. Tex. Sep. 30, 2013).  Here, none of the elements are met.  If Plaintiff had any possessory right (which it did not at the time of the sale) to the domain names, that right was clearly lost pursuant to the court-ordered receivership sale of the domain names.  That the sales were Court-ordered establishes the Defendants did not unlawfully appropriate the domain names.  Also, the Court orders allowing for the sales establish that there was no "theft" by the Defendants.  Indeed, Plaintiff admits that the disputed domain names were purchased through the Court-appointed receivership sales.  (Dkt. 76, ¶¶ 240-41).  Thus, Plaintiff's TTLA claims thus fail because none of the Defendants (or their predecessors-in-interest) violated the Texas Penal Code (i.e., committed theft) by purchasing the domain names.

13

Plaintiff's "theft" claim is also time-barred.  Under Texas law, the statute of limitations for TTLA violations is the two-year period provided by Texas Civil Practice and Remedies Code § 16.003.  *Pemex Exploracion y Produccion v. BASF Corp.*, No. H-10-1997, 2013 U.S. Dist. LEXIS 144166, at *33-34 (S.D. Tex. Sep. 30, 2013).  The limitations period begins when the legal injury occurs.  Here, the Plaintiff's alleged injury occurred no later than December 18, 2012, Fifth Circuit ruling in *Netsphere I*.  Thus, the two-year period commenced to run in 2012, more than two years before the filing of Plaintiff's lawsuit on December 31, 2015.

**Unjust Enrichment:**  Plaintiff's sixth claim is unjust enrichment.  (Dkt. 76, ¶¶ 287-89).  But unjust enrichment is not a distinct independent cause of action.  It is a theory of recovery.  *See Merrill Lynch, Pierce, Fenner & Smith, P.C. v. Greystone Servicing Corp.*, No. 3:06-CV-0575-P, 2007 U.S. Dist. LEXIS 69235, at *32 (N.D. Tex. Sep. 18, 2007); *Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. App. - Corpus Christi 2002, pet. denied).  Furthermore, to the extent the unjust enrichment allegation were operable, it is also subject to the two-year statute of limitations period provided for by Texas Civil Practice and Remedies Code § 16.003.  *See Pemex*, 2013 U.S. Dist. LEXIS 144166, at *33-34.  In its Amended Complaint, Plaintiff provides no factual allegations for when the alleged unjust enrichment occurred.  Plaintiff's implication is the conversion occurred on or before December 18, 2012, the date of the Fifth Circuit ruling in *Netsphere I*.  Plaintiff's filed suit on December 31, 2015, rendering this claim time-barred.

**Misappropriation:**  Plaintiff's seventh claim is misappropriation.  (Dkt. 76, ¶¶ 290-95).  Plaintiff's attempt to assert that cause of action is misplaced because misappropriation applies to trade secrets.  *E.g.*, *Phillips v. Frey*, 20 F.3d 623, 627 (5th Cir. 1994).  Domain names are not trade secrets; thus, "misappropriation" is not relevant to this litigation.  *Id.*  Specifically, "[t]rade-secret misappropriation in Texas requires (1) the existence of a trade secret, (2) improper acquisition of that secret, and (3) use of the trade secret without authorization."  *Aspen Tech.,*

14

*Inc. v. M3 Tech., Inc.*, 569 F. App'x 259, 265 (5th Cir. 2014).  The domain names are not trade secrets, thus Plaintiff cannot prove any of the elements of misappropriation under Texas law.

Furthermore, the Fifth Circuit, applying Texas law, has held that "the definition of advertising does not include trademarks; therefore, trademark infringement claims do not involve misappropriation of advertising ideas."  *Am.'s Recommended Mailers Inc. v. Maryland Cas. Co.*, 339 F. App'x 467, 469 (5th Cir. 2009).  "Texas law does not appear to view a trademark as a marketing device ... and has adopted a more conventional understanding of a trademark as a label that serves primarily to identify and distinguish products."  S*port Supply Gr., Inc. v. Colum. Cas. Co.*, 335 F.3d 453, 462 (5th Cir. 2003); *Chiropractic v. Nationwide Mut. Ins. Co.*, No. 4:15-CV-135-Y, 2016 WL 3916005, at \*6 (N.D. Tex. July 20, 2016).

Under Texas law, trade secret misappropriation claims are subject to a three-year statute of limitations.  Civil Practice & Remedies Code § 16.010.  Plaintiff provides no factual allegation for when Defendants allegedly appropriated any trade secret.  But all relevant sales were completed before the December 18, 2012, *Netsphere I* decision—actually several months before.  *See* App. 3-29.  Thus, any claim for "misappropriation" by Plaintiff is time-barred.

**Fraudulent Conveyance:**  Plaintiff's eighth and final claim is fraudulent conveyance. (Dkt. 76, ¶¶ 296-304).  Plaintiff's attempt to assert that cause of action is misplaced here also. Fraudulent conveyance allows a court, trustee or creditor to set aside a transaction by a debtor whereby the debtor attempts to use the transaction to avoid a creditor's pre-existing claim against the debtor.  *Tyler v. Tywell Mfg. Corp. (In re Tyler)*, Nos. 01-80343-SAF-13, 02-3530, 2003 Bankr. LEXIS 930, at \*20-21 (U.S. Bankr. N.D. Tex. Aug. 5, 2003).  But as Plaintiff admits, the disputed domain names were sold to raise funds needed to pay Plaintiff's creditors (multiple lawyers hired, fired, and unpaid by Plaintiff) and receivership fees.  (Dkt. 76, 240-49; *Netsphere I*, 703 F.3d at 305. ("The district court appointed a receiver primarily to control Baron's hiring,

15

firing, and non-payment of numerous attorneys."). Thus, Plaintiff's attempt to use that cause of action here turns it on its head. The Court should dismiss that allegation as a matter of law.

### C.    The Court Should Dismiss this Action Because Plaintiff Lacks Standing.

Neither Baron nor Novo Point could bring this suit. Associated Recovery is merely their assignee and, thus, is likewise unable. "[T]he only injury sufficient to support an assignee's standing to assert an assigned claim is an injury suffered by the assignor, and that injury must satisfy all the requirements of constitutional standing, i.e., the injury suffered must be an injury-in-fact that is causally traceable to a named defendant and likely to be redressed by the court action." *PEMEX Exploracion y Produccion v. Murphy Energy Corp.*, 923 F. Supp.2d 961, 965 (S.D. Tex. 2013). "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). These elements are "(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury." *Croft v. Gov. of Texas*, 562 F.3d 735, 745 (5th Cir.2009) (citing *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130.

Associated Recovery's allegations lack at least two requisite elements. First, there was no injury in fact. Although the Fifth Circuit vacated the receivership, it left in place the already completed domain-name sales that raised funds needed to pay the receivership fees. *Netsphere I*, 703 F.3d at 313. Furthermore, this Court again authorized, or ratified, the sales *post hoc* when it authorized payment of the receivership fees using funds raised in part by the domain-name sales. *See generally Netsphere II*, 2013 WL 3327858; *Netsphere III*, 2015 WL 1400543 *see also Vogel I*, 2016 WL 1273465 at *5 (finding no *ultra vires* acts by Vogel).

16

Second, there is no causal connection between the alleged injury and the conduct complained of.  Assuming, *arguendo*, there were an injury, it was not caused by Defendants, who are bona fide purchasers for value of the domain names.  *See EDS Corp. v. Southwestern Bell Tel.*, 674 F.2d 453, 459 (5th Cir. 1982) ("A bona fide purchaser … is one who buys property in good faith for valuable consideration and without knowledge (actual or imputed) of outstanding claims in a third party or parties.").  Indeed, the domain names at issue were transferred pursuant to contracts, signed by Damon Nelson on behalf of Novo Point, without notice or mention of any alleged third-party interests.  *See, e.g.*, App. 3-29.

Associated Recovery's causes of action all flow from Defendants' acquisition and use of domain names that were sold with the Court's authorization.  To the extent they are even operable (*see* Section III.B., *supra*), Plaintiff's claims of/for quiet title, conversion, declaratory judgment, theft, unjust enrichment, misappropriation, and fraudulent conveyance claims are extinguished by the Court's orders authorizing the sales and orders authorizing payments.  As for the ACPA claims, which flow from alleged trademark rights, Defendants' respective use of the domain names was not only foreseeable but constitutes the very reason for the assignments.  Hence, Defendants enjoy an implied license from Novo Point that defeats any ACPA/trademark allegations.  *See McCoy v. Misuboshi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995) (implied license available even through involuntary sale).  Defendants have not injured Baron, Novo Point, or Plaintiff.  *Id.*  Any alleged injury to Baron or Novo Point (and by assignment, Associated Recovery) was self-inflicted.  *See Netsphere I*, 703 F.3d at 313 ("the record supports that the circumstances that led to the appointment of a receiver were primarily of Baron's own making"); *Netsphere III*, 2015 WL 140043, at *3 ("[T]he court also takes into account the disruptive conduct of Receivership Parties Jeffrey Baron, Novo Point LLC, and Quantec LLC,

17

which continued after the order establishing the Receivership was reversed and increased the Receivership expenses to which Baron now objects.").

With only Baron and Novo Point to blame, Associated Recovery is the "assignee" of nonexistent rights and, thus, has no standing to bring this case.  *See PEMEX*, 923 F. Supp.2d at 965 (S.D. Tex. 2013).  The Court should dismiss Associated Recovery's complaint under Rule 12(b)1.  *See In re Schering Plough Corp./Intron Temodar Consumer Class Action,* 678 F.3d 235, 243 (3rd Cir. 2012) ("A motion to dismiss for want of standing is … properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter.").

### D.   The Court Should Dismiss Plaintiff's Claims Against the Domain-Name Owners for Lack of Personal Jurisdiction.

Plaintiff originally brought this action *in rem*.  But now Plaintiff seeks to morph part of this case into an *in personam* action, never mind that all but one of the domain-name owners is foreign.  The vast majority are Chinese citizens who have never been to the United States, never transacted business inside the United States, and do not even have visas for travel to the United States.  Plaintiff knew these facts well before filing the Amended Complaint.  Indeed, Plaintiff admits, **"John Does 1-44 are located outside of the United States and are not amendable in personam jurisdiction in the United States."**  Amended Complaint at ¶ 99.  Because Plaintiff knowingly pursues non-existent personal jurisdiction over the domain-name owners, the Court should dismiss Plaintiff's allegations against the owners under Rule 12(b)(2).[7]

### 1.   Applicable legal principles of personal jurisdiction

The Texas long-arm statute is co-extensive with the limits of constitutional due process. *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1067-68 (5th Cir. 1992). Personal jurisdiction, therefore, exists where a defendant has "certain minimum contacts with

---

[7] The Court should dismiss Plaintiff's other allegations—those against the *in rem* Defendant domain names—for the multiple other bases raised in this Motion.

[the jurisdiction] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Under the federal constitutional test of due process, the plaintiff must overcome two hurdles to justify the exercise of jurisdiction over a nonresident defendant. The first prong of the analysis is the "minimum contracts" test, under which the plaintiff must establish that the defendant "purposefully avail[ed]" itself of the privilege of conducting activities in the forum, "thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235 (1958). Those activities, whether direct acts in the forum or conduct outside the forum, must justify a conclusion that the defendant should reasonably anticipate being called into court there. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286 (1980). The minimum contacts analysis has been further refined by the Supreme Court into specific and general jurisdiction. Where the defendant's activities in the forum are isolated or disjointed, jurisdiction is proper only if the cause of action arises from a particular activity. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408 (1984). On the other hand, where the defendant's forum activities are continuing and systematic, jurisdiction may be proper without a relationship between a defendant's particular act and cause of action. *Id.* at 415 n.9.

## 2.    The owners are not subject to general jurisdiction in Texas.

A Court has general jurisdiction over a nonresident defendant only "when [the defendant's] affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Ops. S.A. v. Brown*, 131 S.Ct. 2846, 2853 (2011).  Here, none of the owners have homes, employees, or facilities in Texas. *E.g.* App.  30-72 (declarations from owners).   Nor do they specifically target the state of Texas. *Id.*  This conduct is not enough to impute jurisdiction to all the forum states, including Texas. *See, e.g., Hanson Pipe & Products, Inc. v. Bridge Techs. LLC*, 351 F.Supp.2d 603, 618-19 (E.D.

19

Texas. 2004) (dismissing case for lack of personal jurisdiction, *inter alia*, on the grounds that defendant did not direct its activities to Texas).  As such, none of the domain-name owners has purposefully availed itself to conduct business in the State.  *See Goodyear*, 131 S.Ct. at 2855.[8]

Nor has any owner participated in the Texas economic market.  The owners' business activities do not occur in Texas.  *E.g.* App.  30-72 (declarations from owners).  But even if such activities were considered to be directed toward Texas, any incidental contact with Texas is *de minimis*, insufficient to establish minimum contacts with Texas.  *See Commonwealth Scientific & Indus. Research Org. v. Real Commc'n, Inc.*, No. 6:12-cv-842, Dkt. 49, at 5-7 (E.D. Tex., Aug. 8, 2014) (defendant who only occasionally "tried to sell something on customer service visits" was not subject to personal jurisdiction in the forum).

### 3.        The owners are not subject to specific jurisdiction in Texas.

To establish specific jurisdiction, Plaintiff's claims must be analyzed under the three prongs: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable."  *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).  The owners have not purposefully directed their activities toward Texas or purposefully availed themselves of the privileges of conducting activities here.  All but two owners are Chinese, most have never been to the United States, and none conduct business in the

---

[8] Plaintiff may argue that the owners' respective websites are accessible by someone in Texas.  But merely maintaining a website alone is insufficient to establish general jurisdiction. *See Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002).

Texas.  *E.g.* App.  30-45, 48-65, 69-72 (Chinese owners).  The two remaining owners are located

in Canada and New Jersey, and neither directs business toward Texas.  App. 46-47, 66-68.

Faced with those facts, Plaintiff instead alleges that the owners consented to personal

jurisdiction, or waived their defenses thereto, because they either "appeared" in the Eastern

District of Virginia proceedings (Amended Complaint at ¶¶ 5, 11, 20, 29, 38, 43) or "stipulated

to jurisdiction in the Northern District of Texas for this litigation" (*id.* at ¶¶ 6, 8, 12, 13, 15-19,

21, 22, 25, 28, 30-34, 36, 37, 40-42, 44-48).  Plaintiff's allegations are baseless. First, no owners

"appeared" in the Eastern District of Virginia proceedings.  Rather, when Defendants' counsel

moved to set aside default judgments against some of the domain names, counsel provided

declarations from the corresponding owners.  *Associated Recovery, LLC v. Does 1-44*, No. 1:15-

cv-1723 (E.D. Va.) Dkt. Nos. 46, 46-1, 49, 49-1, 52, 52-1, 62, 62-1, 62-2, 65, 65-1 (memoranda

in support of motions to set aside default judgment and owner declarations in support thereof).

Second, no owners "stipulated to [*in personam*] jurisdiction in the Northern District of Texas for

this litigation."  Rather, when seeking transfer to this Court, the original 28 *in rem* Defendants

(i.e., the domain-name Defendants) explained the following to the Eastern District of Virginia:

> Certain Defendants stipulate that, were Plaintiff to prevail in the Northern District
> (including any appeal), they would not challenge the jurisdiction of that court to
> order the domain registrar in Virginia to transfer the domain names. This should
> allay any fears Plaintiff has about the availability of relief from the Northern
> District.

Certain Defendants' Reply, *Associated Recovery, LLC v. Does 1-44*, No. 1:15-cv-1723, Dkt. 36

at 6 (E.D. Va. Apr. 11, 2016).  That stipulation addresses the Court's ability to order a change in

domain-name registrations.  It does not address personal jurisdiction.  Any *in personam* claims

should be limited to the missing necessary parties, Baron, Novo Point, Vogel and Nelson (*see*

Section E, *infra*), who are subject to personal jurisdiction in this Court.   Plaintiff's *in personam*

allegations against Defendants' owners fail as a matter of law, particularly in light of Plaintiff's

admission that the owners "are located outside of the United States and are not amendable in personam jurisdiction in the United States." Amended Complaint at ¶ 99. The Court should dismiss the allegations against the domain-name owners from this action under Rule 12(b)(2).

### E.      The Court Should Dismiss this Action for Failure to Join Necessary Parties.

"Determining whether to dismiss a case for failure to join an indispensable party requires a two-step inquiry." *Hood ex rel. Mississippi v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009). First, the court must determine whether a party should be added under the requirements of Rule 19(a). *Id.* Rule 19(a) requires that a person subject to process and whose joinder will not deprive the court of subject-matter jurisdiction be joined if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). "Rule 19(a) sets forth three circumstances in which joinder is not feasible: when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction." *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005).

Second, if the necessary party cannot be joined without destroying subject-matter jurisdiction, the court must then determine whether that person is "indispensable," that is, whether litigation can be properly pursued without the absent party. *Id.* at 629 (citing *HS Res., Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 2003)). The factors a district court is to consider in making this determination are laid out in Rule 19(b). *Id.* (quoting Fed. R. Civ. P. 19(b)).

Here, the necessary parties are (1) Novo Point, the actual party to the domain name assignment and transfer agreements; (2) Jeffrey Baron, the apparent owner of Novo Point who

has been embroiled in years of litigation in Texas and who the Texas courts have characterized as a "vexatious litigant"; (3) Damon Nelson, the permanent manager of Novo Point and signatory of the domain name assignment and transfer agreements; and (4) Peter Vogel, the Court-appointed Receiver for Novo Point.

### 1.    Novo Point

Plaintiff offers no proof that it is the successor-in-interest to Novo Point.  *See id.* ¶ 3. Moreover, given the complicated history of the *Netsphere* litigation giving rise to the issues at-bar, it is unclear how Novo Point could have transferred any domain names without any approval from the Court, and Plaintiff has not provided any order authorizing such transfer to itself of any assets of Novo Point or Baron.  In any event, Novo Point is required as the actual party to the domain name assignment and transfer agreements.  *See Jaffer v. Standard Chartered Bank*, 301 F.R.D. 256, 261 (N.D. Tex. 2014); *In re Rouge Indus., Inc.*, 326 B.R. 55, 59 (Bankr. D. Del. 2005) ("A determination of ownership to assets allegedly transferred between a buyer and a seller should not be attempted without both parties to the transaction being before the court.").

Plaintiff has not identified, nor are Defendants aware of, any order by the Court to unwind any transactions or the order authorizing sale of domain names entered during the Receivership.  Indeed, *Netsphere I*, 703 F.3d at 313, states otherwise.  To the extent there is a question of the validity of the assignments of the domain names, Novo Point remains a necessary party.  Indeed, Plaintiff punctuated the folly of its attempt to litigate this case without Novo Point.  Plaintiff alleges that its "predecessors-in-interest include Novo Point LLC."  Amended Complaint ¶ 3 (Dkt. 76).  Yet prior to Defendants' original March 25, 2016 Motion to Dismiss, Plaintiff had "**never before seen any of the agreements** that purported to transfer or assign any of the domain names from Novo Point to others during the Receivership."  Plaintiff's Opposition to Certain Defendants' Motion to Dismiss at 2-3 (Dkt. 36; emphasis added).  Similarly, Plaintiff

characterizes this case as "simply one where a plaintiff's property was taken" and "plaintiff is seeking to get its improperly taken property back." *Id.* at 11.  But in those statements, the "plaintiff" is Novo Point, not Associated Recovery.

### 2.      Jeffrey Baron

Plaintiff alleges that Baron is the predecessor-in-interest of Novo Point and of Plaintiff, and that Baron was responsible for acquiring the subject domain names.  Amended Complaint ¶ 3.  Plaintiff further suggests that Baron is the party actually in control of Novo Point and responsible for the domain names, stating throughout the Complaint that Baron and/or Novo Point had ownership rights in the domain names, and that Baron and/or Novo Point never gave authority for Nelson to act.  *See id.* ¶¶ 240-59.  Given Baron's close involvement with Novo Point (of which Baron apparently owns a controlling interest) and the domain names—and given that Baron's litigation misconduct caused the receivership and, in turn, domain-name sales—he is a necessary party.  *See Jaffer*, 301 F.R.D. at 261.  Indeed, Baron filed the *Vogel* case, which had the same operative facts as this case, except there Baron attacked the Receiver, while here Baron's proxy attacks the purchasers.  *See generally, Vogel I*, 2016 WL 1273465.  And in this case Baron attended the July 13, 2016 settlement conference as Plaintiff's representative.

### 3.      Peter Vogel and Damon Nelson

Nelson was the manager of Novo Point and the signatory to the domain name assignments.  As Receiver, Peter Vogel, supervised and authorized Mr. Nelson's activities.  Both should be joined, given that they are the parties who purportedly "wrongfully transferred" the domain names.  Amended Complaint ¶ 3; *see Jaffer*, 301 F.R.D. at 261.  Like Novo Point, Nelson, and Vogel are indispensable parties.  "[P]recedent supports the proposition that a contracting party is the paradigm of an indispensable party."  *Nat'l. Union Fire Ins. Co. v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 252 (4th  Cir. 2000).  Complicating this analysis, however, is the

24

Court's recent *Vogel I* decision, which dismissed Baron's claims against Vogel and held that Vogel's actions were consistent with his charge and not subject to collateral attack. *Vogel I*, 2016 WL 1273465 at *6. The same logic likely applies to Nelson, who was manager under Vogel's supervision and whose actions were also subject to the Court's review. *See Netsphere II*, 2013 WL 3327858, at * 18; *Netsphere III*, 2015 WL 140043, at *2. Accordingly, as a matter of law, neither Vogel nor Nelson is likely available as a party this lawsuit. *See Davis v. Bayless*, 70 F.3d 367, 373 (5th Cir. 1995); *Vogel I*, 2016 WL 1273465 at *5 ("Vogel and Gardere are entitled to immunity in connection with their administration of the receivership as long as they were acting pursuant [to] the receivership order(s) entered by Judge Furgeson."). Where necessary parties are indispensable but unavailable, dismissal is proper under Rule 12(b)(7). *See LST Financial, Inc. v. Four Oaks Fincorp, Inc.*, No. 14-cv-435, 2014 WL 3672982 (W.D. Tex. Jul. 24, 2014).

## IV.   CONCLUSION

For the foregoing reasons, Defendants move the Court to dismiss Plaintiff's claims with prejudice. Defendants respectfully reserve the right to seek fees and costs at such time.

Dated:  August 22, 2016                                  Respectfully submitted


By: */s/ Steven M. Geiszler*

*Of Counsel:*                                            Steven M. Geiszler
Lora A. Brzezynski                                       Texas Bar No. 24032227
Claire M. Maddox                                         Zunxuan D. Chen
Eric Y. Wu                                               Texas Bar No. 24059564
**DENTONS US LLP**                                       Juanita DeLoach
1900 K Street, NW                                        Texas Bar No. 24064218
Washington, DC 20006                                     **DENTONS US LLP**
202-496-7500 (phone)                                     2000 McKinney Avenue, Suite 1900
202-496-7756 (fax)                                       Dallas, Texas 75201-1858
lora.brzezynski@dentons.com                              T: (214) 259-0900
claire.maddox@dentons.com                                F: (214) 259-0910
eric.wu@dentons.com                                      steven.geiszler@dentons.com
                                                         digger.chen@dentons.com
                                                         juanita.deloach@dentons.com

                                                         *Counsel for Defendants*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 22, 2016 I caused the foregoing document to be

served on counsel of record via the Court's CM/ECF system.

*/s/ Steven M. Geiszler*
Steven M. Geiszler


100783712


26