**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**Dallas Division**

| | | |
|---|---|---|
| Associated Recovery, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:16-cv-01025-L |
| v. | ) | |
| | ) | |
| JINWU CHEN, XUMIN HUANG, FENG LU, | ) | |
| YUHUA JIANG, ZHILONG CHU, | ) | |
| YAUGUANG ZHU, YANBIN LI, YU LIN, | ) | |
| XIAOFENG LIN, GENJING ZHEN, | ) | |
| XIAOYING LI, LIWEI LIU, DONGDONG XU, | ) | |
| TENG WANG, YANG GAO, XIAOHANG SHEN, | ) | |
| FENG YAN, JAI TAI ZHE TECHNOLOGY COMPANY, | ) | |
| ROBERT KALFAYAN, DOMAIN CAPITAL, LLC, | ) | |
| HUOCHIN HUANG, CHUNMEI LIN, HAO WANG, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| *and* | ) | |
| | ) | |
| John Does 3, 5-6, 10, 19-20, 22-23, 31, 35, | ) | |
| | ) | |
| Defendants. | ) | |

In re:

| | | |
|---|---|---|
| 744.COM | RUTEN.COM | YEY.COM |
| 3DCAMERA.COM | SDU.COM | YJX.COM |
| FX2.COM | TAOLV.COM | YLZ.COM |
| FXF.COM | UHW.COM | |
| KOU.COM | VGJ.COM | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'**
**RULE 12(b) MOTION TO DISMISS AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND  . . . . . . . . . . . . . . . . 1

II.    ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.     The Defendants' Efforts to Apply Collateral Estoppel Are Misguided . . . . . . . . 2

            1.     The Issue in This Litigation Is Different from Prior Litigations   . . . . . . 3

            2.     The Plaintiff's Claims Are Applicable to the Relevant Facts  . . . . . . . . . 5

            3.     This Litigation's Issue Was Not Previously Determined Nor Was It
                 a Necessary Part of the Prior Litigations' Judgments . . . . . . . . . . . . . . . . 6

      B.     The Plaintiff's Claims Are Applicable and Are Not Time-Barred  . . . . . . . . . . . 7

            1.     The Claims Are Not Precluded by Statute of Limitations   . . . . . . . . . . . 7

            2.     The Plaintiff's Claims Are Applicable to the Relevant Facts  . . . . . . . . . 8

      C.     The Defendants' "Standing" Argument Is Based on a Presumption that
          Their Defenses Will Prevail  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      D.     This Court Possesses Personal Jurisdiction over the Domain Name
          Owners  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      E.     All Necessary Parties Have Been Identified in the Complaint  . . . . . . . . . . . . . 18

            1.     Novo Point Is Neither a Necessary nor an Indispensable Party  . . . . . . . 19

            2.     Mr. Baron Is Neither a Necessary Party nor an Indispensable Party  . . . 22

            3.     Neither Mr. Nelson nor Mr. Vogel Is a Necessary Party, Let Alone
                 an Indispensable Party  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

III.   CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

**Case**                                                                                              **Page**

*Amrollah v. Napolitano*, 710 F.3d 568 (5th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Amy's Ice Creams, Inc. v. Amy's Kitchen, Inc.*, 60 F. Supp. 3d 738 (W.D. Tex. 2014) . . . . . . . 12

*B&B Hardware, Inc. v. Hargis Indus.*, 135 S. Ct. 1293 (2015) . . . . . . . . . . . . . . . . . . . . . . 3, 5, 6

*Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*Baron v. Schurig*, 2014 U.S. Dist. LEXIS 180 (N.D. Tex. Jan. 2, 2014) . . . . . . . . . . . . . . . . . . 2

*Baron v. Vogel*, U.S. Dist. LEXIS 44294 (W.D. Tex. Mar. 31, 2016) . . . . . . . . . . . . . . . . . . . 4,5

*Blackburn v. City of Marshall*, 42 F.3d 925 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*BP Exploration & Prod. Inc. v. Cashman Equip. Corp.*, 132 F. Supp. 3d 876
(S.D. Tex. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145 (5th Cir. 1985) . . . . . . . . . . . . . . 13

*Conley v. Gibson*, 355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Deaton v. United Mobile Networks, L.P.*, 926 S.W.2d 756 (Tex. App. Texarkana 1996) . . . . . 11

*Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95 (Tex. App. 2013) . . . . . . . . . . . . . . . . . . . . . . . 12

*Gober v. Terra+Corp.*, 100 F.3d 1195 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*HECI Exploration Co. v. Neel*, 982 S.W.2d 881 (Tex. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Holmes v. Texas A&M Univ.*, 145 F.3d 681 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hood ex rel Mississippi v. City of Memphis*, 570 F.3d 625 (5th Cir. 2009) . . . . . . . . . . . . . . . . 19

*In re Davis*, 305 S.W.3d 326 (Tex. App. Houston 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Donoho*, 402 B.R. 687, 699 (Bankr. E.D. Va. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . 22-24

*In the Estate of Montemayor*, 2016 Tex. App. LEXIS 5749 (Tex. App. San Antonio,
June 1, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

iii

*In re Formtech Industries, LLC*, 439 B.R. 352 (Bankr. D. Del. 2010) . . . . . . . . . . . . . . . . . . . . 21

*In re Maggard*, 2007 Bankr. LEXIS 3893 (Bankr. E.D. Va. Nov. 13, 2007) . . . . . . . . . . . 22-24

*In re Rouge Indus., Inc.*, 326 B.R. 55 (Bankr. D. Del. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Jaffer v. Standard Chartered Bank*, 301 F.R.D. 256 (N.D. Tex. 2014) . . . . . . . . . . . . . . . 20, 22

*Kirk v. Palmer*, 19 F. Supp. 3d 707 (S.D. Tex. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 921 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . 15

*Nat'l Mortg. Warehouse, LLC v. Trikeriotis*, 201 F. Supp. 2d 499 (D. Md. 2002) . . . . . 21, 23, 24

*Nat'l Union Fire Ins. Co. v. Rite Aid of S.C., Inc.*, 210 F.3d 246 (4th Cir. 2000) . . . . . . . . . . . 23

*Netsphere v. Baron*, 703 F.3d 296 (5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

*Netsphere, Inc. v. Baron & Ondova Co.*, 2013 U.S. Dist. LEXIS 94308
(N.D. Tex. May 29, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Netsphere, Inc. v. Baron*, 2015 U.S. Dist. LEXIS 39735 (N.D. Tex. Mar. 27, 2015) . . . . . . . . . 4

*Ocwen Loan Servicing LLC v. Gonzalez Fin. Holdings, Inc.*, 77 F. Supp. 3d 584
(S.D. Tex. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

*Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776 784 (N.D. Tex. 2013) . . . . . . . . . . . 13

*Oxy USA, Inc. v. Southwestern Energy Prod. Co.*, 161 S.W.3d 277 (Tex. App. 2005) . . . . . . . 10

*Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Payan v. Cont'l Tire N. Am., Inc.*, 232 F.R.D. 587, 2005 U.S. Dist. LEXIS 31418
(S.D. Tex. Aug. 10, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23, 24

*Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513 (S.D. Tex. 1996) . . . . . . . . . . . . . . . . 10

*Pemex Exploracion y Produccion v. BASF Corp.*, 2013 U.S. Dist. LEXIS 144166
(S.D. Tex. Oct. 1, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Pepi Corp. v. Galliford* 254 S.W.3d 457 (Tex. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Prewitt v. Branham*, 643 S.W.2d 122 (Tex. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Robin Singh Educ. Servs. v. Test Masters Educ. Servs.*, 401 S.W.3d 95 (Tex. App. Houston 14th Dist. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*SEC v. American Capital Invs., Inc.*, 98 F.3d 1133 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . 6, 7

*Silverman v. CBS Inc.*, 870 F.2d 40 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Slaughter v. Qualls*, 139 Tex. 340 162 S.W.2d 671 (Tex. 1942) . . . . . . . . . . . . . . . . . . . . . . 15

*Sosa v. Coleman*, 646 F.2d 991 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Talcott v. Allahabad Bank, Ltd.*, 444 F.2d 451 (5th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . 3

*Taylor v. Bailey Tool & Mfg. Co.*, 744 F.3d 944 (5th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . 7

*Test Masters Educ. Servs. v. Robin Singh Educ. Servs.*, 799 F.3d 437 (5th Cir. 2015) . . . . . . . . 3

*Thyroff v. Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283 (N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . 11

*Torch, Inc. v. LeBlanc*, 947 F.2d 193 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Miller*, 2003 U.S. Dist. LEXIS 24884 (N.D. Tex. Dec. 22, 2003) . . . . . . . . . 15

*Universal City Studios, Inc. v. Kamar Indus.*, 217 U.S.P.Q. 1162 (S.D. Tex. 1982) . . . . . . . . . 13

*Voorhees v. Jackson*, 35 U.S. 449 (1836) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Watts v. Miles* 597 S.W.2d 386 (Tex. Civ. App. San Antonio 1980) . . . . . . . . . . . . . . . . . . . 11

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## CODES, MANUALS, RULES AND STATUTES

FED. R. CIV. P. 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

TRADEMARK MANUAL OF EXAMINING PROCEDURE § 1604.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 U.S.C. § 2201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

18 C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE & PROCEDURE § 4417
(2d ed. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

The Plaintiff Associated Recovery, LLC (the "Plaintiff"), by counsel, submits this opposition to Defendant's Rule 12(b) Motion to Dismiss Amended Complaint (the "Defendant's Motion").  ECF Nos. 80-82.  For the reasons set forth below, the Plaintiff respectfully requests that the Defendants' Motion be denied in its entirety.

## I.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The instant matter involves the sale of assets sold pursuant to a receivership that was subsequently held to be lacking jurisdiction and claims for relief for the return of that property. The Defendants' Motion is cluttered with a lot of noise, unnecessary "background," and efforts to taint the Court's impression of the Plaintiff or its predecessors.  In reality, the issues in this matter are much more focused and narrow than the Defendants are attempting to portray.

 In *Netsphere v. Baron*, 703 F.3d 296 (5th Cir. 2012), the primary appeal was of the Receivership Order itself, but numerous other interlocutory appeals were also filed, and combined, addressing the numerous orders and decisions from the district court that flowed from that Receivership Order.  Among the orders appealed was the order allowing the Receiver to sell domain names[1].  *See* App. 21-27 (Composite Exhibit 3).  The Fifth Circuit ultimately found that the Receivership Order was outside the district court's jurisdiction and vacated that order.

The other district court orders then fell with the Receivership Order.  With respect to the **order permitting the sale** of domain names, the Fifth Circuit issued a judgment holding that "the judgment of the District Court is **reversed**, and the cause is remanded to the District Court for further proceedings in accordance with the opinion of this Court."  *Id*.  The domino effect of

---

[1] This appeal was assigned number 11-10290.

1

the Fifth Circuit's ruling has even been recognized by Judge Lindsay.  *Baron v. Schurig*, 2014

U.S. Dist. LEXIS 180, at *42-45 (N.D. Tex. Jan. 2, 2014).

The Northern District of Texas then ultimately wound down the Receivership, issuing its

order regarding the Receivership's final accounting and discharge on March 27, 2015.[2]

In light of the District Court's lack of subject matter jurisdiction over the domain names

sold by the Receivership, the Fifth Circuit *expressly reversed* the Order approving the sale of the

domain names.  As a matter of simply logic, there is no way the Fifth Circuit could have done

otherwise in light of its conclusion that jurisdiction was lacking over the domain names.  The

Defendants' notion that the Sale Order somehow survived in the aftermath of the Fifth Circuit's

decision is unfounded, illogical, and demonstrably false.  As this is the basis for the Defendants'

Motion, the Motion should be denied.

## II.    ARGUMENT

The Plaintiff's predecessor prevailed on its appeal of the Receivership Order and the

order authorizing the sale of domain names.  The Defendants' Motion is premised upon a

disregard for these facts and instead offers muddled and insinuated arguments in an effort to

dismiss the matter and avoid the consequences of the Fifth Circuit's express holdings.  The

Defendants' Motion must be denied in its entirety.

### A.    The Defendants' Efforts to Apply Collateral Estoppel Are Misguided

The Defendants' arguments that collateral estoppel applies are based on misstatements of

the issues presented in this case and misguided efforts to shoehorn this matter into prior findings.

---

[2] The Certain Defendants' questions as to why the Plaintiff seeks the return of its property now are irrelevant.  If the Certain Defendants believe the Plaintiff (or its predecessor) had the standing to bring such claims earlier, they can bring a properly pled laches defense.

However, a clear-eyed look shows that the Defendants' efforts must fail.

To prevail on their theory of collateral estoppel, the Defendants must show (1) the issue in this litigation is identical to the issue involved in the prior litigations upon which the Defendants rely, (2) this issue was actually litigated in the prior litigations, and (3) the determination of the issue in the prior litigations was a necessary part of the judgment there. *Test Masters Educ. Servs. v. Robin Singh Educ. Servs.*, 799 F.3d 437, 448 (5th Cir. 2015).

"[I]ssues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same." *B&B Hardware, Inc. v. Hargis Indus.*, 135 S. Ct. 1293, 1306 (2015) (quoting 18 C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE & PROCEDURE § 4417, p. 449 (2d ed. 2002)). *See also Amrollah v. Napolitano*, 710 F.3d 568, 572 (5th Cir. 2013). ("However, '[i]ssues of fact are not "identical" or "the same" and therefore not preclusive, if the legal standards governing their resolution are "significantly different,"' or create a 'demonstrable difference' in legal standards" (quoting *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005), and citing *Talcott v. Allahabad Bank, Ltd.*, 444 F.2d 451, 459 n.8 (5th Cir. 1971)).

The first two factors for collateral estoppel are not present here and, necessarily, neither is the third. Therefore, the Defendants cannot make the necessary showing of collateral estoppel, and the motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) should be denied.

### 1. The Issue in This Litigation Is Different from Prior Litigations

In an effort to show "identical" issues, the Defendants continually go back to a blanket and mistaken premise that the Plaintiff is asserting that the Receivership was wrongful and that

this issue was already decided in earlier litigations.  This sweeping and generalized view misses the real issue in this case, which is distinct from the issues in the prior litigations.

It is important to be clear on what this case is **not** about.  This case is **not** about attacks on the appointment of the underlying receivership.  The Fifth Circuit has already addressed that issue.  This case is also **not** about attacks on the Receiver or his agents.  Rather, this case is about **the return of property to its rightful owner**.  The crux of this case is that the sales of the domain names at issue may be set aside as void, since they were conducted solely due to an Order which was found to lack subject matter jurisdiction **and** the orders under which the sales were made were reversed.

It is also important to be clear on what the issues were in the prior litigations cited by the Defendants.  *Netsphere I* was about the propriety of the District Court's order appointing a receiver.  The Fifth Circuit held that the appointment was an abuse of discretion and outside the subject matter of the District Court and therefore vacated that order.  *Netsphere, Inc.*, 703 F.3d 296.  *Netsphere II* was about the management of winding down the Receivership and the amount of fees to be paid to the Receiver and his agents.  *Netsphere, Inc. v. Baron & Ondova Co.*, 2013 U.S. Dist. LEXIS 94308 (N.D. Tex. May 29, 2013).  *Netsphere III* was about the Receiver's request for Approval of Final Accounting, Application for Payment, and Request for Order of Final Discharge.  *Netsphere, Inc. v. Baron*, 2015 U.S. Dist. LEXIS 39735 (N.D. Tex. Mar. 27, 2015).  *Vogel* was about judicial immunity as well as whether the defendants there (including the

4

Receiver) engaged in wrongful or sanctionable conduct in the *Netsphere* cases.[3]   *Baron v. Vogel*,

U.S. Dist. LEXIS 44294 (W.D. Tex. Mar. 31, 2016).

An argument that the causes of action in this matter and the causes of action and

decisions in *Netsphere I, II, III* and *Vogel* are all related to the institution of a receivership is

simply not sufficient for finding that the issues are identical.   Not only are the actual issues and

causes of action in the cases cited by the Defendants different from the issue in this case, but the

legal standards applied are different as well.   Therefore, the issues cannot be "identical" and

meet the requirements for applying collateral estoppel.   *B&B Hardware, Inc.*, 135 S. Ct. at 1306.

 Even glossing over the entirely different causes of action in this matter, the question of the

receivership in this case centers on the void nature of the sales of the domain names.   The

question of whether a sale is void is subject to legal standards that are simply not the same as the

legal standards applied in determining whether the order appointing the receiver should be

vacated or whether fees should be awarded to the Receiver.

### 2.      This Litigation's Issue Has Not Been Actually Litigated

"As a general rule, an issue is 'actually litigated' only when it is properly raised by the

pleadings, submitted for a determination, and actually determined."   *Gober v. Terra+Corp.*, 100

F.3d 1195, 1203 (5th Cir. 1996) (internal citation omitted).   The issue in this litigation was never

actually litigated in the prior litigations.   None of the prior litigations cited by the Defendants

---

[3] Indeed, it was not even Vogel himself who purported to sell the domain names; they were unlawfully sold by Mr. Nelson, the Court-appointed "Manager."   Mr. Nelson is not a party to the *Vogel* action.   The point remains, however, that there was not and could not have been any claim for injunctive relief against Messrs. Vogel or Nelson seeking to have the court order either to return ownership of the domain names to the rightful owner.   Only a suit against the current parties who currently claim an ownership interest can effectuate that relief.

addressed the issue of whether a court-ordered sale is void when it is later held that the order

authorizing the sale was found to lack subject matter jurisdiction.  Indeed, the question of subject

matter jurisdiction was raised only in relation to judicial immunity.  Judicial immunity is an

entirely different context subject to distinct precedent from the issue at hand and therefore is not

an "identical" issue under collateral estoppel.  *See B&B Hardware, Inc.*, 135 S. Ct. at 1306.

The closest the Defendants can get to arguing that the second prong of collateral estoppel

applies is a vague "it must be inferred" argument that, since the Receiver was paid via the sales

of the domain names after the Fifth Circuit's decision, the issue raised in this litigation has been

somehow addressed.  However, the Defendants do not point to any statements or findings in the

prior litigations where the issues in this case were actually raised and submitted for decision, let

alone litigated and determined.

> ### 3.      This Litigation's Issue Was Not Previously Determined Nor Was It a Necessary Part of the Prior Litigations' Judgments

There has been no judgment in any of the prior litigations cited by the Defendants

wherein the issue of this case was actually litigated or determined.  Consequently, the issue of

this litigation was not a necessary part of any of the judgments in these prior litigations.

The issue in this case is not identical to any of the issues raised, actually litigated, or

determined in the prior litigations.  Therefore, collateral estoppel cannot apply.  Moreover, to the

extent the Defendants assert that this litigation is a collateral attack on any earlier decisions, such

an assertion is a red herring.  Parties are allowed to "collateral[ly] attack[] a jurisdictionally void

sale," as opposed to attacking the sale on direct review.  *SEC v. American Capital Invs., Inc.*,

6

98 F.3d 1133, 1141 (9th Cir. 1996) (citing *Voorhees v. Jackson*, 35 U.S. 449 (1836)).[4]  The

Defendants' motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) should therefore be denied.

### B.      The Plaintiff's Claims Are Applicable and Are Not Time-Barred

### 1.      The Claims Are Not Precluded by Statute of Limitations

The Defendant contends that several claims in the amended complaint should be

dismissed pursuant to the applicable statutes of limitations.  Specifically, the Defendant targets

the claims for conversion, unjust enrichment, and misappropriation under the Texas Theft

Liability Act.  Even assuming that the statute of limitations proffered by the Defendant are

correct, the Defendants have not shown that "it is evident from the pleadings that the action is

time-barred." *Taylor v. Bailey Tool & Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014).  Moreover,

the Defendants fail to account for the bases of tolling raised in the pleadings. *Id.*  Therefore, the

Defendants' statute of limitations attack should be denied. *Id.*  A crucial part of the claims

identified by the Defendant is that the Sales Order was void in light of the Fifth Circuit's holding

in *Netsphere*. *See supra*.  The mandate for the Fifth Circuit's holding occurred on April 19,

2013, but the last challenge to the Fifth Circuit was not disposed of until November 4, 2014 (the

last denial of a petition for writ of certiorari), and the Receivership was not wound down until

March 27, 2015.  "Where a person is prevented from exercising his legal remedy by the

pendency of legal proceedings, the time during which he is thus prevented should not be counted

against him in determining whether limitations have barred his rights." *Holmes v. Texas A&M

Univ.*, 145 F.3d 681, 684 (5th Cir. 1998).  While the Receivership was still in the process of

---

[4] *American Capital Investments, Inc*. further noted that the ability to being such a
collateral attack was contingent on the party being able to overturn the order which authorizes
the sale in the first place.

being wound down the Plaintiff's predecessors were expressly prohibited from hiring any new counsel or pursuing any legal actions. *See* App. 4-7.   Furthermore, when the domain names were sold the Receiver did not disclose the identity of the domain names sold or the registrants. The domain name identifications were actually redacted from the filings that were made and never disclosed to the Plaintiff's predecessors or any Receivership party. *See* App. 8-20. Discovery of the relevant information did not occur until much later.  These facts represent significant impediments to brining suit earlier and justify tolling of the limitation periods that may otherwise be applicable.

### 2.     The Plaintiff's Claims Are Applicable to the Relevant Facts

Fed. R. Civ. P. 12(b)(6) motions to dismiss are disfavored, and rarely granted.  *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).  On a Rule 12(b)(6) motion to dismiss, the Court cannot look beyond the face of the pleadings, and the Court must accept those well-pled facts as true and view them in the light most favorable to the plaintiff.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  A defendant's motion to dismiss under Rule 12(b)(6) should be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle the plaintiff to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); and *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  The Defendants' Motion forgets all of these basic principles and instead offers a few paltry lines of arguments for each cause of action (all based on a presumption that the Defendants' theory will ultimately prevail) in an effort to scare up "inapplicability" of the claims.  The Defendants efforts must all fail.

8

**ACPA:**  The Defendants' argument of abandonment of the marks demonstrates a misunderstanding of trademark law.  Non-use is excused, and there is no abandonment, when a trademark owner is prevented from using its mark due to circumstances outside of the owner's control.  TRADEMARK MANUAL OF EXAMINING PROCEDURE § 1604.11.  Moreover, a presumption of abandonment can be rebutted when a trademark owner takes affirmative steps in an effort to use its mark again once the condition forcing the suspension abates.  *See Silverman v. CBS Inc.*, 870 F.2d 40 (2d Cir. 1989).  These bedrock principles apply here.  The Plaintiff was prevented from using its marks due to the Receivership, which was instituted without the Plaintiff's permission.  This constitutes circumstances beyond the Plaintiff's control.  Additionally, the Plaintiff and its predecessors have taken affirmative steps to regain control over the marks and, thereby, the ability to use the marks.  The Plaintiff's predecessor appealed the institution of the Receivership and the order permitting the sale of the domain names.  *See* App. 21-27.  After winning these appeals, the Plaintiff brought this case to regain control and use of its marks.

The Defendants also rely on the ACPA's safe harbor provision and try to argue lack of bad faith.  On a Rule 12(b)(6) motion the Plaintiff's well-pled allegations, such as the Defendants' knowledge, are to be believed.  As set forth in the Plaintiff's complaint, the Defendants had knowledge of the appeal regarding the Receivership and questioned its authority to sell the domain names.  ECF No. 76, paras. 245-249.  The well-pled allegations that the Defendants pursued the transactions to obtain the domain names despite the very real likelihood of reversal of the Receivership prevent the Defendants' efforts to find protection in the ACPA's safe harbor provision.

9

**Quiet Title**:  As with the majority of the Defendants' Motion, their arguments as to quiet title are based on a presumption that the Defendants' theory of the case will prevail.  However, the issue is not whether the Plaintiff will ultimately prevail but whether the Plaintiff is entitled to offer evidence.  *Scheuer*, 416 U.S. at 236.  The Plaintiff's well-pled facts must be taken as true and viewed in the light most favorable to the Plaintiff.  *Baker*, 75 F.3d at 196.  Applying these principles, it is clear the Plaintiff has properly pled a quiet title claim.  Namely, the Plaintiff has an interest in the domain names at issue, title to those domain names is affected by the Defendants' claims of ownership and, while the Defendants' claims may be facially valid (relying, as the Defendants do in their motion, on the Receiver's sales), those claims are actually invalid and unenforceable because the court had lacked subject matter jurisdiction to order the Receivership.  As a result, the Receivership Order was void, and any orders issued under the guise of the Receivership's authority similarly fall and are void and unenforceable.  *See In the Estate of Montemayor*, 2016 Tex. App. LEXIS 5749, at *6 (Tex. App. San Antonio, June 1, 2016) (affirming summary judgment for plaintiff, since plaintiff established that the defendant's claim to the property was based on a violation of the relevant statute, causing the defendant's claim to be invalid or unenforceable).

**Conversion:**  Texas recognizes conversion of intangible personal property under the "merger exception," when the intangible right has been merged into a physical document and that document has been converted.  *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1569 (S.D. Tex. 1996), and *Oxy USA, Inc. v. Southwestern Energy Prod. Co.*, 161 S.W.3d 277, 284 (Tex. App. 2005).  Applying this doctrine Texas courts have recognized conversion of intangible property such as lease documents, customer lists, and shares of stock.  *Prewitt v. Branham*, 643

10

S.W.2d 122, 123 (Tex. 1982); *Deaton v. United Mobile Networks, L.P.*, 926 S.W.2d 756, 762

(Tex. App. Texarkana 1996) *rev'd in part on other grounds*, and *Watts v. Miles* 597 S.W.2d 386,

387-88 (Tex. Civ. App. San Antonio 1980). Control over and the right to use a domain name are

memorialized in documents with domain name registries and registrars that permit the domain

name registrant to use and control that portion of the Internet that may be accessed by a specific

domain name. These contracts are analogous to lease documents and shares of stock as they all

memorialize obligations between parties to permit control and/or ownership over some property.

Additionally, as with customer lists, a domain name is a specific asset for a company. The mere

fact that agreements for domain names are electronic and not in paper format should not preclude

the application of the merger exception. *Robin Singh Educ. Servs. v. Test Masters Educ. Servs.*,

401 S.W.3d 95, 102-04 (Tex. App. Houston 14th Dist. 2011) (J. Thompson Frost, concurring)

(citing *Thyroff v. Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283 (N.Y. 2007); *In re Davis*, 305 S.W.3d

326, 332-33 (Tex. App. Houston 2010); and *Kremen v. Cohen*, 337 F.3d 1024, 1034, n.11

(9th Cir. 2003)).

The Defendants' remaining "throw away statement" regarding "authorized" actions once

again assumes that its theory will prevail and fails to follow the standards under FED. R. CIV.

P. 12(b)(6) regarding the Plaintiff's allegations.

**Declaratory Judgment:** "Since its inception, the Declaratory Judgment Act has been

understood to confer on federal courts unique and substantial discretion in deciding whether to

declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *see also*

*Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991), and 28 U.S.C. § 2201. The

Defendants' assertion that the Second Amended Complaint does not clearly state what rights the

11

Plaintiff would like declared is entirely unfounded.  The Second Amended Complaint specifically asks this Court to declare that "the Plaintiff is the rightful owner of the Subject Domain Names" at issue.  ECF No. 76, paras. 279-280.

**Texas Theft Liability Act:**  Once more the Defendants fail to provide any recognition of the presumptions afforded under FED. R. CIV. P. 12(b)(6) to the Plaintiff's allegations in the Second Amended Complaint.  Rather, the Defendants argue there could be no theft because the sales of the domain names were done pursuant to "authorization" from the invalid Receivership. This argument conveniently ignores the factual allegations in the Second Amended Complaint and actual language in the Fifth Claim:  the Defendants intentionally deprived the Plaintiff of its rights to the domain names.  The Plaintiff has alleged that the Defendants knew that Receivership was invalid or, at the least, that the authority of the Receivership was being questioned and appealed and had sought assurances of "clear title."  Despite this knowledge and concerns, the Defendants proceeded with the improper sales.

**Unjust Enrichment:**  Unjust enrichment is recognized as a cause of action in Texas. *Pepi Corp. v. Galliford* 254 S.W.3d 457, 460 (Tex. App. 2007); *Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 111 (Tex. App. 2013); and *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 891 (Tex. 1998).[5]

---

[5] At most, "Texas courts are in conflict about whether there is an independent cause of action for unjust enrichment" but "[d]espite the lack of unanimity among Texas courts, one thing remains clear:  . . . the courts have still allowed plaintiffs to recover based on the theory of unjust enrichment so long as a 'person has obtained a benefit from another by fraud, duress, or the taking of undue advantage.'"  *BP Exploration & Prod. Inc. v. Cashman Equip. Corp.*, 132 F. Supp. 3d 876, 889-890 (S.D. Tex. 2015) (quoting *Amy's Ice Creams, Inc. v. Amy's Kitchen, Inc.*, 60 F. Supp. 3d 738, 746 (W.D. Tex. 2014)).

**Misappropriation**:  The Defendants' assertion that Texas only recognizes trade secret misappropriation is wrong.  Misappropriation "involves the appropriation and use by the defendant, in competition with the plaintiff, of a unique pecuniary interest created by the plaintiff through the expenditure of labor, skill and money."  *Universal City Studios, Inc. v. Kamar Indus.,* 217 U.S.P.Q. 1162 (S.D. Tex. 1982) (approved in *Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 156 (5th Cir. 1985)).  *See also Kirk v. Palmer*, 19 F. Supp. 3d 707, 709 (S.D. Tex. 2014) ("misappropriation claim – which could, but does not necessarily, involve a federal trademark"); and *Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 784 (N.D. Tex. 2013) (discussing the elements to common law misappropriation, with no requirement of trade secret).

**Fraudulent Conveyance**:  Again the Defendants' argument ignore the principles and presumptions of a Rule 12(b)(6) motion.  The domain names should have been returned to the Plaintiff, or its predecessors, once the Receivership was vacated.  As properly pled in the Second Amended Complaint, the Defendants had knowledge that the Receivership's authority to sell the domain names was appealed and being challenged, as well as Plaintiff's predecessor's rights in the names, and that the names should be returned upon vacation of the Receivership.  Yet, in an effort to avoid the Plaintiff's (or its predecessor's) pre-existing claim to the domain names, the Defendants engaged in transactions with Mr. Nelson, with full knowledge that he might not have any authority to enter the transaction.  Indeed, the transfers were without authorization of the

Plaintiff's predecessor.[6]  Moreover, the Defendants' reliance on the Receivership's authority remains flawed for the reasons set forth *supra*.

### C.    The Defendants' "Standing" Argument Is Based on a Presumption that Their Defenses Will Prevail

The Defendants' standing arguments once again ignore the fact that the Plaintiff's predecessor appealed the orders permitting the sale of domain names by the Receiver and the Fifth Circuit reversed that judgment.  The Defendants' two arguments as to a lack of standing are fundamentally flawed and depend on a presumption that certain defenses will be found.

First, the Defendants argue there was no injury in fact because the domain names were sold pursuant to the District Court's order appointing a receivership and because "the Court implicitly authorized the sales *post hoc*."  Dkt. 48, PageID 690-91.  This argument does not equate to a lack of injury in fact.  The injury in fact **was** the sale and assignment of the domain names.  That this was done pursuant to an order later held to be without jurisdiction does not "erase" the injury.  It is fundamental that a party who loses title to property sold through what is later held to be a void sale has standing to bring a claim to recover that property.  *See Ocwen Loan Servicing LLC v. Gonzalez Fin. Holdings, Inc.*, 77 F. Supp. 3d 584 (S.D. Tex. 2015). (Plaintiff brought suit, on which it ultimately prevailed, alleging wrongful foreclosure and to quiet title over property that was sold to one of the defendants via a tax sale that the plaintiff argued was void.)

Second, the Defendants argue that any injury "was not caused by the Defendants, who directly or indirectly, are bona fide purchasers for value of the domain names."  Dkt. 48,

---

[6] Mr. Nelson was appointed by the Receiver and was not an independent voice for the Plaintiff's predecessor.

14

PageID 691.  Whether or not the Defendants are bona fide purchasers is not ripe for decision.

Moreover, it is immaterial if the sale and transfer of the domain names were void.  *See Ocwen*

*Loan Servicing*, 77 F. Supp. 3d at 597-97 (citing *Slaughter v. Qualls*, 139 Tex. 340, 345, 162

S.W.2d 671 (Tex. 1942)).  *See also United States v. Miller*, 2003 U.S. Dist. LEXIS 24884 (N.D.

Tex. Dec. 22, 2003).  (A tax sale that was invalid when it occurred did not convey any legally

enforceable interest in the property to the buyer, even though the buyer was a bona fide

purchaser.)  *See also Pemex Exploracion y Produccion v. BASF Corp.*, 2013 U.S. Dist. LEXIS

144166, *54-56 (S.D. Tex. Oct. 1, 2013) (defendant accused of conversion who asserts the

defense of being a good faith purchaser for value must establish that its title was voidable and

not void).  Similarly, the Defendants' argument of an implied license falls flat since its case

citation refers to valid sales.  *McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 921 (Fed. Cir.

1995).  There is no indication that the Federal Circuit ever intended to allow implied licenses

when a sale was void or otherwise improper.  Indeed, to allow such a result would fly in the face

of the principle that even a good faith purchaser does not acquire title in a void sale.

Nor does the Defendants' argument that the Plaintiff's predecessors caused the injury

hold water.  The injury was a result of the sale authorized by the Receivership, a mechanism

improperly utilized by the District Court below. The Defendants' argument would negate the

Fifth Circuit's holding that the Receivership was improper and the reversals of the orders

permitting the sales of the domain names – sales of property that belonged to entities that were

never properly before the District Court.

The injury in fact is that the Defendants are the current owners of the domain names at

issue, and not the Plaintiff.  The fact that the Defendants bought the domain names causally

connects them to the injury at hand and, as pled, the Defendants had knowledge of the unstable

ground on which the sales occurred.  The fact that the sale of the domain names occurred

pursuant to a Court order does not obviate the injury in fact or the connection to the Defendants.

While the Defendants may assert a good faith purchaser argument as a defense, the mere

existence of a possible defense does not result in a lack of standing.  The Plaintiff's predecessors

had standing to bring this suit.  Therefore, the Plaintiff has standing, and the Defendants' motion

to dismiss pursuant to FED. R. CIV. P. 12(b)(1) should be denied.

### D.   This Court Possesses Personal Jurisdiction over the Domain Name Owners

This case was initially brought as an *in rem* proceeding in the Eastern District of Virginia

pursuant to the terms of the ACPA.  The Defendants (some appearing only after default was

entered) argued to the Eastern District of Virginia that it could not exercise jurisdiction in no

small part because "The ACPA Prefers *In Personam* Suits."  App. 30-31.  In their papers to the

Eastern District of Virginia the "Certain Defendants" argued:

>    "in cases where the plaintiff is able to obtain personal jurisdiction over a
> defendant in any district in the United Sates, courts have found *in rem* proceedings
> inappropriate,"

>    "under the ACPA, the preferred jurisdictional basis is *in personam*, and that *in
> rem* should only be used as a last resort.  Further, Plaintiff fails to mention that once a
> case can be brought *in personam*, the *in rem* cause of action should no longer be
> maintained,"

>    "Plaintiff concedes that *in personam* jurisdiction in the Northern District would
> be appropriate at least as to Xiaofeng Lin,"

>    "Thus, **Mr. Lin already consented to personal jurisdiction in the Northern
> District**," and

>    "Certain Defendants stipulate that, were Plaintiff to prevail in the Northern
> District (including any appeal), they would not challenge the jurisdiction of that court to
> order the domain registrar in Virginia to transfer the domain names."

*Id.*

During the hearing on the motion to dismiss, the Plaintiff was clear that its understanding was that the "Certain Defendants" were "stipulat[ing] to the personal jurisdiction and the jurisdiction of the Texas court to enter the relief" and that "each individual defendant is stipulating to the jurisdiction of Texas," and "not just that point person." (App. 35-36. Tr. p. 6, lines 18-22, p. 7, lines 3-9.)  In response to the Plaintiff's effort to clarify this point, the Court responded "That's what I understand."  (*Id.*, p. 7, line 10).  Immediately thereafter, counsel for the "Certain Defendants"stated, "**as to Xiaofeng Lin** . . . he is **actually on the face of** one of the **domain name transfer agreements**.  **He has consented to the personal jurisdiction of Texas**; thus there's no *in rem* jurisdiction over him here because **there's *in personam* jurisdiction in Texas**."  (App. 18, Tr. p. 7, lines 14-20) (emphasis added).

While discussing its reasoning for granting the transfer to the Northern District of Texas, the Court included the following:

> [I]t appears in any event that there's no reason to think that personal jurisdiction cannot be obtained over these certain defendants who claim these domain names as evidenced by both plaintiff' claims in the Eastern District of Texas against certain of these certain defendants and also the certain defendants' stipulation that they consent to the jurisdiction of the Northern District of Texas for the purposes of providing any remedy with respect to the transfer of these domain names.
>
> In that regard, the anticybersquatting act specifically contemplates that such claims will be asserted where there is personal jurisdiction as the preferred course reserving *in rem* jurisdiction for those cases where personal jurisdiction is not obtainable.

(App. 38, Tr. p. 11, lines 8-23).[7]

---

[7] The Plaintiff notes that the Defendants were aware of these statements on the record prior to filing the Defendants' Motion.  *See* App. 39-40.

In sum, the Certain Defendants argued that if a party signed, or was "on the face of" a domain transfer agreement, there was personal jurisdiction over that party in this Court.[8] Moreover, the Certain Defendants repeated both in their papers and at oral argument that Mr. Lin consented to personal jurisdiction in this Court.  Both the Plaintiff and the Eastern District of Virginia understood that the Northern District of Virginia could exercise personal jurisdiction over the Certain Defendants.  Again, the Court there held "there's no reason to think that personal jurisdiction cannot be obtained over these certain defendants who claim these domain names as evidence by ... the certain defendants' stipulation."  (App. 38, Tr. p. 11, lines 9-14.)

The Defendants simply should not be permitted to make one argument in front of the Eastern District of Virginia, (with the Court relying on such an argument) and now completely disavow their earlier statements, arguments and flat out concessions.  The Defendants already agreed to personal jurisdiction.  They cannot now argue there is no personal jurisdiction.[9]

### E.    All Necessary Parties Have Been Identified in the Complaint

A person is only a necessary party if:

(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so

---

[8] The Plaintiff does not have the agreements by which all of the Certain Defendants allege to have acquired the domain names at issue.  The Defendants have produced agreements between Messrs. Lin and Chen that fall under the Certain Defendants' arguments for personal jurisdiction made before the Virginia Court.  *See* ECF No. 82, App. 3-29.

[9] To the extent the Defendants are only "walking back" their prior arguments as to the Defendants who did not sign an agreement with the Receiver (unlike Mr. Lin), and asserting they were only stipulating to some sort of "limited" jurisdiction for those parties, the Plaintiff respectfully requests those limited Defendants be reverted to *in rem*.  Of course, if discovery uncovers that any of the "*in rem*" Defendants did sign an agreement similar to the one signed by Mr. Lin, those Defendants should be *in personam*.  The Plaintiff also would request attorney fees for needing to make such a motion.

situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

FED. R. CIV. P. 19(a).  "[T]he party advocating joinder has the initial burden of demonstrating that a missing party is necessary."  *Hood ex rel Mississippi v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009).  The burden shifts to the opposing party only "after 'an initial appraisal of the facts indicates that a possibly necessary party is absent.'"  *Id*. (quoting *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986).  The Defendants have failed to meet their initial burden.

From the outset it is important to remember once more what this case is not about.  The case is **not** a breach of contract case.  There are no factual questions to be resolved as to the validity of the sales or assignments of the domain names or whether one party failed to follow through on its end of a bargain.  No relief is being sought by the Plaintiff against anyone other than from the current owners of the domain names, the Defendants.

## 1.     Novo Point Is Neither a Necessary nor an Indispensable Party

The Defendants assert Novo Point is a necessary party because they do not believe that the Plaintiff is a successor-in-interest to Novo Point.  This is pure unfounded speculation on their part.  As pled in the Complaint, on or about December 24, 2015, Novo Point assigned its domain names and their associated trademarks and goodwill to the Plaintiff.  This included the right for the Plaintiff to sue and recover possession of the domain names and recover damages for past, present, and future infringements, dilution, misuse, misappropriation and other violations.  ECF No. 76, para. 106.  The Defendants' bemused ponderings as to whether the assignment from Novo Point to the Plaintiff was proper are without merit and lack any citation to the record or

19

law.  As the case progresses and necessary protective orders are entered, the Defendants can

make a discovery request to see the assignment to the Plaintiff.[10]

The Defendants also mischaracterize this case in an effort to apply case law applied to

contract disputes.  The validity of any assignments or transfers conducted under the

Receivership's authority rises and falls on the Fifth Circuit's determination of the invalidity of

the order instituting the Receivership.  There are no other questions regarding the assignments or

transfers of the domain names.  For example, in *Jaffer v. Standard Chartered Bank*, 301 F.R.D.

256 (N.D. Tex. 2014), "the case concern[ed] an allegedly breached investment contract and

access to funds in a Ghanaian bank account," and the purported necessary party was a central

contracting party.  *Id*. at 258.  The Defendants also cite *In re Rouge Indus., Inc.*, 326 B.R. 55, 59

(Bankr. D. Del. 2005) to support the misguided argument that Novo Point, "as the actual party to

the domain name assignment and transfer agreements," is a necessary party.  However, *In re*

*Rouge* concerned the customer of a chapter 11 debtor, who sued that debtor for a determination

that the customer's debt was not transferred to a third party buyer.  The third party buyer was

held to be a necessary party because the plaintiff was "seek[ing] a determination that [the

debtor], not [the third party], owns the receivable due from" the plaintiff, and the third party

claimed an interest in the property.  *Id*.

Neither of these cases is even remotely similar to the issues of this case.  First, in both

cases cited by the Defendants, the "necessary party" was necessary as a defendant, not a

---

[10] The fact that the Plaintiff had not seen the agreements signed by the Defendants is a red herring.  The Plaintiff had not seen them because, to its knowledge, Novo Point had never seen the documents either.  These agreements were entered into by a Court-appointed "manager" of Novo Point.  All that this statement from the Plaintiff shows is that the Plaintiff, and its predecessor, was unaware of to whom the domain names were sold and when they were sold.

plaintiff.  Second, the causes of action and related facts in these cases are what gave rise to their

holdings.  This case does not share any causes of action or related facts with those cases.  The

Plaintiff is not alleging breach of contract or seeking to enforce a contract.  Nor is the Plaintiff

seeking a determination that someone other than the Plaintiff owns the domain names, and no

one else is claiming an interest to the domain names at issue.  A more apposite case would be *In*

*re Formtech Industries, LLC*, 439 B.R. 352, 359 (Bankr. D. Del. 2010).  The court distinguished

its case from *e Industries* and held it was not necessary to join sellers of a property because the

plaintiff, "the party asserting ownership over the property in dispute [was] already present in the

proceeding" and "the validity of the assignment [was] not at issue."  *Id.*

On a more fundamental level, even if Novo Point were a necessary and indispensable

party, the Defendants offer no explanation of how that would create a problem justifying

dismissal of the case.[11]

If the Defendants feel that their defense requires testimony from Novo Point, then the

Defendants may bring Novo Point as a witnesses.  *Payan v. Cont'l Tire N. Am., Inc.*, 232 F.R.D.

587, 590, 2005 U.S. Dist. LEXIS 31418, *9 (S.D. Tex. Aug. 10, 2005); *see also Nat'l Mortg.*

*Warehouse, LLC v. Trikeriotis*, 201 F. Supp. 2d 499, 506 (D. Md. 2002).  (The Maryland court

held two parties were not "necessary" to an action despite their involvement in the alleged

transfers at the heart of the case.  The court noted that certain facts had "been established beyond

a reasonable doubt in prior proceedings" and "[o]ther matters relating to their involvement in the

alleged transfers . . . may be determined by either calling them as witnesses if necessary, or using

---

[11] It was the Defendants' burden to make this showing.  Since the Defendants failed even to address this element, the Plaintiff respectfully submits the Defendants should be precluded from offering any last-minute arguments in their reply.

documentary evidence.") *See also In re Maggard*, 2007 Bankr. LEXIS 3893, *11 (Bankr. E.D. Va. Nov. 13, 2007) (holding the chapter 7 trustee, who sold the property at issue, was not a necessary party to the litigation, even though he "might be a useful witness, but that [was] a different issue"); and *In re Donoho*, 402 B.R. 687, 699 (Bankr. E.D. Va. 2009) (noting the difference between an important *witness* and a necessary *party*, based on how the action is framed).

### 2. Mr. Baron Is Neither a Necessary Party nor an Indispensable Party

The Defendants' argument regarding Jeffrey Baron as a "necessary" party is based solely on an argument of Mr. Baron's "close involvement with Novo Point and the domain names."[12] The Defendants do not allege that Mr. Baron signed any of the agreements with the Defendants or that he was otherwise a party to those contracts. At best, it seems that the Defendants are asserting a claim that Novo Point and/or the Plaintiff functions as an alter ego for Mr. Baron. This, however, is a basis for **denying** a finding that Mr. Baron is a necessary party. *Jaffer*, 301 F.R.D. at 262. (If a named party is the alter ego of a third party, then the third party is not a necessary party since the defendant "would have sufficient control and knowledge over the [third party] such that the party would not be prejudiced by [the third party's] absence.")

---

[12] The Plaintiff also disputes the cavalier statement that this case and *Vogel* have the "same operative facts." The only similarity in the facts is that a receivership was entered. Neither the Defendants nor the sale of the domain names at issue in this case were addressed in *Vogel*. Moreover, as discussed *supra*, the issues in this case and in *Vogel* are indeed quite different.

Once again, the Defendants offer no explanation of how, even if Mr. Baron were a

necessary and indispensable party, that would create a problem justifying dismissal of the case.[13]

The mere fact that Mr. Baron appeared as the Plaintiff's representative at a settlement conference

does not make Mr. Baron a necessary or indispensable party.  Again, if the Defendants feel that

their defense requires testimony from Mr. Baron, then they may call him as a witness.  *Payan*,

232 F.R.D. at 590.  *See also Nat'l Mortg. Warehouse, LLC*, 201 F. Supp. 2d at 506; *In re

Maggard*, 2007 Bankr. LEXIS 3893 at *11; and *In re Donoho*, 402 B.R. at 699.

### 3.    Neither Mr. Nelson nor Mr. Vogel Is a Necessary Party, Let Alone an Indispensable Party

The Defendants fail to recognize the actual scope of this case with its allegation that

Messrs. Nelson and Vogel are necessary parties because "they are the parties who purportedly

'wrongfully transferred' the domain names" and "'a contracting party is the paradigm of an

indispensable party.'"  Dkt. 48, PageID 695 (quoting *Nat'l Union Fire Ins. Co. v. Rite Aid of

S.C., Inc.*, 210 F.3d 246, 252 (4th Cir. 2000)).  In *Nat'l Union Fire Ins.*, the plaintiff brought suit

seeking a declaratory judgment that it was not obligated to provide coverage under a general

liability policy to the defendant because the defendant failed to comply with provisions and

procedures in the agreement.  The Court held that "the district court's adjudication of the case on

the merits will necessarily require it to interpret" the policy and related agreements and that,

since it was the defendant's parent that signed these contracts, that parent company was a

necessary party.  210 F.3d at 251.  The need to interpret a contract was crucial in the *Nat'l Union

Fire Ins.* decision.  It is also a crucial distinction from the instant case.  There is simply no need

---

[13] Since the Defendants failed to address this element, the Plaintiff respectfully submits that the Defendants should be precluded from offering any last-minute arguments in their reply.

for any contract interpretation to adjudicate the case on its merits.  The sales and assignments of the domain names were all completed under the since-vacated order appointing a receiver.  The question here is whether these sales were valid or void after the Receivership Order was held to be outside the District Court's subject matter jurisdiction and the Fifth Circuit's reversal of the judgments permitting the sales of the domain names.

The Defendants provide no explanation of how complete relief cannot be accorded among the Parties in the absence of Mr. Nelson or Mr. Vogel.  Nor do the Defendants explain what interest either man has related to the subject of this action, let alone how either man is so situated that in his absence (1) that man's ability to protect his interest is impaired or impeded, or (2) the parties in the action are subject to substantial risk of inconsistent obligations.  The Plaintiff is not asserting a cause of action against either man.  Nor would a cause of action against them make legal sense since neither Mr. Nelson nor Mr. Vogel is the owner of any of the domain names at issue.  To the best of the Plaintiff's knowledge, and the Defendants offer no evidence to the contrary, neither Mr. Nelson nor Mr. Vogel has an interest in this case, let alone an interest that is not protected or likely to lead to inconsistent judgments.  Moreover, on February 28, 2014, the District Court expressly vacated the order appointing Mr. Nelson as a manager.  App. 44, para. 5.

If the Defendants feel that their defense requires testimony from Messrs. Nelson or Vogel, then the Defendants may bring them as witnesses.  *Payan*, 232 F.R.D. 587 at 590; *see also Nat'l Mortg. Warehouse, LLC* , 201 F. Supp. 2d at 506; *In re Maggard*, 2007 Bankr. LEXIS 3893 at *11; and *In re Donoho*, 402 B.R. at 699 (Bankr. E.D. Va. 2009).

At best, the individuals and entity identified by the Defendants are possible witnesses. The Defendants have failed to meet their burden of showing how the absence any of these third parties would prevent complete relief.  Nor have the Defendants met their burden of showing what interests any of the third parties have which will not be protected by this action or create a substantial risk of inconsistent obligations.  Moreover, the Defendants have failed to demonstrate how joinder of the third parties would require dismissal of the case.  Therefore, the Defendants' motion to dismiss pursuant to FED. R. CIV. P. 12(b)(7) should itself be dismissed.

## III.    CONCLUSION

The Receivership Order and the order allowing the Receiver to sell domain names were appealed to the Fifth Circuit. The Fifth Circuit already found that the Receivership Order was outside the district court's jurisdiction and vacated that order, and the Fifth Circuit also reversed the order permitting the sale of the domain names.  The Defendants' Motion is hinged on an effort to avoid the consequences of the Fifth Circuit's decisions as well as the Defendants' own arguments previously made to another Court.

WHEREFORE, for the foregoing reasons, the Plaintiff submits that the Defendants' Motion should be DENIED.

Date:   September 12, 2016                            Respectfully,

                                                       _  /s/ Anthony Farmer                        _
                                                       Anthony Farmer
                                                       Texas Bar No. 24057844
                                                       THE FARMER LAW GROUP PLLC
                                                       400 S. Zang Blvd., Suite 350
                                                       Telephone (214) 948-8333
                                                       afarmer@farmerlawgroup.com

                                                       *Of Counsel*:
                                                       Paul Grandinetti

25

Rebecca J. Stempien Coyle
LEVY & GRANDINETTI
1120 Connecticut Avenue, N.W., Suite 304
Washington, D.C. 20036
Telephone (202) 429-4560
Facsimile (202) 429-4564
mail@levygrandinetti.com

Counsel for the Plaintiff
**Associated Recovery, LLC**

## CERTIFICATE OF SERVICE

I, hereby certify that on September 12, 2016, I electronically filed the foregoing

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(b) MOTION TO DISMISS

AMENDED COMPLAINT by using the CM/ECF system, which will then send a notification of

such filing (NEF) to the following:

> Steven M. Geiszler
> Zunxuan D. Chen
> DENTONS US LLP
> 2000 McKinney Avenue, Suite 1900
> Dallas, Texas 75201
> steven.geiszler@dentons.com
> digger.chen@dentons.com

> /s/ Anthony Farmer
> Anthony Farmer
> Texas Bar No. 24057844
> THE FARMER LAW GROUP PLLC
> 400 S. Zang Blvd., Suite 350
> Telephone (214) 948-8333
> afarmer@farmerlawgroup.com
>
> Counsel for the Plaintiff
> **Associated Recovery, LLC**