IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

**ASSOCIATED RECOVERY, LLC,**

       Plaintiff,

   v.

**JOHN DOES 1-44,**

       Defendants *in rem*.

**No. 3:16-CV-1025-L**

*In re:*

| | | | |
|---|---|---|---|
| 744.COM | KXW.COM | UHW.COM | YJX.COM |
| 028.COM | LNM.COM | VCZ.COM | YLZ.COM |
| 3DCAMERA.COM | LUOHE.COM | VGJ.COM | YQP.COM |
| FNY.COM | MEQ.COM | WYD.COM | YQT.COM |
| FX2.COM | OCU.COM | XAQ.COM | YRN.COM |
| FXF.COM | PIXIE.COM | XFF.COM | YTE.COM |
| JTZ.COM | QMH.COM | XSG.COM | YYG.COM |
| KGJ.COM | RUTEN.COM | YCX.COM | ZDP.COM |
| KMQ.COM | SDU.COM | YEY.COM | ZHD.COM |
| KOU.COM | SQG.COM | YGX.COM | ZULIN.COM |
| KXQ.COM | TAOLV.COM | YJR.COM | ZZM.COM |

**REPLY IN SUPPORT OF DEFENDANTS' RULE 12(b) MOTION
<u>TO DISMISS AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................... 1

II.   ARGUMENT ......................................................................................................... 1

    A.   Plaintiff Is Collaterally Estopped. ............................................................... 1

    B.   The Court Should Dismiss Plaintiff's Inapplicable, Time-Barred Claims. ................. 3

        1.   The Applicable Statutes of Limitations Are Not Tolled. ....................................... 3

        2.   The Presumptions Afforded by Rule 12(b) Go Only So Far. ................................ 4

        3.   Plaintiff's Claims Have Additional Flaws. .......................................................... 5

    C.   Plaintiff Lacks Standing. ............................................................................ 7

    D.   The Domain-Name Owners Are Not Subject to Personal Jurisdiction ......................... 8

    E.   Plaintiff Failed to Join Necessary Parties. ................................................... 9

III.  CONCLUSION ..................................................................................................... 10

## I.      INTRODUCTION

This case concerns whether Jeff Baron, Novo Point, and their proxy, Associated Recovery, can unwind the Receivership's completed sales of domain names in 2011 and 2012. The Fifth Circuit has already answered that question with a resounding "NO" in *Netsphere I*, 703 F.3d at 311-14—a portion of the opinion that Plaintiff did not cite or address in its opposition brief.  There, the Fifth Circuit expressly instructed this Court to use the Receivership's cash to pay Receivership fees—cash that came from the past domain name sales. The Fifth Circuit made that ruling after carefully considering the long, convoluted history of the *Netsphere* litigation and seeking to balance Baron's interests in winding down the Receivership with the need to pay reasonable Receivership fees using cash on hand, cash from past domain-name sales such as those Plaintiff now attacks.  Based on that holding from the Fifth Circuit, as well as other flaws in Plaintiff's claims, the Court should end this litigation.

## II.     ARGUMENT

### A.      Plaintiff Is Collaterally Estopped.

Plaintiff ignores the key aspects of the Fifth Circuit's ruling in *Netsphere I* and this Court's rulings in *Netsphere II, Netsphere III,* and *Vogel I* that collaterally estop Plaintiff's claims.  Notably, Plaintiff is silent about the most relevant—and controlling—aspect of *Netsphere I*, where the Fifth Circuit left intact the sales at issue in this action:

> We recognize that the district court was dealing with a conundrum when it decided to appoint the receiver — the problem was great, but standard remedies seemed inadequate. We also take into account that, to a large extent, Baron's own actions resulted in more work and more fees for the receiver and his attorneys. For these reasons, **charging the current receivership fund for reasonable receivership expenses, without allowing any additional assets to be sold,** is an equitable solution**.**

703 F.3d 296, 313 (5th Cir. 2012) (emphasis added).  The only plausible reading of that passage (particularly the bolded language) is that the Fifth Circuit allowed to stand the asset sales that

1

closed prior to its decision.[1]  The Court's holding on that issue is clear because it left in place the receivership's cash (i.e., "the current receivership fund"), which included the proceeds from past sales—including the domain name sales at issue here—and authorized use of that cash to pay receivership fees.  *Id.* at 313-14.  The court repeated, "No **further** sales of domain names or other assets are authorized."  *Id.* at 314 (emphasis added).

This Court's decisions in *Netsphere II* and *Netsphere III* also foreclose Plaintiff's claims. Contrary to Plaintiff's short shrift, those decisions show how the Court carried out the Fifth Circuit's mandate by determining proper receivership fees then ordering payment of those fees using the funds (including cash from sales of the domain names at issue) authorized in *Netsphere I*.  Again, those fees would not be available unless all completed sales—including those at issue here—were upheld, further cementing the finality of the pre-December 18, 2012 asset sales.  *See Netsphere III*, 2015 WL 1400543, at *6 (referencing "the Fifth Circuit's directive that remaining Receivership expenses be paid from funds in the Receivership as of December 18, 2012, **without selling any additional domain names** or other Receivership assets" (emphasis added)).

Regarding *Vogel I,* Plaintiff admits that decision addressed "whether the defendants there (including the Receiver) engaged in wrongful or sanctionable conduct in the *Netsphere* cases." Pl. Opp. Br. at 4-5 (Dkt. 86).  Importantly, the Court found no such improprieties, instead ruling that "any claim by Plaintiffs based on the wrongful establishment or continuation of the receivership or **payment of receivership expenses** is an impermissible collateral attack of prior orders through this suit."  *Vogel I*, No. 3:15-cv-232-L, 2016 WL 1273465, *6 (N.D. Tex. Mar.

---

[1] Plaintiff's 25-page Opposition cites to *Netsphere I* on only two pages (1 and 4) despite the fact that *Netsphere I* is the most important decision governing the issues at bar.  Indeed, even when Plaintiff cites *Netsphere I*, Plaintiff fails to provide any pinpoint citation to or discussion of the Fifth Circuit's crucial discussion of the Receiver's asset sales and use of the proceeds to pay fees, which is found at 703 F.3d at 311-14 ("II The Receivership Fees").

31, 2016) (emphasis added).  Plaintiff's claims here are similar "collateral attacks"—alleging "theft" and "fraudulent transfer" by the Receiver—and cannot stand.

In short, Plaintiff's argument that this issue was not actually litigated in the prior litigation fails.  The Fifth Circuit addressed the pre-December 12, 2012 sales in *Netsphere I* (*see* 703 F.3d at 313) as did this Court when it used funds from those sales to pay receivership fees. Likewise, this Court purposefully dispensed funds from the sales (*Netsphere II* and *III*) and later reconfirmed the propriety of those actions (*Vogel I*).  Indeed, ¶ 250 the Amended Complaint reflects Plaintiff's knowledge that the Fifth Circuit prohibited pending and further sales, not past sales that had already closed.

Plaintiff's reliance on *SEC v. American Capital Investments, Inc.* is misplaced.  Plaintiff argues that case permits parties to collaterally attack a jurisdictionally void sale.  Pl. Opp. Br. at 6-7.  But *American Capital Investments* involved a **direct** attack by defrauded investors on a receiver's sale of real estate assets, not a collateral attack.  98 F.3d 1133, 1138-39 (9th Cir. 1996).  That holding therefore is distinguishable, and, in any event, the Ninth Circuit in that case **affirmed** the receivership sales at issue.  *Id.* at 1147.  And like the appellant investors in *American Capital Investments*, Plaintiff's predecessors-in-interest (Novo Point and Baron) were parties to the direct attack on the Receivership Order in *Netsphere I*, wherein the Fifth Circuit allowed past sales to remain final.

### B.    The Court Should Dismiss Plaintiff's Inapplicable, Time-Barred Claims.

#### 1.    The Applicable Statutes of Limitations Are Not Tolled.

Tolling is unavailable here.  In Texas, it is the "general rule that the appointment of a receiver does not affect the running of limitations."  *Nichols v. Wheeler*, 304 S.W.2d 229, 232 (Tex. Civ. App. – Austin 1957, writ ref'd n.r.e.).  Nevertheless, Plaintiff argues that its predecessor-in-interest, Mr. Baron, was prevented by the Receiver from pursuing legal remedies

per a December 2, 2010 email from the Receiver's counsel.  Pl. Opp. Br. at 7-8 (citing Pl. App.

4-7).  This argument is hollow, however, because that email did not prevent Mr. Baron from

pursuing numerous motions and appeals, including those resulting in the *Netsphere I, II* and *III*

decisions—all of which postdate the letter and involved Baron and/or Novo Point.  Absent

tolling, the statutes of limitations began running as for the dates of the domain name sales, all of

which closed before December 18, 2012.  *See generally Netsphere I.*  Thus, all of Plaintiff's

claims are time barred.

Even were tolling allowed, it would move the accrual date only to April 19, 2013, when

the *Netsphere I* mandate issued.  The two-year statutes of limitations for conversion and Texas

Theft Liability Act still would have run before Plaintiff's original Complaint (Dkt. 1).  Likewise,

the three-year statute of limitations for misappropriation would have run because Plaintiff waited

until May 20, 2016 to move for leave to add that claim to this litigation (Dkt. 58) and did not file

its Amended Complaint until August 1, 2016 (Dkt. 76).

## 2.    The Presumptions Afforded by Rule 12(b) Go Only So Far.

Plaintiff's opposition brief asks too much when arguing that its pleadings must all be

accepted as true under Rule 12(b).  The Supreme Court and the Fifth Circuit have made clear that

courts will not accept conclusory allegations, unwarranted deductions, or legal conclusions.  *R2*

*Invs. LDC v. Phillips,* 401 F.3d 638, 642 (5th Cir. 2005); *see also Ashcroft v. Iqbal*, 556 U.S.

662, 679 (2009) (holding legal conclusions not "entitled to the assumption of truth").

Additionally, although pled facts are assumed to be true, Plaintiff must still plead enough of

those facts "to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  This standard requires that the pled facts must do "more

than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (internal citations omitted).

4

Plaintiff's arguments ignore those standards and asks this court to assume as true its legal arguments and to fill the gaps in its pled allegations.  Specifically, Plaintiff's allegations depend on the flawed conclusion that the Court and Receiver improperly failed to return the domain names that were already sold before the Fifth Circuit's December 18, 2012 *Netsphere I* decision. In letters to various owners, Plaintiff pulls no punches, calling the domain names "**stolen**." Defs' App. 75-78 (letters to owners).  Although Plaintiff does not use such inflammatory language in the Amended Complaint, the conclusions underpinning Plaintiff's claims are the same:  the Court-appointed Receiver facilitated "theft" and "fraudulent transfers" by the Defendants.

Plaintiff also asserts that "the Defendants had knowledge of the [*Netsphere*] appeal regarding the Receivership and questioned its authority."  Pl. Opp. Br. at 9; *see* Amended Complaint at ¶¶ 245-49 (alleging Nelson sold domain names for "less than 1%" of value).  But most of the disputed domain names were purchased second-hand or third-hand after the Receivership sales.  *See, e.g., Associated Recovery LLC v. Does 1-44*, No. 1:15-cv-1723 (E.D. Va.) Dkt. 49-1 (declaration by owner that he purchased domain name well after the *Netsphere I* ruling and with no knowledge of the Baron litigation), Dkt. 62-1, Dkt. 63-1 (same).  More importantly, in *Netsphere II* and *III*, and *Vogel I*, the Court found Vogel and Nelson to have acted properly.  Thus, Plaintiff's theory that the Defendants were in cahoots with Vogel or Nelson is demonstrably false.  The Court need not accept Plaintiff's conclusory allegations, unwarranted deductions, or baseless legal conclusions.  *See R2 Invs. LDC,* 401 F.3d at 642.

### 3.     Plaintiff's Claims Have Additional Flaws.

**ACPA:**  Plaintiff argues that the alleged trade marks were not abandoned because "The Plaintiff was prevented from using its marks due to the Receivership, which was instituted without the Plaintiff's permission."  Pl. Opp. Br. at 9.  But Plaintiff did not exist until December 2015, well after the Receivership wound down.  Defs' App. 79-81 (Plaintiff's Articles of

5

Organization).[2]  Plaintiff also makes the irreconcilable arguments that, on one hand, Baron and Novo Point were using the marks in commerce but, on the other hand, Baron and his colleagues did not know the identity of the domain names sold through the Receivership.  Pl. Opp. Br. at 8. If Plaintiff's predecessors were actively using the marks in Internet commerce, it is only common sense that they would have noticed when they lost control over the domains.  But Mr. Baron had more than 200,000 domain names (*Netsphere II*, 2013 WL 3327858 at *18), so the idea that they were all protected marks is untenable.  Any alleged marks were abandoned.

**Quiet Title, Declaratory Judgment, and Unjust Enrichment:**  Plaintiff offers only nominal arguments in support of these three claims.  The Court can dispatch with each of the claims by simply applying *Netsphere I*, which left in place the domain name sales completed before December 18, 2012.  703 F.3d at 311-14.

**Conversion:**  Plaintiff cites no applicable authority for its novel theory that, under the "merger exception," Internet domain names can give rise to a conversion claim.  Plaintiff also fails to allege that the actual documents establishing ownership (*i.e.,* Defs' App. 3-29) were stolen, which is the type of scenario the merger exception covers, as established in Plaintiff's cited case law.  *See Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1569 (S.D. Tex. 1996) ("Here, plaintiffs do not claim that any document encompasses an intangible property right to the appearance of their golf holes and that there has been conversion of such document amounting to conversion of the underlying right. Therefore, their conversion action must fail.").

**Texas Theft Liability Act and Fraudulent Conveyance:**  Plaintiff maintains that the Court-ordered sales constituted "theft" and "fraud" based on the baseless theory that "the Defendants had knowledge that the Receivership's authority to sell was appealed and being

---

[2] To the extent Plaintiff's counsel is blurring the lines between or confusing Plaintiff Associated Recovery LLC with its predecessors, Mr. Baron and Novo Point LLC, that further proves they are necessary parties.  *See generally* Defs' Memo. at 23-24 (Dkt. 81).

challenged . . . .” (Pl. Opp. Br. at 13).  But Plaintiff's claims cannot stand as a matter of law

because, at the time they occurred, the sales were Court-authorized.  *See* Order Granting the

Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere, Inc. v. Baron*, No.

3:09-CV-0988-F, Dkt. 288 (N.D. Tex. Feb. 4, 2011).  *Netsphere I* later left in place the disputed

domain name sales (703 F.3d at 311-14), as did *Netsphere III* (2015 WL 1400543, at *6).

**Misappropriation:**  Plaintiff mischaracterizes case law regarding misappropriation in

Texas.  For example, Plaintiff cites *Universal City Studios* and *Conan Properties* (Pl. Opp. Br. at

13), but those cases involve "misappropriation of a merchandising property."  *Conan Properties*,

752 F.2d at 156 (citing *Universal City Studios*, 217 U.S.P.Q. at 1168).  Plaintiff fails to cite any

case involving misappropriation of a domain name.  The Court can dispatch with this claim by

applying *Netsphere I*, 703 F.3d at 311-14, which left in place the disputed domain name sales.

### C.      Plaintiff Lacks Standing.

Plaintiff premises its standing arguments on a misunderstanding of *Netsphere I*.  Plaintiff

argues, "It is fundamental that a party who loses title to property sold through what is later held

to be a void sale has standing to bring a claim to recover that property."  Pl. Opp. Br. at 14.  But

as discussed above, the Fifth Circuit left undisturbed the pre-December 18, 2012 domain name

sales and, in fact, authorized use of the sales proceeds for paying receivership fees.  *Netsphere I*,

703 F.3d at 313; *see id.* at 315 (directing the Court "to charge against the cash in the receivership

fund the remaining receivership fees").  There is **no** order voiding the sales in dispute.

Plaintiff makes the same mistake when addressing Defendants' status as bona fide

purchasers for value by arguing that status "is immaterial if both the sale and transfer of the

domain names were void."  Pl. Opp. Br. at 15.  Similarly, Plaintiff attempts to distinguish

Defendants' reliance on *McCoy v. Mitsuboshi Cutlery* because, according to Plaintiff, that case

7

"refers to valid sales." *Id.* But there is no order voiding the sales in dispute. Instead, the Fifth Circuit and this Court deemed them final. *Netsphere I*, 703 F.3d at 313.

Finally, Plaintiff ignores the findings by this Court and the Fifth Circuit that Plaintiff's predecessors created the conditions requiring the domain names to be sold and proceeds used to pay receivership fees. In *Netsphere I*, the Fifth Circuit stated, "We also take into account that, to a large extent, Baron's own actions resulted in more work and more fees for the receiver and his attorneys. For these reasons, charging the current receivership fund for reasonable receivership expenses, without allowing any additional assets to be sold, is an equitable solution." *Netsphere I*, 703 F.3d at 313; *see* Defs' Memo. at 17-18 (providing additional citations).

### D.      The Domain-Name Owners Are Not Subject to Personal Jurisdiction.

Plaintiff fails to put forth any argument or analysis how any owner other than Mr. Lin is subject to the Court's personal jurisdiction. *See Seiferth v. Helecopteros Atuneros, Inc.*, 472 F.3d 266, 271(5th Cir. 2006) (plaintiff bears burden of satisfying first two prongs of specific jurisdiction analysis before burden shifts to defendant); *see generally* Pl. Opp. Br. at 16-18 (offering no analysis of any owner other than Mr. Lin). Thus, for all the other owners and domain names (*i.e.,* all domain names other than KGJ.com, KMQ.com, KWQ.com, LNM.com, and XAQ.com, which Mr. Lin owns), no dispute remains and dismissal is proper.[3]

With respect to Mr. Lin, Plaintiff is correct that Defendants' counsel stated personal jurisdiction was proper. *See* Certain Defendants' Reply, *Associated Recovery*, No. 1:15-cv-1723, Dkt. 37 at 6 (E.D. Va. Apr. 11, 2016) ("Mr. Lin already consented to personal jurisdiction in the Northern District [of Texas]."). The Court may nevertheless dismiss Mr. Lin based on

---

[3] Foreseeing this outcome, Plaintiff asks that the Court "revert[] to *in rem*" Plaintiff's claims against all the other Defendants. Pl. Opp. Br. at 18 n.9. But Plaintiff chose to allege only *in personam* allegations against the other Defendants and their respective owners, thereby voluntarily abandoning its *in rem* allegations. The Court should not judicially amend the Amended Complaint to salvage Plaintiff's case.

Plaintiff's more recent concession that the owners "are not amendable in personam jurisdiction in the United States."  Amended Complaint at ¶ 99.  Mr. Lin's position differs from other owners, who did not execute agreements with the Receiver or Mr. Nelson.  Were the Court to deny this portion of Defendants' Motion with respect to Mr. Lin, the Court should still dismiss this case based on the other grounds raised in Defendants' Motion.

### E.   Plaintiff Failed to Join Necessary Parties.

Plaintiff's flawed premise—that the Fifth Circuit voided past domain name sales—permeates its arguments about whether necessary parties are missing.  Plaintiff characterizes this issue as follows:  "The validity of any assignments or transfers conducted under the Receivership's authority rises and falls on the Fifth Circuit's determination of the invalidity of the order instituting the Receivership."  Pl. Opp. Br. at 20.  Plaintiff apparently stopped reading the *Netscape I* opinion after Section I of the Discussion because Plaintiff fails to discuss or even cite to the Fifth Circuit's handling of the domain name sales—past, present, and future—as of the December 18, 2012 issuance of that opinion.  *See Netscape I*, 703 F.3d at 311-14 (prohibiting "further" sales and stopping any pending sales, but leaving in place completed sales).

**Novo Point and Baron:**  Plaintiff insists that Novo Point and Baron are not necessary parties, yet Plaintiff's brief demonstrates otherwise.  For example, a footnote in Plaintiff's brief distinguishes Plaintiff's knowledge from Novo Point's knowledge about a key issue:  "The fact that the Plaintiff had not seen the agreements signed by the Defendants is a red herring.  The Plaintiff had not seen them because, **to its knowledge**, Novo Point had never seen the documents either."  Pl. Opp. Br. at 20 n.10 (emphasis added).  By putting daylight between Plaintiff's knowledge and that of Novo Point, Plaintiff proves Novo Point is necessary to this case.  As for

Mr. Baron, he is undoubtedly the most knowledgeable person on Plaintiff's side, and despite Plaintiff's attempts to appear independent, Baron is the one pulling Plaintiff's strings. [4]

Were this case to proceed, Novo Point and Baron must address such key issues as why only now, four-plus years later, they seek return of the domain names; or why, as appellants, neither Novo Point nor Baron sought rehearing of *Netscape I* regarding the Fifth Circuit's decision to allow past sales to remain final and to allow use of the proceeds for paying receivership fees. In addition, were the Court to rule that the domain names should be returned—which it should not do, the owners would at least be entitled to a return of the tens of thousands of dollars used to purchase the domain names, not to mention the increased value due to the owners' efforts. There is no reason to believe that Plaintiff, a holding company apparently established for the sole purpose of this litigation, has such funds or assets to sell to raise funds.

**Vogel and Nelson:** Mr. Vogel and Mr. Nelson are necessary parties because they implemented and executed the domain-name sales now in dispute. But as explained in Defendants' opening Memorandum, the *Vogel I* decision makes it unlikely either Vogel or Nelson is available as a party to this lawsuit as a matter of law. Their absence is fatal to this case. *See LST Financial, Inc. v. Four Oaks Fincorp, Inc.*, No. 14-cv-435, 2014 WL 3672982 (W.D. Tex. Jul. 24, 2014) (dismissal proper under Rule 12(b)(7) where necessary parties are indispensable but unavailable).

## III.   CONCLUSION

For the foregoing reasons and those set forth in Defendants' opening Memorandum, Defendants move the Court to dismiss Plaintiff's claims with prejudice. Defendants respectfully reserve the right to seek fees and costs at that time.

---

[4] Interestingly, Plaintiff is able to provide emails from Mr. Baron's personal email account, such as Exhibit 1 to Plaintiff's Opposition. (Dkt. 86-2 (email from B. Golden to J. Baron)).

Dated:  September 26, 2016                     Respectfully submitted


                                              By: */s/ Steven M. Geiszler*_____

*Of Counsel:*                                     Steven M. Geiszler
Lora A. Brzezynski                                Texas Bar No. 24032227
Claire M. Maddox                                  Zunxuan D. Chen
Eric Y. Wu                                        Texas Bar No. 24059564
**DENTONS US LLP**                                Juanita DeLoach
1900 K Street, NW                                 Texas Bar No. 24064218
Washington, DC 20006                              **DENTONS US LLP**
202-496-7500 (phone)                              2000 McKinney Avenue, Suite 1900
202-496-7756 (fax)                                Dallas, Texas 75201-1858
lora.brzezynski@dentons.com                       T: (214) 259-0900
claire.maddox@dentons.com                         F: (214) 259-0910
eric.wu@dentons.com                               steven.geiszler@dentons.com
                                                  digger.chen@dentons.com
                                                  juanita.deloach@dentons.com

                                                  *Counsel for Defendants*


## CERTIFICATE OF SERVICE

        I HEREBY CERTIFY that on September 26, 2016 I caused the foregoing document to be

served on counsel of record via the Court's CM/ECF system.

                                              */s/ Steven M. Geiszler*_____
                                              Steven M. Geiszler


101515818

11