**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
Dallas Division**

| | | |
|---|---|---|
| **ASSOCIATED RECOVERY, LLC,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Case No. 3:16-CV-1025-L** |
| | § | *(Consolidated with Civil Action Nos.* |
| | § | *3:17-CV-424-L and 3:17-CV-651-L)* |
| **JOHN DOES 1-44, et. al.,** | § | |
| *Defendants.* | § | |

## THIRD AMENDED COMPLAINT

TO THE HONORABLE COURT:

COMES NOW, Plaintiff Associated Recovery, LLC, and would show the Court the following:

*Parties*

1.     Plaintiff Associated Recovery, LLC is a limited liability company, which was organized under the law of the state of Wyoming and with its principal place of business in that state as well.

2.     Each of the following defendants or a predecessor-in-interest of each of the following defendants was purportedly assigned one or more domain names through transaction(s) described *infra* ¶ 21-27 of this amended complaint, and has already appeared in this civil action:

       a.     Linda Butcher is an individual citizen of the State of Texas, who at some material point in the past was doing business under the assumed name, "HRJM Business Broker;"

       b.     DBG Partners, Inc. is a corporation, which was organized under the law of the State of Texas, and has its principal place of business in the same state, and is a citizen of

Texas;

c.      True Magic, LLC is a limited liability company, which was organized under the law of the state of Nevada, and has its principal place of business in the same state, and is a citizen of Nevada;

d.      Power Home Technologies, LLC is a limited liability company, which was organized under the law of the state of North Carolina, and has its principal place of business in the same state, and it is a citizen of North Carolina;

e.      Lookout, Inc. is a corporation, which was organized under the law of the State of California, and has its principal place of business in the same state, and is a citizen of California;

f.      Slice Technologies, Inc. F/K/A Project Slice, Inc. is a corporation, which was organized under the law of the State of California, and has its principal place of business in the same state, and is a citizen of California;

g.      Media Options, Inc. is a corporation, which was organized under the law of the Country of Panama, and has its principal place of business in the same country, and is a citizen of Panama;

h.      Adam Strong is an individual citizen of the State of Illinois, who at some material point in the past was the registered agent for Strong, Inc.;

i.      Strong, Inc. is a corporation, which was organized under the law of the State of Illinois, and has its principal place of business in the same state, and is a citizen of Illinois;

j.      Telepathy, Inc. is a corporation, which was organized under the law of the District of Columbia, and has its principal place of business in the same state, and is a citizen of the District of Columbia;

k.      Onig, LLC is a limited liability company, which was organized under the law of the State of Washington, and has its principal place of business in the same state, and is a citizen of Washington;

l.      All-Pro Fasteners, Inc. is a corporation, which was organized under the law of the State of Texas, and has its principal place of business in the same state, and is a citizen of Texas;

m.      Virtual Investments, LLC is a limited liability company, which was organized under the law of the State of Connecticut, and has its principal place of business in the same state, and is a citizen of Connecticut;

n.      Quinn Vesey is an individual citizen of the State of California;

o.      Buyers International Group, Inc. is a corporation, which was organized under the law of the State of Michigan, and has its principal place of business in the same state, and is a citizen of the State of Michigan;

p.      Electronic Arts, Inc. is a corporation, which was organized under the law of the State of Delaware, and has its principal place of business in California, and is a citizen of both Delaware and California;

q.      State Farm Mutual Automobile Insurance Company is a mutual property and casualty insurance company, which was formed under the law of the State of Illinois, and

has its principal place of business in the same state, and is a citizen of the State of Illinois;

r.      Creation Media, LLC is a limited liability company, which was organized under the law of the State of California, and has its principal place of business in the same state, and is a citizen of California;

s.      Alansis.com, Inc. is a corporation, which was organized under the law of the State of Arizona, and has its principal place of business in the same state, and is a citizen of Arizona;

t.      Tumult, Inc. is a corporation, which was organized under the law of the State of Delaware, and has its principal place of business in California, and is a citizen of both Delaware and California;

u.      Radical Investments Management, LLC, is a limited liability company, which was organized under the law of the State of Texas, and has its principal place of business in the same state, and is a citizen of Texas;

v.      Fantasy Spin Game, LLC, is a limited liability company, which was organized under the law of the State of Massachusetts, and has its principal place of business in the same state, and is a citizen of Massachusetts;

w.      PriveCo, Inc. is a corporation, which was organized under the law of the State of Michigan, and has its principal place of business in the same state, and is a citizen of the State of Michigan;

x.      CBRE Group, Inc. is a corporation, which was organized under the law of the

State of Delaware, and has its principal place of business in New York, and is a citizen of both Delaware and New York;

y.      Ye Yu is an individual citizen of the State of California;

z.      John Doe 1, or 744.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name 744.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 1 as the real party in interest;

aa.     John Doe 2, or 028.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name 028.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 2 as the real party in interest;

bb.     John Doe 4, or fny.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name fny.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 4 as the real party in interest;

cc.     John Doe 5, or fx2.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name fx2.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe

5 as the real party in interest;

*dd.*     John Doe 6, or fxf.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name fxf.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 6 as the real party in interest;

*ee.*     John Doe 7, or jtz.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name jtz.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 7 as the real party in interest;

*ff.*     John Doe 8, or kgj.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name kgj.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 8 as the real party in interest;

*gg.*     John Doe 9, or kmq.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name kmq.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 9 as the real party in interest;

*hh.*     John Doe 10, or kou.com was originally a fictional legal device employed to

prosecute an *in rem* claim concerning the domain name kou.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 10 as the real party in interest;

ii.     John Doe 11, or kxq.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name kxq.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 11 as the real party in interest;

jj.     John Doe 12, or kxw.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name kxw.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 12 as the real party in interest;

kk.     John Doe 13, or lnm.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name lnm.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 13 as the real party in interest;

ll.     John Doe 14, or luohe.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name luohe.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe

14 as the real party in interest;

*mm.*   John Doe 15, or meq.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name meq.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 15 as the real party in interest;

*nn.*   John Doe 16, or ocu.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name ocu.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 16 as the real party in interest;

*oo.*   John Doe 17, or pixie.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name pixie.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 17 as the real party in interest;

*pp.*   John Doe 18, or qmh.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name qmh.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 18 as the real party in interest;

*qq.*   John Doe 19, or ruten.com was originally a fictional legal device employed to

prosecute an *in rem* claim concerning the domain name ruten.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 19 as the real party in interest;

rr.     John Doe 20, or sdu.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name sdu.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 20 as the real party in interest;

ss.     John Doe 21, or sqg.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name sqg.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 21 as the real party in interest;

tt.     John Doe 22, or taolv.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name taolv.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 22 as the real party in interest;

uu.     John Doe 23, or uhw.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name uhw.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe

23 as the real party in interest;

*vv.*     John Doe 24, or vcz.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name vcz.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 24 as the real party in interest;

*ww.*     John Doe 25, or vgj.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name vgj.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 25 as the real party in interest;

*xx.*     John Doe 26, or wyd.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name wyd.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 26 as the real party in interest;

*yy.*     John Doe 27, or xaq.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name xaq.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 27 as the real party in interest;

*zz.*     John Doe 28, or xff.com was originally a fictional legal device employed to

prosecute an *in rem* claim concerning the domain name xff.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 28 as the real party in interest;

*aaa.*    John Doe 29, or xsg.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name xsg.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 29 as the real party in interest;

*bbb.*    John Doe 30, or ycx.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name ycx.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 30 as the real party in interest;

*ccc.*    John Doe 31, or yey.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name yey.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 31 as the real party in interest;

*ddd.*    John Doe 32, or ygx.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name ygx.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe

32 as the real party in interest;

*eee.*    John Doe 33, or yjr.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name yjr.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 33 as the real party in interest;

*fff.*    John Doe 34, or yjx.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name yjx.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 34 as the real party in interest;

*ggg.*    John Doe 35, or ylz.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name ylz.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 35 as the real party in interest;

*hhh.*    John Doe 36, or yqp.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name yqp.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 36 as the real party in interest;

*iii.*    John Doe 37, or yqt.com was originally a fictional legal device employed to

prosecute an *in rem* claim concerning the domain name yqt.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 37 as the real party in interest;

*jjj.*   John Doe 38, or yrn.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name yrn.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 38 as the real party in interest;

*kkk.*   John Doe 39, or yte.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name yte.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 39 as the real party in interest;

*lll.*   John Doe 40, or yyg.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name yyg.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 40 as the real party in interest;

*mmm.*  John Doe 41, or zdp.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name zdp.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe

41 as the real party in interest;

*nnn.*    John Doe 42, or zhd.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name zhd.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 42 as the real party in interest;

*ooo.*    John Doe 43, or zulin.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name zulin.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 43 as the real party in interest;

*ppp.*    John Doe 44, or zzm.com was originally a fictional legal device employed to prosecute an *in rem* claim concerning the domain name zzm.com, but an attorney has appeared on behalf of such domain name, and if such attorney is representing an undisclosed principal, the attorney should be required to disclose the identity of John Doe 44 as the real party in interest;

3.    Each of the following defendants or a predecessor-in-interest of each of the following defendants was purportedly assigned one or more domain names through transaction(s) described *infra* ¶ 21-27 of this amended complaint, or, is a proxy for a person or entity who was assigned one or more of those domain names, or a successor to such a person or entity, who is listed as the registrant of each such domain name to conceal an undisclosed principal's privacy:

a.    SocialBon, Inc. is a corporation, which was organized under the law of the State

of Delaware, has its principal place of business in the State of Kentucky, and is a citizen of both Delaware and Kentucky, and was served through its registered agent, Incorporating Services, Ltd., at 3500 S Dupont Highway, Dover, Delaware 19901, or by the Secretary of State of Texas;

b.      Chris Carli is an individual citizen of the State of Washington, who at some material point in the past was the registered agent for Onig, LLC, and was served at 17723 Beach Drive N.E., Lake Forest Park, Washington 98155, or by the Secretary of State of Texas;

c.      JRS Holdings, LLC is a limited liability company, which was organized under the law of the State of Florida, has its principal place of business in the same state, and it is a citizen of Florida and was served through its registered agent, Business Filings Incorporated, at 1200 South Pine Island Road, Plantation, Florida 33324, or by the Secretary of State of Texas;

d.      Tobyclements.com, LLC is limited liability company, which was organized under the law of the State of Georgia and has its principal place of business in the same state, and it is a citizen of Georgia and may be served through its registered agent, Matthew P. Collins, 5 Concourse Parkway, Suite 3000, Atlanta, Georgia 30328, or by the Secretary of State of Texas;

e.      Janno, LLC is a limited liability company, which was organized under the law of the State of Nevada and has its principal place of business in New Jersey, and it is a citizen of both Nevada and New Jersey and may be served by serving Rahul Jain, 375 North Stephanie Street, Suite 1411, Henderson, Nevada 89014, or by the Secretary of

State of Texas;

f.      Steve Fortuna is an individual citizen of the State of Minnesota, and may be served at 1975 Oakcrest Avenue, Roseville, Minnesota 55113, or by the Secretary of State of Texas;

g.      Floridians, LLC is a limited liability company, which was organized under the law of the State of Florida and has its principal place of business in the same state, and it is a citizen of Florida and may be served at 629 N.E. Third Street, Dania, Florida 33004, or by the Secretary of State of Texas;

h.      News Ltd is a Seychelles entity, which was organized under the law of Australia, has its principal place of business in Australia, and is a citizen of Australia, and may be served at 225 Peerless Avenue, Gold Coast QLD 4109, Australia, or by the Secretary of State of Texas;

i.      Sylvia O'Donohoe is an individual citizen of Ireland, and may be served at 62 Grosvenor Square, Rathmines, Dublin 6, Ireland, or by the Secretary of State of Texas;

j.      Dharshinee Naidu is an individual citizen of the State of Michigan, and may be served at 15001 Michigan Avenue, Suite 200, Dearborn, Michigan 48126, or by the Secretary of State of Texas;

k.      Worldwide Retailing, LLC is a limited liability company, which was organized under the law of the State of Colorado, has its principal place of business in the same state, and it is a citizen of Colorado and may be served through its registered agent, Dedric Wilken, 2360 Curtis St., Apt. 6, Denver, Colorado 80205, or by the Secretary of

State of Texas;

l.        Sol Perlstein is an individual citizen of the State of Florida, and may be served at 10185 Collins Avenue, Bal Harbour, Florida 33154, or by the Secretary of State of Texas;

m.       William Wolfson is an individual citizen of the State of Washington, and may be served at 7805 63rd Avenue East, Puyallup, Washington 98371, or by the Secretary of State of Texas;

n.        GoldRun, Inc. is a corporation, which was organized under the law of the State of Massachusetts, and at the material times had its principal place of business in the same state, and is a citizen of the State of Massachusetts, and may be served through its registered agent, John A. Doerst, at 1350 East Flamingo Road, Suite 1050, Las Vegas, Nevada 89119, or by the Secretary of State of Texas;

o.        Domains by Proxy, LLC is a limited liability company, which was organized under the law of the State of Arizona, and has its principal place of business in the same state, and it is a citizen of Arizona and may be served at 14457 N Hayden Road, Scottsdale, AZ 85260, or by the Secretary of State of Texas;

p.        Moniker Privacy Services, LLC is a limited liability company, which was organized under the law of the State of Florida, and has its principal place of business in the same state, and it is a citizen of Florida and may be served at 2320 NE 9th St, Second Floor, Fort Lauderdale, FL 33304, or by the Secretary of State of Texas;

q.        Domain Protection Services, Inc. is a corporation, which was organized under the law of the State of Washington, and has its principal place of business in the same state,

and is a citizen of the State of Washington, and may be served 5808 Lake Washington Blvd NE, Suite 300, Kirkland, WA 98033, or by the Secretary of State of Texas;

r.      Whois Privacy Services Pty Ltd is an Australian entity, which was organized under the law of Australia, has its principal place of business in Australia, and is a citizen of Australia, and may be served through its registered owner, BroadStreet Financial Network at 5301 North Dixie Highway, Ft. Lauderdale, FL 33351, or by the Secretary of State of Texas;

s.      Whois Privacy Protection Service, Inc. is a corporation, which was organized under the law of the State of Washington, and has its principal place of business in the same state, and is a citizen of the State of Washington, and may be at 14150 NE 20th St., Suite F1, Bellevue, WA 98007, or by the Secretary of State of Texas;

t.      Privacy Protection Service, Inc. d/b/a PrivacyProtect.org is a corporation, which was organized under the law of Queensland, Australia, has its principal place of business in the same state and commonwealth, and is a citizen of Australia and may be served by the Secretary of State of Texas;

u.      Meni Michaeli is an individual citizen of the Isle of Mann, United Kingdom and may be served at 12 Glen Darragh Garden, Glen Vine, Isle of Man, IM44DD, UK, or by the Secretary of State of Texas;

v.      DomainEmpire.com, Ltd. is a British entity, which has its principal place of business in London, United Kingdom, and is a citizen of the United Kingdom, and may be served at 3rd Floor Regent Street, LONDON, UK W1B 3HH, or by the Secretary of State of Texas;

w.      WCE International, Ltd. is a British entity, which has its principal place of business in London, United Kingdom, and may be served at 3rd Floor Regent Street, LONDON, UK W1B 3HH, or by the Secretary of State of Texas;

x.      Web5 Solutions, Inc. is a Panamanian entity, which has its principal place of business in the Commonwealth of Dominica, and is a citizen of Panama, and may be served at 8 Copthall Roseau Valley DM 00152, DM, or by the Secretary of State of Texas;

Each of the foregoing defendants is a non-resident of the State of Texas who has been doing business in this State but has not designated or maintained a resident agent for service of process as required by statute, thus, the Secretary of State of the State of Texas is an agent of service of process on each such defendant.

4.      Each defendant identified *supra* ¶ 2 and 3 of this amended complaint is hereinafter referred to as a "Registrant Defendant" or "predecessor-in-interest to a Registrant Defendant" or something very much to that effect.

5.      Each of the following defendants is or was a domain name registrar through which one or more of the domain names that are the subject of this action were registered with a domain name registry:

a.      1API GmbH, is a German domain name registry, which has its principal place of business in and is a citizen of Germany, and may be served Talstrasse 27, Homburg, Saarland, 66424, Germany, or by the Secretary of State of Texas;

b.      GoDaddy.com, LLC is a limited liability company and domain name registry,

which was organized under the law of the State of Arizona, and has its principal place of business in the same state, and it is a citizen of Arizona and may be served at 14465 N Hayden Rd Suite 219, Scottsdale, AZ 85260, or by the Secretary of State of Texas;

c.     Perfect Privacy, LLC is a limited liability company and domain name registry, which was organized under the law of the State of Florida, and has its principal place of business in the same state, and it is a citizen of Florida and may be served at 12800 Gran Bay Parkway W, Jacksonville, FL 32258, or by the Secretary of State of Texas;

d.     Uniregistrar Corp. is a Grand Cayman entity and domain name registry, which has its principal place of business in the Grand Cayman Islands, and is a citizen of Grand Caymans, and may be served at W. Bay Road 3-110 Governors Square, Seven Mile Beach, Grand Cayman, Cayman Islands, 1361GT KY1-1108, or by the Secretary of State of Texas;

e.     Fabulous.com Pty Ltd., is an Australian entity and domain name registry, which was organized under the law of Queensland, Australia, has its principal place of business in the same state and commonwealth, and is a citizen of Australia and may be served at L1, 91 Bridge St, Fortitude Valley, Queensland, 4006 AU, or by the Secretary of State of Texas;

f.     Epik, Inc. is a corporation and domain name registry, which was organized under the law of the State of California, and has its principal place of business in the same state, and is a citizen of the State of California, and may be at 22130 Claredon Street, Woodland Hills, CA 91367, or by the Secretary of State of Texas;

g.     Enom, Inc. is a corporation and domain name registry, which was organized

under the law of the State of Washington, and has its principal place of business in the same state, and is a citizen of the State of Washington, and may be served through its registered agent at CT Corporation System, 1999 Bryan St., Ste 900, Dallas, TX 75201, or by the Secretary of State of Texas;

h.      Network Solutions, LLC is a limited liability company and domain name registry, which was organized under the law of the State of Virginia, and has its principal place of business in the same state, and it is a citizen of Virginia and may be served through its registered agent at Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701, or by the Secretary of State of Texas;

i.      Tierranet, Inc. is a corporation and domain name registry, which was organized under the law of the State of California, and has its principal place of business in the same state, and is a citizen of the State of California, and may be served at 10650 Treena St, Ste. 305, San Diego, CA 92131, or by the Secretary of State of Texas;

j.      Amazon Registrar, Inc. is a corporation and domain name registry, which was organized under the law of the State of Washington, and has its principal place of business in the same state, and is a citizen of the State of Washington, and may be served at 410 Terry Ave N, Seattle, WA 98109, or by the Secretary of State of Texas;

k.      Privacydotlink is a Grand Cayman entity and domain name registry, which has its principal place of business in the Grand Cayman Islands, and is a citizen of Grand Caymans, and may be served at W. Bay Road 3-110 Governors Square, Seven Mile Beach, Grand Cayman, Cayman Islands, 1361GT KY1-1108, or by the Secretary of State of Texas;

l.      Wild West Domains, LLC is a limited liability company and domain name registry, which was organized under the law of the State of Arizona, and has its principal place of business in the same state, and it is a citizen of Arizona and may be served through its registered agent at Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701, or by the Secretary of State of Texas;

m.      OnlineNIC, Inc. is a corporation and domain name registry, which was organized under the law of the State of California, and has its principal place of business in the same state, and is a citizen of the State of California, and may be served at 909 Marina Village Pkwy #236, Alameda, CA 94501, or by the Secretary of State of Texas;

n.      Google, Inc. is a corporation and domain name registry, which was organized under the law of the State of California, and has its principal place of business in the same state, and is a citizen of the State of California, and may be served at 1600 Amphitheatre Parkway, Mountain View, CA 94043, or by the Secretary of State of Texas;

o.      Internet Domain Service BS Corp. is a Bahamian entity and domain name registry, which has its principal place of business in the Bahamas, and is a citizen of the Bahamas, and may be served at 98 Hamsphire St, N-4892 Nassau, The Bahamas, or by the Secretary of State of Texas;

p.      Shenzhen Internet Works Online Technology Co., Ltd. is a Chinese entity and domain name registry, which has its principal place of business in the China, and is a citizen of China, and may be served at Nanshan Commercial Building 10168 shennan avenue 18th floor, Shenzhen, GD, 518000 China, or by the Secretary of State of Texas;

q.      CSC Corporate Domains, Inc. is a corporation and domain name registry, which was organized under the law of the State of Delaware, and has its principal place of business in the same state, and is a citizen of the State of Delaware, and may be served at 2711 Centerville Rd, Wilmington, DE 19808, or by the Secretary of State of Texas;

r.      Moniker Online Services, LLC is a limited liability company and domain name registry, which was organized under the law of the State of Florida, and has its principal place of business in the same state, and it is a citizen of Florida and may be served at 1246 S Powerline Rd #293, Pompano Beach, FL 33069, or by the Secretary of State of Texas;

s.      Name.com, Inc. is a corporation and domain name registry, which was organized under the law of the State of Washington, and has its principal place of business in the same state, and is a citizen of the State of Washington, and may be served at 5810 Lake Washington Blvd NE, Suite 300, Kirkland, WA 98033, or by the Secretary of State of Texas;

t.      Dropcatch.com 941, LLC is a limited liability company and domain name registry, which was organized under the law of the State of Colorado, and has its principal place of business in the same state, and it is a citizen of Colorado and may be served at 2635 Walnut Street, Denver, CO 80205, or by the Secretary of State of Texas;

u.      Enom, Inc. is a corporation and domain name registry, which was organized under the law of the State of Washington, and has its principal place of business in the same state, and it is a citizen of Washington and may be served through its registered agent at CT Corporation System, 1999 Bryan St., Ste 900 Dallas, TX 75201, or by the Secretary of State of Texas;

Except as noted above, each of the foregoing defendants is a non-resident of the State of Texas who has been doing business in this State but has not designated or maintained a resident agent for service of process as required by statute, thus, the Secretary of State of the State of Texas is an agent of service of process on each such defendant.

*Subject Matter Jurisdiction*

6.     This Honorable Court has original subject matter jurisdiction pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1331 because this is a civil action arising under Chapter 22 of Title 15 of the United States Code, a law of the United States of America.  More specifically, Plaintiff Associated Recovery is asserting claims under 15 U.S.C. § 1125(d).  This Court also has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy between Plaintiff Associated Recovery and each defendant exceeds the sum and value of $75,000, exclusive of interest and costs, and this action is between citizens of different states and in which citizens, or subjects of a foreign state, are additional parties.  This Court also has supplemental jurisdiction over certain claims under 28 U.S.C. § 1367(a).

*Venue*

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff Associated Recovery's claims occurred in the Dallas Division of the United States Judicial District for the Northern District of Texas.  Two other civil actions – Northern District of Texas, Dallas Division, Civil Action Nos. 3:17-CV-424-L and 3:17-CV-651-L – were consolidated into this civil action, which is Northern District of Texas, Dallas Division, Civil Action No. 3:16-CV-1025-L.  *See* Dkt. 94.  The first of those two other civil actions had originally been commenced in the United States District Court for the Eastern

District of Virginia and it was transferred to the United States District Court for the Northern District of Texas, Dallas Division, pursuant to 28 U.S.C. § 1404(a). *See* Dkt. 75. The second of those other civil actions had originally been commenced in the United States District Court for the Eastern District of Texas, Marshall Division (wherein it was Civil Action No. 2:16-cv-126-JRG-RSP), and it was also transferred to the United States District Court for the Northern District of Texas, Dallas Division, pursuant to 28 U.S.C. § 1404(a). *See* Dkt. 130 in Civil Action No. 2:16-cv-126-JRG-RSP in the United States District Court for the Eastern District of Texas, Marshall Division.

8.     Novo Point, LLC is a limited liability company organized under the laws of the Cook Islands in 2009.

9.     As used in this amended complaint, the phrase "domain name" refers to an alphabetic or alphanumeric designation, which is registered with a domain name registry by or through a domain name registrar, as part of an electronic address on the Internet. Subjects of this action include the following domain names:

| Domain Name | Defendant Registrant | Defendant Registrar |
| --- | --- | --- |
| 028.com | John Doe 2 | liuxiao sheng |
| 134.com | Domains By Proxy, LLC | GoDaddy.com, LLC |
| 3535.com | Domains By Proxy, LLC | GoDaddy.com, LLC |
| 3dcamera.com | Linda Butcher / or HRJM | |
| 744.com | John Doe 1 | OnlineNIC, Inc |
| aij.com | Domains By Proxy, LLC | GoDaddy.com, LLC |
| ajm.com | Telepathy, Inc. | |
| apf.com | All-Pro Fasteners, Inc. | Perfect Privacy, LLC |
| apf.com | TobyClements.com LLC | |
| azm.com | Domains By Proxy, LLC | GoDaddy.com, LLC |
| azy.com | Telepathy, Inc. | |
| baldface.com | Adam Strong | |

| | | |
|---|---|---|
| baldface.com | Strong, Inc. | |
| bartenderguide.com | Linda Butcher / or HRJM | Fabulous.com Pty Ltd |
| battlelgo.com | Dharshinee Naidu | |
| battlelog.com | Electronic Arts, Inc. | |
| battlelog.com | Dharshinee Naidu | |
| bej.com | Whois Privacy Services Pty Ltd | Fabulous.com Pty Ltd |
| bgi.com | Telepathy, Inc. | CSC Corp. Domains, Inc. |
| bgi.com | Media Options, Inc. | |
| bulletproofvest.com | Onig, LLC | GoDaddy.com, LLC |
| bulletproofvest.com | PriveCo Inc. | |
| bulletproofvest.com | Chris Carli (Agent for Onig) | |
| businessdegree.com | Media Options, Inc. | GoDaddy.com, LLC |
| buytickets.com | True Magic, LLC | GoDaddy.com, LLC |
| bxi.com | Telepathy, Inc. | |
| cdy.com | Xiamen Privacy Protection | eName Technology Co.,Ltd |
| cheapsunglasses.com | Onig, LLC | GoDaddy.com, LLC |
| cheapsunglasses.com | Chris Carli (Agent for Onig) | |
| ching.com | Buyers Intl. Group, LLC | GoDaddy.com, LLC |
| ching.com | Media Options, Inc. | |
| chipleynews.com | News Ltd. | |
| cid.com | CID GmbH | PSI-USA, Inc. |
| collegetextbooks.com | Onig, LLC | GoDaddy.com, LLC |
| collegetextbooks.com | Chris Carli (Agent for Onig) | |
| crafty.com | Adam Strong | |
| crafty.com | Strong, Inc. | |
| cuk.com | Whois Privacy Services Pty Ltd | Fabulous.com Pty Ltd |
| cvy.com | Telepathy, Inc. | |
| designart.com | Linda Butcher / or HRJM | |
| ding.com | Sylvia O'Donohoe | GoDaddy.com, LLC |
| diveshop.com | Media Options, Inc. | |
| diveshop.com | Linda Butcher / or HRJM | EPIK, Inc. |
| duv.com | Telepathy, Inc. | |
| efix.com | Media Options, Inc. | GoDaddy.com, LLC |
| efm.com | Sol Perlstein | |
| egyptnews.com | News Ltd. | GoDaddy.com, LLC |

| | | |
|---|---|---|
| eky.com | Virtual Investments LLC | GoDaddy.com, LLC |
| emv.com | Telepathy, Inc. | |
| entertainmentgroup.com | DomainEmpire.com Ltd | GoDaddy.com, LLC |
| eph.com | Media Options, Inc. | Enom, Inc. |
| exchangeratecalculator.com | Fantasy Spin Game, LLC | Tierranet, Inc. |
| exchangeratecalculator.com | Media Options, Inc. | |
| exy.com | Moniker Privacy Services | Moniker Online Svcs. LLC |
| ezs.com | Telepathy, Inc. | |
| ezv.com | Telepathy, Inc. | |
| fny.com | John Doe 4, | eName Technology Co.,Ltd |
| fok.com | Media Options, Inc. | GoDaddy.com, LLC |
| fx2.com | John Doe 5 | |
| fxf.com | John Doe 6 | Google, Inc |
| fxf.com | Ye Yu | |
| gfa.com | Media Options, Inc. | GoDaddy.com, LLC |
| gleam.com | Adam Strong | |
| gleam.com | Strong, Inc. | |
| goldrun.com | GoldRun, Inc | |
| gpm.com | TobyClements.com LLC | GoDaddy.com, LLC |
| gra.com | Whois Privacy Services Pty Ltd | Fabulous.com Pty Ltd |
| gtf.com | Telepathy, Inc. | |
| gtf.com | Media Options, Inc. | |
| hhd.com | Moniker Privacy Services | Moniker Online Svcs LLC |
| hiu.com | Telepathy, Inc. | |
| hiu.com | Media Options, Inc. | |
| homelearning.com | Media Options, Inc. | Wild West Domains, LLC |
| hone.com | Adam Strong | |
| hone.com | Strong, Inc. | |
| icandy.com | Radical Investments LLC | |
| icandy.com | Linda Butcher / or HRJM | |
| icy.com | Alansis Corp; Alansis.com | GoDaddy.com, LLC |
| igm.com | Media Options, Inc. | Moniker Online Svcs LLC |
| inplay.com | No Org. Name | GoDaddy.com, LLC |
| iwf.com | Telepathy, Inc. | |
| jlu.com | Telepathy, Inc. | |

| | | |
|---|---|---|
| johnnieo.com | Quinn Vesey | |
| joj.com | Telepathy, Inc. | |
| jph.com | TobyClements.com LLC | eName Technology Co.,Ltd |
| jtz.com | John Doe 7, | GoDaddy.com, LLC |
| kaam.com | Janno, LLC | Name.com, Inc |
| kac.com | Telepathy, Inc. | |
| kfj.com | Telepathy, Inc. | |
| kgj.com | John Doe 8, | |
| khx.com | Telepathy, Inc. | |
| kmq.com | John Doe 9, | eName Technology Co.,Ltd |
| kof.com | WEB5 SOLUTIONS INC | ENOM, INC |
| kou.com | John Doe 10, | |
| kou.com | Media Options, Inc. | |
| kxq.com | John Doe 11 | |
| kxw.com | Jphn Doe 12 | eName Technology Co.,Ltd |
| lakehavasunews.com | News Ltd. | DropCatch.com 941 LLC |
| lfo.com | Whois Privacy Services Pty Ltd | Fabulous.com Pty Ltd |
| lhe.com | Telepathy, Inc. | |
| lhe.com | Media Options, Inc. | |
| lmg.com | Telepathy, Inc. | |
| lmg.com | Media Options, Inc. | |
| lnm.com | John Doe 13 | |
| logostore.com | Adam Strong | |
| logostore.com | Strong, Inc. | |
| lookout.com | Lookout Inc. | Amazon Registrar, Inc |
| luohe.com | John Doe 14 | eName Technology Co.,Ltd |
| mecc.com | Media Options, Inc. | Fabulous.com Pty Ltd |
| meq.com | John Doe 15 | eName Technology Co.,Ltd |
| mqn.com | Telepathy, Inc. | |
| musicdegree.com | Media Options, Inc. | UNIREGISTRAR CORP |
| newsmoldova.com | News Ltd. | DropCatch.com 440 LLC |
| nlh.com | CAMAC SOLUTIONS | ENOM, INC |
| nlm.com | Telepathy, Inc. | |
| nlm.com | Media Options, Inc. | |
| nvq.com | WEB5 SOLUTIONS INC | GoDaddy.com, LLC |

| | | |
|---|---|---|
| ocu.com | John Doe 16 | Internet Domain Service BS Corp |
| ohw.com | Telepathy, Inc. | |
| okv.com | Telepathy, Inc. | |
| onlineinsurancequotes.com | State Farm Automobile Insurance | |
| onlineinsurancequotes.com | Media Options, Inc. | |
| parkinggames.com | Telepathy, Inc. | |
| parkinggames.com | Steve Fortuna | Name.com, Inc |
| pht.com | Power Home Technologies LLC | GoDaddy.com, LLC |
| pixie.com | John Doe 17 | eName Technology Co.,Ltd |
| plf.com | Domain Protection Services, Inc | Name.com, Inc |
| qmh.com | John Doe 18 | eName Technology Co.,Ltd |
| qmh.com | Telepathy, Inc. | eName Technology Co.,Ltd |
| recharge.com | CG Capital BV | Ascio Technologies, Inc |
| reservoircapital.com | Domains By Proxy, LLC | GoDaddy.com, LLC |
| rewards.com | DBG Partners, Inc | NETWORK SOLUTIONS, LLC |
| rne.com | Telepathy, Inc. | |
| rsv.com | Telepathy, Inc. | |
| ruten.com | John Doe 19 | |
| rvm.com | Telepathy, Inc. | |
| rx3.com | Telepathy, Inc. | |
| savetime.com | Steve Fortuna | GoDaddy.com, LLC |
| sdu.com | John Doe 20 | |
| sdu.com | Media Options, Inc. | |
| slice.com | Slice Technology, Inc. | Wild West Domains, LLC |
| sojo.com | SocialBon, Inc. | |
| spytoys.com | Linda Butcher / or HRJM | ENOM, Inc. |
| spytoys.com | Creation Media, LLC | |
| sqg.com | John Doe 21 | |
| sqg.com | Telepathy, Inc. | eName Technology Co.,Ltd |
| taolv.com | John Doe 22 | |
| tgg.com | Telepathy, Inc. | |
| tpb.com | Telepathy, Inc. | |
| tsy.com | Telepathy, Inc. | |
| tumult.com | Tumult, Inc. | ENOM, INC |
| tumult.com | Floridians LLC | |

| | | |
|---|---|---|
| ucr.com | CBRE Group, Inc. | NETWORK SOLUTIONS, LLC |
| ugm.com | Telepathy, Inc. | |
| uhw.com | John Doe 23 | |
| uncutdiamonds.com | Linda Butcher / or HRJM | |
| usedguns.com | True Magic LLC | |
| uwj.com | Telepathy, Inc. | |
| uyr.com | Worldwide Retailing LLC | ENOM, INC |
| vanart | Media Options, Inc. | |
| vanart.com | Linda Butcher / or HRJM | UNIREGISTRAR CORP |
| vcz.com | John Doe 24 | |
| vfg.com | Telepathy, Inc. | |
| vfh.com | WHOIS PRIVACY PROTECTION SERVICE, INC | ENOM, INC |
| vfz.com | Telepathy, Inc. | |
| vgj.com | John Doe 25 | eName Technology Co.,Ltd |
| vgk.com | Privacy Protection Service INC d/b/a PrivacyProtect.org | Webair Internet Development |
| vgy.com | Telepathy, Inc. | |
| vhj.com | William Wolfson | 1API GmbH |
| vlu.com | Telepathy, Inc. | |
| vsk.com | Telepathy, Inc. | |
| vuu.com | Whois Privacy Services Pty Ltd | Fabulous.com Pty Ltd |
| vvs.com | Whois Privacy Services Pty Ltd | Fabulous.com Pty Ltd |
| waterquality.com | Telepathy, Inc. | |
| waterquality.com | Media Options, Inc. | |
| wce.com | WCE Intl. Ltd | GoDaddy.com, LLC |
| wff.com | Telepathy, Inc. | |
| wof.com | Telepathy, Inc. | |
| womensclothes.com | JRS Holdings LLC | GoDaddy.com, LLC |
| xaq.com | JD 27 | eName Technology Co.,Ltd |
| xff.com | JD 28 | |
| xsg.com | JD 29 | eName Technology Co.,Ltd |
| xsg.com | Telepathy, Inc. | |
| ycx.com | JD 30 | |
| ycx.com | Telepathy, Inc. | eName Technology Co.,Ltd |
| yey.com | JD 31 | |
| ygx.com | JD 32 | |

| | | |
|---|---|---|
| ygx.com | Telepathy, Inc. | eName Technology Co.,Ltd |
| yjr.com | JD 33 | Shenzhen Internet Works |
| yjx.com | JD 34 | eName Technology Co.,Ltd |
| yjx.com | Telepathy, Inc. | |
| ylz.com | JD 35 | |
| yqp.com | JD 36 | eName Technology Co.,Ltd |
| yqt.com | Telepathy, Inc. | |
| yqt.com | JD 37 | eName Technology Co.,Ltd |
| yrn.com | JD 38 | eName Technology Co.,Ltd |
| ysg.com | Telepathy, Inc. | Moniker Online Services LLC |
| yte.com | JD 39 | GoDaddy.com, LLC |
| yyg.com | JD 40 | eName Technology Co.,Ltd |
| zdp.com | Telepathy, Inc. | |
| zdp.com | JD 41 | eName Technology Co.,Ltd |
| zhd.com | JD 42 | eName Technology Co.,Ltd |
| zqi.com | Telepathy, Inc. | |
| zqs.com | Telepathy, Inc. | eName Technology Co.,Ltd |
| zulin.com | JD 43 | eName Technology Co.,Ltd |
| zzm.com | JD 44 | eName Technology Co.,Ltd |

Those domain names are hereinafter referred to as the "Domain Names."  The Defendant Registrant(s) improperly registering each such Domain Name with a domain name registry through a domain name registrar and / or improperly using such Domain Name is shown above, as is the Defendant Registrar through whom such Domain Name was so registered.

10.    A predecessor-in-interest to Novo Point caused the initial registration of each of the above-listed alphabetic or alphanumeric designations as a domain name with a domain name registry in 2001, 2002, 2003, or 2004,[1] and was the "Original Owner" of each such domain

---

[1]      The domain name registry with which each of those alphabetic or alphanumeric designations were first registered was either VeriSign, Inc., or its operating subsidiary, which continuously had its principal place of business in the State of California from 2000 (or before), until 2011, when it moved its principal place of business to its current location in the State of Virginia.

name,[2] together with each and every appurtenance in any way belonging thereto, and any right arising out of, by, through, or under the any contract with the domain name registry or domain name registrar.

11.     Each of the above-listed alphabetic or alphanumeric designations was also eligible to protection as a "Mark," and after registration as a domain name, the Original Owner continuously used each such Mark in commerce through the bona fide use of the Mark in the ordinary course of trade to identify and distinguish goods and services from the goods and services of others (as opposed to being used merely to reserve a right in the Mark), and through such use, also became the owner of each Mark and entitled to common-law trademark protection with respect thereto.

12.     In 2009, Novo Point became the owner of each of the Domain Names and Marks, together with each and every appurtenance in any way belonging thereto, and any right arising out of, by, through, or under any contract with the domain name registry or domain name registrar, and entitlement to trademark protection with respect to the Marks and each and every right associated with the Marks, as a successor-in-interest to the Original Owner.  Thereafter, Novo Point continued to use each of the Marks in commerce through the bona fide use of the Mark in the ordinary course of trade to identify and distinguish goods and services from the goods and services of others (as opposed to being used merely to reserve a right in the Mark), and through such use, became entitled to common law trademark protection with respect thereto independently from those rights derived from any predecessor-in-interest.

13.     On November 24 2010, and December 17, 2010, the U.S. District Court for the Northern

---

[2]      Such owner or an entity serving as the owner's proxy to protect the owner's privacy was listed as the registrant of each such domain name.

District of Texas issued orders purporting to establish a receivership, appoint the receiver, and grant exclusive possession and control over Novo Point's "assets" to the receiver in a civil action, notwithstanding that Novo Point was not even a party to such civil action.  *See* Exhibit 1.

14.     Novo Point appealed the District Court's orders purportedly granting the exclusive rights of possession, control, and management over its "assets" to the receiver immediately after the issuance of such order. *See* Exhibit 2.

15.     On February 4, 2011, the District Court issued an order purportedly permitting the receiver to sell Novo Point's domain names.  *See* Exhibit 3.

16.     On March 3, 2011, Novo Point appealed the District Court's order purporting to authorize the receiver to sell Novo Point's domain names.  *See* Exhibit 4.

17.     On March 11, 2011 and April 22, 2011, the District Court issued orders purportedly confirming the receiver's appointment of an individual named Damon Nelson as manager of Novo Point.  *See* Exhibit 5.

18.     On April 11, 2011, Novo Point appealed the District Court's order of March 11, 2011, purportedly confirming the appointment of Mr. Nelson as its manager.  *See* Exhibit 6.[3]

19.     On January 31, 2012, and on May 3, 2012, the District Court issued orders purportedly authorizing the receiver to sell Novo Point's domain names.  *See* Exhibit 8.

20.     On February 7, 2012 and June 22, 2012, Novo Point appealed the District Court's order

---

[3]     On February 28, 2014, the District Court vacated its own order of April 22, 2011, purportedly appointing an individual named Damon Nelson as the manager of Novo Point. *See* Exhibit 7.

purporting to authorize the receiver to sell Novo Point's domain names.[4]  *See* Exhibit 9.

21.     At points after Novo Point appealed the District Court's orders of November 24, 2010, December 17, 2010, February 4, 2011, and March 11, 2011 (and perhaps other orders), but before December 18, 2012, Mr. Nelson entered into a separate transaction purporting to assign ownership of one or more of the Domain Names purportedly on behalf of Novo Point to each Registrant Defendant, or a predecessor-in-interest of each Registrant Defendant.  In no way, shape, or form did any of those transactions purport to assign or in any way affect Novo Point's ownership of any of the Marks, or the entitlement to common law trademark protection or any other right associated with any of the Marks.

22.     Prior to the closing of each such purported transaction, Novo Point had no actual knowledge of any details of such transaction, and Novo Point never actually authorized or ratified any such purported transfer of ownership at any point.

23.     Before the closing of each such transaction, each such Registrant Defendant or a predecessor-in-interest to each such Registrant Defendant had actual knowledge that:

   a.      Novo Point claimed to own the Domain Names and had appealed each of the District Court's orders, as outlined *supra*, claiming each such order was *void ab initio* and never had any actual legal force or effect because, among other reasons, Novo Point was never a party to the civil action in which the orders were issued;

   b.      Novo Point claimed that, in reality, neither the receiver nor Mr. Nelson ever had any actual legal right to possess, control or manage any of the Domain Names whatsoever, or the ability to effectuate any legally valid transfer of any right, title or ownership interest in any of the Domain Names; and

---

[4]      Neither the order of February 4, 2011, nor the order of February 7, 2012, nor the order of June 22, 2012, authorized the sale of Novo Point's ownership of any of the Marks or the entitlement to common law trademark protection or any other right associated with any of the Marks.

c.      Each of Novo Point's appeals posed a risk of reversal, which could establish as a matter of law that, in reality, no purported transfer of ownership of any Domain Name to a Registrant Defendant or a predecessor-in-interest of a Registrant Defendant ever actually divested Novo Point of any right, title, or ownership interest in such Domain Name or effectuated any legally valid transfer of any right, title or ownership interest in such Domain Name or had any legal effect with respect to any such right, title or ownership interest whatsoever.

24.     Such actual awareness of the risk posed by Novo Point's above-described claims and appeals led one or more of the Registrant Defendants or predecessors-in-interest of such Registrant Defendants to negotiate with Mr. Nelson to provide express warranties of title and to assume an obligation to indemnify such Registrant Defendant(s) or predecessor(s)-in-interest against monetary loss in the written agreement(s) purporting to sell a Domain Name or Domain Names to such Registrant Defendant(s) or predecessor(s)-in-interest, but Mr. Nelson refused to do so, and none of the agreements include any express warranty of title or provision obligating Mr. Nelson to indemnify a Registrant Defendant or predecessor-in-interest – in fact, on the contrary, each such agreement includes an express disclaimer of any warranty whatsoever.

25.     The transactional document through which each Registrant Defendant or predecessor-in-interest to each Registrant Defendant purportedly purchased one or more of the Domain Names expressly identified Novo Point as the "Seller" thereunder and expressly provided in conspicuous capital letters as follows:

4.      <u>LIMITATIONS OF LIABILITY.</u>

(a)     BUYER EXPRESSLY AGREES THAT IT IS PURCHASING RIGHTS TO THE DOMAIN NAMES AT ITS SOLE RISK ON AN "AS IS" BASIS.  SELLER EXPRESSLY DISCLAIMS ANY AND ALL WARRANTIES WITH RESPECT TO THE DOMAIN NAMES, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.  BUYER ACKNOWLEDGES

AND AGREES THAT THERE ARE NO IMPLIED REPRESENTATIONS, WARRANTIES, OR COVENANTS OF SELLER IN THIS AGREEMENT OR IN ANY DOCUMENT OR AGREEMENT EXECUTED BY SELLER PURSUANT HERETO.  SELLER MAKES NO REPRESENTATION THAT THE DOMAIN NAMES WILL MEET BUYER'S REQUIREMENTS, OR THAT BUYER WILL BE ABLE TO ATTAIN ANY SPECIFIC RESULTS OR VALUE ASSOCIATED WITH THE DOMAIN NAMES OR THE USE THEREOF.  SELLER SHALL NOT BE LIABLE TO BUYER FOR ANY EXEMPLARY, PUNITIVE, INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES, INCLUDING LOST REVENUES, LOST PROFITS OR LOST PRSOPECTIVE ECONOMIC ADVANTAGE ARISING UNDER THIS AGREEMENT.

(b)     BUYER HEREBY ASSUMES ANY AND ALL LIABILITIES, DEBTS, CLAIMS, OR OBLIGATIONS THAT ARISE OUT OF OR ARE RELATED TO THE OWNERSHIP AND CONTROL OF THE DOMAIN NAMES, WHETHER ACTUAL OR CONTINGENT, KNOWN OR UNKNOWN, WHETHER ARISING OUT OF OCCURRENCES PRIOR TO OR AFTER THE DATE HEREOF (COLLECTIVELY, THE "<u>ASSUMED LIABILITIES</u>").

(c)     THE ALLOCATIONS AND LIMITATIONS OF LIABILITY SSET FORTH IN THIS SECTION REPRESENT THE AGREED AND BARGAINED-FOR UNDERSTANDING OF THE PARTIES AND THE PURCHASE PRICE FOR THE DOMAIN NAMES REFLECTS SUCH ALLOCATIONS AND LIMITATIONS.

5.     <u>Release</u>.  Buyer, for itself and on behalf of its officers, directors, shareholders, representatives, agents, administrators, attorneys, employees, attorneys, assigns, successors and agents, does hereby IRREVOCABLY AND UNCONDITIONALLY RELEASE, ACQUIT, AND FOREVER DISCHARGE Seller and its current and former officers, managers, members, representatives, agents, administrators, attorneys, employees, successors, assigns, including the Receiver Peter S. Vogel and his attorneys, Gardere Wynne Sewell LLP (hereinafter collectively referred to as the "<u>Seller Releasees</u>"), from any and all claims, debts, damages, demands, liabilities, suits in equity, complaints, grievances, obligations, promises, agreements, rights, controversies, costs, losses, damages, attorneys' fees and expenses of whatever kind or character ("<u>Losses</u>"), whether heretofore or hereafter accruing, whether known or unknown to the Parties, whether foreseen or unforeseen, fixed or contingent, liquidated or unliquidated, arising out of or in connection with the Domain Names, the Assumed Liabilities or this Agreement, which may have existed prior to, or contemporaneously with, the execution of this Agreement, or subsequent to the execution of this Agreement.

6.     <u>Indemnification.</u>  Buyer hereby agrees to indemnify and hold Seller and the Seller Releasees harmless from and against, and pay to the applicable Seller Releasee the amount of any and all Losses arising out of, based upon or relating to

any of the Domain Names or any in connection with any intellectual property claim or ownership claim related to the Domain Names.

26.     In short, each such transactional document amounts to no more than a quitclaim deed, which warrants absolutely nothing, including title, and in fact, disclaims all warranties.  Under the express terms of the assignment, each Registrant Defendant or predecessor-in-interest to each Registrant Defendant: (1) Assumed all risks; (2) Released Novo Point, the receiver and Mr. Nelson and their attorneys, and even Novo Point's "successors [and] assigns" (e.g., successor-in-interest, Associated Recovery) from liability, "which may have existed prior to, or contemporaneously with, the execution of this Agreement, or subsequent to the execution of this Agreement"; and (3) "[A]gree[d] to indemnify and hold [all of those other parties, including Associated Recovery] harmless from and against, and to pay to [each of those parties including Associated Recovery] the amount of any and all Losses arising out of, based upon or relating to any of the Domain Names."

27.     In view of the above-described risks and the unfavorable terms of each such transactional document, the monetary consideration paid by each Registrant Defendant or predecessor-in-interest to each Registrant Defendant for each purported transfer of ownership of a Domain Name was well below the value of the Domain Name to Novo Point and also well below what the fair market value of such Domain Name would have been if such risks did not exist or the terms were more favorable.

28.     After each transaction purporting to transfer ownership of a Domain Name or Domain Names to a Registrant Defendant or predecessor-in-interest to each Registrant Defendant, and without any legally valid authorization, such Registrant Defendant or predecessor-in-interest to each Registrant Defendant unlawfully assumed and exercised control over such Domain Name(s)

to the exclusion of, or inconsistent with Novo Point's ownership of each of the Domain Names and Marks, and each and every appurtenance in any way belonging thereto, and any right arising out of, by, through, or under any contract with the domain name registry or domain name registrar, and entitlement to trademark protection with respect to the Marks and each and every right associated with the Marks.

29.     On December 18, 2012, the U.S. Court of Appeals for the Fifth Circuit issued a single opinion concerning numerous appeals of each of the above-referenced orders of the District Court, specifically including:

> a.      Novo Point's appeal of the District Court's order purporting to grant the exclusive rights of possession, control, and management over Novo Point's domain names to the receiver; and
>
> b.      Appeals of the District Court's order authorizing the receiver to sell Novo Point's domain names and the order of March 11, 2011, appointing Mr. Nelson to assist the receiver as the manager of Novo Point's domain names.
>
> *See* Exhibit 10.

30.     In the opinion, the Fifth Circuit reversed each of the orders, instructed the District Court to vacate each of the orders, and explained that the District Court never had subject-matter jurisdiction over any of the domain names or any power to issue any of the orders because no issue concerning any such domain name had ever been raised in the civil action independently from those pertaining to the receivership-related orders, and Novo Point had never even been a party in the action.  *See* Exhibit 10.

31.     On April 19, 2013, the Fifth Circuit reversed each of the District Court's above-referenced orders through a separate judgment with respect to each appeal of each such order and

the mandate on each such judgment.  *See* Exhibit 11.

32.     On February 28, 2014, the District Court vacated its own order of April 22, 2011, purportedly appointing an individual named Damon Nelson as manager of Novo Point's Domain Names.  *See* Exhibit 7.

33.     Each of the District Court's orders described *supra* ¶ 13, 15, 17 and 19 of this amended complaint was *void ab initio* and never had any actual legal force or effect, and thus:

    a.      Neither the receiver nor Mr. Nelson ever had any actual legal right to possess, control or manage any of the Domain Names whatsoever, or the ability to effectuate any legally valid transfer of any right, title or ownership interest in any of the Domain Names; and

    b.      None of the purported transfers of ownership of any Domain Name to a Registrant Defendant or a predecessor-in-interest of a Registrant Defendant ever actually divested Novo Point of any right, title, or ownership interest in such Domain Name or effectuated any legally valid transfer of any right, title or ownership interest in such Domain Name or had any legal effect with respect to any such right, title or ownership interest whatsoever.[5]

34.     Novo Point assigned ownership of each of the Domain Names and Marks, and each and every appurtenance in any way belonging thereto, and any right to entitlement to trademark protection with respect to the Marks and each and every right associated with the Marks, and causes of action to Associated Recovery.

35.     Since such assignment, Associated Recovery has had a bona fide intention to use each of

---

[5]     *Cf. Baron v. Schurig*, 2014 U.S. Dist. LEXIS 180, at *42-45 (N.D. Tex. Jan. 2, 2014)  ("A judgment is void if the court that rendered it lacked jurisdiction over the subject matter of the parties. Accordingly, the court concluded that even if the May 18, 2011 Fee Order, which is based on the improper Receivership Order, constitutes a judgment, it is void and unenforceable against Baron because the district court lacked jurisdiction over the subject matter of the order and the parties affected by the order.") (internal citations omitted).

the Marks in commerce in the ordinary course of trade to identify and distinguish goods and services from the goods and services of others (as opposed to being used merely to reserve a right in the Mark), and to apply to register the Marks on the principal registry established by Chapter 22 of Title 15 of the United States Code, and through such intention, became entitled to common law trademark protection with respect thereto independently from those rights derived from any predecessor-in-interest.

36.     After such assignment, Associated Recovery demanded that each Registrant Defendant or a predecessor-in-interest of each Registrant Defendant to return each Domain Name that purportedly been sold to such Registrant Defendant or a predecessor-in-interest of such Registrant Defendant and to cease exercising control over each Domain Name to the exclusion of, or inconsistent with Associated Recovery's ownership and rights, title and ownership interest in the Domain Names, and each such Registrant Defendant or a predecessor-in-interest of each Registrant Defendant has refused to comply with such demand.

37.     Associated Recovery is entitled to the relief sought in this action in its capacity as the assignee of Novo Point and also in its own capacity as the owner of each of the Domain Names and Marks, and each and every appurtenance in any way belonging thereto, and any right to entitlement to trademark protection with respect to the Marks and each and every right associated with the Marks.

### *Statement of the Reason for Non-Joinder of Certain Persons or Entities*

38.     There is no reason to join the receiver, Damon Nelson, or Novo Point in this action because:

      a.     In the absence of each, this Honorable Court can accord complete relief among

the existing parties;

     b.     None of them claim any interest relating to the subject of this action whatsoever; and

     c.     The absence of none of those parties leaves an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations.

This Honorable Court has already held that the receiver and Mr. Nelson are immune to liability and neither currently has any right to exercise dominion or control over any property or any right that is a subject of this action.  Moreover, under the terms of the transaction(s) described *supra* ¶ 21-27 of this amended complaint they have no exposure to liability with respect to any claim asserted or which could be asserted in this civil action.

39.     Although Jeff Baron may have a beneficial interest relating to the subject of this action, he might lack standing to assert any claim with respect to such beneficial interest.  In his absence, this Court can accord complete relief among the existing parties, and none of the existing parties is subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations.  It is not feasible to join Jeff Baron because his joinder would deprive this Honorable Court of subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because he is a citizen of the State of Texas and at least one of the defendants is as well.

### *Claims for Relief Pursuant to 15 U.S.C. § 1125(d)*

40.     By registering, trafficking in, and using a Domain Name which, at the time such Domain Name was registered with a domain name registry, was identical to a distinctive Mark that Novo Point assigned to Associated Recovery, each Registrant Defendant had a bad faith intent to profit

from a Mark protected by 15 U.S.C. § 1125 in violation of sub-section (d) thereof.

41.     Associated Recovery seeks recovery of each Registrant Defendant's profits, actual damages sustained by Novo Point's predecessor-in-interest and by Associated Recovery, reasonable attorneys' fees and costs of this action from such Registrant Defendants for its violation pursuant to 15 U.S.C. § 1117(a), or alternatively, an award of statutory damages in the amount not less than $1,000 and not more than $100,000 per each Domain Name pursuant to 15 U.S.C. § 1117(d).

42.     Associated Recovery also seeks an order requiring each Registrant Defendant to transfer each Domain Name used by such Registrant Defendant in such violation to Associated Recovery pursuant to 15 U.S.C. § 1125(d)(1)(C).

43.     Associated Recovery conditionally seeks injunctive relief against the Registrar Defendant through which each such Domain Name was registered with the domain name registry but only in accordance with the conditions set forth in 15 U.S.C. § 1114(2)(D).

### *Claims for Relief for Unfair Competition and Common Law Trademark Infringement*

44.     The registration of a Domain Name with the domain name registry by each Registrant Defendant and the use of such Domain Name constituted unfair competition with Novo Point and infringement upon Novo Point's entitlement to common law trademark protection and since Novo Point assigned ownership of the identical Mark and rights associated therewith, such registration and use of such Domain Name by each Registrant Defendant constitutes unfair competition with Associated Recovery and infringement upon Associated Recovery's entitlement to common law trademark protection.

45.     Associated Recovery also seeks injunctive relief against each Registrant Defendant for such unfair competition and common law trademark infringement ordering such Registrant Defendant to transfer each Domain Name registered or used by such Registrant Defendant in such unfair competition and common law trademark infringement to Associated Recovery.

### *Claims for Declaratory Relief and Further Related Relief*

46.     Pursuant to 28 U.S.C. § 2201, Associated Recovery also seeks declaratory relief to the effect that each of the District Court's orders described *supra* ¶ 13, 15, 17 and 19 of this amended complaint was *void ab initio* and never had any actual legal force or effect, and thus:

a.      Neither the receiver nor Mr. Nelson ever had any actual legal right to possess, control or manage any of the Domain Names whatsoever, or the ability to effectuate any legally valid transfer of any right, title or ownership interest in any of the Domain Names;

b.      None of the purported transfers of ownership of any Domain Name to a Registrant Defendant or a predecessor-in-interest of a Registrant Defendant ever actually divested Novo Point of any right, title, or ownership interest in such Domain Name or effectuated any legally valid transfer of any right, title or ownership interest in such Domain Name or had any legal effect with respect to any such right, title or ownership interest whatsoever;

c.      None of the Registrant Defendants owns any right, title, or interest whatsoever with respect to any of the Domain Names or Marks; and

d.      Novo Point validly transferred ownership of each of the Domain Names and Marks, and each and every appurtenance in any way belonging thereto, and any right to entitlement to trademark protection with respect to the Marks and each and every right

associated with the Marks, and causes of action to Associated Recovery.

47.     Pursuant to 28 U.S.C. § 2202, Associated Recovery also seeks further relief ordering each Registrant Defendant to transfer each Domain Name under such Registrant Defendant's control to Associated Recovery and quieting Associated Recovery's title to and removing cloud upon its title against each Registrant Defendant.

### *Claims for Conversion and Unjust Enrichment*

48.     Each Registrant Defendant's and predecessor-in-interest to each Registrant Defendant's registration of Domain Names with the domain name registry and use of the Domain Names to the exclusion of, or inconsistent with Associated Recovery's ownership and rights, title and ownership interest in the Domain Names, and each such Registrant Defendant or a predecessor-in-interest of each Registrant Defendant refusal to comply with Novo Point's and Associated Recovery's demand to do so constitutes conversion of the Domain Names.   Moreover, each Registrant Defendant would be unjustly enriched by the value of a Domain Name and the profits derived from the use of such Domain Name unless such Registrant Defendant were ordered to turnover such Domain Name to Associated Recovery and a constructive trust were imposed upon such profits for the benefit of Associated Recovery.   Therefore, Associated Recovery seeks actual damages resulting from the conversion and an order requiring the turnover of the Domain Names to Associated Recovery and imposing a constructive trust upon the profits for its benefit.

### *Alternative Claims for Breach of Contract and Recovery of Attorneys' Fees*

49.     Under the express terms of the transactions described *supra* ¶ 21-27 of this amended complaint, Registrant Defendants SocialBon Inc., Floridians LLC, Media Options Inc., Strong Inc., Telepathy Inc., News Ltd., JRS Holdings LLC, Sylvia O'Donohoe, Virtual Investments

LLC, and Quinn Vesey each became contractually obligated to "pay to the applicable Seller Releasee [including Novo Point and its successor and assign, Associated Recovery] the amount of any and all Losses arising out of, based upon or relating to any of the Domain Names or any in connection with any intellectual property claim or ownership claim related to the Domain Names." Therefore, if this Honorable Court does not order each of those Registrant Defendants to transfer each Domain Name purportedly assigned to each such Registrant Defendant, then strictly in the alternative, Associated Recovery seeks judgment against each of those Registrant Defendant's for any and all Losses arising out of, based upon or relating to any such Domain Name or identical Mark, and reasonable and necessary attorneys' fees incurred in prosecuting such contract claim, pursuant to Chapter 38 of the Texas Civil Practices and Remedies Code.

*Claims for Intentional Interference With Existing Contract*

50.     By registering Domain Names with a domain name registry and using those Domain Names, Registrant Defendants SocialBon Inc., Floridians LLC, Media Options Inc., Strong Inc., Telepathy Inc., News Ltd., JRS Holdings LLC, Sylvia O'Donohoe, Virtual Investments LLC, and Quinn Vesey each intentionally interfered with Novo Point's contractual relationship with the domain name registrar through which it had registered those Domain Names with a domain name registry. Associated Recovery seeks to recover the actual damages caused to Novo Point through such intentional interference.

*Performance of Conditions Precedent*

51.     All conditions precedent to Associated Recovery's right to requested relief have occurred or been performed.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Associated Recovery, LLC, respectfully request this Honorable Court to:

1.      Grant the injunctive relief, declaratory and related further relief, and legal and equitable relief requested above; and

2.      Grant such other relief, both special and general, at law and in equity to which they are justly entitled.

Respectfully submitted,

/s/ Jack T. Jamison
JACK T. JAMISON
State Bar No. 10562550
1509 Main St., No. 205
Dallas, Texas 75201
Tel:  (469) 802-9451
Cell: (214) 402-7654
jack@jackjamisonattorney.com

ATTORNEY FOR PLAINTIFF
ASSOCIATED RECOVERY, LLC

CERTIFICATE OF SERVICE

On the 31st day of May, 2017, a true and correct copy of the foregoing document was electronically submitted to the Clerk of Court for the United States District Court for the Northern District of Texas, using the ECF system.  I hereby certify that I have served the lead counsel for each Defendant through the Court's electronic filing and service system.

/s/ Jack T. Jamison
JACK T. JAMISON