IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ASSOCIATED RECOVERY, LLC, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 3:17-cv-01025-L |
| | ) | |
| JOHN DOES 1-44, | ) | |
| | ) | |
| *Defendants in rem.* | ) | |

**MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS COMPLAINT**

Ye Yu is the owner of the FXF.com, one of the domains against which Plaintiff has brought the Complaint (ECF 1) and Amended Complaint (ECF-123).

Ye Yu, filing Pro Se representing defendant FXF.com, pursuant to Federal Rules of Civil Procedure 12 (b)5, 12 (b)7, and Texas Rules of Civil Procedure 91a.1, submits this Memorandum in Support of Motion to Dismiss Complaint.

**FACTS**

**A.    At the Time, Receiver and Mr. Nelson Carried Out Auction Under Court Order**

Plaintiff counsel claims the receiver and Mr. Nelson has no actual legal right to auction the domains, Paragraph-23, b:

> b. *Novo Point claimed that, in reality, neither the receiver nor Mr. Nelson ever had any actual legal right to possess, control or manage any of the Domain Names whatsoever, or the ability to effectuate any legally valid transfer of any right, title or ownership interest in any of the Domain Names; and*

Plaintiff claim is factually false, Mr. Nelson and Receiver were performing a court order at the time. A vacated receivership does not retrospectively incriminate Receiver and Mr. Nelson or change the fact in the past.

Court orders are similar to Accounting entries, when there is an error, the value of the error entry in the past is not modified to create a perfect picture, instead the correction is always made as a new entry to "balance it out". The past order could be incorrect, but it is a legal court order nonetheless for the time period prior to USCA5's order to vacate it.

However it's reasonable for plaintiff to find a remedy to "balance it out", it is completely unreasonable to "rewrite history".

**B.     The Receivership and Auction Was the Only Option The Court Had to Reign in Plaintiff's Out of Control Tactics in Court, and to Raise Fund to Pay For Jeffrey Baron's Court Dues**

It is revealed that plaintiff stole domains and scammed his ex-partner Munish Krishan, in Case 3:09-cv-00988-F, "Netsphere Inc. vs Baron", which he ultimately lost. As the "Netsphere Inc. vs Baron" case progressing, and all the

2

domain portfolios were maneuvered into Novo Point which is not in the original complaint. As the case drags on, Jeffrey Baron fires and hires lawyers to tactically stall the court. Just as if the exhausting case is not painful enough to everyone involved, plaintiff decides to not compensate his legal counsel Peter Vogel, who becomes the Receiver later.

## C.   Novo Point Assigned Non-Existential and Proclaimed Domain Ownership to Associated Recovery, LLC

Novo Point was not the owner in December 2015, while Defendant held the domain ownership at the time.

Novo Point assigned alleged ownership, which it doesn't posses to "Associated Recovery, LLC". case No. 1:15-CV-01723-AJT-JFA, Dkt-1, Paragraph 106:

> On or about December 24,2015, Novo Point assigned the Subject Domain Names, and their associated trademarks and goodwill, to the Plaintiff. Included in the assignment was the right for the Plaintiff to sue and to recover possession of the Domain Names and recover damages for past, present and future infringements,dilution, misuse, misappropriation and other violations.

There is no statute support or any legal authority that allows Plaintiff's non-existing ownership to be transferred.

Neither US District Court of Northern Texas which presided the "Receivership", nor Fifth Circuit Court of Appeal which issued the "Unwind Order" have ordered the assignment of such non-existing ownership.

3

**D.   Plaintiff's Claim of "transferred without authorization" is fictitious**

Plaintiff Claims that FXF.COM was transferred to Defendant's holding "unauthorized" in ECF-1, paragraph-10 with key phrase underscored:

> *FXF.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "whoisguard protected" of "P.O. Box 0823-03411, Panama, Panama." Upon information and belief, "ENOM, Inc." is the name of the domain name registrar to which <u>FXF.COM was transferred without authorization</u>, and is the current registrar for FXF.COM. A copy of the current domain name registration record for fxf.com is attached as Exhibit 6.*

The matter of fact is that for a transaction through SEDO.com with multiple involved parties in coordination in order for the transfer to take place, any sign of the transaction being "unauthorized" would have halted the whole process:

a). Domain seller receives payment and authorized domain transfer

b). SEDO.com drafted sales agreement and act as the escrow

c). Outgoing and incoming registrars both receive confirmations

Furthermore, ICANN has procedures in place in the event of domains being transferred out of a party's account without authorization, which is easiest, quickest, and cheapest way to fix "unauthorized transfer" issue.

If Plaintiff can prove to ICANN that these in rem domains are in fact lost to Defendants under unlawful circumstances or via improper procedures, ICANN would fix the issue for the Plaintiff.

The very fact that Plaintiff filed a lawsuit instead of filing a ICANN complaint or following ICANN procedure suggest that Plaintiff knew full well that

his "unauthorized transfer" claim is baseless and would not be acknowledged by ICANN, all past transactions are by law and by proper procedure.

Again, Defendant ponders whether Plaintiff counsel has done basic fact checking before filing the complaint, or intentionally throw fictitious claims around hoping they may stick.


**E.      Plaintiff Never Developed any Business and Service with the Domain(s)**

There is a crucial difference in owning a domain versus developing a domain into a branded business which provide real products and services to internet consumers, the latter require significant resources and talent.

Plaintiff made the following claim in ECF 1, paragraph-123, 124:


> *Novo Point used the FXF.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view FXF.COM as a symbol of origin, and <u>consumers came to identify FXF.COM as a source indicator.</u>*
>
> *Novo Point used the FXF.COM domain name in U.S. Commerce in association <u>with the provision of services to Internet consumers</u> and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the FXF.COM domain name.*

Plaintiff also made the following claim in Amended Complaint ECF-123, paragraph-11:


> *Each of the above-listed alphabetic or alphanumeric designations was also eligible to protection as a "Mark," and after registration as a domain name, the Original Owner continuously used each such Mark in commerce through the bona fide use of the Mark <u>in the ordinary course of trade to</u>*

> *identify and distinguish goods and services from the goods and services of*
> *others (as opposed to being used merely to reserve a right in the Mark),* and
> *through such use, also became the owner of each Mark and entitled to*
> *common-law trademark protection with respect thereto.*

Plaintiff's wording leaves the impression that domain was providing valuable services to internet consumers, so much so it is a recognized valuable brand.

Plaintiff failed to provide any detail on the purported "goods and services". Plaintiff has the responsibility to qualified and quantified the operation of the in rem domains in order to enable the Court to assess the validity or invalidity of plaintiff's claim.

The reality is the quite the opposite of what Plaintiff attempt to impress. Domain FXF.com was a "parked domain" under Plaintiff and predecessor management. Defendant found the screenshots of FXF.com in 2006, 2007, 2009, 2010, through "domaintools.com", please see Exhibit 1 to Exhibit 8. Not just FXF.com, apparently other domains listed in the Complaint were also "parked" in 2009, Defendant includes screenshots of a few other in rem domains in 2009, please see Exhibit 9 to Exhibit 14.

When a domain is "parked", it is basically considered "undeveloped" and "unused" in the web industry, average consumers or real users will leave as soon as it realized it is "a parking page". It's amusing to think anyone would view a "parked domain" as "source of service and information" or the face of a credible business operation. The following is excerpted Wikipedia.org to provide some explanation on "domain parking" (https://en.wikipedia.org/wiki/Domain_parking):

> ***Domain parking*** *refers to the registration of an internet domain name*
> *without that domain being associated with any services such as e-mail or a*

> website. *This may have been done with a view to reserving the domain name for future development, and* <u>*to protect against the possibility of cybersquatting*</u>*. Since the domain name registrar will have set name server for the domain, the registrar or reseller potentially has use of the domain rather than the final registrant.*

Defendant has no reason to believe Plaintiff counsel knowingly lied to the Court in claiming a "parked domain" as anything beyond what it can be dressed up to be. However it does seem that Plaintiff counsel has failed to do due diligence to fact check the "operation state" of these domains when they were under Novo Point and Baron's management before filing the Complaint.

**F.      Plaintiff's Cybersquatting Claim is Unqualified**

Anticybersquatting Consumer Protection Act, or ACPA, has 3 rules to qualify a "cybersquatting": (1). a domain name is identical or confusingly similar to a trademark or service mark in which the complainant has rights, (2). the domain name owner has no rights or legitimate interests in the domain name, and (3). the domain name has been registered and is being used in bad faith.

A search at US Electronic Trademark Search System (TESS) proves that Plaintiff has no trademark on "FXF.com" or "FXF", please see Exhibit-19. There are 4 in the search results, none of which is by Novo Point or Plaintiff. The only live application is attached as Exhibit-20, which is filed in 2016.

Plaintiff Counsel probably failed to do basic fact checking. If there is no preceding business operation, no trademark registration, the ACPA rule (1) can't apply.

Defendant purchased the domain via SEDO.com, the largest domain trading marketplace. SEDO.com verified the seller as owner of the domain. Defendant has no knowledge of Plaintiff, and has never dealt with Plaintiff prior to this Complaint. It's clearly impossible to have "bad faith" in buying and using the domain in the context, therefore ACPA rule (3) can't apply.

### G.   Defective Service of Complaint

Plaintiff declared that they are unable to serve defendant "FXF.com" by privacy email in ECF 17-1, however there are 3 problems with that:

**Firstly, Plaintiff falsely declared that the privacy email was not working**. Ye Yu didn't experience any problem in receiving alerts through the privacy email address. To support this, an example inquiry coming through the privacy email is provided as Exhibit 15 (Exhibit-15: Purchase Inquiry).

**Secondly, Plaintiff didn't perform due diligence**. The privacy email is a paid service provided by the ENOM aka. NameCheap.com (the "registrar") to help protected domain owner's personal email address online, it's never intended to block communication. If Plaintiff contact the registrar, in this situation, the registrar has the obligation to relay the message to the domain owner.

**Thirdly, the email address used in service is either wrong or made up.** let's compare the valid email address at the time in Exhibit-15 with which someone else has emailed Defendant successfully:

*12664F3E16E24E89B1905AD3AC22E8FF.PROTECT@whoisguard.com*

against the wrong or made up email used for service in ECF 17-1:

*15B93ABAFD0B47E787820FDA56E25280.PROTECT@whoisguard.com*

Failure to service Defendant led to default judgement, loss of control of property which Defendant acquired through a legitimate transaction.

**H.    Plaintiff's proof of the service of process is defective and can be faked, while the evidence provided by the defendant is a positive confirmation that can't be manufactured on his own.**

Plaintiff provided a returned email notification as evidence of Service of Process. This is detective for following reasons:

1. In order to produce this, he only needs to craft a non-existing email address at the target email service provider. Plaintiff control all necessary factors to create such a return notification.

2. Plaintiff provided "DNS details" for "FXF.com", however Plaintiff never substantiated with evidence that these "DNS details" are authentic or untampered.

3. The proof of a non-working fake email doesn't prove that Plaintiff ever attempted to contact defendant's real email, or attempt to reach Defendant through contacting Registrar.

The defendant's evidence of purchase inquiry coming through the WhoisGuard Privacy email address requires multiple components, 3 out of 4 factors are beyond defendant's control:

1. inquiring person's email address

2. WhoisGuard email server

3. Google Email Server

4. the defendant's email address

The received sales inquiry at the defendant email proves positively the WhoisGuard email address works. And it can't be manufactured.

## I.   Plaintiff Attempted to Sell the Domain while the case is still open in Court

After Plaintiff gained control over the domain "FXF.com" following the initial default judgement, he immediately contracted Outcome Brokerage to attempt sales, please see "Email Communication between Ye Yu and Ryan Colby of Outcome Brokerage on August 20, 2016" in Exhibit-16. Plaintiff's intention and attempt to sell domain immediately after default judgement is factual.

## J.   About 153,000 domains were allegedly auctioned to paid for his court expenses, part of which are typo domains

Multiple news sources cited that 153,000 domains were auctioned through receivership. Defendant include two such news sample:

Exhibit-17, DallasNews.com published an article on 2012-10-23: "For Sale: 153,000 domain names that once belonged to Dallas Web 'Pioneer' Starting bid: a mere $4.3 million"

Exhibit-18, TheDomains.com published an article on 2010-10-23: "153,000 Premium Domain Names Owned By Ondova Hits The Bankruptcy Court Auction Block: Minimum Bid $4.3 Million"

## K.   Part of the 153,000 Domains are Misspelling of Popular Online Destinations

From Case 3:09-cv-00988-F, DKT-775, Page-2, "B. Receiver Seeks the Return of 4 Domains" claim:

> *In its response, ICANN confirmed that 4 of the 22 domain names (aplle.com, publicstorge.com, pulicstorage.com, and puplicstorage.com) are both profitable and have actually been transferred as a result of the illegal default decisions issued by WIPO.*

Receiver placed importance of the these misspelling. It indirectly tells us that the portfolio of domains were designed to have significant number of typo domains of popular online destinations. Defendant believe this fit into the definition of "Typosquatting", excerpt from Wikipedia.org provides some explanation on this subject (https://en.wikipedia.org/wiki/Typosquatting):

> ***Typosquatting**, also called **URL hijacking**, a **sting site**, or a **fake URL**, is a form of cybersquatting, and possibly **brandjacking** which relies on mistakes such as typographical errors made by Internet users when inputting a website address into a web browser. Should a user accidentally enter an incorrect website address, they may be led to any URL (including an alternative website owned by a cybersquatter).*
>
> *The typosquatter's URL will usually be one of four kinds, all similar to the victim site address (e.g. example.com):*
>
> - *A common misspelling, or foreign language spelling, of the intended site: exemple.com*
> - *A misspelling based on typos: examlpe.com*
> - *A differently phrased domain name: examples.com*
> - *A different top-level domain: example.org*
> - *An abuse of the Country Code Top-Level Domain (ccTLD): example.cm by using .cm, or example.co by using .co. A person leaving out either the letter **o** or the letter **m** in .com in error could arrive at the fake URL's website.*

11

*Once in the typosquatter's site, the user may also be tricked into thinking that they are in fact in the real site; through the use of copied or similar logos, website layouts or content.*

Defendant can't speculate on the profitability or legality of such operation, but it is safe to assume such operation is frowned upon and stayed away by credible business operators. It is dangerous to consumers, and cause branded businesses to lose traffics, ie: apple.com would lose traffic to aplle.com if a user commits a typo.

### L.    Plaintiff has a Litigious History

Plaintiff's controlling party Jeffrey Baron or Novo Point has been in Court since the Case 3:09-cv-00988-F, "Netsphere Inc. vs Baron", possibly prior to that. To the Court and anyone who follows relevant cases, it's well known fact that Jeffrey Baron is litigious.

### ARGUMENTS

### A.    The Order for Receivership is Legal At the Time

The USCA5's Order to Vacate Receivership is about stating past receivership order is "not correct" and it shall stop being "legal" in future.

"Being legal" is time-dependent. Even if a law or court order is decided wrong later, it doesn't change the fact that the law or court order is "legal" at the time when it is carried out. A law or court order can be legal for a period of time, then stop being legal. A change in law or an issuance of overturning court order

should not retrospectively incriminating or punish parties who operated under the previous law or previous court order prior to the change.

Therefore, defendant argues that the Receivership Order is legal prior to the USCA5's Receivership Vacating Order, therefore the auction and auction proceeded fund.

## B.   The Vacated Receivership Came from a Necessity to Control The "Vexatious Litigant"

By Plaintiff, the Receivership placed on him is the first incident of the type. We can reasonably conclude the following:

1). the Court is rational and sane, has never placed Receivership on just any individual arbitrarily, it is taken as last measure out of an unimaginable difficult circumstance

2). Jeffrey Baron is a not just regularly vexatious litigant, it must have reached the extreme extent that it even knocks an experience Court off balance

By Fact-B, plaintiff is flawed in this own actions to put it lightly, while the Receivership is vacated later by USCA5, we should also appreciate the fact the Receivership is not one completely without merit.

## C.   Plaintiff Misinterprets USCA5 Unwind Order

Fifth Circuit Court of Appeal ordered to vacate and unwind receivership, however this should not be interpreted as to simply reverse the past domain sales, because:

1). the domain auction was the only way to generate fund to cover Plaintiff's legal expenses. In Case No. 3:15-CV-232-L, "Baron v. Vogel", the Judge ordered

that the legal expenses shall be paid, by logic, it is affirming the past domain sales shall stand legally as well. These are two inseparable issues.

2). Fifth Circuit Court of Appeal's original Court Orders never explicitly stated that the past domain sales transaction shall be reversed, furthermore it never grant Plaintiff rights to take the domains back for free, nor gets the free ride of years of investments by defendants into these domains.

3). defendant argues that the order to vacate Receivership should be interpreted as providing a basis for Plaintiff to seek "remedy", in another word, USCA5 agrees that plaintiff deserve some "remedy"

Defendant further argues that a "proper remedy" requires some careful consideration as how to be both practical and fair in moving forward from the current state, and how to not escalate into something worse or causing more injustice in the process of satisfying a single party's justice. In this case, vacating receivership by reversing all domain sales would cause unimaginable amount mess.

## D.    Assignment of Alleged Ownership Right is Baseless and Plaintiff Lacks Standing

Base on Fact-C, because there is no legal statute or legal framework, no Court order by TXND or USCA5, which can support the assignment of non-existing domain ownership in December 2015. The purported ownership by Plaintiff should be considered "void".

Therefore, Defendant requests the Court to dismiss the Complaint for Plaintiff's lacking standing.

**E.**    **Plaintiff's Claim of "unauthorized transfer" are Baseless in Fact**

Base on Fact-D, the sale and transfer of Domain FXF.com involved multiple parties with contract, payment, escrow, fulfilled all necessary procedures implemented by domain Registry and Registrars.

Claiming the transfer is "authorized" is baseless in fact, therefore Defendant requests the Court to dismiss the Complaint (ECF-1) by Tex. R. Civ. P. 91a.1 (with relevant sentence underscored):

> ***Motion and Grounds****. Except in a case brought under the Family Code or a case governed by Chapter 14 of the Texas Civil Practice and Remedies Code, a party may move to dismiss a cause of action on the grounds that it has no basis in law or fact. A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them do not entitle the claimant to the relief sought. A cause of action has no basis in fact if no reasonable person could believe the facts pleaded.*

If reasonable people can believe Plaintiff's Claim, working with ICANN and follow the ICANN procedure will resolve the alleged "unauthorized" transfers, which would be simpler, quicker and cheaper.

Plaintiff's Complaint is unnecessary and counterproductive, if Plaintiff truly believes that ICANN is being "unreasonable", Plaintiff can contest that with ICANN in Court, which is capable of handling 153,000 domains more efficiently if it were truly an "error" to be corrected.

Plaintiff's avoidance of contest with ICANN in Court suggests that Plaintiff knows that his claim is baseless with little chance of winning, therefore waging legal attacks on easier targets of individual domain owners.

**F.    Both Jeffrey Baron and Novo Point are "Necessary Party"**

A fair trial should have both plaintiff and defendant equally liable for their claims in Court. Defendant argues that if the Court decides to not dismiss Complaint (ECF-1 and ECF-123), bringing Jeffrey Baron and Novo Point as the Plaintiff is necessary element to construct a foundation of fair trial.

Plaintiff could be liable to provide relief to Defendant if proven to be not filing lawsuit in the interests of justice according Texas Rules of Civil Procedure 91(a)1. By installing a shell company as Plaintiff and being absent from the complaint filing, Jeffrey Baron and Novo Point shield themselves from possible tortious liability.

Plaintiff provides no supporting documentation that it has any capacity to provided relief for civil wrong against defendant if proven.

Plaintiff is an LLC. This incorporation choice suggests that in the event of adverse court outcome. It's possible for Plaintiff to file bankruptcy as a means to refuse to provide relief.

The real beneficiary of Plaintiff, the person who pull the string on Plaintiff side should have a skin in the game. It's to Court's interests to not see this become a precedence. Otherwise, people will all register fresh LLC to file lawsuit to avoid being accountable in their pursue of baseless claims.

Defendant pleads the Court to order Plaintiff to provide supporting documentation on the owner(s) of "Associative Recovery, LLC" and bring the

eventual and asset holding owner(s) to the stand of this case if the Complaint is not to be dismissed.

If Defendants stand to lose the domains they paid money for through legal transactions with no ill intent. It's only fair to ask that Plaintiff should prove it stand to be liable for its claim and its capacity to provide relief if it were to receive adverse outcome.

**G.    Court Should Dismiss the Complaint for Failure to Join the Necessary Parties, Federal Rule 12(b)7:**

Novo Point was the holder of the domain at the time when receivership is ordered by court. Since Jeffrey Baron has always been pulling the string behind., Defendant argues that both Novo Point and Jeffrey Baron are necessary parties. This case should be dismissed on Federal Rule 12(b)7 for failure to join necessary parties.

**H.    Court Should Dismiss the Complaint for Insufficient Service of Process, Federal Rule 12(b)5:**

In Case No. 1:15-cv-01723-AJT-JFA, Associated Recovery vs John Does 1-44. Plaintiff successfully obtained default judgement against defendant(s) through dubious tactics.

Plaintiff's attempt of contacting defendant by non-existing email address is the same as throwing Service of Process down the sewer or mail it to an non-existing physical address.

By United States Constitution, Ye Yu is entitled to the due process of law. Plaintiff's invalid Service of Process injures the Constitutional right of Ye Yu,

resulted in a default judgement, however it is eventually vacated, the damage is done, and plaintiff's lack of sincerity and regards to justice is evident.

While Plaintiff cries out for the technical imperfection of his receivership, when it comes to advancing Plaintiff's own interests, a sewer service is just fine to obtaining the default judgements.

## I.    Plaintiff's Claim for Relief Is Unjust

The auctioned portion of the domains produced cash to cover Plaintiff's unpaid legal expenses. If the same domains returns to Plaintiff for free, it would amount to gross injustice to all subsequent domain owners, who have spent their hard earned and saved money for these domains.

This would be equivalent of the defendant domains owners paying for Jeffrey Baron's lawyer fees in the case he was labeled "vexatious litigant" and the Court was trying to contain his out of control behaviors.

## J.    Plaintiff Didn't Bring the Complaint in Good Faith

Texas Northern District Court is most familiar with the historic long standing cases involving Plaintiff, yet Plaintiff chose to file in a different state with a Court that is less familiar with Plaintiff.

The choice of Court may indicate that Plaintiff either distrust the Texas Northern District Court, or attempting legal engineering a case in advancing his own interests with another Court who may not be as familiar with his prior cases.

A look at the defendants listed in original complaint (ECF-1), Plaintiff picked only domains with oversea owner addresses especially from China and

oversea private registration providers. One way to reason this is that, these targets are least likely to respond or easiest to claim unable to service.

Above factors are calculated to maximize Plaintiff's chance to get default judgement. The uniformity characteristics of the defendant selections suggest that Plaintiff is using Court to advance his own interests by surprise attacking the defendants who are most likely to fail to respond.

When Plaintiff engineers a lawsuit with the objective to maximize chance for default judgements, it is obviously disqualified for "good faith".

## K.   Plaintiff's Claim is Damaging to the Court, Web Startups, Countless Everyday Businesses, Domain Traders, etc.

From Exhibit-20, we learned that about 153,000 domains are auctioned to collect fees to pay for his legal expenses.

If defendant were to successful setup a precedence to take domains away in rem domain owners. It would be damaging to:

1). the Court, there will be flood of similar cases

2). domain traders, who buy and sell domains for a living, a portion of their portfolio are at risk to be taken away from them

3). web startups, domains are essential and important for them, it is reasonable to think that there are probably startups out there using some of these 153,000 domains providing valuable services to consumers and making the world a better place, yet Plaintiff could stand to disrupt and benefit from their endeavors while contributing nothing.

4). countless everyday businesses would be horrified to learn that the domains they bought from marketplace like "SEDO.com" would be somehow belong to Plaintiff

## L.   Plaintiff Operated Like Cybersquatter

According to Fact-J, Plaintiff and predecessors have more than 153,000 domains. A normal business doesn't need that many domains. It cost hundreds to thousands dollars to create a simple website. It cost hundreds of thousands dollars to implement and operate a moderately advanced "portal" to provide services and products to consumers.

Obviously Plaintiff doesn't have resource to operate so many domains. Otherwise, Plaintiff would be contemptuous towards the Court and lawyers who rendered services for him so much so that he refused to pay them.

The remaining possible explanation of Plaintiff holding so many domains is that he derived his revenue from 2 sources:

1). registering misspelling of popular online destinations to take advantage of typo users, for example: aplle.com, publicstorge.com, pulicstorage.com, and puplicstorage.com, etc. as mentioned in Fact-K, when users commit a typo, Plaintiff would monetize these users who didn't plan to visit these typo domains. We have no details on how exactly Plaintiff has made money of these typo traffic, but according to quoted receiver's filing, domain like "aplle.com" is "profitable". Obviously such "profit" comes at the expense of the "typo visitors" and Apple Corporation. And obviously reasonable people would disapprove such operation and thought it as a "distasteful" business.

2). registering the popular words and word combinations in advance, and charge a premium price to businesses that are unfortunately enough to require certain words in their brands. The market price to register an unregistered domain is $12 right now with Google Domains, however in the case of Domain traders, domains can be charged 100s to 1000s times if the domains.

Defendant doesn't want to debate over legality or morality of Plaintiff's operation, but it is ridiculous for an operator who profit from the previous mentioned ways, and typosquatting popular online destination at such massive scale, to accuse anyone else "cybersquatting".

## M.   Plaintiff's Choice of Defendants Shows Lack of Interests in Justice

Defendant argues that the Complaint show "bad taste" and lack of interests in justice:

1). If Plaintiff believes the "system" have wronged him, he can resort to Federal Tort Claims Act. If he is on the right side, there surely can be relief from the legal system.

2). If Plaintiff believes he is the rightful owner of the domains, he can contest ICANN in Court and provide evidence of his ownership. ICANN could batch fix these if it were true.

3). If Plaintiff believes receivership is mishandled by Receiver and Mr. Nelson, which he filed a case and lost.

4). If Plaintiff believes the receivership auction buyers taking advantages of him, he can contest the buyers got unfair deals.

Each one of above is closer to the "genesis" than current defendants. Once the 153,000 being resold by the initial auction buyer(s), there are unknown number

of transactions have taken places for each of the domains. It's safe to say that all subsequent buyers have no "bad faith" towards Plaintiff, because they simply don't have the full history of these domains. Today's domain markets, for example the largest one SEDO.com, does not provide a full history of previous owners. In fact, in most transactions, buyers only know the seller's identify once the deal went through.

Basically Plaintiff chose to file complaint against parties that is least relevant to the "genesis". This is not how a complex problem can be untangled.

Furthermore, Plaintiff narrowed down to mostly oversea domain owners who are insufficient in English language and most vulnerable to be Defendants in the original complaint ECF-1. These suggest that Plaintiff is trying to "game" the system for advantage, and lack of interests in justice and fairness.

**N.     Plaintiff Should Provide Relief to Defendants If Court Grants This Motion to Dismiss Complaint**

Defendant argues that relief to Defendants is necessary for two reasons:

1). defendants were forced invest time and money in dealing with this meritless complaint

2). Base on Fact-L, Plaintiff is litigious. Therefore, it is an important measure to place a deterrent to prevent such a litigious Plaintiff from filing unnecessary "bad faith" complaint in future.

**O.     Plaintiff Should Provide Relief to Defendants If Court Decides All Transactions of 153,000 Domains to Be Reversed**

Defendants of this case and new owners of those 153,000 domains have invested resources into these domains' maintenance and developments. If court decides all those domains to be returned, Plaintiff should be held accountable for creating the massively messy situation in the first place. Plaintiff should compensate all impacted parties for:

    1). invested resources, both time cost and financial cost

    2). business disruption, for example, if a business has used a domain for operating business, losing domain would cause disruption and confusion, which in turn translates into financial damages

    3). other related damages, for example, a domain might be a key component of a defendant's life long dream project, acquiring the domain then losing it could be psychological and physically damaging to defendant's health.


## CONCLUSION

    WHEREFORE, for all previous mentioned reasons, Ye Yu and Defendant "FXF.com" respectfully request the Court to grant this Motion to Dismiss the Complaint (ECF-1 and ECF-123).

    Furthermore, if the Court were to dismiss the Complaint, Defendant respectfully requests the Court to order Plaintiff to provide an appropriate relief for the Complaint which is baseless in fact.


Dated: June 18, 2017                Respectfully submitted,

Ye Yu
5001 Wilshire Blvd, #112-528
Los Angeles, CA 90036
Phone: 818-919-5619
Email: info@yespire.com

## CERTIFICATE OF SERVICE

On June 18, 2017 I mailed the foregoing document with the clerk of court for the

U.S. District Court, Northern District of Texas, through mail carrier. I hereby

certify that I have served all counsel and/or pro se parties of record by mail or by

electronically or by another manner authorized by Federal Rule of Civil Procedure

5 (b)(2).


Ye Yu
5001 Wilshire Blvd, #112-528
Los Angeles, CA 90036
Phone: 818-919-5619
Email: info@yespire.com