IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

**ASSOCIATED RECOVERY, LLC,**

Plaintiff,

v.

**JOHN DOES 1-44,** *et al.,*

Defendants.

**No. 3:16-CV-1025-L**
(Consolidated with Nos.
3:17-CV-424-L and 3:17-CV-651-L)

**MEMORANDUM IN SUPPORT OF CONSOLIDATED
<u>DEFENDANTS' RULE 12(b) MOTION TO DISMISS THIRD AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND .............................................................................. 3

    A.   The Start of the Netsphere Litigation .......................................................... 3

    B.   The Ensuing Bankruptcy and Receivership ................................................. 3

    C.   The Sale of Domain Names Pursuant to Receivership ................................ 4

    D.   The Fifth Circuit Vacates the Receivership But Leaves Previous Sales in Place ......... 5

    E.   Winding Down the Receivership ................................................................. 6

    F.   The *Baron v. Vogel* Litigation ................................................................. 7

    G.   The Consolidated Litigations ....................................................................... 7

III.  ARGUMENT AND AUTHORITIES ................................................................. 8

    A.   The Court Should Dismiss this Action Because the Claims are Collaterally Estopped. ................................................................................ 8

    B.   The Court Should Dismiss Plaintiff's Claim that are Time-Barred. ........................... 12

    C.   The Court Should Dismiss Plaintiff's Claims that are Legally Impossible. ............... 13

    D.   The Court Should Dismiss this Action For Lack of Standing. .................................... 18

        1.  Plaintiff Lacks Standing For Any Claim ................................................. 18

        2.  Plaintiff Particularly Lacks Standing to Assert Mark Claims .............................. 20

    E.   The Court Should Dismiss this Action For Failure to Join Necessary Parties. .......... 22

        1.  Novo Point ............................................................................................... 23

        2.  Jeffrey Baron .......................................................................................... 24

        3.  Peter Vogel and Damon Nelson ............................................................. 24

IV.  CONCLUSION ................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Airlines Reporting Corp. v. Pishvaian*,
  155 F. Supp. 2d 659 (E.D. Va. 2001) ....................................................17

*All Am. Builders, Inc. v. All Am. Siding of Dallas, Inc.*,
  991 S.W.2d 484 (Tex. App. – Fort Worth 1999, no pet.) ......................................15

*Amazing Spaces, Inc. v. Metro Mini Storage*,
  608 F.3d 225 (5th Cir. 2010) ....................................................21

*Bernard Johnson, Inc. v. Cont'l Constructors, Inc.*,
  630 S.W.2d 365 (Tex. App. – Austin 1982), *writ refused NRE* (July 14, 1982) ....................17

*Brookfield Commc'ns Inc. v. W. Coast Entm't Corp.*,
  174 F.3d 1036 (9th Cir. 1999) ....................................................14, 22

*Carson v. Dynegy, Inc.*,
  344 F.3d 446 (5th Cir. 2003) ....................................................16, 17

*Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods
  (HAVEN)*,
  915 F.2d 167 (5th Cir. 1990) ....................................................15

*Cook-Bell v. Mortgage Elec. Registration*,
  868 F. Supp. 2d 585 (N.D. Tex. 2012) ....................................................12

*Croft v. Gov. of Texas*,
  562 F.3d 735 (5th Cir.2009) ....................................................18

*CRS Recovery, Inc. v. Laxton*,
  600 F.3d 1138 (9th Cir. 2010) ....................................................19

*Davis v. Bayless*,
  70 F.3d 367 (5th Cir. 1995) ....................................................25

*Derrick Mfg. Corp. v. Sw. Wire Cloth, Inc.*,
  934 F. Supp. 796 (S.D. Tex. 1996) ....................................................13

*E. & J. Gallo Winery v. Spider Webs Ltd.*,
  286 F.3d 270 (5th Cir. 2002) ....................................................15

*E.E.O.C. v. Peabody W. Coal Co.*,
  400 F.3d 774 (9th Cir. 2005) ....................................................22

i

*EDS Corp. v. Southwestern Bell Tel.*,
    674 F.2d 453 (5th Cir. 1982) ................................................................19

*Express One Int'l, Inc. v. Steinbeck*,
    53 S.W.3d 895 (Tex. App. – Dallas 2001, no pet.)..................................16

*First Nat'l Bank of Eagle Pass v. Levine*,
    721 S.W.2d 287 (Tex. 1986).....................................................................13

*Flu Shots of Texas, Ltd. v. Lopez*,
    No. 3:13-cv-144-O, 2014 U.S. Dist. LEXIS 45828 (N.D. Tex. Apr. 3, 2014).................20, 21

*Matter of Gober*,
    100 F.3d 1195 (5th Cir. 1996) ................................................................10

*Gonzalez v. Kay*,
    577 F.3d 600 (5th Cir. 2009) ..................................................................19

*GoPets Ltd. v. Hise*,
    657 F.3d 1024 (9th Cir. 2011) ............................................................ 21-22

*Hood ex rel. Mississippi v. City of Memphis*,
    570 F.3d 625 (5th Cir. 2009) ..................................................................22

*Horvath v. Bank of New York, N.A.*,
    641 F.3d 617 (4th Cir.2011) ....................................................................16

*Howard v. JP Morgan Chase NA*,
    No. SA-12-CV-00440-DAE, 2013 U.S. Dist. LEXIS 54433 (W.D. Tex. Apr.
    17, 2013) .................................................................................................16

*HS Res., Inc. v. Wingate*,
    327 F.3d 432 (5th Cir. 2003) ..................................................................22

*Jaffer v. Standard Chartered Bank*,
    301 F.R.D. 256 (N.D. Tex. 2014) .......................................................23, 24

*Johnson v. Ga. Hwy Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ..................................................................10

*Kaplan, Inc. v. Yun*,
    16 F. Supp. 3d 341, 350 (S.D.N.Y. 2014) ..............................................21

*Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*,
    723 F.2d 1173 (5th Cir. 1984) ................................................................15

*LST Financial, Inc. v. Four Oaks Fincorp, Inc.*,
    No. 14-cv-435, 2014 WL 3672982 (W.D. Tex. Jul. 24, 2014)................25

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ..................................................18

*Maine v. Adams*,
    277 Va. 230, 672 S.E.2d 862 (2009) ..................................................16

*Mayo v. Hartford Life Ins. Co.*,
    354 F.3d 400 (5th Cir. 2004) ..................................................12

*McCoy v. Misuboshi Cutlery, Inc.*,
    67 F.3d 917 (Fed. Cir. 1995) ..................................................19-20

*Merrill Lynch, Pierce, Fenner & Smith, P.C. v. Greystone Servicing Corp.*,
    No. 3:06-CV-0575-P, 2007 U.S. Dist. LEXIS 69235 (N.D. Tex. Sep. 18,
    2007) ..................................................12

*Nat'l. Union Fire Ins. Co. v. Rite Aid of S.C., Inc.*,
    210 F.3d 246 (4th Cir. 2000) ..................................................4

*Neles-Jamesbury, Inc. v. Bill's Valves*,
    974 F. Supp. 979 (S.D. Tex. 1997) ..................................................16-17

*PEMEX Exploracion y Produccion v. BASF Corp.*,
    No. CIV.A. H-10-1997, 2013 WL 5514944 (S.D. Tex. Oct. 1, 2013) ..................................................12, 13

*PEMEX Exploracion y Produccion v. Murphy Energy Corp.*,
    923 F. Supp.2d 961 (S.D. Tex. 2013) ..................................................18, 20

*Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*,
    583 F.3d 348 (5th Cir. 2009) ..................................................8

*Recoveredge LP v. Pentecost*,
    44 F.3d 1284 (5th Cir. 1995) ..................................................11

*In re Rivera*,
    No. 13-14351-BFK, 2014 WL 287517 (Bankr. E.D. Va. Jan. 27, 2014) ..................................................16

*In re Rouge Indus., Inc.*,
    326 B.R. 55 (Bankr. D. Del. 2005) ..................................................23

*S. Co. v. Dauben Inc.*,
    324 F. App'x 309 (5th Cir. 2009) ..................................................14, 15

*Sadler v. Duvall*,
    815 S.W.2d 285 (Tex. App. 1991) ..................................................16

*SEC v. W.L. Moody & Co.*,
    374 F. Supp. 465 (S.D. Tex. 1974) ..................................................10

iii

*Skelly Oil Co. v. Phillips Petroleum Co.*,
    339 U.S. 667, 70 S. Ct. 876, 94 L. Ed. 1194 (1950)................................................................15

*Smith v. Ferguson*,
    160 S.W.3d 115 (Tex. App. – Dallas 2005, pet. denied) ........................................................13

*Southmark Corp. v. Coopers & Lybrand*,
    163 F.3d 925 (5th Cir. 1999) ................................................................................................10

*Stefano v. First Union Nat. Bank of Virginia*,
    981 F. Supp. 417 (E.D. Va. 1997) ........................................................................................12

*TF-Harbor, LLC v. City of Rockwall, Tex.*,
    18 F. Supp. 3d 810, 817 (N.D. Tex. 2014) ..........................................................................20

*U.S. Nat'l Bank Ass'n v. Johnson*,
    No. 01-10-00837-CV, 2011 Tex. App. LEXIS 10253, 2011 WL 6938507
    (Tex. App. Dec. 30, 2011) ....................................................................................................16

*Universal C.I.T. Credit Corp. v. Kaplan*,
    198 Va. 67, 92 S.E.2d 359 (1956).........................................................................................17

*Zazu Designs v. L'Oreal, S.A.*,
    979 F.2d 499 (7th Cir.1992) ................................................................................................21

**Statutes**

15 U.S.C. § 1125....................................................................................................14, 20, 21

15 U.S.C. § 1127..............................................................................................................14

Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202........................................15

Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (Vernon 1997).........................................13

Texas Civil Practice and Remedies Code § 16.003 ................................................12, 13

Va.Code § 8.3A–118(g)....................................................................................................12

**Other Authorities**

David Dittfurth, *Restitution in Texas: Civil Liability for Unjust Enrichment*, 54 S.
    Tex. L. Rev. 225, 238 (2012)..............................................................................................12

Fed. R. Civ. P. 12(b)(1)..................................................................................................2, 20

Fed. R. Civ. P. 12(b)(6).............................................................................................. *passim*

Fed. R. Civ. P. 12(b)(7)..................................................................................................3, 25

iv

Fed. R. Civ. P. 19(a) ...............................................................................................................22

Fed. R. Civ. P. 19(b) ...............................................................................................................22

I.      **INTRODUCTION**

This dispute concerns Internet domain names that Defendants lawfully acquired, directly or indirectly, from Plaintiff Associated Recovery, LLC's ("Plaintiff") predecessor-in-interest through Court-authorized sales in 2012 arising from the *Netsphere, Inc. v. Baron* litigation. Now, years later, Plaintiff alleges that the sales were improper and the domain names should be returned, along with damages, because the Fifth Circuit vacated the *Netsphere* receivership order that precipitated those sales.  Plaintiff ignores that, in *Netsphere*, the Fifth Circuit left undisturbed the then-final sales, including those in dispute here.  703 F.3d 296, 313 (5th Cir. 2012) ("*Netsphere I*").  The decision ordered the proceeds from those sales be used to pay receivership fees.  *Id.* ("[C]harging the current receivership fund for reasonable receivership expense, without allowing any additional assets to be sold, is an equitable solution.").

When dismissing another related case brought by Jeffrey Baron, Plaintiff's real party in interest, and his other company Novo Point, LLC ("Novo Point"), against the receiver, Peter Vogel, this Court ruled that "any claim by Plaintiffs based on the wrongful establishment or continuation of the receivership or payment of receivership expenses is an impermissible collateral attack of prior orders through this suit."  *Baron v. Vogel*, No. 3:15-cv-232-L, 2016 WL 1273465, *6 (N.D. Tex. Mar. 31, 2016) ("*Vogel I*"), *aff'd* 2017 U.S. App. LEXIS 3369 (5th Cir. Feb. 24, 2017) ("we AFFIRM the district court's judgment and adopt its analysis in full").  The Fifth Circuit's affirmance of *Vogel I* and multiple *Netsphere*[1] decisions makes Plaintiff's new allegations untenable.

This case is fraught with defects that mandate dismissal on the pleadings:

---

[1] *"Netsphere"* refers to the *Netsphere v. Baron* litigation, No. 3:09-cv-0988-F/L (N.D. Tex.), whereas *Netsphere I, Netsphere II,* and *Netsphere III* refer to three opinions in that litigation.

First, the entire complaint is collaterally estopped by prior rulings of this Court and the Fifth Circuit. The case at bar is yet another "impermissible collateral attack of prior orders," *id.*, this time towards the domain-name owners rather than the receiver. The Fifth Circuit's and this Court's rulings in *Netsphere* and *Vogel*[2] on the propriety of the Receiver's actions—which include the sales of the domain names in dispute—preclude Plaintiff's claims. Thus, this entire case should be dismissed under Rule 12(b)(6).

Second, Plaintiff's unjust enrichment, conversion, unfair competition / common law trademark infringement, intentional interference with existing contract, and breach of contract claims are time-barred under the statute of limitations, another reason for dismissal under Rule 12(b)(6).

Third, Plaintiff does not state any cognizable legal theory upon which relief can be granted.

Fourth, Plaintiff lacks standing because it is a shell company created by Baron for the purpose of suing bona fide purchasers for value of domain names sold through the receivership. Because this Court authorized and later ratified those sales, Baron and Novo Point had no ownership interests to transfer to Plaintiff. Thus, as Baron and Novo Point's purported assignee, Plaintiff lacks standing to prosecute these claims. Plaintiff also cannot establish ownership of any marks for purposes of its claims under the ACPA or common-law trademark infringement. Dismissal is proper under Rule 12(b)(1).

Finally, Plaintiff failed to join necessary parties, including Novo Point and Jeffrey Baron, who have been embroiled in years of litigation in this Court. Plaintiff also failed to join the Court-appointed manager, Damon Nelson, and receiver, Peter Vogel, who are the parties that, on

---

[2] "*Vogel*" refers to the *Baron v. Vogel* litigation, No. 3:15-cv-232-L (N.D. Tex.), whereas *Vogel I* refers to the specific Memorandum Opinion and Order dated March 31, 2016.

Novo Point's behalf and with this Court's authorization, sold the domain names now held by

Defendants.  The absence of those necessary parties warrants dismissal under Rule 12(b)(7).

## II.    FACTUAL BACKGROUND

Much of the procedural history has been discussed in previous decisions by the Northern

District and by the Fifth Circuit, which are summarized in relevant part below.[3]

### A.    The Start of the *Netsphere* Litigation

Years ago, Plaintiff's alleged predecessor-in-interest, Jeffrey Baron ("Baron"), entered

into a joint venture with Munish Krishan ("Krishan") "involving the ownership and sale of

domain names."  *See* No. 3:09-CV-0988-F, 2013 WL 3327858, at *1 (N.D. Tex. May 29, 2013)

("*Netsphere II*").  Numerous disputes arose between Baron and Krishan, and in April 2009 they

reached an agreement and signed a Memorandum of Understanding ("MOU") to settle all

disputes between them.  *Id.*  Shortly thereafter, however, Baron and one of his companies,

Ondova Ltd. ("Ondova"), allegedly breached the agreement.  *Id.*  Krishan and his company,

Netsphere, Inc., filed suit in the Northern District of Texas against Baron and Ondova in May

2009.  *Id.*  Throughout the underlying case, Baron substituted counsel so many times that the

Northern District of Texas was "concerned that Baron would continue to frustrate the judicial

system by cycling through attorneys in order to cause delay."  *Id.* at *2.

### B.    The Ensuing Bankruptcy and Receivership

Early in the case, the Northern District entered a preliminary injunction to compel Baron

to comply with the MOU.  *Netsphere I*, 703 F.3d at 302.  In July 2009, after Netsphere moved to

---

[3] Summaries of the procedural history by the Northern District and the Fifth Circuit can be found
in the following orders and opinions:  *Netsphere, Inc. v. Baron* ("*Netsphere I*"), 703 F.3d 296,
302 (5th Cir. 2012); *Netsphere II*, 2013 WL 3327858; *In re Baron*, No. 12-37921-SGJ-7, 2013
WL 3233518 (Bankr. N.D. Tex. June 26, 2013), *rev'd sub nom. Baron v. Schurig*, No. 3:13-cv-
3461-L, 2014 WL 25519 (N.D. Tex. Jan. 2, 2014), *aff'd in part, rev'd in part, sub nom. In re
Baron*, 593 F. App'x 356 (5th Cir. 2014).

hold Baron in contempt for violating the preliminary injunction and one day before the hearing, Baron further complicated the proceeding by placing Ondova into bankruptcy. *Id.* Eventually, the bankruptcy creditors and Ondova agreed to a partial settlement, but Baron continued to substitute counsel in the bankruptcy proceedings. *Id.* Another settlement was reached, and the bankruptcy court approved the settlement in July 2010. *Id.* at 303. At a hearing regarding the settlement agreement, the bankruptcy trustee informed the bankruptcy court that a former attorney for Baron had testified that Baron planned to move assets that were subject to U.S. jurisdiction to another country. *Id.* The bankruptcy trustee expressed concern that money to pay lawyers and satisfy other claims in the bankruptcy would be lost as a result. *Id.* On a recommendation by the bankruptcy court, the district court appointed a special master to mediate claims for any unpaid legal fees. *Id.* at 304. After Baron again fired his attorney, the bankruptcy trustee filed a motion to appoint a receiver "because of Baron's failure to cooperate with the order to mediate the legal-fee claims and his continued hiring and firing of lawyers in violation of the court's order," which would "expose the bankruptcy estate to additional administrative claims and further delay the resolution of the bankruptcy proceedings." *Id.* The Court appointed Peter Vogel ("Vogel" or "Receiver") as the receiver in November 2010. *Id.*; *see also* Order Appointing Receiver, *Netsphere* Dkt. 130 (N.D. Tex. Nov. 24, 2010).

### C.     The Sale of Domain Names Pursuant to Receivership

To fund disbursements to the unpaid attorneys, the Northern District granted a motion by the Receiver to permit sales of domain names on February 4, 2011. *See* Order Granting the Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere* Dkt. 288 (N.D. Tex. Feb. 4, 2011); *see also* The Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere* Dkt. 242 (Jan. 24, 2011). The Court further granted the Receiver's motion to appoint Damon Nelson ("Nelson") as permanent manager of Mr. Baron's companies, Quantec, LLC and

4

Novo Point, to assist the Receiver in selling the domain names.  *See* Order Granting the

Receiver's Motion to Appoint Damon Nelson as Permanent Manager of the LLCs and For

Turnover of LLC Materials to Damon Nelson, *Netsphere* Dkt. 473 (N.D. Tex. Apr. 22, 2011).

Nelson worked under Vogel's direction.  Pursuant to the Court's order authorizing sales

of the domain names, Nelson sold the domain names that are the subject of the instant case in

2011 and 2012.  Dkt. 123, ¶ 21.  The purchases were for value and pursuant to formal domain

name assignment and transfer agreements.  *Id.*  The seller of the domain names in the agreements

was "Novopoint, LLC" [*sic*], and Mr. Nelson authorized the sale and signed on behalf of Novo

Point.  *E.g.,* Exhibit A (Domain Name Assignment and Transfer Agreement for Slice.com)

[APP. 2-12].[4]

### D.    The Fifth Circuit Vacates the Receivership But Leaves Previous Sales in Place

Baron appealed the receivership order, as well as subsequent orders entered by the Court.

*Netsphere I*, 703 F.3d at 305.  The Fifth Circuit considered "whether a court can establish a

receivership to control a vexatious litigant."  *Id.*  Ultimately, the Fifth Circuit reversed the

appointment of the receiver with directions to vacate the receivership. *Id.* at 315. Normally when

a receivership is improper, the party that sought the receivership is accountable for receivership

fees and expenses.  *Id.* at 312.  The Fifth Circuit, however held that a different result was

warranted under the unique circumstances of the case and therefore specifically left past sales

intact to fund receivership expenses, halting only future sales:

> Additionally, we hold, based on this record, that in creating the receivership
> "there was no malice nor wrongful purpose, and only an effort to conserve
> property in which [the court] believed" it was interested in maintaining for unpaid
> attorney fees and to control Baron's vexatious litigation tactics. We recognize that

---

[4] Plaintiff's Third Amended Complaint ¶ 25 states that every domain name transfer agreement included certain quoted language.  Exhibit A proves this incorrect.  Exhibit A was also filed in this matter in E.D. Tex. (Dkt. 94-2) before the transfer to this Court described in § II.H below.

the district court was dealing with a conundrum when it decided to appoint the receiver — the problem was great, but standard remedies seemed inadequate. We also take into account that, to a large extent, **Baron's own actions resulted in more work and more fees for the receiver and his attorneys**. For these reasons, charging the current receivership fund for reasonable receivership expenses, **without allowing any additional assets to be sold,** is an equitable solution**.**

*Id.* at 313 (emphasis added).  Hence, the Fifth Circuit left in place the then-final sales of domain names, stopping only sales of "**additional** assets."  *Id.*; *see id.* at 314 ("No **further** sales of domain names or other assets are authorized." (emphasis added)).

### E.        Winding Down the Receivership

Pursuant to the Fifth Circuit's Order, the Court wound down the receivership. *See* Order, *Netsphere* Dkt. 1155 (N.D. Tex. Jan. 7, 2013).[5]  During that winding down, which was delayed by the bankruptcy and other proceedings over the next two years, "all Orders issued under the Receivership remain in effect until the Receivership is wound down."  *Netsphere II*, 2013 WL 3327858 at *6-7.

On March 27, 2015, the Northern District issued an opinion and order approving the Receiver's request for final accounting.  *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-L, Dkt. 1447, 2015 WL 1400543 (N.D. Tex. Mar. 27, 2015) ("*Netsphere III*").  Under the collateral order doctrine, the Fifth Circuit then affirmed the use of the proceeds from the domain name sales to pay the receivership fees.  *Netsphere, Inc. v. Gardere Wynne Sewell, L.L.P.*, No. 15-10341, 2016 U.S. App. LEXIS 12627 (5th Cir. Jul. 8, 2016).  The Fifth Circuit specifically noted that Quantec and Novo Point's assets "were part of the receivership" and that its prior opinion in *Netsphere I* "ordered the district court to award [receivership] fees *using the receivership assets*.") (emphasis in original).  *Id.* at *9 n.3.

---

[5] When determining the fees to be paid, Judge Furgeson observed, "Never in this Court's experience of over 40 years in the civil justice system, both as a lawyer and a judge, has this Court observed the kind of party misconduct that has been exhibited by Baron."  *Id.* at 3.

### F.    The *Baron v. Vogel* Litigation

In 2015, Baron, Quantec, and Novo Point filed a lawsuit against the Receiver and his law firm in Texas state court.  The Receiver removed the case to the Northern District.  This Court swiftly dismissed the *Vogel* case with prejudice, ruling that, although the Fifth Circuit vacated the receivership order, the Receiver conducted his receivership duties according to court authorization and was shielded by judicial immunity.  *Vogel I*, 2016 WL 1273465 at *6 ("[A]ny claim by Plaintiffs based on the wrongful establishment or continuation of the receivership or payment of receivership expenses is an impermissible collateral attack of prior orders through this suit.").  On February 24, 2017, the Fifth Circuit upheld the district court's decision in *Vogel I* and "adopt[ed] its analysis in full."  *Baron v. Vogel*, Case No. 16-10556, 2017 U.S. App. LEXIS 3369 (5th Cir. Feb. 24, 2017).  Yet again, the Fifth Circuit confirmed its prior decision regarding the sale of domain names.

### G.    The Consolidated Litigations

On December 31, 2015, Plaintiff filed an *in rem* lawsuit against 44 foreign-owned domain names in the Eastern District of Virginia.  The disputed domain names in that litigation had been sold through the *Netsphere* receivership sales, and many defendants in the Virginia action filed a motion to dismiss or transfer that included many of the same arguments raised here.  *See generally* Dkt. 32 (motion to dismiss originally filed in E.D. Va., No. 1:15-cv-1723, on Mar. 25, 2016).  On April 15, 2016, the Eastern District of Virginia transferred that action to this Court.  Dkt. 40.  On August 22, 2016, the defendants in that action filed another motion to dismiss.  *See*, Dkt. 80, 81 (motion to dismiss filed in N.D. Tex. Aug. 22, 2016).  Plaintiff also filed an *in personam* complaint in the Eastern District of Texas on February 8, 2016.  On February 6, 2017, Magistrate Judge Roy S. Payne transferred the *in personam* case to this Court.

2017 U.S. Dist. LEXIS 16649.[6]  Meanwhile, the Eastern District of Virginia transferred

additional defendants to the Northern District of Texas.  Dkt. 94.  All of this resulted in this

Court consolidating the cases, denying all pending motions to dismiss without prejudice, and

directing Plaintiff to file a new complaint.  Dkt. 94, 96 (Mar. 23, 2017).

## III.   ARGUMENT AND AUTHORITIES

### A.   The Court Should Dismiss this Action Because the Claims are Collaterally Estopped.

The *Netsphere I*, *Netsphere II, Netsphere III,* and *Vogel I* decisions collaterally estop

Plaintiff's claims, thus triggering Rule 12(b)(6).  Collateral estoppel requires that: (1) the issue is

identical to the issue involved in the prior litigation; (2) the issue was actually litigated in the

prior litigation; and (3) the determination of the issue in the prior litigation was a crucial and

necessary part of the judgment.  *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.,* 583 F.3d 348, 353

(5th Cir. 2009).  Here, all three prongs are met.

First, the issues Plaintiff raises in its complaint are identical to prior litigation, in which

Plaintiff's alleged predecessors-in-interest argued that the sale of the domain names were

improper.  Plaintiff alleges that the domain names at issue were "improperly" placed under the

control of a receivership, then sold pursuant to "Improper Receivership Sale Orders."  Dkt. 123

¶¶ 14-22.  But the Fifth Circuit held that the district court entered the Receivership Order to

bring a halt to Baron's "longstanding vexatious litigation tactics," and rejected Baron's

contention that the appointment of the Receiver was in bad faith or collusive. *Netsphere I,* 703

F.3d at 310-13 ("[W]e hold, based on this record, that in creating the receivership there was no

---

[6] In his Order, Magistrate Payne specifically pointed out that the court of appeals opinion did *not* dissolve the receivership immediately. 2017 U.S. Dist. LEXIS 16649 at *12 ("In *Netsphere II*, while the Northern District of Texas recognized that the Fifth Circuit vacated the Receivership, it also understood that 'all Orders issued under the Receivership remain in effect until the Receivership is wound down.'").

malice nor wrongful purpose, and only an effort to conserve property in which the court believed it was interested in maintaining for unpaid attorney fees and to control Baron's vexatious litigation tactics.") (internal quotations omitted). The Fifth Circuit also held that "the record supports that the circumstances that led to the appointment of a receiver were primarily of Baron's own making." *Id.* Since the *Netsphere I* decision, this Court also has reviewed the actions of Vogel and Nelson. The Court found Vogel's work "exemplary and entirely appropriate," *Netsphere II*, 2013 WL 3327858, at *22. Both the Fifth Circuit and this Court blamed Baron—not Vogel or Nelson—for the high fees and other expenses that Baron himself caused. *See Netsphere I*, 703 F.3d at 310-13; *Netsphere II,* 2013 WL 3327858, at *7, 15-16; 21-22; *Netsphere III*, 2015 WL 1400543, at *3.

Second, the issues raised in the Third Amended Complaint were litigated before the Fifth Circuit and this Court and were resolved against Plaintiff's predecessors-in-interest. In Baron's *Netsphere I* March 28, 2011 Fifth Circuit brief, for instance, he complained—as Plaintiff complains here—that the Receivership was wrongful. Baron sought to "recover the costs of the receivership from those who have wrongfully provoked it" and asked for "the return of all property" (*i.e.* the domain names) at issue. Brief at 69-71. In his July 15, 2011 Fifth Circuit Reply brief, he again asked for the return of "the receivership assets disbursed while the matter has been on appeal." Reply Brief at 15. The Fifth Circuit rejected these requests, leaving the "current receivership fund" in place to pay receivership fees. *Netsphere I*, 703 F.3d at 313.

After the panel decision in *Netsphere I,* Baron filed his objections to the Receiver's fee applications in this Court. *Netsphere* Dkt. No. 1269 (May 8, 2013). Baron argued, among other things, that Vogel should receive no fees because of alleged breaches of fiduciary duty and waste. *See id.* The next day, Baron sought leave to amend his pleadings to assert claims including "breaches of fiduciary duties, malpractice, negligence, gross negligence, fraud and

9

other causes of action" against Vogel, the Trustee, and law firm Munsch Hardt. *Netsphere* Dkt.

No. 1270 (May 9, 2013).  These issues were submitted for determination and decided against

Baron in *Netsphere II. See Netsphere II*; *see also Netsphere* Dkt. No. 1289 (N.D. Tex. May 29,

2013) (electronic order finding Baron's motion for leave to be moot, because the issues raised

therein were ruled upon in *Netsphere II*); *Matter of Gober,* 100 F.3d 1195, 1203-04 (5th Cir.

1996) (explaining that an issue is 'actually litigated' when it is properly raised by the pleadings,

or otherwise submitted for a determination, and determined).

Third, the determinations in the prior litigation were a crucial and necessary part of the

judgments.  Each of the foregoing rulings was crucial and necessary to the Fifth Circuit's

decision in *Netsphere I* and this Court's affirmed decisions in *Netsphere II* and *Netsphere III*.  In

*Netsphere I,* the findings that the Receivership was not procured by any conspiracy between the

professionals, there was no bad faith, and that Baron's own tactics caused the Receivership were

critical to the Fifth Circuit's holding that, although the Receivership was improper, equity would

permit the reasonable fees and expenses of the Receivership professionals to be charged against

the Receivership estate.  *See Netsphere I*, 703 F.3d at 313.

Likewise, for this Court to award the Receiver and his professionals' attorneys' fees, it

was required, under *Johnson v. Ga. Hwy Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), to

determine the reasonableness of the award, make specific findings in support of any award of

attorneys' fees, and to consider all circumstances surrounding the receivership, including the

Receiver's performance.  *SEC v. W.L. Moody & Co.,* 374 F. Supp. 465, 480 n.20 (S.D. Tex.

1974).  The fee award, coupled with the Court's express findings of no wrongdoing set forth in

the *Netsphere II*, collaterally estop Baron and Novo Point from claiming wrongdoing regarding

the payment of the receivership costs.  *See Southmark Corp. v. Coopers & Lybrand,* 163 F.3d

925, 932-34 (5th Cir. 1999) (partial fee disgorgement order in bankruptcy court collaterally

estopped debtor from seeking to recover greater damages in subsequent suit).  Furthermore, the

funds used to pay receivership fees arose from selling the domain names in suit.  *See* Order

Granting the Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere* Dkt. 288

(N.D. Tex. Feb. 4, 2011); *see also* The Receiver's Omnibus Motion to Permit Sales of Domain

Names, *Netsphere* Dkt. 242 (Jan. 24, 2011).  By dispensing the assignment proceeds to pay

receivership fees *after* the Fifth Circuit's *Netsphere I* decision, the Court gave *post hoc* approval

of, or ratified, the assignments.  Specifically, the Court found:

> [Vogel's law firm] developed a system for determining the value of domain
> names that allowed it to make choices regarding the fate of individual names:
> whether to develop, to park, to sell or to let lapse.  This was critical because it
> enabled counsel … to identify money losing names that should be culled from the
> portfolios.  Although Baron may have elected to run these businesses differently,
> all of the actions were reasonable and prudent ….

*Netsphere II*, 2013 WL 3327858, at *16.  The Court ratified the sales again in *Netsphere III*,

2015 WL 1400543, when it ordered the receiver's fees paid from the receivership, and closed the

receivership.  The Fifth Circuit affirmed these orders.  2016 U.S. App. LEXIS 12627.  The Court

also gave *post hoc* approval of the Receiver's actions in the recent *Vogel I* decision.  2016 WL

1273465 at *6.  This, too, was affirmed.  2017 U.S. App. LEXIS 3369.

Plaintiff's claims, which were allegedly assigned by Novo Point, are thus barred by the

rulings by this Court and the Fifth Circuit in *Netsphere* and *Vogel.  See Recoveredge LP v.

Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995) ("Collateral estoppel will apply in a second

proceeding that involves separate claims if the claims involve the same issue and the subject

matter of the suits may be different as long as the requirements for collateral estoppel are met."

(internal citations omitted)).  Hence, the Court should dismiss this case under Rule 12(b)(6).

**B.      The Court Should Dismiss Plaintiff's Claim that are Time-Barred.**

Another Rule 12(b)(6) basis for dismissal is that most of Plaintiff's claims are time-barred.  *E.g.*, *Cook-Bell v. Mortgage Elec. Registration*, 868 F. Supp. 2d 585, 590 (N.D. Tex. 2012) (dismissing time-barred claim under Rule 12(b)(6)).

**Conversion / Unjust Enrichment:**  Under Texas law the statute of limitations for claims for conversion is the two-year period expressly provided by Texas Civil Practice and Remedies Code § 16.003(a).  *See also PEMEX Exploracion y Produccion v. BASF Corp.*, No. CIV.A. H-10-1997, 2013 WL 5514944, at *10 (S.D. Tex. Oct. 1, 2013); *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 410 (5th Cir. 2004) ("The applicable limitations period for [plaintiff's] claim—whether it is formally labeled 'unjust enrichment' or 'conversion'—is two years.").  Again, Plaintiff admits the relevant sales occurred "before December 18, 2012,".  Dkt. 123, ¶ 21; *see Netsphere I* (issued Dec. 18, 2012 and prohibiting any "further" sales).  The two-year statute of limitations thus expired well before Plaintiff's Original Complaints on December 31, 2015 and February 8, 2016.[7]

Unjust enrichment is not a distinct independent cause of action.  It is a theory of recovery. *See Merrill Lynch, Pierce, Fenner & Smith, P.C. v. Greystone Servicing Corp.*, No. 3:06-CV-0575-P, 2007 U.S. Dist. LEXIS 69235, at *32 (N.D. Tex. Sep. 18, 2007); David Dittfurth, *Restitution in Texas: Civil Liability for Unjust Enrichment*, 54 S. Tex. L. Rev. 225, 238 (2012) ("Most of the Texas courts of appeals and federal courts that have considered the question under Texas law have rejected the existence of an independent cause of action for unjust enrichment."). Furthermore, to the extent the unjust enrichment allegation were operable, it is also subject to the

---

[7] Plaintiff's conversion allegation would also be time barred under Virginia's three-year statute of limitations. "[U]nder the Code, an action for conversion of an instrument must be commenced within three years after the cause of action accrues."  Va.Code § 8.3A–118(g); *see Stefano v. First Union Nat. Bank of Virginia*, 981 F. Supp. 417, 421 (E.D. Va. 1997).

two-year statute of limitations period provided for by Texas Civil Practice and Remedies Code § 16.003 and is therefore time-barred.  *See PEMEX*, 2013 U.S. Dist. LEXIS 144166, at *33-34.

**Unfair Competition / Common Law Trademark Infringement:**  Under Texas law a two-year statute of limitations also applies to claims for unfair competition premised on common law trademark infringement.  *Derrick Mfg. Corp. v. Sw. Wire Cloth, Inc.*, 934 F. Supp. 796, 806 (S.D. Tex. 1996) (distinguishing such claims from Lanham Act claims for purposes of limitations and finding "two year statute of limitations applies to [an] unfair competition claim"). Thus, this claim is also time-barred.

**Intentional Interference with Existing Contract:**  Under Texas law, a two-year statute of limitations applies to claims for tortious interference with contract.  *First Nat'l Bank of Eagle Pass v. Levine*, 721 S.W.2d 287, 289 (Tex. 1986).  Thus, this claim is time-barred.

**Breach of Contract:**  Under Texas law, an action for breach of contract is governed by a four-year statute of limitations.  Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (Vernon 1997); *Smith v. Ferguson*, 160 S.W.3d 115, 123 (Tex. App. – Dallas 2005, pet. denied).  Here, as demonstrated in Exhibit A, the transfers appear to have taken place in 2011 and 2012.  Even assuming that the transfers took place on December 12, 2012 (the date of the Fifth Circuit's order in *Netsphere I*) or January 7, 2013 (the date of the Northern District of Texas order in *Netsphere II*), the statute of limitations would bar claims asserted after January 7, 2017.  Plaintiff asserted a claim of breach of contract for the first time on June 1, 2017 in the Third Amended Complaint.  This claim is therefore time-barred.

### C.     The Court Should Dismiss Plaintiff's Claims that are Legally Impossible.

Another Rule 12(b)(6) basis for dismissal is that Plaintiff's various causes of action are legally impossible as pleaded.

**ACPA:**  Plaintiff's first claim is an alleged violation of the Federal Anticybersquatting Consumer Protection Act.  (Dkt. 123, ¶¶ 40-43).  To prevail on an ACPA claim, Plaintiff must prove that (1) its mark "is a distinctive or famous mark entitled to protection;" (2) Defendant's "domain names are 'identical or confusingly similar to' [Plaintiff]'s mark"; and (3) Defendant "registered the domain names with the bad faith intent to profit from them."  *S. Co. v. Dauben Inc.*, 324 F. App'x 309, 314 (5th Cir. 2009).  Plaintiff's allegations fail at least the first and third prongs based on the facts that have been pled.

Plaintiff cannot prove the first prong because Plaintiff has no mark entitled to protection. The mere registration of a domain name does not create trademark rights.  *See, e.g.*, *Brookfield Commc'ns Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1052 (9th Cir. 1999) (holding that registering a domain name, even with an intent to use both the domain name and a corresponding mark commercially, does not create a right to trademark protection).  Moreover, Plaintiff has admitted in previous pleadings that it has not used any of the disputed marks / domain names since 2012.  (*See, e.g.*, Dkt. 76, ¶¶ 240-41).  "A mark shall be deemed to be abandoned … [w]hen its use has been discontinued with intent not to resume such use.  Intent not to resume may be inferred from circumstances.  Nonuse for 3 consecutive years shall be prima facie evidence of abandonment."  15 U.S.C. § 1127 (2013).  Here, Plaintiff makes no assertion that it or its predecessors-in-interest are currently using the alleged marks in commerce.  Thus, even if any alleged marks were ever used in a manner that qualifies for trademark rights, the nonuse admitted by Plaintiff establishes a case of prima facie abandonment of the alleged marks, extinguishing the claim.

Plaintiff also cannot prove the third prong because there can be no bad-faith intent where ACPA's safe harbor provision applies.  15 U.S.C. § 1125(d)(1)(B)(ii) ("Bad faith intent described under subparagraph (A) shall not be found in any case in which the court determines

14

that the [defendant] believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful."); *see also E. & J. Gallo Winery v. Spider Webs Ltd.*, 286 F.3d 270, 275 (5th Cir. 2002); *Dauben Inc.*, 324 F. App'x at 315.  Given the Court-approved sales, Defendants had reasonable grounds to believe the purchase and use of the domain names were lawful, and ACPA's safe harbor provision therefore applies.

**Unfair Competition / Common Law Trademark Infringement**: Plaintiff's second is claim is for unfair competition premised on common law trademark infringement.  (Dkt. 123, ¶¶ 44-45).  This claim also fails because, again, Plaintiff has not pleaded any mark that is eligible for protection.  *See, e.g.*, *All Am. Builders, Inc. v. All Am. Siding of Dallas, Inc.*, 991 S.W.2d 484, 488 (Tex. App. – Fort Worth 1999, no pet.).

**Declaratory Judgment:**  Plaintiff's third claim is for declaratory judgment and other requested relief.  (Dkt. 123, ¶¶ 46-47).  The federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, does not create a substantive cause of action.  *See Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1179 (5th Cir. 1984) ("The federal Declaratory Judgment Act . . . is procedural only[.]") (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S. Ct. 876, 94 L. Ed. 1194 (1950)).  A declaratory judgment action is merely a vehicle that allows a party to obtain "an early adjudication of an actual controversy" arising under other substantive law.  *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*, 915 F.2d 167, 170-71 (5th Cir. 1990).  Plaintiff does not identify what specific judgment it seeks under this claim.  *See* Dkt. 123, ¶46.  Plaintiff fails to identify any substantive right it seeks or to identify any underlying cause(s) of action. *Id.*  Plaintiff merely asserts that it is the owner of the domain names and Defendants do not have the right to use them and seeks a declaration from this Court declaring the same.  *Id.*  Thus, the declaratory judgment claim should be dismissed.

15

Plaintiff also purports to seek to quiet title. (Dkt. 123, ¶ 47). To state a quiet title claim, a plaintiff must show: (1) an interest in a specific property; (2) title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable. *U.S. Nat'l Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011 Tex. App. LEXIS 10253, 2011 WL 6938507, at *3 (Tex. App. Dec. 30, 2011) (citing *Sadler v. Duvall*, 815 S.W.2d 285, 293 n. 2 (Tex. App. 1991)). A plaintiff further "must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference." *Howard v. JP Morgan Chase NA*, No. SA-12-CV-00440-DAE, 2013 U.S. Dist. LEXIS 54433, at *16-17 (W.D. Tex. Apr. 17, 2013). Plaintiff cannot do so here as a matter of law, as this Court ratified the Receiver's sales of the domain names, thus transferring Novo Point's (Plaintiff's predecessor) ownership rights to third parties. Plaintiff also cannot prove at least the third element because each Defendant has a valid and enforceable claim to its domain name via the Court-authorized receivership sales.[8]

**Conversion and Unjust Enrichment:** Plaintiff's fourth claim is conversion and unjust enrichment. (Dkt. 123, ¶48). "Texas law has never recognized a cause of action for conversion of intangible property except in cases where an underlying intangible right has been merged into a document and that document has been converted." *Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 901 (Tex. App. – Dallas 2001, no pet.); *see Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003) (explaining that Texas conversion law "concerns only physical property"); *Neles-Jamesbury, Inc. v. Bill's Valves*, 974 F. Supp. 979, 982 (S.D. Tex. 1997) (holding that

---

[8] Plaintiff's quiet title allegation also fails under Virginia law. "[A]n action to quiet title is based on the premise that a person with good title to certain real or personal property should not be subjected to various future claims against that title." *Horvath v. Bank of New York, N.A.*, 641 F.3d 617, 622 (4th Cir.2011) (quoting *Maine v. Adams*, 277 Va. 230, 672 S.E.2d 862, 866 (2009)). The Plaintiff must show that she has rights that are superior to others asserting an interest in the property. *In re Rivera*, No. 13-14351-BFK, 2014 WL 287517, at *5 (Bankr. E.D. Va. Jan. 27, 2014).

Texas law does not recognize a claim for conversion of a trademark because plaintiff did not allege that defendants converted any document representing plaintiff's intangible rights).[9]  There can also be no claim for conversion because, again, the Court's orders authorized the sale of the domain names and authorized the receivership payments, thus negating any such claim.  *See Carson*, 344 F.3d at 456 (conversion requires "an unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another") (internal quotation omitted).

**Breach of Contract and Intentional Interference with Existing Contract**: Plaintiff also asserts claims against certain Defendants for breach of contract (Dkt. 123, ¶49) and intentional interference with existing contract (Dkt. 123, ¶50).

Although Plaintiff asserts these claims against Defendant Telepathy, Inc., Telepathy, Inc. did not purchase any domain names from Novo Point and therefore did not agree to be bound by any of the purported contract terms referenced in Plaintiff's Third Amended Complaint. *Bernard Johnson, Inc. v. Cont'l Constructors, Inc.*, 630 S.W.2d 365, 369 (Tex. App. – Austin 1982), *writ refused NRE* (July 14, 1982) ("As a general rule, a suit for breach of contract may not be maintained against a person who is not a party to the contract, particularly a non-party who is assigned duties by the terms of the contract.")

Moreover, these claims are facially invalid because they are based upon "any intellectual property claim or ownership claim."  For all those reasons set forth in this memorandum, there are no valid intellectual property or ownership claims.  *See* Sections III.C. and III.D.2.

---

[9] Plaintiff's conversion allegation also fails under Virginia law.  To assert a claim for conversion, a plaintiff must prove by a preponderance of the evidence (i) the ownership or right to possession of the property at the time of the conversion and (ii) the wrongful exercise of dominion or control by defendant over the plaintiff's property, thus depriving plaintiff of possession. *Universal C.I.T. Credit Corp. v. Kaplan,* 198 Va. 67, 92 S.E.2d 359, 365 (1956); *Airlines Reporting Corp. v. Pishvaian*, 155 F. Supp. 2d 659, 663–64 (E.D. Va. 2001).

17

**D.     The Court Should Dismiss this Action For Lack of Standing.**

1.     Plaintiff Lacks Standing For Any Claim.

Neither Baron nor Novo Point could bring this suit.  Plaintiff is merely their assignee and, thus, is likewise unable to bring this suit.  "[T]he only injury sufficient to support an assignee's standing to assert an assigned claim is an injury suffered by the assignor, and that injury must satisfy all the requirements of constitutional standing, i.e., the injury suffered must be an injury-in-fact that is causally traceable to a named defendant and likely to be redressed by the court action."  *PEMEX Exploracion y Produccion v. Murphy Energy Corp.*, 923 F. Supp.2d 961, 965 (S.D. Tex. 2013).  "[T]he irreducible constitutional minimum of standing contains three elements."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).  These elements are "(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury."  *Croft v. Gov. of Texas*, 562 F.3d 735, 745 (5th Cir.2009) (citing *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130).  "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130.

Plaintiff's allegations lack at least two requisite elements.  First, there was no injury in fact.  Although the Fifth Circuit vacated the receivership, it left in place the already completed domain-name sales that raised the funds used to pay the receivership fees.  *Netsphere I*, 703 F.3d at 313.  Furthermore, this Court again authorized, or ratified, the sales *post hoc* when it authorized payment of the receivership fees using funds raised by the domain-name sales.  *See generally Netsphere II*, 2013 WL 3327858; *Netsphere III*, 2015 WL 1400543; *Vogel I*, 2016 WL 1273465 at *5 (finding no *ultra vires* acts by Vogel).

Second, there is no causal connection between the alleged injury and the conduct complained of.  Assuming, *arguendo*, there were an injury, it was not caused by Defendants, who are bona fide purchasers for value of the domain names.  *See EDS Corp. v. Southwestern Bell Tel.*, 674 F.2d 453, 459 (5th Cir. 1982) ("A bona fide purchaser … is one who buys property in good faith for valuable consideration and without knowledge (actual or imputed) of outstanding claims in a third party or parties.").  *See also CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1145 (9th Cir. 2010) (addressing title to a domain name and stating that "an innocent purchaser for value and without notice, actual or constructive, that his vendor had secured the goods by a fraudulent purchase, is not liable for conversion.") (internal citations omitted).  Indeed, the domain names at issue were transferred pursuant to contracts, signed by Damon Nelson on behalf of Novo Point, without notice or mention of any alleged third-party interests.[10]

Plaintiff's causes of action all flow from Defendants' acquisition and use of domain names that were sold with the Court's authorization.  To the extent they are even operable (*see* Section III.C., *supra*), Plaintiff's claims of/for quiet title, conversion, declaratory judgment, and unjust enrichment are extinguished by the Court's orders authorizing the sales and orders authorizing payments using the sale proceeds.  As for the ACPA claims, which flow from alleged trademark rights, Defendants' respective use of the domain names was not only foreseeable but constitutes the very reason for the assignments.  Hence, Defendants enjoy an implied license from Novo Point that defeats any ACPA/trademark allegations.  *See McCoy v. Misuboshi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995) (implied license available even

---

[10] Bare conclusory allegations about the amount paid cannot defeat a bona fide purchaser for value argument. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal citations omitted)

through involuntary sale).  Defendants have not injured Baron, Novo Point, or Plaintiff.  *Id.*  Any

alleged injury to Baron or Novo Point (and by assignment, Plaintiff) was self-inflicted.  *See*

*Netsphere I*, 703 F.3d at 313 ("the record supports that the circumstances that led to the

appointment of a receiver were primarily of Baron's own making"); *Netsphere III*, 2015 WL

140043, at *3 ("[T]he court also takes into account the disruptive conduct of Receivership

Parties Jeffrey Baron, Novo Point LLC, and Quantec LLC, which continued after the order

establishing the Receivership was reversed and increased the Receivership expenses to which

Baron now objects.").

    With only Baron and Novo Point to blame, Plaintiff is the "assignee" of nonexistent

rights and, thus, has no standing to bring this case.  *See PEMEX*, 923 F. Supp.2d at 965 (S.D.

Tex. 2013).  The Court should dismiss Plaintiff's complaint under Rule 12(b)(1).  *See TF-*

*Harbor, LLC v. City of Rockwall, Tex.*, 18 F. Supp. 3d 810, 817 (N.D. Tex. 2014) ("Standing is

an issue of subject matter jurisdiction, and thus can be contested by a Rule 12(b)(1) motion to

dismiss.").

### 2.      Plaintiff Particularly Lacks Standing to Assert Mark Claims

    Plaintiff asserts two claims for relief based on an alleged assignment of supposed

unspecified "Marks" from an unnamed "Original Owner" to Novo Point (Dkt. 123, ¶12), and

from Novo Point to Plaintiff.  First, Plaintiff claims relief under 15 U.S.C. § 1125(d), the

Anticybersquatting Consumer Protection Act (ACPA).  Dkt. 123, ¶40.  Second, it claims relief

for common law trademark infringement.  *Id.* ¶44.  Even if Plaintiff could establish generalized

standing to prosecute its complaint (which, as discussed above, it cannot), it cannot satisfy the

standing requirements for these trademark-based claims.  *See Flu Shots of Texas, Ltd. v. Lopez*,

No. 3:13-cv-144-O, 2014 U.S. Dist. LEXIS 45828 at *12 (N.D. Tex. Apr. 3, 2014) (holding

Plaintiff lacked standing to assert ACPA and common law trademark infringement).

"To succeed on its . . . common law trademark infringement claims . . . as well as its claims under the ACPA . . . [Plaintiff] must first establish ownership of the . . . Marks." *Id.* at *12-13 (observing that ACPA "claim may only be brought by 'the owner of the mark'").  "[A] written document memorializing the transfer of ownership" is a "prerequisite for a proper assignment." *Id.* at *17.  If a plaintiff lacks ACPA standing, it also lacks standing for unfair competition / common law trademark infringement.  *Id.* at *18 (citing *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010) ("A trademark infringement and unfair competition action under Texas common law presents essentially no difference in issues than those under federal trademark infringement actions.")).

Plaintiff has not sufficiently alleged the existence of any valid trademark rights or the written assignment of any such rights to Novo Point, or from Novo Point to Plaintiff.  Even if Plaintiff could do so, it has not sufficiently alleged any actual continuing use "in commerce" of a distinctive mark "in connection with any goods or services."  15 U.S.C. § 1125(a), (d).  In fact, it has not alleged any commercial activity at all by Plaintiff; it alleges only that Plaintiff "has had a bona fide intention to use each of the [unidentified] Marks in commerce."  Dkt. 123, ¶35.  *See, e.g.*, *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 504 (7th Cir.1992) ("an intent to use a mark creates no rights a competitor is bound to respect").  As such, Plaintiff has not established it owns any distinctive mark, and its trademark based claims fail accordingly.  To the extent Plaintiff may argue that the domain name itself is somehow a good or service, the structure of the ACPA expressly precludes that argument by distinguishing domain names from distinctive marks used in commerce.  15 U.S.C. § 1125(d)(1)(A)(ii); *e.g.*, *Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 350 (S.D.N.Y. 2014) (explaining that under the ACPA, a mark must already be "distinctive at the time the domain name was registered"); *GoPets Ltd. v. Hise,* 657 F.3d 1024, 1035 (9th Cir. 2011) ("Registration of a domain name without more does not constitute service

21

mark or trademark infringement."), citing *Brookfield*, 174 F.3d at 1052 (registration of a domain

name does not create trademark protection, even if Plaintiff intends to use it commercially).

> ### E.     The Court Should Dismiss this Action For Failure to Join Necessary Parties.

"Determining whether to dismiss a case for failure to join an indispensable party requires

a two-step inquiry." *Hood ex rel. Mississippi v. City of Memphis*, 570 F.3d 625, 628 (5th Cir.

2009).  First, the court must determine whether a party should be added under the requirements

of Rule 19(a).  *Id.*  Rule 19(a) requires that a person subject to process and whose joinder will

not deprive the court of subject-matter jurisdiction be joined if:

> (A) in that person's absence, the court cannot accord complete relief among
> existing parties; or (B) that person claims an interest relating to the subject of the
> action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the
> interest; or (ii) leave an existing party subject to a substantial risk of incurring
> double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  "Rule 19(a) sets forth three circumstances in which joinder is not

feasible: when venue is improper, when the absentee is not subject to personal jurisdiction, and

when joinder would destroy subject matter jurisdiction." *E.E.O.C. v. Peabody W. Coal Co.*, 400

F.3d 774, 779 (9th Cir. 2005).

Second, if the necessary party cannot be joined without destroying subject-matter

jurisdiction, the court must then determine whether that person is "indispensable," that is,

whether litigation can be properly pursued without the absent party.  *Id.* at 629 (citing *HS Res.,

Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 2003)). The factors a district court is to consider in

making this determination are laid out in Rule 19(b).  *Id.* (quoting Fed. R. Civ. P. 19(b)).

Here, the necessary parties are (1) Novo Point, the actual party to the domain name

assignment and transfer agreements; (2) Jeffrey Baron, the apparent owner of Novo Point who

has been embroiled in years of litigation in Texas and who the Texas courts have characterized

as a "vexatious litigant"; (3) Damon Nelson, the permanent manager of Novo Point and

signatory of the domain name assignment and transfer agreements; and (4) Peter Vogel, the

Court-appointed Receiver for Novo Point.

### 1.   Novo Point

Plaintiff offers no proof that it is the successor-in-interest to Novo Point.  Dkt. 123 ¶ 26.

The "plaintiff" whose alleged property was taken was Novo Point, not Associated Recovery.

Novo Point is the party to the domain name assignment and transfer agreements.  It is unclear

how Novo Point could have transferred any domain names without any approval from the Court,

and Plaintiff has not provided any order authorizing such transfer to itself of any assets of Novo

Point or Baron.  In any event, Novo Point is required as the actual party to the domain name

assignment and transfer agreements.  *See Jaffer v. Standard Chartered Bank*, 301 F.R.D. 256,

261 (N.D. Tex. 2014); *In re Rouge Indus., Inc.*, 326 B.R. 55, 59 (Bankr. D. Del. 2005) ("A

determination of ownership to assets allegedly transferred between a buyer and a seller should

not be attempted without both parties to the transaction being before the court.").

There has been no order by the Court to unwind any transactions under the order

authorizing sale of domain names entered during the Receivership.  Indeed, *Netsphere I*, 703

F.3d at 313, states otherwise.  Thus, to the extent there is a question of the validity of the

assignments of the domain names, Novo Point remains a necessary party.[11]

---

[11] Indeed, Plaintiff punctuated the folly of its attempt to litigate this case without Novo Point.
Plaintiff alleges that it is Novo Point's "successor-in-interest" (Dkt. 123, ¶26) and previously
alleged that its "predecessors-in-interest include Novo Point LLC." Dkt. 76, ¶3.  Yet prior to
certain Defendants' original March 25, 2016 Motion to Dismiss, Plaintiff had **never before
seen any of the agreements** that purported to transfer or assign any of the domain names from
Novo Point to others during the Receivership." Dkt. 36, at 2-3.  Similarly, Plaintiff characterized
this case as "simply one where a plaintiff's property was taken" and "plaintiff is seeking to get
its improperly taken property back." *Id.* at 11.  But in those statements, the "plaintiff" is Novo
Point, not Associated Recovery.

### 2.     Jeffrey Baron

Plaintiff's assignee status necessarily implicates a determination of the relative rights, status, and legal relations of Baron, and Novo Point, as to Plaintiff, as well as to Defendants. Plaintiff previously alleged that Baron is the predecessor-in-interest of Novo Point and of Plaintiff, and that Baron was responsible for acquiring the subject domain names. *See* Dkt. 76, ¶ 3.  Plaintiff further suggested that Baron is the party actually in control of Novo Point and responsible for the domain names, stating throughout the Complaint that Baron and/or Novo Point had ownership rights in the domain names, and that Baron and/or Novo Point never gave authority for Nelson to act. *See id.* ¶¶ 240-59.  Given Baron's close involvement with Novo Point (of which Baron apparently owns a controlling interest) and the domain names—and given that Baron's litigation misconduct caused the receivership and, in turn, domain-name sales—he is a necessary party. *See Jaffer*, 301 F.R.D. at 261.  Indeed, Baron filed the *Vogel* case, which had the same operative facts as this case, except there Baron attacked the Receiver, while here Baron's proxy attacks the bona fide purchasers. *See generally*, *Vogel I*, 2016 WL 1273465.[12]

### 3.     Peter Vogel and Damon Nelson

Nelson was the manager of Novo Point and the signatory to the domain name assignments.  As Receiver, Peter Vogel supervised and authorized Nelson's activities.  Like Novo Point, Nelson and Vogel are not only necessary parties but indispensable ones. "[P]recedent supports the proposition that a contracting party is the paradigm of an indispensable party." *Nat'l. Union Fire Ins. Co. v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 252 (4th Cir. 2000). However, they are also unavailable.  The Court's recent *Vogel I* decision, upheld by the Fifth Circuit, dismissed Baron's claims against Vogel and held that Vogel's actions were consistent with his charge and not subject to collateral attack. *Vogel I*, 2016 WL 1273465 at *6.  The same

---

[12] Notably, Baron attended the July 13, 2016 settlement conference in this case as Plaintiff's representative.

logic likely applies to Nelson, who was manager under Vogel's supervision and whose actions were also subject to the Court's review.  *See Netsphere II*, 2013 WL 3327858, at * 18; *Netsphere III*, 2015 WL 140043, at *2.  Accordingly, as a matter of law, neither Vogel nor Nelson is likely available as a party to this lawsuit.  *See Davis v. Bayless*, 70 F.3d 367, 373 (5th Cir. 1995); *Vogel I*, 2016 WL 1273465 at *5 ("Vogel and Gardere are entitled to immunity in connection with their administration of the receivership as long as they were acting pursuant [to] the receivership order(s) entered by Judge Furgeson."). Where necessary parties are indispensable but unavailable, dismissal is proper under Rule 12(b)(7).  *See LST Financial, Inc. v. Four Oaks Fincorp, Inc.*, No. 14-cv-435, 2014 WL 3672982 (W.D. Tex. Jul. 24, 2014).

## IV.    CONCLUSION

For the foregoing reasons, Defendants move the Court to dismiss Plaintiff's claims with prejudice.  Defendants respectfully reserve the right to seek fees and costs.

Dated:  June 28, 2017                               Respectfully submitted,

| | |
|---|---|
| */s/ Brian H. Pandya*<br>David Weslow (pro hac vice)<br>Brian H. Pandya (pro hac vice)<br>WILEY REIN LLP<br>1776 K Street NW<br>Washington, DC 20006<br>(202) 719-7457<br><br>Clyde M. Siebman (State Bar No. 18341600)<br>Siebman, Burg, Phillips, and Smith LLP<br>4949 Hedgcoxe Rd., Suite 230<br>Plano, Texas 75024<br>Telephone: 214-387-9100<br>Facsimile: 214-387-9125<br>clydesiebman@siebman.com<br><br>**ATTORNEYS FOR TELEPATHY, INC.**<br><br>*/s/ M. Scott Fuller*<br>M. Scott Fuller<br>Texas Bar No. 24036607<br>Paul D. Lein<br>Texas Bar No. 24070133<br>LOCKE LORD LLP<br>2200 Ross Avenue, Suite 2800<br>Dallas, Texas  75201-6776<br>Telephone:  (214) 740-8000<br>Facsimile:  (214) 740-8800<br>E-mail: sfuller@lockelord.com<br>E-mail: plein@lockelord.com<br><br>**ATTORNEYS FOR<br>CBRE GROUP, INC.** | */s/ Lora A. Brzezynski*<br>Lora A. Brzezynski<br>DENTONS US LLP<br>1900 K Street NW<br>Washington, DC 20006<br>Telephone:  (202) 496-7239<br>Facsimile:  (202) 496-7756<br>lora.brzezynski@dentons.com<br><br>Adam Pierson<br>Texas Bar No. 24074897<br>Patrick Doll<br>Texas Bar No. 24078432<br>DENTONS US LLP<br>2000 McKinney Avenue, Suite 1900<br>Dallas, Texas 75201-1858<br>T: (214) 259-0900<br>F: (214) 259-0910<br>adam.pierson@dentons.com<br>patrick.doll@dentons.com<br><br>**Counsel for in rem Defendants<br>028.com, 744.com, fny.com, jtz.com,<br>kgj.com, kmq.com, kxq.com, kxw.com,<br>lnm.com, luohe.com, meq.com,<br>ocu.com, pixie.com, qmh.com, sqg.com,<br>vcz.com, vgj.com, wyd.com, xaq.com,<br>xff.com, xsg.com, ycx.com, ygx.com,<br>yjr.com, yjx.com, yqp.com, yqt.com,<br>yrn.com, yte.com, yyg.com, zdp.com,<br>zhd.com, zulin.com, zzm.com and<br>Defendants Creation Media LLC,<br>Fantasy Spin Game LLC, ONIG LLC,<br>Strong Inc., Strong, Adam, True Magic<br>LLC, Tumult Inc, and Virtual<br>Investments LLC** |

26

*/s/ Brian Casper*
Brian Casper
Texas State Bar No. 24075563
brian.casper@klemchuk.com
KLEMCHUK LLP
8150 N. Central Expressway, 10th Floor
Dallas, TX 75206
P.  214.367.6017
F.  214.367.6001

**ATTORNEYS FOR DEFENDANT
ALANSIS.COM, INC.**

/s/ Michael Hassett
Michael Hassett
Texas Bar No. 00796722
JONES HASSETT, PC
440 North Center
Arlington, Texas 76011
(817) 265-0440
(817) 265-1440 (fax)
mhassett@tarrantbusinesslaw.com

**ATTORNEYS FOR ALL-PRO
FASTENERS, INC.**

/s/ William R. Lamb
William Robert Lamb
GILLAM & SMITH
303 S. Washington Avenue
Marshall, Texas  75670
T: (903) 934-8450
wrlamb@gillamsmithlaw.com

**Counsel for Power Home Technologies, LLC
and Electronic Arts Inc.**

/s/ Joel C. Boehm
Joel Christian Boehm (State Bar No. 24069393)
WILSON SONSINI GOODRICH & ROSATI
900 South Capital of Texas Hwy
Las Cimas IV, Fifth Floor
Austin, TX 78746-5546
T:  (512) 338-5400
jboehm@wsgr.com

**Counsel for Slice Technologies, Inc.**

/s/ Franklin M. Smith
Franklin M. Smith (MI Bar No. P76987)
DICKINSON WRIGHT PLLC
2600 W. Big Beaver Rd., Suite 300
Troy, Michigan 48084
T: (248) 433-7393
F: (844) 670-6009
fsmith@dickinsonwright.com

**Counsel for Priveco, Inc.**

/s/ Darin M. Klemchuk
Darin M. Klemchuk
Texas State Bar No. 24002418
darin.klemchuk@klemchuk.com
Aaron D. Davidson
Texas State Bar No. 24007080
aaron.davidson@klemchuk.com
Tim Craddock
Texas State Bar No. 24082868
tim.craddock@klemchuk.com
KLEMCHUK LLP
8150 N. Central Expressway, 10th Floor
Dallas, TX 75206
P.  214.367.6000
F.  214.367.6001

**ATTORNEYS FOR DEFENDANT
RADICAL INVESTMENTS
MANAGEMENT, LLC**

/s/ Mark Levine
Mark Levine
WEYCER, KAPLAN, PULASKI &
ZUBER P.C.
11 Greenway Plaza, Suite 1400
Houston, Texas  77046
T:  (713) 961-9045
mlevine@wkpz.com

**Counsel for Quinn Veysey**

| | |
|---|---|
| */s/   R. William Beard, Jr.* <br> R. William Beard, Jr. (pro hac vice) <br> SLAYDEN GRUBERT BEARD PLLC <br> 401 Congress Ave., Suite 1900 <br> Austin, TX 78701 <br> Telephone: (512) 402-3556 <br> Facsimile: (512) 402-6865 <br> wbeard@sgbfirm.com <br><br> Stephanie R. Barnes <br> State Bar No. 24045696 <br> Siebman, Burg, Phillips, and Smith LLP <br> 4949 Hedgcoxe Rd., Suite 230 <br> Plano, Texas 75024 <br> Telephone: 214-387-9100 <br> Facsimile: 214-387-9125 <br> stephaniebarnes@siebman.com <br><br> **ATTORNEYS FOR STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY** | */s/ Jason Richerson* <br> Jason Richerson <br> State Bar No. 24049207 <br> Richerson Law Firm <br> 210-B South Cedar Ridge Drive <br> Suite 101-A <br> Duncanville, Texas, 75116 <br> Tel: (214) 935-1439 <br> Fax: (214) 935-1443 <br> info@richersonlawfirm.com <br><br> **Attorney for Defendants DBG Partners, Inc. and Linda Butcher** |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document on this 28th day of June 2017.

*/s/ Brian H. Pandya*
**Brian H. Pandya**