IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ASSOCIATED RECOVERY, LLC, | § § § | |
| *Plaintiff,* | § § | CIVIL ACTION NO. 3:16-CV-1025-L |
| v. | § § § | (Consolidated with Civil Action Nos. 3:17-CV-242-L and 3:17-CV-651-L) |
| | § | |
| JOHN DOES 1 – 44, et al. | § § | |
| *Defendants.* | § | |

## DEFENDANT STEVE FORTUNA'S JOINDER IN CONSOLIDATED DEFENDANTS' RULE 12(b) MOTION TO DISMISS THIRD AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT;

Through the undersigned counsel, Steven Fortuna hereby joins in and adopts Consolidated Defendants' Rule 12(b) Motion to Dismiss Third Amended Complaint (ECF 135) and the Brief in Support of the Motion to Dismiss Third Amended Complaint (ECF 136) previously filed and fully briefed by other Defendants in this Action.

Movant's arguments are identical to the arguments already raised and fully briefed by other Defendants (ECF 135, 136). Thus, to save the Court from reading repetitive briefing, Movant Steven Fortuna joins in and adopts Consolidated Defendants' Rule 12(b) Motion to Dismiss Third Amended Complaint (ECF 135) and the Brief in Support of the Motion to Dismiss Third Amended Complaint (ECF 136).

Defendant Steven Fortuna has six arguments as to why the case against him should be dismissed pursuant to Rule 12(b). First, Plaintiff's Third Amended Complaint is collaterally

1

estopped by this Court's prior rulings and rulings by the 5th Circuit. Second, Plaintiff's causes of action of unjust enrichment, conversion, unfair competition/common law trademark infringement, intentional interference with an existing contract and breach of contract are time barred by the statute of limitations. Third, Plaintiff fails to state a claim upon which relief can be granted, so the Court should dismiss this action under Rule 12(b)(6). Fourth, Plaintiff lacks standing because it is a shell company created by Jeffrey Baron for the purpose of suing bonafide purchasers for value of domain names sold through the Receiver. Fifth, Plaintiff failed to join necessary parties, thereby making dismissal proper under Rule 12(b)(7). Sixth, Plaintiff's Third Amended Petition erroneously alleges Steven Fortuna purchased the domain name, savetime.com, which he did not. Arguments one through five are briefed in detail by the Consolidated Defendants (ECF 136).

With respect to the Statute of Limitations arguments specifically, Steven Fortuna purchased the domain name parkinggames.com from the Receiver on May 3, 2012. (Ex 1). All of the Statute of Limitation arguments made in the Brief in Support of Consolidated Defendants 12(b) Motion (ECF 136) are equally applicable to Defendant Steven Fortuna. As Consolidated Defendants point out in their Brief, Plaintiff has acknowledged that all sales occurred before December 12, 2012 (ECF 136 at p 19 ¶ 2), and, therefore, all claims of unjust enrichment, conversion, unfair competition/common law trademark infringement, intentional interference with an existing contract and breach of contract are time barred.

Plaintiff's Third Amended Petition contains a factual inaccuracy regarding Defendant Steven Fortuna. Plaintiff claims that Steven Fortuna purchased domain names parkinggames.com and savetime.com. (ECF 123 at p. 29). In reality, the only domain name purchased by Steven Fortuna from the Manager for Novo Point LLC was parkinggames.com (Ex. 1). Steven Fortuna is not liable to Plaintiff for the myriad of reasons outlined above but assuming *arguendo* those do not apply, Defendant Steven Fortuna cannot be liable for a domain name he did

2

not purchase from Plaintiff's predecessor-in-interest, nor did he ever own. (*Id.*).

Dated: July 14, 2017          Respectfully submitted,

WRIGHT & GREENHILL, P.C.
900 Congress Avenue, Suite 500
Austin, Texas 78701
512/476-4600
512/476-5382 (Fax)

By: /s/ David P. Boyce
State Bar No. 02759770
dboyce@w-g.com

ATTORNEYS FOR DEFENDANT
STEVE FORTUNA

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document on this 14th day of July, 2017.

/s/ David P. Boyce
David P. Boyce

3

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ASSOCIATED RECOVERY, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 3:16-CV-1025-L |
| v. | § | (Consolidated with Civil Action |
| | § | Nos. 3:17-CV-242-L and 3:17-CV- |
| | § | 651-L) |
| | § | |
| JOHN DOES 1 – 44, et al. | § | |
| | § | |
| Defendants. | § | |

## Steven Fortuna Affidavit

State of Minnesota §
§
County of Dakota §

BEFORE ME, the undersigned notary, personally appeared Steven Fortuna, the Affiant, a person whose identity is known to me. After I administered an oath, Affiant testified as follows:

1. "My name is Steven Fortuna. I am over 18 years of age, of sound mind, and capable of making this Affidavit. The facts stated in this Affidavit are within my personal knowledge and are true and correct.

2. I am an individual residing in Apple Valley, Minnesota.

3. On or about May 3, 2012 I purchased the domain name parkinggames.com from Damon Nelson, manager of Novo Point LLC.

4. Attached hereto as Exhibit A is a true and accurate copy of the fully executed Purchase Agreement for parkinggames.com.

5. I did not purchased savetime.com from Novo Point LLC, nor have I ever owned owed savetime.com.

Further Affiant Sayeth Not."



EXHIBIT
1

SIGNED this 14th day of July, 2017.

_____
Steven Fortuna

STATE OF Minnesota §
§
COUNTY OF Dakota §

BEFORE ME, the undersigned authority, on this day personally appeared Steven Fortuna, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 14 day of July, 2017.

_____
Notary Public - State of Minnesota

SARON CINDY THANG
Notary Public
State of Minnesota
My Commission Expires
January 31, 2022

2

# DOMAIN NAME ASSIGNMENT AND TRANSFER AGREEMENT

This Domain Name Assignment and Transfer Agreement (this "Agreement"), dated as of February_14_, 2012, is by and between Novopoint, LLC, a Cook Islands limited liability company ("Seller"), and _____ a ____Steven Fortuna____ ("Buyer"). For purposes of this Agreement, Seller and Buyer shall be referenced individually as a "Party" and collectively as the "Parties."

WHEREAS, Seller desires to assign and transfer to Buyer, and Buyer desires to acquire, any and all of Seller's rights, title and interest in and to those domain names listed in EXHIBIT A attached hereto and incorporated herein by this reference (the "Domain Names").

NOW, THEREFORE, in consideration of the mutual promises herein contained and for payment of consideration set forth herein, the receipt and adequacy of which are hereby acknowledged, the Parties agree as follows:

1. <u>Assignment</u>. Seller hereby agrees to sell, assign, transfer, convey, and deliver to Buyer all of Seller's rights, title, and interest in, to, and under the Domain Names pursuant to the terms of this Agreement.

2. <u>Consideration</u>. As consideration for the rights granted to Buyer in this Agreement, Buyer shall pay to Seller FIFTY FIVE THOUSAND United States Dollars ($55,000.00 USD) (the "Purchase Price") in accordance with the terms of this Agreement.

3. <u>Payment and Transfer of Domain Name Registration</u>.

    (a) Within one (1) business day following the full execution of this Agreement, the Parties shall (i) commence an online escrow process through Internet Escrow Services, Inc. ("Escrow.com") in accordance with this Agreement and Escrow.com's General Escrow Instructions set forth in Exhibit B attached hereto and incorporated herein by this reference (the "Instructions") and (ii) submit a completed Transaction Details Screen (as defined in the Instructions) to Escrow.com with the transaction details set forth on Exhibit C. The Parties shall each comply with the Instructions and shall each act in good faith to cooperate with Escrow.com to effectuate the transfer of the Domain Names pursuant to this Agreement. Seller shall reasonably assist Buyer in transferring the Domain Names to Buyer's designated account. Once Escrow.com has verified that Buyer has control of the Domain Names, Escrow.com shall release the Purchase Price to Seller.

    (b) Buyer shall be responsible for any fees payable to any third party to effectuate the transfer of ownership and registration of the Domain Names as contemplated under this Agreement, including, without limitation, any fees payable to Escrow.com and/or the registrar of the Domain Names.



EXHIBIT A

1

4. <u>LIMITATIONS OF LIABILITY</u>.

(a) BUYER EXPRESSLY AGREES THAT IT IS PURCHASING RIGHTS TO THE DOMAIN NAMES AT ITS SOLE RISK ON AN "AS IS" BASIS. SELLER EXPRESSLY DISCLAIMS ANY AND ALL WARRANTIES WITH RESPECT TO THE DOMAIN NAMES, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. BUYER ACKNOWLEDGES AND AGREES THAT THERE ARE NO IMPLIED REPRESENTATIONS, WARRANTIES, OR COVENANTS OF SELLER IN THIS AGREEMENT OR IN ANY DOCUMENT OR AGREEMENT EXECUTED BY SELLER PURSUANT HERETO. SELLER MAKES NO REPRESENTATION THAT THE DOMAIN NAMES WILL MEET BUYER'S REQUIREMENTS, OR THAT BUYER WILL BE ABLE TO ATTAIN ANY SPECIFIC RESULTS OR VALUE ASSOCIATED WITH THE DOMAIN NAMES OR THE USE THEREOF. SELLER SHALL NOT BE LIABLE TO BUYER FOR ANY EXEMPLARY, PUNITIVE, INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES, INCLUDING LOST REVENUES, LOST PROFITS OR LOST PROSPECTIVE ECONOMIC ADVANTAGE ARISING UNDER THIS AGREEMENT.

(b) BUYER HEREBY ASSUMES ANY AND ALL LIABILITIES, DEBTS, CLAIMS OR OBLIGATIONS THAT ARISE OUT OF OR ARE RELATED TO THE OWNERSHIP AND CONTROL OF THE DOMAIN NAMES, WHETHER ACTUAL OR CONTINGENT, KNOWN OR UNKNOWN, WHETHER ARISING OUT OF OCCURRENCES PRIOR TO OR AFTER THE DATE HEREOF (COLLECTIVELY, THE "<u>ASSUMED LIABILITIES</u>").

(c) THE ALLOCATIONS AND LIMITATIONS OF LIABILITY SET FORTH IN THIS SECTION REPRESENT THE AGREED AND BARGAINED-FOR UNDERSTANDING OF THE PARTIES AND THE PURCHASE PRICE FOR THE DOMAIN NAMES REFLECTS SUCH ALLOCATIONS AND LIMITATIONS.

5. <u>Release</u>. Buyer, for itself and on behalf of its officers, directors, shareholders, representatives, agents, administrators, attorneys, employees, attorneys, assigns, successors and agents, does hereby IRREVOCABLY AND UNCONDITIONALLY RELEASE, ACQUIT, AND FOREVER DISCHARGE Seller and its current and former officers, managers, members, representatives, agents, administrators, attorneys, employees, successors, assigns, including the Receiver Peter S. Vogel and his attorneys, Gardere Wynne Sewell LLP (hereinafter collectively referred to as the "<u>Seller Releasees</u>"), from any and all claims, debts, damages, demands, liabilities, suits in equity, complaints, grievances, obligations, promises, agreements, rights, controversies, costs, losses, damages, attorneys' fees and expenses of whatever kind or character ("<u>Losses</u>"), whether heretofore or hereafter accruing, whether known or unknown to the Parties, whether foreseen or unforeseen, fixed or contingent, liquidated or unliquidated, arising out of or in connection with the Domain Names, the Assumed Liabilities or this Agreement, which may have existed prior to, or contemporaneously with, the execution of this Agreement, or subsequent to the execution of this Agreement.

6. <u>Indemnification</u>. Buyer hereby agrees to indemnify and hold Seller and the Seller Releasees harmless from and against, and pay to the applicable Seller Releasee the amount of any and all Losses arising out of, based upon or relating to any of the Domain Names or any Assumed Liability, including but not limited to any claim made by a third party arising from or in connection with any intellectual property claim or ownership claim related to the Domain Names.

7. <u>Further Assurances</u>. Seller shall, at no expense to Seller, execute and deliver to Buyer all such further instruments, assignments, assurances, and other documents as Buyer may reasonably request or as may be necessary to more fully assign and convey to and vest in Buyer all rights in and to the Domain Names.

8. <u>Governing Law; Venue</u>. THIS AGREEMENT SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS. ALL DISPUTES ARISING FROM OR RELATING TO THIS AGREEMENT SHALL BE ADJUDICATED IN THE U.S. DISTRICT COURTS FOR THE NORTHERN DISTRICT OF TEXAS (DALLAS DIVISION) OR THE STATE DISTRICT COURTS OF DALLAS COUNTY, TEXAS, UNITED STATES.

9. <u>Conflict</u>. In the event of a conflict between this Agreement and the Procedures, the terms of this Agreement will control to the extent of such conflict.

10. <u>Counterparts</u>. This Agreement may be executed and delivered (including by facsimile or email (.pdf) transmission) in one or more counterparts, and by the Parties in separate counterparts, either of which when executed and delivered shall be deemed to be an original but both of which taken together shall constitute one and the same agreement.

**[SIGNATURE PAGE IS NEXT FOLLOWING PAGE]**

IN WITNESS WHEREOF, the Parties have executed this Agreement to be effective as of the date first above written.

**SELLER:**
Novopoint, LLC
By: _____
Name: DAMON NELSON
Title: Manager of NovoPoint LLC
Effective Date: 5/3/12

**BUYER:**
Steven Fortuna
By: _____
Name: Steven J. Fortuna
Title: Self

4

## EXHIBIT A
## DOMAIN NAMES

| Domain Name | Registrant (as shown in the public WHOIS database) | Registrar |
|---|---|---|
| **PARKINGGAMES.COM** | Whois Privacy Services Pty Ltd | Fabulous.com |

5