**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**Dallas Division**

| | | |
|---|---|---|
| **ASSOCIATED RECOVERY, LLC,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Case No. 3:16-CV-1025-L** |
| | § | *(Consolidated with Civil Action Nos.* |
| | § | *3:17-CV-424-L and 3:17-CV-651-L)* |
| **JOHN DOES 1-44, et. al.,** | § | |
| *Defendants.* | § | |

**CORRECTED BRIEF IN SUPPORT**
**PLAINTIFF'S COMBINED RESPONSE TO LOOKOUT, INC.'S,**
**YE YU'S AND CONSOLIDATED DEFENDANTS' MOTIONS TO DISMISS**

Respectfully submitted,

/s/ Jack T. Jamison
JACK T. JAMISON
State Bar No. 10562550
1509 Main St., No. 205
Dallas, Texas 75201
Tel:  (469) 802-9451
Cell: (214) 402-7654
jack@jackjamisonattorney.com

ATTORNEY FOR PLAINTIFF
ASSOCIATED RECOVERY, LLC

TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

CONTENTIONS OF FACT ................................................................................................ 5

CONTENTIONS OF LAW ............................................................................................... 10

ARGUMENT AND AUTHORITIES ................................................................................ 12

    Applicable Standards ..................................................................................................... 12

    Pleading Requirements Under Applicable Procedural Rules  .............................................. 14

    Motions Are Procedurally Improper  ............................................................................... 15

    The Subject Judgments Do Not Support the Movants' Arguments ..................................... 16

    Movants Defendants' Extrinsic Evidence Actually Proves Plaintiff's Claims ..................... 17

    Rule 12(b)(7) and Rule 19(b) Motions Are Groundless ..................................................... 18

TABLE OF AUTHORITIES

CASES

*Baron v. Schurig*, No. 3:13-CV-3461-L, 2014 WL 25519, at *14
(N.D. Tex. Jan. 2, 2014) ----------------------------------------------------------------- 4, 6, 16

*Baron v. Vogel,* No. 3:15-cv-232-L, 2016 U.S. Dist. LEXIS 44294 at *1-*2
(N.D. Tex. Mar 31, 2016) ---------------------------------------------------------------- 3, 19

*Busby v. Jones,* 134 Tex. 241, 133 S.W.2d 566, 571 (1939)----------------------------------------12

*Cruz v. CitiMortgage, Inc.,* No. 3:11-CV-2871-L, 2012 WL 1836095 *4
(N.D. Tex. May. 21, 2012) ---------------------------------------------------------- 11, 13, 14

*Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007) ---------------------------------11

*General Universal Sys., Inc. v. Hal, Inc.,* 500 F.3d 444, 453 (5th Cir. 2007) -----------------------4

*Happy Jack Ranch, Inc. v. HH&L Der., Inc.,* No. 13-12-00558-CV, 2015
Tex. App. LEXIS 11536 (Tex. App.-Austin [3rd Dist.] November 6, 2015)---------------------11

*Home Builders Ass'n of Miss., Inc.,* 143 F.3d at 1010) --------------------------------------------13

*Larter Sons, Inc. v. Dinkler Hotels Co.,* 199 F.2d 854, 855 (5th Cir. 1952) -------------------------10

*Merrill Lynch, Inc. v. Greystone Services. Corp.*, No. 3:06-CV-0575-P
(N.D. Tex. July 31, 2006) (Solis, J.) ---------------------------------------------------------13

*Moch v. East Baton Rouge Parish School,* 548 F.2d 594, 596 n. 3 (5th Cir. 1977) -----------------10

*Netsphere, Inc. v. Baron*, 703 F.3d 296 (5th Cir. 2012) -------------------------------------------17

*Orca Assets, G.P. v. Burlington Res. Oil & Gas Co.*,
464 S.W.3d 403, 408-409 (Tex. App. 2015)--------------------------------------------------12

*Patterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir. 1981) ------------------------------------ 1, 13

*Rogers v. Ricane Enters., Inc.,* 884 S.W.2d 763, 768 (Tex. 1994)------------------------------------12

*Sadler v. Duvall,* 815 S.W.2d 285, 293 n. 2 (Tex. App.—Texarkana 1991, writ denied). --------12

*St. Paul Mercury Ins. Co. v. Williamson,* 224 F.3d 425, 445 (5th Cir. 2000) ----------------------10

*Test Masters Educational Serv., Inc. v. Singh,* 428 F.3d 559, 571 n.2 (5th Cir. 2005)-------------10

*Tex. Dep't of Transp. v. A.P.I. Pipe and Supply, LLC,* 397 S.W.3d 162, 166 (Tex. 2013) --------12

*United States v. Pineiro,* 470 F.3d 200, 205 (5th Cir. 2006)----------------------------------------4

## Rules

Fed. R. Civ. P. 7 -------------------------------------------------------------------------------- 4, 6, 16

Fed. R. Civ. P. 8 --------------------------------------------------------------------------------- 14, 15

Fed. R. Civ. P. 9 ---------------------------------------------------------------------------------15

Fed. R. Civ. P. 12(b)(1) --------------------------------------------------------------------------15

Fed. R. Civ. P. 12(b)(6) --------------------------------------------------------------------------15

Fed. R. Civ. P. 12(b)(7) --------------------------------------------------------------------------15

Fed. R. Civ. P. 12(f) ------------------------------------------------------------------------------16

Fed. R. Civ. P. 19(b) -----------------------------------------------------------------------------15

## Other Authorities

Code of Hammurabi § 9 (L.W. King trans.) (2250 B.C.) ----------------------------------------- 1

TO THE HONORABLE COURT:

COMES NOW, Plaintiff Associated Recovery, LLC, and would show the Court the following:

## I.   INTRODUCTION

> *If any one lose an article, and find it in the possession of another: if the person in whose possession the thing is found say "A merchant sold it to me, I paid for it before witnesses," and if the* **owner** *of the thing say, "I will bring witnesses who know my property," then shall the purchaser bring the merchant who sold it to him, and the witnesses before whom he bought it, and the owner shall bring witnesses who can identify his property.  The judge shall examine their testimony--both of the witnesses before whom the price was paid, and of the witnesses who identify the lost article on oath. The merchant is then proved to be a thief and shall be put to death.[1]* ***The owner of the lost article receives his property****, and he who bought it receives the money he paid from the estate of the merchant.[2]*

Code of Hammurabi § 9 (L.W. King trans.) (2250 B.C.) (emphasis added).

The Movant Defendants seek to obtain judgment in a summary fashion on avoidance defenses upon which they bear the burden of proof without all the bother of those pesky procedural safeguards associated with Rule 56 motions for summary judgment, or more accurately, through unabashed circumvention thereof.

The Movant Defendants do not make any traditional "facial attack"[3] upon the Underlying Factual Allegations regarding Associated Recovery's standing as Novo Point's assignee in their Rule 12(b)(1) motions to dismiss – "traditional" in the sense of contending that the amended

---

[1]     Caveat: unless said merchant has judicial immunity.

[2]     Caveat: unless the late merchant, R.I.P., quitclaimed the property to him without warranty of title.

[3]     The Fifth Circuit distinguishes between a "facial" and "factual" attack on a complaint under Rule 12(b)(1). *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981) ("[I]f the defense merely files a Rule 12(b)(1) motion, the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true.  If those jurisdictional allegations are sufficient, the complaint stands.  If a defendant makes a "factual attack" upon the court's subject matter jurisdiction over the lawsuit, the defendant submits affidavits, testimony, or other evidentiary materials. In the latter case a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction.").

---

complaint fails to allege sufficient facts about the assignment. Dkts. 129, 130, 135 and 136.  Nor do the Movant Defendants make any "factual attack"[4] upon the allegations regarding Novo Point's assignment to it – i.e., neither denies the act of Novo Point signing the written document. Dkts. 129, 130, 135 and 136.  Rather, Lookout contends the "avoidance defenses" of *res judicata* and collateral estoppel render the Underlying Factual Allegations legally immaterial, and Consolidated Defendants contends the same solely under collateral estoppel. *Id.* More specifically, each contends prior judgments of the U.S. Court of Appeals for the Fifth Circuit and this Court bar re-litigation concerning the efficacy of the transactions through which Damon Nelson purportedly assigned Novo Point's ownership of the Domain Names to the Registrant Defendants, or there predecessors-in-interest.  *Id.*

In the Rule 12(b)(6) motions, Lookout raises the very same *res judicata* and collateral estoppel defenses, Consolidated Defendants raise the same collateral estoppel defense, and they both raise other pleas in bar, including statute of limitations (Dkt. 129 at 2 of 13; Dkt. 135 at 2 of 5; Dkt. 136 at 19-20 of 35), laches (Dkt. 129 at 2 of 13), and status as "bona fide purchasers" for value (Dkt. 129 at 4 of 13, ¶10; Dkt. 130 at 20-22; Dkt. 135 at 2 of 5; Dkt. 136 at 9 and 26 of 35).

Lookout's assertions that Associated Recovery's claims are barred by *res judicata* and collateral estoppel as a result of this Court's memorandum opinion and order in the *Baron v. Vogel* action are not warranted by the existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.  Consolidated Defendants' assertion that the same is true based solely as a result of collateral estoppel is utterly absurd.  In the subject memorandum opinion and order, this Court **merely ruled** that the receiver and Mr.

---

[4]      *Id.*

Nelson were entitled to dismissal of claims asserted against them based on derivative judicial immunity with respect to all actions taken in connection with the receivership, including the above-referenced purported sale. *See Baron v. Vogel,* No. 3:15-cv-232-L, 2016 U.S. Dist. LEXIS 44294 at *1-*2 (N.D. Tex. Mar 31, 2016) (Lindsay, J.).

Lookout's assertions that Associated Recovery's claims are barred by *res judicata* and collateral estoppel as a result of the U.S. Court of Appeals for the Fifth Circuit opinion and judgment directing the Court to vacate the receivership order and all related material orders and Consolidated Defendants' assertions of the same based solely upon collateral estoppel are not warranted by the existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

As the purported purchasers of the Domain Names were never parties to the Netsphere action in this Court, i.e., a trial court, at any point before the appeal to the Fifth Circuit, i.e., an appellate court, or at the time the Fifth Circuit issued its opinion in December of 2012, or it issued its mandate in April of 2013, just exactly *how* is it that the Movant Defendants imagine the Fifth Circuit had jurisdiction over the purported purchasers and had the judicial authority to order them to return the Domain Names?

It is evident from expressions in other opinions of this Court issued that, after the remand, this Court recognized that it lacked jurisdiction to determine ownership of Novo Point's assets. The Court's memorandum opinion and order of January 2, 2104, provides, in part, as follows:

> [T]he court disagrees that Petitioning Creditors' standing in the involuntary bankruptcy case is unaffected by the Fifth Circuit's December 18, 2012 holding and reversal of the Receivership Order. For this court to conclude otherwise would require it to circumvent and ignore the Fifth Circuit's holding (and mandates) that the district court could not establish and use the receivership to pay Baron's Former Attorneys. This, however, is exactly what Petitioning Creditors are advocating in the involuntary bankruptcy – that their fees be paid

from the receivership assets pursuant to the May 11, 2011 Fee Order that was entered by Judge Furgeson based on the improper Receivership Order.

As the Fifth Circuit has issued its mandates, the relief that Petitioning Creditors seek is foreclosed by the mandate rule. This rule is aptly summarized as follows:

> The *mandate rule,* which is a corollary or specific application of the law of the case doctrine, prohibits a district court on remand from reexamining an issue of law or fact previously decided on appeal and not resubmitted to the trial court on remand. The prohibition covers issues decided both expressly and by necessary implication, and reflects the jurisprudential policy that once an issue is litigated and decided, that should be the end of the matter. This rule is essential to the orderly administration of justice, as it is aimed at preventing obstinate litigants from repeatedly reasserting the same arguments and at discouraging opportunistic litigants from appealing repeatedly in the hope of acquiring a more favorable appellate panel.

*United States v. Pineiro,* 470 F.3d 200, 205 (5th Cir. 2006) (footnotes, citations, and internal quotation marks omitted). More to the point, "[t]he mandate rule requires a district court on remand to effect our mandate and to do nothing else." *General Universal Sys., Inc. v. Hal, Inc.,* 500 F.3d 444, 453 (5th Cir. 2007) (citations omitted). The court has neither the inclination nor effrontery to disregard this well-settled precedent.

*See Baron v. Schurig*, No. 3:13-CV-3461-L, 2014 WL 25519, at *14 (N.D. Tex. Jan. 2, 2014) (Lindsay, J.).

This Court's memorandum opinion and order of February 28, 2014, expressly provides, in part, as follows:

> The court **rejects** the Receiver's request for it to conduct a show cause hearing or proceedings to determine the ownership of the Baron or Novo Point/Quantec assets, and will not consider any evidence in this regard. […] While the ownership of Novo Point and Quantec may have been relevant in the bankruptcy proceeding, such a determination is not relevant or necessary to comply with the Fifth Circuit's mandate that the receivership, the creation of which was determined to be improper, be wound down expeditiously.  Thus, any such determination is outside of the court's jurisdiction.
>
> * * *
>
> If the court lacks jurisdiction over the disputes regarding the ownership of the Novo Point and Quantec receivership assets, it would seem that it also lacks

> jurisdiction to enjoin third-party claims dealing with this matter, particularly those claims that have already been filed, litigated, or arbitrated or are in the process of being litigated or arbitrated. […] [T]he court concludes that the requested injunctive relief is not necessary to effectuate a winding down of the receivership in this case, and the parties have not pointed to any other authority that would permit the court to enjoin parties not before the court.

*See*, *Netsphere, Inc. v. Baron*, Civil Action No. 3:09-cv-00988-L, Dkt. No.1368 (N.D. Tex. Feb. 28, 2014) (Lindsay, J.) (emphasis in original).

The Court's memorandum opinion and order of January 2, 2104, in the *Baron v. Schurig* action demonstrates that, after the remand from the Fifth Circuit, this Court recognized that due to its lack of subject matter jurisdiction, all orders entered concerning the receivership were void *ab initio*.[5]

## II.   CONTENTIONS OF FACT

Plaintiff Associated Recovery, LLC is a limited liability company, which was organized under the law of the state of Wyoming and with its principal place of business in that state as well.

Novo Point, LLC is a limited liability company organized under the laws of the Cook Islands in 2009.

A predecessor-in-interest to Novo Point caused the initial registration of each of the Domain Names with a domain name registry in 2001, 2002, 2003, or 2004, and was the "Original Owner" of each such domain name, together with each and every appurtenance in any way belonging thereto, and any right arising out of, by, through, or under the any contract with

---

[5]    *Baron v. Schurig*, No. 3:13-CV-3461-L, 2014 WL 25519, at *14 (N.D. Tex. Jan. 2, 2014) (Lindsay, J.) ("A judgment is void if the court that rendered it lacked jurisdiction over the subject matter of the parties. Accordingly, the court concluded that even if the May 18, 2011 Fee Order, which is based on the improper Receivership Order, constitutes a judgment, it is void and unenforceable against Baron because the district court lacked jurisdiction over the subject matter of the order and the parties affected by the order.") (internal citations omitted).

the domain name registry or domain name registrar.

Each of the Domain Names was also eligible to protection as a "Mark," and after registration as a Domain Name, the Original Owner continuously used each such Mark in commerce through the bona fide use of the Mark in the ordinary course of trade to identify and distinguish goods and services from the goods and services of others (as opposed to being used merely to reserve a right in the Mark), and through such use, also became the owner of each Mark and entitled to common-law trademark protection with respect thereto.

In 2009, Novo Point became the owner of each of the Domain Names and Marks, together with each and every appurtenance in any way belonging thereto, and any right arising out of, by, through, or under any contract with the domain name registry or domain name registrar, and entitlement to trademark protection with respect to the Marks and each and every right associated with the Marks, as a successor-in-interest to the Original Owner.

Thereafter, Novo Point continued to use each of the Marks in commerce through the bona fide use of the Mark in the ordinary course of trade to identify and distinguish goods and services from the goods and services of others (as opposed to being used merely to reserve a right in the Mark), and through such use, became entitled to common law trademark protection with respect thereto independently from those rights derived from any predecessor-in-interest.

At points after Novo Point appealed the District Court's orders of November 24, 2010, December 17, 2010, February 4, 2011, and March 11, 2011 (and perhaps other orders), but before December 18, 2012, Mr. Nelson entered into a separate transaction purporting to assign ownership of one or more of the Domain Names purportedly on behalf of Novo Point to each Registrant Defendant, or a predecessor-in-interest of each Registrant Defendant.  In no way, shape, or form did any of those transactions purport to assign or in any way affect Novo Point's

ownership of any of the Marks, or the entitlement to common law trademark protection or any other right associated with any of the Marks.

Prior to the closing of each such purported transaction, Novo Point had no actual knowledge of any details of such transaction, and Novo Point never actually authorized or ratified any such purported transfer of ownership at any point.

Before the closing of each such transaction, each such Registrant Defendant or a predecessor-in-interest to each such Registrant Defendant had actual knowledge that Novo Point claimed to own the Domain Names and had appealed each of the District Court's orders, and such appeals could establish as a matter of law that, in reality, no purported transfer of ownership of any Domain Name to a Registrant Defendant or a predecessor-in-interest of a Registrant Defendant could ever actually divest Novo Point of any right, title, or ownership interest in such Domain Name.

In view of the above-described risks and the unfavorable terms of each such transactional document, the monetary consideration paid by each Registrant Defendant or predecessor-in-interest to each Registrant Defendant for each purported transfer of ownership of a Domain Name was what the fair market value would have been if such risks did not exist or the terms were more favorable.

The transactional document through which each Registrant Defendant or predecessor-in-interest to each Registrant Defendant purportedly purchased one or more of the Domain Names expressly identified Novo Point as the "Seller" thereunder, and expressly provided in part, as follows:

> 1.    Assignment.  Seller hereby agrees to sell, assign, transfer, convey, and deliver to Buyer all of Seller's rights, title and interest in, to, and under the Domain Names pursuant to the terms of this agreement.

* * *

4.  LIMITATIONS OF LIABILITY.

(a)   BUYER EXPRESSLY AGREES THAT IT IS PURCHASING RIGHTS TO THE DOMAIN NAMES AT ITS SOLE RISK ON AN "AS IS" BASIS.  SELLER EXPRESSLY DISCLAIMS ANY AND ALL WARRANTIES WITH RESPECT TO THE DOMAIN NAMES, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.  BUYER ACKNOWLEDGES AND AGREES THAT THERE ARE NO IMPLIED REPRESENTATIONS, WARRANTIES, OR COVENANTS OF SELLER IN THIS AGREEMENT OR IN ANY DOCUMENT OR AGREEMENT EXECUTED BY SELLER PURSUANT HERETO.  SELLER MAKES NO REPRESENTATION THAT THE DOMAIN NAMES WILL MEET BUYER'S REQUIREMENTS, OR THAT BUYER WILL BE ABLE TO ATTAIN ANY SPECIFIC RESULTS OR VALUE ASSOCIATED WITH THE DOMAIN NAMES OR THE USE THEREOF.  SELLER SHALL NOT BE LIABLE TO BUYER FOR ANY EXEMPLARY, PUNITIVE, INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES, INCLUDING LOST REVENUES, LOST PROFITS OR LOST PRSOPECTIVE ECONOMIC ADVANTAGE ARISING UNDER THIS AGREEMENT.

(b)   BUYER HEREBY ASSUMES ANY AND ALL LIABILITIES, DEBTS, CLAIMS, OR OBLIGATIONS THAT ARISE OUT OF OR ARE RELATED TO THE OWNERSHIP AND CONTROL OF THE DOMAIN NAMES, WHETHER ACTUAL OR CONTINGENT, KNOWN OR UNKNOWN, WHETHER ARISING OUT OF OCCURRENCES PRIOR TO OR AFTER THE DATE HEREOF (COLLECTIVELY, THE "ASSUMED LIABILITIES").

(c)   THE ALLOCATIONS AND LIMITATIONS OF LIABILITY SSET FORTH IN THIS SECTION REPRESENT THE AGREED AND BARGAINED-FOR UNDERSTANDING OF THE PARTIES AND THE PURCHASE PRICE FOR THE DOMAIN NAMES REFLECTS SUCH ALLOCATIONS AND LIMITATIONS.

5.  Release.   Buyer, for itself and on behalf of its officers, directors, shareholders, representatives, agents, administrators, attorneys, employees, attorneys, assigns, successors and agents, does hereby IRREVOCABLY AND UNCONDITIONALLY RELEASE, ACQUIT, AND FOREVER DISCHARGE Seller and its current and former officers, managers, members, representatives, agents, administrators, attorneys, employees, successors, assigns, including the Receiver Peter S. Vogel and his attorneys, Gardere Wynne Sewell LLP (hereinafter collectively referred to as the "Seller Releasees"), from any and all claims, debts, damages, demands, liabilities, suits in equity, complaints, grievances, obligations, promises, agreements, rights, controversies, costs, losses, damages, attorneys' fees and expenses of whatever kind or character ("Losses"), whether heretofore or hereafter accruing, whether known or unknown to the Parties, whether foreseen or unforeseen, fixed or contingent, liquidated or

unliquidated, arising out of or in connection with the Domain Names, the Assumed Liabilities or this Agreement, which may have existed prior to, or contemporaneously with, the execution of this Agreement, or subsequent to the execution of this Agreement.

6.     Indemnification.  Buyer hereby agrees to indemnify and hold Seller and the Seller Releasees harmless from and against, and pay to the applicable Seller Releasee the amount of any and all Losses arising out of, based upon or relating to any of the Domain Names or any in connection with any intellectual property claim or ownership claim related to the Domain Names.

On December 18, 2012, the U.S. Court of Appeals for the Fifth Circuit issued a single opinion concerning numerous appeals of each of the above-referenced orders of the District Court, specifically including:

a.     Novo Point's appeal of the District Court's order purporting to grant the exclusive rights of possession, control, and management over Novo Point's domain names to the receiver; and

b.     Appeals of the District Court's order authorizing the receiver to sell Novo Point's domain names and the order of March 11, 2011, appointing Mr. Nelson to assist the receiver as the manager of Novo Point's domain names.

In the opinion, the Fifth Circuit reversed each of the orders, instructed the District Court to vacate each of the orders, and explained that the District Court never had subject-matter jurisdiction over any of the domain names or any power to issue any of the orders because no issue concerning any such domain name had ever been raised in the civil action independently from those pertaining to the receivership-related orders, and Novo Point had never even been a party in the action.

On April 19, 2013, the Fifth Circuit reversed each of the District Court's above-referenced orders through a separate judgment with respect to each appeal of each such order and the mandate on each such judgment.

On February 28, 2014, the District Court vacated its own order of April 22, 2011, purportedly appointing an individual named Damon Nelson as manager of Novo Point's Domain Names.

Novo Point assigned ownership of each of the Domain Names and Marks, and each and every appurtenance in any way belonging thereto, and any right to entitlement to trademark protection with respect to the Marks and each and every right associated with the Marks, and causes of action to Associated Recovery.

## III. CONTENTIONS OF LAW

Motions to dismiss are viewed with disfavor and are rarely granted, and if an objection is made by the plaintiff, generally a *res judicata* contention cannot be brought in a motion to dismiss – it must be pleaded as an affirmative defense. *See Test Masters Educational Serv., Inc. v. Singh*, 428 F.3d 559, 571 n.2 (5th Cir. 2005) ("We do observe that generally a res judicata contention cannot be brought in a motion to dismiss; it must be pleaded as an affirmative defense. 5 Charles Alan Wright Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3rd ed. 2002). *But see Moch v. East Baton Rouge Parish School,* 548 F.2d 594, 596 n. 3 (5th Cir. 1977) ("[I]f the trial court has treated the 12(b)(6) motion [based on res judicata] as one for summary judgment, its dismissal under 12(b)(6) is not reversible error." (citing *Larter Sons, Inc. v. Dinkler Hotels Co.,* 199 F.2d 854, 855 (5th Cir. 1952))). However, Singh did not challenge TES's ability to argue res judicata in a motion to dismiss rather than in their response or a motion for summary judgment. *St. Paul Mercury Ins. Co. v. Williamson,* 224 F.3d 425, 445 (5th Cir. 2000) (arguments not raised are deemed abandoned).

Each of the District Court's orders described was *void ab initio* and never had any actual legal force or effect, and thus:

a.      Neither the receiver nor Mr. Nelson ever had any actual legal right to possess, control or manage any of the Domain Names whatsoever, or the ability to effectuate any legally valid transfer of any right, title or ownership interest in any of the Domain Names; and

b.      None of the purported transfers of ownership of any Domain Name to a Registrant Defendant or a predecessor-in-interest of a Registrant Defendant ever actually divested Novo Point of any right, title, or ownership interest in such Domain Name or effectuated any legally valid transfer of any right, title or ownership interest in such Domain Name or had any legal effect with respect to any such right, title or ownership interest whatsoever.

Each transactional document through which each Registrant Defendant or predecessor-in-interest to each Registrant Defendant purportedly purchased one or more of the Domain Names was void *ab initio* as well, and as a result, a suit to quiet title or remove a cloud on the title concerning any such transactional document could never be barred by a statute of limitations defense.  *See Happy Jack Ranch, Inc. v. HH&L Der., Inc.,* No. 13-12-00558-CV, 2015 Tex. App. LEXIS 11536 (Tex. App.-Austin [3rd Dist.] November 6, 2015 (rehearing denied) ("[A]n equitable action to remove cloud on title is not subject to limitations *if* a deed is void or has expired by its own terms.") *quoting Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007) (emphasis in original).

The elements of the cause of action to quiet title are: (1) an interest in a specific property; (2) title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable. *See Cruz v. CitiMortgage, Inc.,* No. 3:11-CV-2871-L, 2012 WL 1836095 *4 (N.D. Tex. May. 21, 2012) *citing Sadler v. Duvall,* 815 S.W.2d 285, 293

n. 2 (Tex. App.—Texarkana 1991, writ denied).

Each transactional document through which each Registrant Defendant or predecessor-in-interest to each Registrant Defendant purportedly purchased one or more of the Domain Names is, as a matter of law, a quitclaim instrument, which warrants absolutely nothing, including title, and in fact, disclaims all warranties.  *See Rogers v. Ricane Enters., Inc.,* 884 S.W.2d 763, 768 (Tex. 1994); *Orca Assets, G.P. v. Burlington Res. Oil & Gas Co.*, 464 S.W.3d 403, 408-409 (Tex. App.–Corpus Christi 2015, pet. denied).

One whose title arises through a quitclaim instrument is, as a matter of law, constructively charged with notice of all adverse third-party claims to ownership of the quitclaimed property, and thus, can never claim status a "bona fide purchaser" for value as a defense to such a claim.  *See Tex. Dep't of Transp. v. A.P.I. Pipe and Supply, LLC,* 397 S.W.3d 162, 166 (Tex. 2013); *Busby v. Jones,* 134 Tex. 241, 133 S.W.2d 566, 571 (1939).

Associated Recovery is entitled to the relief sought in this action in its capacity as the assignee of Novo Point and also in its own capacity as the owner of each of the Domain Names and Marks, and each and every appurtenance in any way belonging thereto, and any right to entitlement to trademark protection with respect to the Marks and each and every right associated with the Marks.

## IV.     ARGUMENT AND AUTHORITIES

### A.     Applicable Standards

The standards for consideration of Rule 12(b)(1) motions are as follows:

> Federal Rule of Civil Procedure 12(b)(1) provides that an action must be dismissed if it appears that the court does not possess subject matter jurisdiction over the plaintiff's claims. *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994).  A district court may decide a Rule 12(b)(1) motion to dismiss "on any of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by

undisputed facts plus the court's resolution of disputed facts." *Hanson v. Sonic — Frank Parra Autoplex, L.P.,* No. 3:04-CV-0108-P, 2004 U.S. Dist. LEXIS 11856, at *1(N.D. Tex. June 15, 2004) (citing *Barrera-Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir. 1996)). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States,* 281 F.3d 158,161 (5th Cir. 2001).

\* \* \*

The Fifth Circuit distinguishes between a "facial" and "factual" attack on a complaint under Rule 12(b)(1). *Hanson,* 2004 U.S. Dist. LEXIS 11856, at *1 (citing *Patterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir. 1981)). If a defendant files a Rule 12(b)(1) motion, the attack is presumptively facial and the Court need look only to the sufficiency of the allegations in the complaint, which are presumed to be true. *Id.* If, however, the defendant supports the motion with affidavits, testimony, or other evidentiary materials, then the attack is factual and the burden shifts to the plaintiff to prove subject matter jurisdiction by a preponderance of the evidence by also submitting facts through some evidentiary method. *Id.* Regardless, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his or her claim that would entitle him or her to relief. *Hanson,* 2004 U.S. Dist. LEXIS 11856, at *1 (citing *Home Builders Ass'n of Miss., Inc.,* 143 F.3d at 1010).

*See Merrill Lynch, Inc. v. Greystone Services. Corp.*, No. 3:06-CV-0575-P (N.D. Tex. July 31, 2006) (Solis, J.).

The standards for consideration of Rule 12(b)(6) motions are as follows:

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. In ruling on such a motion, the court cannot look beyond the pleadings.

\* \* \*

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it was viewed in the light most favorable to the plaintiff. While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim.

*See Cruz v. CitiMortgage, Inc.*, No. 3:11-CV-2871-L, WL 1836095, *4 (N.D. Tex. 2012) (Lindsay, J.) (internal citations omitted).

## B.     Pleading Requirements Under Applicable Procedural Rules

Rule 8 of the Federal Rules of Civil Procedure provides, in part:

(a) **Claim for relief.**  A pleading that states a claim for relief must contain:

(1)  a short and plain statement of the grounds for the court's jurisdiction, […];

(2)  a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3)  a demand for the relief sought, which may include relief in the alternative or different types of relief.

(b) **Defenses; […]**.

(1)  *In General*.  In responding to a pleading, a party must:

(A) state in short and plain terms its defenses to each claim asserted against it; and
*   *   *

(c) **Affirmative Defenses**.

(1)  *In General*.  In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including:
*   *   *

- estoppel;
*   *   *
- laches;
*   *   *
- res judicata;
*   *   *
- statute of limitations;
*   *   *

(d) **Pleading to Be Concise and Direct; Alternative Statements; Inconsistency**.

(1)  *In General*.  Each allegation must be simple, concise, and direct.  No technical form is required.

> (2)  Alternative Statements of a Claim […].
> A party may set out 2 or more statements of a claim […] alternatively or hypothetically, […]
> (3)  Inconsistent Claims […].  A party may state as many separate claims […] as it has, regardless of consistency.
>
> (e)  **Construing Pleadings**.  Pleadings must be construed so as to do justice.

FED. R. CIV. P. 8 (emphasis in original).  Rule 9 of the Federal Rules of Civil Procedure provides, in part, as follows:

> (b)  **[…]; Conditions of Mind**.  […].  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.
>
> (c)  **Conditions Precedent**.  In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. […].
>
> *   *   *
>
> (e)  **Judgment**.  In pleading a judgment or decision of a domestic or foreign court, a judicial or quasi-judicial tribunal, or a board or officer, it suffices to plead the judgment or decision without showing jurisdiction to render it.

FED. R. CIV. P. 9 (emphasis in original).

## C.  Motions Are Procedurally Improper

The Movant Defendants' motions to dismiss and supporting briefs (Dkts. 129, 130, 135 and 136) raise avoidance and affirmative defenses including *res judicata*,[6] collateral estoppel, statute of limitations[7] (Dkt. 129 at 2 of 13; Dkt. 135 at 2 of 5; Dkt. 136 at 19-20 of 35), laches (Dkt. 129 at 2 of 13), and status as "bona fide purchasers" for value (Dkt. 129 at 4 of 13, ¶10; Dkt. 130 at 20-22; Dkt. 135 at 2 of 5; Dkt. 136 at 9 and 26 of 35) and seek dismissal pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure based upon those avoidance and affirmative defenses.  Those avoidance and affirmative defenses are necessarily based upon consideration of matters outside of Associated Recovery's amended complaint, and thus, are

---

[6]  Lookout raises *res judicata*, but Consolidated Defendants do not.  Dkts. 135 and 136.

[7]  Lookout simply "alleges the defenses of statute of limitations and laches," without any further specification, and without mentioning either in its supporting brief.  Dkt. 129 at 2 of 13.  Thus, Lookout fails to provide notice sufficient to accord due process to Associated Recovery.

---

being improperly raised through an inappropriate procedural device.  Pursuant to Rule 8(b) and

(c) of the Federal Rules of Civil Procedure, and Rule 9(e) of those procedural rules, those

avoidance and affirmative defenses may only properly be raised in a pleading, and a pretrial

dismissal of claims based upon those avoidance and affirmative defenses may only properly be

obtained through Rule 56 of those procedural rules.  For those reasons, Associated Recovery

moves the Court to completely disregard and refuse to consider those avoidance and affirmative

defenses, and further moves the Court to strike the Movant Defendants' motions to dismiss and

supporting briefs (Dkts. 129, 130, 135 and 136) pursuant to Rule 12(f) of the Federal Rules of

Civil Procedure.

### D.  The Subject Judgments Do Not Support the Movant's Arguments

The only rulings essential to the memorandum opinion and order of March 31, 2016, in

*Baron v. Vogel* were: (a) the receiver and Mr. Nelson had derivative judicial immunity; (b)

neither of them lost such immunity when the receivership order and other orders were reversed

by the Fifth Circuit; and (c) the claimants were barred from asserting any exception to such

immunity or the inapplicability of such immunity to claims in question because the claimants

failed to raise such issues in earlier proceedings in the district and appellate court.  *See Baron v.*

*Vogel,* No. 3:15-cv-232-L, 2016 U.S. Dist. LEXIS 44294 at *1-*2 (N.D. Tex. Mar 31, 2016)

(Lindsay, J.).

Contrary to what the Movant Defendants argue, nowhere in such memorandum opinion

and order is the issue of the legal validity of the purported sales of domain names by the receiver

addressed **in any respect whatsoever**, nor has that issue ever been expressly determined by the

U.S. District Court for the Northern District of Texas or any other court.[8]

The Fifth Circuit directed the Court to vacate the receivership order and **every single order authorizing any sale of Novo Point, L.L.C.'s domain names**, including the purported sale to Lookout.[9] But, of course, as none of the purported purchasers of the domain names was ever a party to the action in this Court or the appeal in the Fifth Circuit **either before or after the Fifth Circuit issued its opinion and judgment**, the Fifth Circuit never had any reason or jurisdiction to: (a) specifically adjudicate any of the purported purchasers title to any of the domain names; (b) order any rescission of any such purported sale; (c) order any purported purchaser to return any domain name that had already purportedly been sold; or (d) order any restitution of any consideration paid by any purported purchaser for any domain name. *See Netsphere, Inc. v. Baron*, 703 F.3d 296 (5th Cir. 2012).

### E.   Movant Defendants' Extrinsic Evidence Actually Proves Plaintiff's Claims

The extrinsic evidence the Movant Defendants improperly presented (i.e., the domain name assignment and transfer agreements at Dkt. 129-1 at 5-9 of 11 and Dkt. 137 at 7-15 of 17) did have two consequences, neither of which was likely intended by the Movant Defendants. First, the evidence conclusively proved the truth of the allegations in Associated Recovery's amended complaint at 37 of 46, ¶ 26 that the transactional documents through which Damon Nelson purportedly transferred Novo Point's Domain Names to the Registrant Defendants "amounts to no more than a quitclaim deed" as a matter of law. The "assignment" clause set forth in those exhibits provides, "[s]eller hereby agrees to sell, assign, transfer, convey and deliver to [b]uyer all of [s]eller's rights, title and interest in, to, and under the Domain Names

---

[8]   Except perhaps by the Fifth Circuit and in a manner most unfavorable to the Movant Defendants. *See Netsphere, Inc. v. Baron*, 703 F.3d 296 (5th Cir. 2012).
[9]   *Id.*

pursuant to the terms of this [a]greement," which is a classic example of language defining a transactional document as a quitclaim instrument. Dkt. 129-1 at 5 of 11 and Dkt. 137 at 7 of 17.

Second, those quitclaim instrument conclusively disproved the avoidance defense raised by the Movant Defendants concerning their purported status as "bona fide purchasers" for value (Dkt. 129 at 4 of 13, ¶10; Dkt. 130 at 20-22; Dkt. 135 at 2 of 5; Dkt. 136 at 9 and 26 of 35) also because, as a matter of law, assignees under a quitclaim instruments are constructively charged with notice of all adverse third-party claims to ownership of the quitclaim property, and thus, can never claim status a "bona fide purchaser" for value as a defense to such a claim.

It would be unjust for the Court to dismiss any of Associated Recovery's claims for relief based upon an avoidance defense of limitations through a motion to dismiss because there are many significant issues, which can never be resolved in the context of a Rule 12(b)(6) motion, including extremely complex choice of law questions, the date upon which Associated Recovery's upon which rights of recovery accrued, the applicability of various legal and equitable doctrines precluding the application of such a defense (i.e., the continuing tort doctrine, fraudulent concealment, the discovery rule, temporary absences from a jurisdiction, tolling of the running of any statute during the receivership, etc.), and the resolution of such issues is always dependent upon the facts. Within the context of a Rule 12(b)(6) motion determination in which no evidence is allowed to be presented, it would be particularly unjust to apply the presumption in diversity actions that the law of the state in which the federal district court is situated should be applied unless a party asserting that another state's law should be applied meets his burden of proof. In effect to apply that presumption in ruling upon a 12(b)(6) motion would effectively shift the burden of proof on a limitations issue from the defendant to the plaintiff.

Associated Recovery has pleaded a claim against the Registrant Defendants based upon

the contractual obligation they assumed in the quitclaim instruments to "indemnify and hold [Novo Point, the receiver, Mr. Nelson and their attorneys, and even Novo Point's 'successors [and] assigns' (e.g., successor-in-interest, Associated Recovery)] harmless from and against, and to pay to [each of those parties including Associated Recovery] the amount of any and all Losses arising out of, based upon or relating to any of the Domain Names;" however, such claim is alleged strictly in the alternative and would be viable only if the Court holds that quitclaim instruments have force and effect. Dkt. 123 at ¶ 44-45 of 46.  Contrary to what Consolidated Defendants contend in their brief in support of their 12(b)(6) motion, any statute of limitations applicable to such a claim would not even begin to run until the Court were to hold that the quitclaim instruments are not void.

## F.     Rule 12(b)(7) and Rule 19(b) Motions Are Groundless

There is no reason to join the receiver, Damon Nelson, Novo Point, or Jeff Baron in this action because (a) in the absence of each, the Court can accord complete relief among the existing parties; (b) none of them claim any interest relating to the subject of this action whatsoever; and (c) the absence of none of those parties leaves an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations.  The Court has already held that the receiver and Mr. Nelson are immune to liability and neither currently has any right to exercise dominion or control over any property or any right that is a subject of this action.  Moreover, under the terms of the transaction(s) , neither the receiver, Mr. Nelson, nor Novo Point have any exposure to liability with respect to any claim asserted or which could be asserted in this civil action.

Although Mr. Baron may be viewed as having beneficial interest relating to the subject of this action, he might lack standing to assert any claim with respect to such interest.  It is not

---

feasible to join Jeff Baron because his joinder would deprive the Court of subject matter jurisdiction he is a citizen of the State of Texas and at least one defendant is too.

The Movant Defendants and Mr. Yu each had the burden of proof to establish the matters set forth above and they have failed to present any admissible evidence on any of those matters.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Associated Recovery respectfully request this Honorable Court to:

1.      Deny the Movant Defendants' and Mr. Yu's motions to dismiss in all respects; or,

2.      Alternatively, to defer dismissal of this action and grant leave to Associated Recovery to amend its complaint to cure any defects; and

3.      Grant such other relief, both special and general, at law and in equity to which Associated Recovery is justly entitled.


Respectfully submitted,

/s/ Jack T. Jamison
JACK T. JAMISON
State Bar No. 10562550
1509 Main St., No. 205
Dallas, Texas 75201
Tel:  (469) 802-9451
Cell: (214) 402-7654
jack@jackjamisonattorney.com

ATTORNEY FOR PLAINTIFF
ASSOCIATED RECOVERY, LLC

## CERTIFICATE OF SERVICE

On the 31st day of July, 2017, a true and correct copy of the foregoing document was electronically submitted to the Clerk of Court for the United States District Court for the Northern District of Texas, using the ECF system.  I hereby certify that I have served the lead counsel for each Defendant and each *pro se* Defendant through the Court's electronic filing and service system.

/s/ Jack T. Jamison
JACK T. JAMISON

ATTORNEY FOR PLAINTIFF
ASSOCIATED RECOVERY, LLC