# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **ASSOCIATED RECOVERY,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:16-CV-1025-L** |
| | § | (Consolidated with Civil Action Nos. |
| **JOHN DOES 1-44, *et al.*,** | § | 3:17- CV-424-L and 3:17-CV-651-L) |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are Plaintiff's Motion for Leave for Substitute Service and Extend Period for Service (Doc. 103), filed March 28, 2017; Defendant Lookout, Inc.'s Amended Motion to Dismiss Under 12(b) (Doc. 129), filed June 14, 2017; the Motion to Dismiss Complaint (Doc. 132), filed June 20, 2017, by Defendant Ye Yu with respect to internet domain fxf.com; and Consolidated Defendants' Rule 12(b) Motion to Dismiss Amended Complaint (Doc. 135), filed June 28, 2017, which was joined in and adopted by Defendant Steve Fortuna (Doc. 143). Also before the court is Buyers International Group, LLC's Motion to Dismiss (Doc. 89), which was filed August 16, 2016, in Civil Action 3:17-CV-651-L before the case was transferred to this court and consolidated with this action.[1]

For the reasons herein explained, the court **grants in part and denies in part** Defendants' Motions to Dismiss under Rule 12(b)(6) (Docs. 129, 132, 135, 143); **grants** BIG's Motion to

---

[1] The magistrate judge in Civil Action 3:17-CV-651-L granted Buyers International Group, LLC's ("BIG") alternative motion to transfer venue but left the motion to dismiss for this court to decide. After the case was transferred to this court, BIG did not file an amended motion to dismiss or join in the other motions to dismiss filed in the consolidated action. It instead chose to stand on the grounds asserted in its original motion to dismiss.

Dismiss (Doc. 89) filed in Civil Action 3:17-CV-651-L; **dismisses with prejudice** all of Plaintiff's claims and requests for relief, *except Plaintiff's breach of contract claim*, against the Movant Defendants under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Further, *except Plaintiff's breach of contract claim*, the court *sua sponte* **dismisses with prejudice** all claims by Plaintiff with respect to the remaining internet domain names and Defendants, many of which have not been served, as these claims are *identical* to those that the court has already dismissed and determined to be fundamentally flawed in ruling on moving the Movant Defendants' motions to dismiss. Plaintiff's request to amend its pleadings is **granted** with respect to its breach of contract claim and **denied** in all other respects. Plaintiff's Motion for Leave for Substitute Service and Extend Period for Service (Doc. 103) is **denied without prejudice** as to Defendants Floridians, LLC; Media Options, Inc.; News, Ltd.; and Sylvia O'Donohoe and **denied as moot** as to all other Defendants.

## I.     Factual and Procedural Background

This consolidated action involves the court-approved sale and transfer of internet domain names ("Domain Names") at issue in this lawsuit from Novo Point, LLC ("Novo Point") to various individuals and entities or the predecessors-in-interest to those individuals and entities. The sales and transfers of the Domain Names were authorized by former Senior United States District Judge Royal Furgeson ("Judge Furgeson") on February 4, 2011, January 31, 2012, and May 3, 2012, in *Netsphere, Inc., et al. v. Jeffrey Baron, et al.,* Civil Action 3:09-CV-988-L ("*Netsphere* Action" or "*Netsphere*"),[2] to pay receivership fees incurred in conjunction with the receivership established on

---

[2] The *Netsphere* Action was assigned to the undersigned in June 2013 after Judge Furgeson retired.

November 24, 2010, over Jeffrey Baron's ("Baron") personal property and entities he owned or controlled, including Novo Point and Quantec, LLC ("Quantec").

## A. *Netsphere* Action

The *Netsphere* Action was originally brought by Netsphere Inc., Manila Industries, Inc., and Munish Krishan against Baron and Ondova Limited Company ("Ondova") for breach of a settlement agreement or Memorandum of Understanding ("MOU") that was intended to settle all disputes between the parties regarding the ownership and sale of various internet domains. The receivership was established in November 2010 in an effort to control Baron's vexatious litigation conduct in the *Netsphere* Action and the related bankruptcy proceeding initiated by Baron's company Ondova.[3]

Baron and Novo Point filed numerous interlocutory appeals challenging the order establishing the receivership order and orders subsequently entered by the district court pertaining to the receivership, including the February 2011, January 2012, and May 2012 orders authorizing the receiver's sale and transfer of the Domain Names now at issue in this consolidated action. Baron and Novo Point contended that the receivership orders entered by the district court were void and unenforceable because the district court lacked jurisdiction to establish the receivership and seize Baron's and Novo Point's assets. They also contended that Baron's vexatious conduct did not justify the imposition of the receivership or the seizure and liquidation of the assets of Novo Point, which was not a party to the *Netsphere* Action.

---

[3] A more detailed summary of the factual history of the *Netsphere* Action and appeals taken from orders entered in that case, the related proceedings in the *Ondovo* bankruptcy, and the events that led to the establishment of the receivership is included in *Netsphere, Inc. v. Baron*, 703 F.3d 296 (5th Cir. 2012) ("*Netsphere I*"); *Netsphere, Inc. v. Baron*, 799 F.3d 327 (5th Cir. 2015) ("*Netsphere II*"); and *Netsphere, Inc. v. Gardere Wynne Sewell, L.L.P*, 657 F. App'x 320 (5th Cir. July 8, 2016) ("*Netsphere III*").

While the appeals were pending, the Fifth Circuit denied all of Baron's and Novo Point's requests to stay the sales of the Domain Names that are now the subject of this consolidated action. In *Netsphere I*, the Fifth Circuit addressed the numerous appeals in a December 18, 2012 opinion. *Netsphere, Inc.*, 703 F.3d at 315. *Netsphere I* considered whether a district court has authority to establish a receivership to control a vexatious litigant like Baron and grant a receiver control of the litigant's assets "that were not at issue in the underlying litigation over domain names." *Id.* at 305. The Fifth Circuit agreed with Baron and Novo Point that the district court exceeded its authority in establishing a receivership for this purpose and ordered the district court to "dissolve the receivership expeditiously, but stopped short of immediately releasing all of the assets under receivership." *Netsphere, Inc.*, 657 F. App'x at 321 (citing *Netsphere, Inc.*, 703 F.3d at 313-14). In reversing the order establishing the receivership, the Fifth Circuit in *Netsphere I* recognized that a district court has inherent authority to control its docket and vexatious litigants like Baron but determined that, in this case, the district court simply chose the wrong means to control Baron's disruptive conduct. *Id.* at 311. While Baron's and Novo Point's challenge on appeal to the order establishing the receivership was successful, the Fifth Circuit in *Netsphere I* recognized that Baron was not blameless for the chaotic situation that ultimately gave rise to the receivership. *See id.*

"*Netsphere I* also considered who should pay for the receivership" and the fees and expenses incurred as a result of the receivership. *Netsphere, Inc.*, 657 F. App'x at 321. The court in *Netsphere I* explained that, when a receivership is proper, the receivership fees and expenses are generally "a charge upon the property administered." *Netsphere, Inc.*, 703 F.3d at 311. The court noted that, "[w]hen a receivership is improper or the court lacks equitable authority to appoint a receiver, the party that sought the receivership at times has been held accountable for the receivership

fees and expenses." *Id.* at 311-12 (citing *W.F. Potts Son & Co. v. Cochrane*, 59 F.2d 375, 377-78 (5th Cir. 1932)). Baron advocated this approach in *Netsphere I*, contending that the fees and expenses incurred as a result of the receivership should not be paid out of the assets and property seized, including the Domain Names already sold by the receiver, because the appointment of the receiver was done in bad faith or the result of collusion. *Netsphere, Inc.*, 703 F.3d at 313. The Fifth Circuit disagreed and "ordered that the receivership assets be charged for 'reasonable receivership expenses'" because "the receivership was imposed as a result of Baron's own vexatious conduct." *Netsphere, Inc.*, 703 F.3d at 321 (citing *Netsphere, Inc.*, 703 F.3d at 313). The *Netsphere I* court also took "into account that, to a large extent, Baron's own actions resulted in more work and more fees for the receiver and his attorneys." *Netsphere, Inc.*, 703 F.3d at 313. As there was no indication that the receivership was the result of an improper motive or malice, but instead was merely an attempt to control Baron's "vexatious litigation tactics," the court in *Netsphere I* concluded that "charging the current receivership fund for reasonable receivership expenses, without allowing any additional assets to be sold, is an equitable solution," *id.*, and remanded the case with instructions for the district court to wind up the receivership and pay the remaining receivership fees and expenses from the cash currently in the receivership. *Id.* at 315. Additionally, the Fifth Circuit directed the district court to reconsider, as appropriate, whether fees and expenses previously paid out of the receivership fund should be reduced but did not reverse or vacate the prior orders that authorized the sales and transfers of Domain Names or awarded fees and expenses paid from the cash in the receivership fund, which was generated from the prior sales of Domain Names at issue in this case. *Id.* at 314-15.

Novo Point appealed the decision in *Netsphere I*, contending that the Fifth Circuit erred in concluding that equity permits a federal court to retain seized "property to pay the costs of imposing

an unauthorized receivership" when the district court lacks jurisdiction to impose a receivership over the property that is not the subject of the underlying claim or dispute. Pet. for Writ of Cert. at *2-6, *Novo Point, LLC v. Vogel,* 2014 WL 2875526 (2014) (No. 13-1530) (footnote omitted). Novo Point's Petition for Writ of Ceriorari was denied by the United States Supreme Court on November 3, 2014. *Novo Point LLC v. Vogel*, 135 S. Ct. 436 (2014).

On remand, Judge Furgeson entered an order in the *Netsphere* Action "in May 2013 awarding new fees and adjusting fees already paid in an attempt to comply with [the Fifth Circuit's] order. However, the process of winding up the receivership was dragged out almost two more years after Baron was pushed into an involuntary bankruptcy" by his former attorneys. *Netsphere, Inc.*, 657 F. App'x at 321. In March 2015, the undersigned entered an order discharging the receiver and awarding additional fees to the receiver and the receiver's attorneys and employees for services performed from May 2013 until the receiver's discharge. *Id.* at 322. These payments depleted the remaining cash in the receivership accounts. *Id.* All other receivership assets and domain names that had not been sold prior to the Fifth Circuit's December 2012 opinion to fund the receivership were returned to Baron, Novo Point, and Quantec as directed by the Fifth Circuit.

Baron, Novo Point, and Quantec appealed the May 2103 and March 2015 district court orders, as well as other orders. The initial appeal of the May 2013 order was dismissed by the Fifth Circuit in *Netsphere II* for lack of appellate jurisdiction. *Netsphere, Inc.*, 799 F.3d at 329. After the March 2015 order was entered, two separate appeals were filed by attorneys and entities acting on behalf of Baron, Novo Point, and Quantec on April 16, 2015, and April 25, 2015. The first appeal, which was brought was brought on behalf of Baron, Novo Point, and Quantec, was dismissed as of November 25, 2015, for want of prosecution. The second appeal filed by Novo Point and Quantec

challenged the May 2013 and March 2015 fee orders and 26 other orders entered in *Netsphere*

between April 2011 and January 2014 that granted fee applications by the receiver and the receiver's

attorneys and employees.

In an opinion entered on July 8, 2016, in *Netsphere III*, the Fifth Circuit affirmed the orders

of the district court. *Netsphere, Inc.*, 657 F. App'x at 324. Novo Point and Quantec had asserted a

number of challenges on appeal to the fee awards based on constitutional, reasonableness, and

subject matter jurisdiction grounds, but the Fifth Circuit held that they had waived these arguments

by not raising them in the district court. *Id.* at 333. While Novo Point and Quantec had objected to

the March 2015 order, its objections primarily concerned the computation of the amount of cash on

hand in the receivership, not the constitutional grounds raised on appeal, and they did not challenge

any specific fee award. *Id.* The *Netsphere III* court further concluded that any argument by Novo

Point and Quantec as to "whether fees could be charged against [their] assets in the receivership"

was squarely foreclosed by the law of the case doctrine" because Novo Point's and Quantec's "assets

were part of the receivership and *Netsphere I* ordered the district court to award fees using the

receivership assets." *Id.* at 333, n.3. The Fifth Circuit, therefore, declined to revisit its prior

resolution of the receivership fees issue decided in *Netsphere I. Id.* (citing *Af–Cap Inc. v. Republic

of Congo*, 383 F.3d 361, 367 (5th Cir. 2004)).

The *Netsphere III* court also rejected Novo Point's and Quantec's "jurisdictional arguments,"

concluding that the arguments "were not jurisdictional at all" but rather an attempt to repackage their

"merits arguments as jurisdictional to avoid the consequences of waiver." *Netsphere, Inc.*, 657 F.

App'x at 324. The Fifth Circuit explained that, contrary to Novo Point's and Quantec's contention,

it had jurisdiction over the appeal, and the district court had diversity jurisdiction over the contract

dispute in *Netsphere.* The *Netsphere III* court clarified that Novo Point and Quantec "may think the district court used that jurisdiction to decide parts of this case erroneously, but that does not implicate subject-matter jurisdiction." *Id.*

As explained below, Plaintiff Associated Recovery, LLC ("Plaintiff" or "Associated Recovery") brought the various civil actions that make up this current consolidated action in late 2015 and early 2016 while Novo Point's appeal in *Netsphere III* was pending.

**B.      Consolidated Action No. 3:16-CV-1025-L**

**1.      Relief Requested by Plaintiff in Consolidated Action**

In this consolidated action, Associated Recovery alleges that it is suing as the assignee of Novo Point, pursuant to a written assignment in which Novo Point assigned its ownership of and all rights to the Domain Names to Associated Recovery, including any right to trademark protection and causes of action. The Third Amended Complaint ("Third Amended Complaint" or "Complaint") filed by Plaintiff in this consolidated action includes legal claims and equitable requests for relief against all of the individuals and entities named as defendants in this consolidated action (collectively, "Defendants") that Plaintiff alleges are the current registrants or registrars for the Domain Names that were unlawfully seized in *Netsphere* as receivership assets and sold or transferred to Defendants or Defendants' predecessors-in-interest without Novo Point's permission or knowledge. In a nutshell, Plaintiff contends that, because the Fifth Circuit's ruling in *Netsphere I* invalidated the receivership order and orders approving the sales of the Domain Names, it is entitled recover all rights and title to the Domain Names, as if the sales of the Domain Names never took place, without compensating the parties that purchased the Domain Names. *See* Pl.'s Resp. to BIG's Mot. to Dismiss 1-3 (Doc. 98). Alternatively, or in addition to the return of the Domain

Names, Plaintiff contends that it is entitle to recover damages and all profits made by Defendants on the Domain Names.

Specifically, Associated Recovery asserts claims and requests for relief based on the Federal Declaratory Judgment Act, 28 U.S.C. § 2202; the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. §1125(d); unfair competition and common law trademark infringement; conversion; and unjust enrichment. With respect to these claims and its equitable requests for relief, Associated Recovery seeks the transfer of all Domain Names from Defendants to Associated Recovery in addition to an award consisting of Defendants' profits and actual damages sustained by Associated Recovery and Baron, Novo Point's predecessor-in-interest, or, alternatively, an award of statutory damages of not less than $10,000 and not more than $100,000 per Domain Name; imposition of a constructive trust on Defendants' profits; and unspecified injunctive relief. In addition, Associated Recovery seeks declaratory relief in the form of an order: (1) declaring that the district orders in the *Netsphere* litigation authorizing the sale of the Domain Names are void *ab initio* such that none of the sales or transfers of ownership of the Domain Names ever divested Novo Point of any right, title, or ownership interest to the Domain Names; (2) declaring that Novo Point's transfer of ownership of the Domain Names to Associated Recovery is valid; (3) requiring Defendants to transfer the Domain Names to Associated Recovery; and (4) quieting Associated Recovery's title to the Domain Names. In the alternative, Associated Recovery asserts claims against Defendants SocialBon, Inc.; Floridians, LLC; Media Options, Inc.; Strong, Inc.; Telepathy, Inc.; News, Ltd.; JRS Holdings, LLC; Sylvia O'Donohoe; Virtual Investments, LLC; and Quinn Vesey for: (1) breach of contract to recover attorney's fees under Chapter 38 of the Texas Civil Practices and Remedies Code and actual damages for "any and all Losses arising out of, based upon

or relating to any of the Domain Names," pursuant to an indemnification clause included in the agreement assigning and transferring the Domain Names, Pl.'s Compl. ¶¶ 6, 49; and (2) intentional interference with an existing contract to recover actual damages allegedly incurred by Novo Point as a result of these Defendants' intentional interference "with Novo Point's contractual relationship with the domain name registrar through which it had registered those Domain Names with a domain name registry." *Id.* ¶ 50.

Except for Plaintiff's breach of contract claim, all of the claims asserted by Plaintiff in this consolidated action against Defendants are based on the premise that the *Netsphere* receiver's sales and transfers of Domain Names to Defendants or Defendants' predecessors-in-interest and the district court orders authorizing the sales and transfers are void, of no legal effect, and never divested Novo Point of any right, title, or ownership interest in the Domain Names because Novo Point appealed the district court's orders that authorized the receiver to sell the Domain Names, and the Fifth Circuit decided this issue in Novo Point's favor as follows:

29. On December 18, 2012, the U.S. Court of Appeals for the Fifth Circuit issued a single opinion concerning numerous appeals of each of the above-referenced orders of the District Court . . . .

30. In the opinion, the Fifth Circuit reversed each of the orders, instructed the District Court to vacate each of the orders, and explained that the District Court never had subject-matter jurisdiction over any of the domain names or any power to issue any of the orders because no issue concerning any such domain name had ever been raised in the civil action independently from those pertaining to the receivership-related orders, and Novo Point had never even been a party in the action.

31. On April 19, 2013, the Fifth Circuit reversed each of the District Court's above referenced orders [orders establishing the receivership and approving the sales of Domain Names] through a separate judgment with respect to each appeal of each such order and the mandate on each such judgment.

Pl.'s Compl. ¶¶ 29-31 (internal citations omitted). Plaintiff further alleges that this court's February 28, 2014 order in *Netsphere* vacating the April 22, 2011 order appointing Damon Nelson as the manager of Novo Point's Domain Names, and this court's opinion in *Baron v. Schurig*, No. 3:13-CV-3461-L, 2014 WL 25519 (N.D. Tex. Jan. 2, 2014), lend further support to the conclusion that the *Netsphere* receiver's sales and transfers of Domain Names to Defendants or Defendants' predecessors-in-interest and the district court orders authorizing the sales and transfers are void, of no legal effect, and never divested Novo Point of any right, title, or ownership interest in the Domain Names.

### 2.    Transfer and Consolidation of Virginia and Marshall Actions

This consolidated action includes Defendants from two separate federal actions that Associated Recovery originally filed in the Eastern District of Virginia, Alexandria Division ("Virginia Action"), and the Eastern District of Texas, Marshall Division ("Marshall Action"). As herein explained, other Defendants were added after these cases were transferred to this court and consolidated into one action. Plaintiff filed the Virginia Action, *Associated Recovery, LLC v. John Does 1-44, et al.*, Civil Action No. 1:15-CV-1723, on December 31, 2015, against John Does 1-44 and 44 associated internet domain names. On March 4, 2016, Associated Recovery moved for default judgment in the Virginia Action against domain names 744.com; 3dcamera.com; fxf.com; jtz.com; kou.com; ocu.com; ruten.com; sdu.com; uhw.com; vgi.com; yey.com; yjx.com; ylz.com; and yte.com with respect to the ACPA claim asserted in that action, and a default judgment was entered with respect to these domain names on May 18, 2016.[4]

---

[4] The ACPA allows the owner of a mark asserting a claim for cyberquatting to file an "in rem civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located" when certain requirements are satisfied. *See* 15 U.S.C.

The Virginia Action was transferred in stages to the Northern District of Texas, Dallas Division between April 15, 2016, and February 14, 2017, after various motions to transfer venue to the Northern District of Texas were granted.[5] The transfer of the Virginia Action resulted in two actions being opened in this district: 3:16-CV-1025-L and 3:17-CV-424-L. Initially, all defendants in the Virginia Action, except those against whom Plaintiff had moved for default judgment, were transferred to this district. After the default judgment against 744.com; fxf.com; jtz.com; ocu.com; vgi.com; yjx.com; and yte.com was set aside, Plaintiff's claims as to these *in rem* domain name defendants were also transferred to this district by orders dated April 15, 2016; July 1, 2016; and February 14, 2017. The claims against the defaulting defendant domain names 3dcamera.com; kou.com; ruten.com; sdu.com; uhw.com; yey.com; and ylz.com were not transferred to the Northern District of Texas, as the final judgment that was entered against these defendants in the Virginia Action was not set aside and obviated the need to transfer Plaintiff's claims against these defendants.[6]

Associated Recovery filed the Marshall Action, *Associated Recovery, LLC v. Linda Butcher, et al.*, Civil Action No. 2:16-CV-126, on February 8, 2016, against 64 named defendants identified

§ 1125(2)(A). According to the proposed findings and conclusions entered by the magistrate judge in the Virginia Action on March 25, 2016, Associated Recovery sought entry of default judgment against the domain names identified but not the corresponding John Doe Defendants associated with the domain names.

[5] United States District Judge Anthony J. Trenga determined that transfer to the Northern District of Texas was appropriate in light of: (1) the long history of litigation in this district involving Baron, Novo Point, and the receivership assets; (2) the order entered by this court in the *Netsphere* Action retaining jurisdiction over issues raised in the Virginia Action; (3) the forum selection clauses in certain agreements assigning and transferring the Domain Names that required all disputes arising from the agreements to be adjudicated in the Northern District of Texas, Dallas Division or the state district courts of Dallas County, Texas; and (4) the related action filed in federal court in Texas by Associated Recovery.

[6] Although default judgment was entered as to these domain names by the district court in the Virginia Action, Plaintiff's Third Amended Complaint includes certain Defendants in this action, either as named Defendants or John Does, that are alleged to be the registrars or registrants of the domain names against which default judgment was previously sought and obtained.

as registrants of the Domain Names.  Like the Virginia Action, several defendants in the Marshall Action moved to transfer venue to this district. The Marshall Action was transferred to the Northern District of Texas, Dallas Division, on March 6, 2017, and assigned the Civil Action No. 3:17-CV-651-L.  Before the Marshall Action was transferred to this district, 22 of the defendants were terminated as parties, leaving the following 44 defendants ("Marshall Defendants"): Linda Butcher; CBRE Group, Inc.; Vivian Rosenthal; William Wolfson; PriveCo, Inc.; Steve Parma; Sol Perlstein; Radical Investments Management, LLC; Tumult, Inc.; DGB Partner, Inc.; TobyClements.com, LLC; True Magic, LLC; Janno, LLC; Power Home Technologies, LLC; Lookout. Inc.; Slice Technology, Inc. f/k/a Project Slice, Inc.; Steve Fortuna; SocialBon, Inc.; Floridian, LLC; MOINC-US; Adam Strong; Strong, Inc.; Telepathy, Inc.; News, Ltd.; Worldwide Retailing, LLC; State Farm Mutual Automobile Insurance Company;  Electronic Arts, Inc.; Virtual Investments, LLC; Sylvia O'Donohoe; JRS Holdings, LLC; All-Pro Fasteners, Inc.; Buyers International Group, LLC; Creation Media, LLC; Dharshinee Naidu; Kate Spade; Quinn Veysey; Alansis Corporation; Media Options, Inc.; Fantasy Spin Game, LLC; GoldRun, Inc.; Alansis.com Incorporated.

On March 10, 2017, the court entered an order in Civil Action 3:17-CV-651-L, requiring Plaintiff to show cause why its claims against Vivian Rosenthal; William Wolfson; Steve Parma; Sol Perlstein; TobyClements.com, LLC; Janno, LLC; Steve Fortuna; SocialBon, Inc.; Floridian, LLC; MOINC-US; News, Ltd.; Worldwide Retailing, LLC; Sylvia O'Donohoe; JRS Holdings, LLC; Dharshinee Naidu; Kate Spade; and GoldRun, Inc. should not be dismissed under Federal Rule of Civil Procedure 4(m) for failure to effect service within 90 days.[7]  On March 30, 2017, Plaintiff filed

---

[7] Vivian Rosenthal, MOINC-US, Steve Parma, and Kate Spade are not included as Defendants in Plaintiff's Third Amended Complaint and, therefore, are no longer parties to this action.

documents indicating that two summons were previously returned as executed with respect to SocialBon, Inc. and JRS Holdings, LLC. As to these and other Defendants included in the Third Amended Complaint that remain unserved, Plaintiff moved for leave on March 28, 2017, for an extension to May 15, 2017, to serve "a few" of these Defendants by personal service or mail using newly obtained addresses and requested that it be allowed to serve the remaining of these Defendants by substitute service in the form of an e-mail or publication on a domain name trade message board (Doc. 103). Plaintiff did not identify which of the unserved Defendants it seeks to serve by means of substitute service. Plaintiff justified its delay and request for relief in part on the court's consolidation of Civil Action No. 3:17-CV-651-L with Civil Action No. 3:16-CV-1025-L, which Plaintiff asserts will necessitate the filing of an amended complaint in the consolidated action.

The consolidation of cases referenced by Plaintiff occurred on March 23, 2017. The consolidation order entered by the court in consolidated Civil Action Nos. 3:17-CV-424-L and 3:17-CV-651-L with Civil Action No. 3:16-CV-1025-L and directed Plaintiff to notify the court in writing by March 31, 2017, whether there were any other pending cases or cases that Plaintiff anticipated filing in the coming year that involved or would involve claims pertaining to receiver's sale of domain names in the *Netsphere* litigation. In a March 30, 2017 Notice, Plaintiff indicates its intent to bring one or more additional *in rem* actions in federal or state court in the next year, but, to date, it does not appear that any such cases have been filed. Plaintiff also indicates that it intends to refile actions if the court denies its Motion for Leave for Substitute Service and Extend Period for Service and dismisses without prejudice any Defendants. Regarding the defendants in the Virginia Action against whom default judgment was entered, Plaintiff states that "there are no additional claims against [these] defendants remaining in the Virginia Action," but the claims against these

defendants could be transferred to this court if the defendants were to make an appearance in the Virginia Action. Notice 3. Plaintiff further states that there were additional defendants in the Virginia Action who had not made an appearance but were transferred to this court because motions for default judgment against these defendants had not been filed in the Virginia Action. Plaintiff reasons that any motions for default judgment against these defendants would be brought in this court, not the Virginia Action.

### 3. Domain Names and Defendants Included in Third Amended Complaint

On March 23, 2017, the court also ordered Plaintiff to filed an amended consolidated pleading that set forth all of its claims against all Defendants in this consolidated action. This deadline was subsequently extended to May 31, 2018. After filing its Third Amended Complaint on May 31, 2018, Plaintiff filed another Third Amended Complaint without leave of court on June 1, 2018. The two filings appear to be identical, except the second filing includes eleven attachments consisting of 139 pages of documents that were previously filed in the *Netsphere* Action and appeals to the Fifth Circuit of orders entered in *Netsphere*. Although filed after the deadline set by the court, no Defendant objected to the Third Amended Complaint filed on June 1, 2017, and the court determines that no Defendant suffered any legal prejudice as a result of the filing. Accordingly, the Third Amended Complaint (Doc. 123), filed on June 1, 2017, is the operative live pleading for purposes of ruling on the motions to dismiss filed by Defendants.

Plaintiff's Complaint includes a *significantly* larger number of additional Domain Names and named Defendants that were not previously included in prior pleadings in this court or the transferred actions. All Domain Names and Defendants now at issue in this consolidated action are included in paragraph nine of the Complaint, except John Doe 26, which is referenced in paragraph 2xx of

the Complaint and appears to have been inadvertently omitted from the list in paragraph nine. John Doe 26 is associated with the Domain Name wyd.com that was included in Plaintiff's Complaint in the Virginia Action and transferred to this court. Defendants referenced in the Complaint are either the registrants or registrars for the Domain Names listed. Because of the numerosity of the Domain Names and Defendants included in the Complaint, the court, instead of listing them all in this opinion, attaches as Exhibit A to this opinion the list of 206 Domain Names and corresponding Defendants included in paragraph nine of the Complaint, to which the court added John Doe 26 and wyd.com. Apparently for the same reason, the clerk of the court did not include all Domain Names or the corresponding Defendants on the docket sheet in this consolidated action. There is no indication from the docket sheet in this consolidated action whether the newly added Defendants have been served, although approximately nine months have passed since Plaintiff filed its Third Amended Complaint.

### 4.      Pending Motions to Dismiss

On June 14, 2017, Defendant Lookout, Inc. ("Lookout") moved to dismiss Plaintiff's claims for lack of standing; failure to state a claim; and, alternatively, failure to join a necessary party. Lookout also contends that Plaintiff's claims are barred by res judicata or claim preclusion; collateral estoppel or issue preclusion; statute of limitations; and laches.

On June 28, 2017, Quinn Veysey; Priveco, Inc.; Virtual Investments, LLC; Telepathy, Inc.; Strong, Inc.; Adam Strong; Creation Media, LLC; Unicorn Ranch, LLC (in lieu of Onig, LLC); True Magic, LLC; CBRE Group, Inc.; Power Home Technologies, LLC; Electronic Arts Inc.; State Farm Mutual Automobile Insurance Company; Tumult, Inc.; Radical Investments Management, LLC; Alansis.Com, Inc.; All-Pro Fasteners, Inc.; Fantasy Spin Game LLC; Slice Technologies, Inc.; DBG

Partners, Inc.; Linda Butcher; 028.com; 744.com; fny.com; jtz.com; kgj.com; kmq.com; kxq.com; kxw.com; lnm.com; luohe.com; meq.com; ocu.com; pixie.com; qmh.com; sqg.com; vcz.com; vgj.com; wyd.com; xaq.com; xff.com; xsg.com; ycx.com; ygx.com; yjr.com; yjx.com; yqp.com; yqt.com; yrn.com; yte.com; yyg.com; zdp.com; zhd.com; zulin.com; and zzm.com[8] ("Consolidated Defendants") moved to dismiss under Rule 12(b), contending that Plaintiff's claims are barred by applicable statute of limitations, collateral estoppel, failure to state a claim, and failure to join a necessary party. Defendant Steve Fortuna joined in and adopted Consolidated Defendants' motion to dismiss. (Doc. 143).

On June 20, 2017, pro se Defendant Ye Yu, who is associated with Domain Name fxf.com moved to dismiss Plaintiff's claims, contending that Plaintiff's claims are frivolous and baseless because Plaintiff cannot satisfy the requirements for cybersquatting under the ACPA, and contrary to Plaintiff's assertion, neither the district orders authorizing the Domain Name sales nor the sales of the Domain Names were reversed by this court or the Fifth Circuit but instead were upheld and used to pay the attorney's fees incurred as a result of Baron's litigious conduct. Ye Yu contends that the relief sought by Plaintiff—return of the Domain Names without payment or compensation to Defendants—is the equivalent of requiring the purchasers of the Domain Names to pay for Baron's attorney's fees in a case in which he was labeled as vexatious litigant. Ye Yu asserts that it would also reward Baron's conduct by allowing Associated Recovery, a shell company likely created by Baron to bring this lawsuit and avoid any liability incurred by Associated Recovery, to reap the profits generated by the current Domain Name owners as a result of their investment of time and

---

[8] Because the domain names are not listed as Defendants in this consolidated action and only referenced with respect to the corresponding named Defendants and John Doe Defendants, the court treats the motion by these Domain Names as a motion by the named Defendants and John Doe Defendants that correspond to these Domain Names.

financial resources. Ye Yu contends that such a result would be inequitable. In addition, Ye Yu contends that the action should be dismissed because service as to him was defective, and Plaintiff failed to join necessary parties Novo Point and Baron. Ye Yu contends that Baron should have some "skin in the game" because he is the real beneficiary of Associated Recovery and the person "pull[ing[ the string[s]" of Associated Recovery. Ye Yu Resp. 16. Ye Yu maintains that, even if the court required Associated Recovery to compensate the current Domain Name owners as a condition of transferring the Domain Names, Associated Recovery could avoid paying Defendants by filing for bankruptcy if Novo Point and Baron are not joined as parties to this action. Ye Yu also joined the arguments made by Lookout and the Consolidated Defendants. As noted, BIG also moved to dismiss, based on collateral estoppel and other grounds, Plaintiff's claims against it (Doc. 89) on August 16, 2016, in Civil Action 3:17-CV-651-L, before the case was transferred to this court and consolidated with this action. The court refers collectively to all Defendants that filed motions to dismiss as "Movant Defendants."

As the court determines that Movant Defendants' contention under Rule 12(b)(6) that all claims asserted by Associated Recovery in this consolidated action are barred by collateral estoppel is dispositive as to all claims asserted by Plaintiffs, except its breach of contract claim, which the court addresses separately, its analysis focuses on these issues. The court is familiar with and aware of the extensive litigation surrounding the receivership, the domain names associated with Novo Point, and the inconsistent positions taken in various proceedings by Novo Point, Baron, and others acting on their behalf regarding which entities or persons own or have authority to control Novo Point and its assets. The court is also well aware of Baron's litigious conduct in hiring, firing, and refusing to pay attorneys and putting his companies in bankruptcy to avoid liability. Accordingly,

Movant Defendants' concerns regarding the nonjoinder of Novo Point and Baron as parties in this action are not unfounded. The court, however, believes that its resolution of the issues raised and the claims asserted in this case will preclude future litigation by Novo Point or purported assignees and predecessors of Novo Point related to the sales and transfers of Domain Names. Further, although based on Rule 12(b)(1), the standing arguments raised by the Movant Defendants actually concern Associated Recovery's statutory standing, not Article III standing. Consequently, the court need not address these standing arguments before considering whether dismissal under Rule 12(b)(6) is appropriate. *See Blanchard 1986, Ltd. V. Park Plantation, LLC*, 553 F.3d 405, 409 (5th Cir. 2008) (distinguishing between statutory and Article III standing); *see also Taylor v. Acxiom Corp.*, 612 F.3d 325, 339-40 (5th Cir. 2010) ("We need not address the statutory standing issue because we have affirmed the district court's dismissal under Rule 12(b)(6).") (citations omitted).

## II.      Standard for Rule 12(b)(6) - Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)

(quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

**III.     Analysis**

**A.     Collateral Estoppel or Issue Preclusion**

**1.     Movant Defendants' Contentions**

Based on the Fifth Circuit's December 18, 2012 opinion in *Netsphere* and the Fifth Circuit's subsequent affirmance of orders entered by this court in winding down the receivership in *Netsphere*, Movant Defendants contend that Associated Recovery is precluded from relitigating the issue that its predecessors-in-interest Novo Point and Baron argued and lost in *Netsphere* regarding the receiver's sale and transfer of Domain Names at issue in this case. Movant Defendants contend that the judgment in *Baron, et al. v. Vogel, et al.*, Civil Action No. 3:15-CV-232-L, and the Fifth Circuit's affirmance of the judgment in that case similarly support their collateral estoppel argument. Movant Defendants, therefore, contend that all of the claims asserted by Associated Recovery in this action, which are premised on the validity of the receiver's sale and transfer of Domain Names and related orders entered by the district court authorizing the sales, are barred by federal collateral estoppel or issue preclusion.

Movant Defendants contend that all of the requirements for collateral estoppel are satisfied because the issues raised by Associated Recovery in this case are the same as those previously litigated and resolved in *Netsphere*, and the resolution of these issues was necessary to the judgment entered in that case. According to Movant Defendants, Associated Recovery contends in this case, as its predecessors-in-interest Novo Point and Baron did in *Netsphere*, that the imposition of the receivership over Baron's and Novo Point's assets and the sale of the Domain Names as part of the receivership were improper. In this regard, Movant Defendants contend that Baron and Novo Point argued on appeal in *Netsphere*, as Associated Recovery argues now, that the receivership order and

orders authorizing the receiver's sale of Domain Names were improper, and Baron expressly sought to recover the costs of the receivership and asked for "the return of all property" and "receivership assets disbursed while the matter has been on appeal." Consolidated Defs.' Mot. to Dismiss Br. 9 (citing and quoting Br. of Appellant Baron at 69-71, *Netsphere v. Baron*, No. 10-11202 (5th Cir. March 28, 2011); and Reply Br. of Appellant Baron at 69-71, *Netsphere v. Baron*, No. 10-11202 (5th Cir. July 15, 2011)). Movant Defendants, therefore, contend that the issues raised by Associated Recovery in its Complaint are identical to those raised and previously resolved by the Fifth Circuit.

Movant Defendants further assert that Plaintiff's contention that the receiver's sales of Domain Names and district orders authorizing the sales are void *ab initio* or were reversed by the Fifth Circuit is not supported by the record or the Fifth Circuit's December 18, 2012 opinion in *Netsphere*. Movant Defendants maintain that, while the Fifth Circuit ordered that "[n]o further sales of domain names or other assets are authorized," it made no provision for the return of Domain Name assets to Baron or Novo Point that had already been sold as part of the receivership and did not order any restitution be paid to Baron or Novo Point for the Domain Names that had already been sold. Lookout Mot. to Dismiss Br. 7-8. Movant Defendants contend that the Fifth Circuit, instead, concluded that the equitable solution, given Baron's "longstanding vexatious ligitation tactics," was to charge the receivership fund for reasonable receivership expenses without allowing any additional assets to be sold. Consolidated Defs.' Mot. to Dismiss Br. 8 (citing *Netsphere Inc.*, 703 F.3d at 310-13). Movant Defendants maintain that the Fifth Circuit's decision in *Netsphere I* to not dissolve the receivership immediately, its denial of Novo Point's and Baron's requests to stay the sales of the Domain Names pending appeal, and its decision in *Netsphere III* lend further support to the conclusion that Plaintiff's claims, which were alleged to have been assigned to it by Novo Point, are

barred collateral estoppel. Movant Defendants contend that, because Associated Recovery's rights and claims arise from the alleged assignment from Novo Point, Associated Recovery stands in shoes of Novo Point and has no greater rights than Novo Point or Baron to litigate issues that have already been decided against Novo Point or Baron.

### 2.    Plaintiff's Contentions

Plaintiff disagrees that the judgments relied on by Movant Defendants support their arguments regarding collateral estoppel. Plaintiff contends in response to BIG's motion that its claims and request for return of the Domain Names are supported by the Fifth Circuit's December 18, 2012 opinion in *Netsphere*, which according to Plaintiff, vacated the receivership order and "*expressly reversed*" the orders authorizing the sales of Domain Names:

> The Fifth Circuit ultimately found that the Receivership Order was outside the district court's jurisdiction and vacated that order. *Netsphere v. Baron*, 703 F.3d 296 (5th Cir. 2012). The other district court orders then fell with the Receivership Order. In respect to the order[s] permitting the sale of domain names the Fifth Circuit issued a judgment holding that "the judgment of the District Court is reversed, and the cause is remanded to the District Court for further proceedings in accordance with the opinion of this Court." *Id*. In light of the lack of district court's lack of jurisdiction over the domain names, the Fifth Circuit *expressly reversed* the Order[s] approving the sale of the domain names. As a matter of simple logic, there is no way the Fifth Circuit could have done otherwise in light of its conclusion that the district court lacked jurisdiction over the domain names, though many Defendants seem to harbor the unfounded, illogical, demonstrably false notion that the Sale Order[s] somehow survived in the aftermath of the *Netsphere* opinion.

Pl.'s Resp. Br. 3-4 (Marshall Action, Doc. 98).

Plaintiff takes a somewhat different approach in response to the other motions to dismiss. On one hand, Plaintiff continues to maintain that it is entitled to the return of the Domain Names because [t]he Fifth Circuit [in *Netsphere*] directed the [district] [c]ourt to vacate the receivership order and **every single order authorizing any sale of Novo Point, L.L.C.'s domain names**." Pl.'s

Combined Resp. Br. 17 (Doc. 157) (citation omitted); Pl.'s Resp. Br. to Fortuna Mot. to Dismiss 21 (Doc. 159) (citation omitted). On the other hand, Plaintiff contends that its claims are not barred by collateral estoppel because neither this court nor the Fifth Circuit previously addressed or had any reason to address "the issue of the legal validity of the purported sales of domain names by the receiver **in any respect whatsoever**, nor has that issue ever been expressly determined by the U.S. District Court for the Northern District of Texas or any other court." Pl.'s Combined Resp. Br. 16-17 (Doc. 157) (footnote omitted); Pl.'s Resp. Br. to Fortuna Mot. to Dismiss 21 (Doc. 159) (footnote omitted).

In addition, Plaintiff contends, based on this court's February 28, 2014 order in *Netsphere* (Doc. 1368) vacating the April 22, 2011 order appointing Damon Nelson as manager of Novo Point and Quantec and January 2, 2014 opinion in *Baron v. Schurig* both demonstrate that, "after the remand from the Fifth Circuit, this [c]ourt recognized that due to its lack of subject matter jurisdiction, all orders entered concerning the receivership were void *ab initio*." Pl.'s Combined Resp. ¶¶ 32-34, 38 (Doc. 155) (citing *Baron*, 2014 WL 25519, at *14); and February 28, 2014 Order (*Netsphere* Action, Doc. 1368)). Plaintiff, therefore, contends that "all of the . . . instruments purporting to assign the Domain Names are void as well." Pl.'s Combined Resp. ¶ 38 (Doc. 155). Plaintiff further asserts that the Fifth Circuit had no authority to and could not have ordered the purchasers of the Domain Names to return the Domain Names to Novo Point because the purchasers were not parties to the *Netsphere* Action or any appeal in that case. In addition, Plaintiff maintains, based on the Code of Hammurabi,[9] that as the owner of the Domain Names, it is entitled to recover

---

[9] The Code of Hammurabi is the "oldest know written legal code, produced in Mesopotamia during the rule of Hammurabi (who reigned from 1792 to 1750 B.C.)," which "consisted of nearly 300 provisions, arranged under headings such as family, trade, real property, personal property, and labor." Black's Law Dictionary 313 (10th ed. 2009).

this property from those who purchased it if it is shown that the person or merchant who sold the property was a "thief," and the purchasers who bought the property receive the money they paid for the property from the "estate of the merchant."  Pl.'s Combined Resp. Br. 1 (Doc. 157) (citation omitted).

Plaintiff contends that Defendants' motions to dismiss based on various "avoidance defenses," including collateral estoppel, are fundamentally flawed and procedurally improper because they require the court to consider matters outside the pleadings. Plaintiff, therefore, maintains that the court should strike or deny the motions or, alternatively, convert them to summary judgment motions and give it a reasonable opportunity to present summary judgment evidence and additional briefing after conducting discovery.

### 3.    Discussion

"While the district court must accept as true all factual allegations in the complaint, it need not resolve unclear questions of law in favor of the plaintiff." *Kansa Reinsurance Co., Ltd. v. Cong. Mtg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994) (citations omitted).  Thus, dismissal under Rule 12(b)(6) is appropriate "when a successful affirmative defense appears on the face of the pleadings.  *Id.*  Further, as explained in *Arizona v. California*:

> [I]f a court is on notice that it has previously decided the issue presented, the court may dismiss the action sua sponte, even though the defense has not been raised. This result is fully consistent with the policies underlying res judicata: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste.

*Arizona v. California*, 530 U.S. 392, 412 (2000) (citation omitted).  "Normally, in deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint. However, courts

may also consider matters of which they may take judicial notice." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996).

Plaintiff acknowledges, and this court determines, that all of Plaintiff's claims, except perhaps its contract claim, stem from and necessarily rely on its contention that the Fifth Circuit vacated or reversed the receivership order and all orders authorizing the sales of the Domain Names or all such orders are automatically void and of no effect because the receivership order was reversed. Plaintiff's pleadings in this case not only reference the receivership order, the orders authorizing the sale of the Domain Names, the appeal of those orders by Novo Point and Baron, the Fifth Circuit's December 18, 2012 opinion, and the mandate(s) that issued after that opinion, but also attach many of the court filings and orders at issue. Moreover, as noted, the court can take judicial notice of such matters and is not bound by Plaintiff's conclusory allegations regarding the legal effect of the orders and opinions entered by this court or the Fifth Circuit. Accordingly, as Plaintiff and Movant Defendants both contend that the district court orders and opinions entered by the district court and the Fifth Circuit in *Netsphere* support their respective positions, resolving the collateral estoppel arguments of Movant Defendants in the context of Rule 12(b)(6) is appropriate and will avoid unnecessary waste of scarce judicial resources.

The doctrine of collateral estoppel or issue preclusion bars a party from relitigating issues "litigated and lost" in a prior action. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 (1979). "[D]efensive collateral estoppel prevents a plaintiff from litigating the same issue against successive defendants after that issue has been decided adversely to that plaintiff." *Ackerman v. American Airlines, Inc.*, 924 F. Supp. 749, 752 (N.D. Tex. 1995). "Application of collateral estoppel does not require complete identity of parties." *Meadows v. Chevron, U.S.A., Inc.*, 782 F. Supp. 1189, 1193

(E.D. Tex. 1991). "[F]ederal courts have repeatedly held that judgments can bind persons not party to the litigation in question" when the relationship between the party and nonparty is "sufficiently close." *Southwest Airlines Co. v. Texas Int'l Airlines*, 546 F.2d 84, 94-95 (5th Cir. 1977). Thus, a nonparty can be bound to a prior judgment against the party when the nonparty "succeeded to a party's interest in property"; the nonparty "controlled the original suit"; or the nonparty's "interests were represented adequately by a party in the original suit." *Id.* at 95.

Although Associated Recovery contends that Novo Point was not a party to the *Netsphere* Action, the docket sheet in that case and related appeals reflect that Novo Point had the opportunity to and did file numerous documents in *Netsphere* and in appeals to the Fifth Circuit. As Associated Recovery alleges that its rights and title to the Domain Names and its claims in this action derive from the assignment from Novo Point, which had a full and fair opportunity to litigate the issues raised in this case in *Netsphere* and related appeals, it is precluded from litigating the same issues Novo Point previously litigated and lost in *Netsphere*, as long as all of the requirements for collateral estoppel are satisfied. Similarly, because the relationship between Associated Recovery, Novo Point, and Baron are sufficiently close,[10] Associated Recovery is also barred from litigating the same issues in this case that Baron argued and lost in *Netsphere* and related appeals.

---

[10] The court's determination that these parties are sufficiently close is based on Plaintiff's verified pleadings in the Virginia Action in which it alleged as follows:

> Novo Point's predecessor's-in-interest include Jeffrey Baron ("Baron") and Ondova Ltd. ("Ondova"). Baron acquired the Subject Domain Names, either on his own behalf or on behalf of Ondova, at various times in or around 2001 to 2004. By 2010 Novo Point was the registrant of the Subject Domain Name and Novo Point remained the registrant and used the domain names to operate e-commerce websites until sometime in 2012 when the Subject Domain Names were wrongfully transferred from Novo Point.

Pl.'s Verified Compl. ¶ 3 (Virginia Action, Doc. 1). Plaintiff also alleges in this consolidated action that it is entitled to recover damages suffered by it and Novo Point's predecessor-in-interest. Pl.'s Compl. ¶ 41.

Federal law applies if collateral estoppel is based on the preclusive effect of a federal judgment "when the first suit is a diversity suit, and the second suit is brought under both diversity and federal question jurisdiction 'whether considered as a federal question case or a diversity case.'" *Seven Elves, Inc. v. Eskenazi*, 704 F.2d 241, 244 n.2 (5th Cir. 1983), *superseded by statute on other grounds*, 11 U.S.C. § 523(a)(6), *as recognized In re Delaney*, 97 F.3d 800 (5th Cir. 1996) (citation omitted). Under federal law, the three requirements for collateral estoppel are: "(1) the issue to be precluded must be identical to that involved in the prior action; (2) in the prior action the issue must have been actually litigated; and (3) the determination made of the issue in the prior action must have been necessary to the resulting judgment." *In re Davis*, 3 F.3d 113, 114 (5th Cir. 1993) (citation omitted). If the requirements for collateral estoppel are satisfied, "[i]t does not matter that the claims in each suit are different, or that the subject matter of each suit is different." *Next Level Commc'ns LP v. DSC Commc'ns Corp.*, 179 F.3d 244, 255 (5th Cir. 1999) (citation omitted).

The issue at stake in this case with respect to all of Plaintiff's claims, except its breach of contract claim,[11] is identical to the issue that was actually litigated, critical, and necessary to the Fifth Circuit's judgments in *Netsphere I* and *III*. The issue raised by Associated Recovery in this case and the issue raised by Novo Point and Baron in *Netsphere I* is whether the *Netsphere* receivership and the seizure and liquidation of Novo Point's assets to fund the receivership and pay for receivership fees and expenses were improper such that the orders authorizing the sales of Domain Names and related sales agreements are void, and Associated Recovery is entitled to the return of the Domain

---

[11] As herein explained, although Plaintiff's contract claim appears to premised at least in part on the same flawed theory regarding the receivership rulings in *Netsphere*, the basis for Plaintiff's contract claim and request for indemnification is not entirely clear because Plaintiff's allegations with respect to this claim are conclusory and insufficient as pleaded. Accordingly, the court does not include this claim in its collateral estoppel analysis and, instead, addresses it separately in a later section.

Names. While the Fifth Circuit resolved the receivership issue in Baron's and Novo Point's favor in *Netsphere I* and reversed the appointment of the receiver after concluding that the district court lacked authority to establish the receivership to pay Baron's former attorneys or control his vexatious litigation conduct, it did not reverse the orders authorizing the sales of Domain Names or immediately dissolve the receivership; nor did it order this court to return to Baron or Novo Point the cash generated from the sale of the Domain Names. The Fifth Circuit, instead, for equitable reasons attributable to Baron's disruptive conduct, authorized and ordered the district court on remand to pay the remaining receivership fees and expenses using Novo Point's assets (cash generated from sales of the Domain Names), which were part of the receivership. Likewise, in *Netsphere III*, the Fifth Circuit held that the issue of whether receivership fees could be charged against Novo Point's assets in the receivership was foreclosed by its holding in *Netsphere I*. The Fifth Circuit's determination regarding the disposition of the Novo Point's assets that were included in receivership was necessary to its judgment in *Netsphere I* because it dictated the disposition of receivership assets and the winding down of the receivership ordered by the court on remand. Accordingly, all of Plaintiff's claims against the Movant Defendants, except its breach of contract claim, are barred by collateral estoppel.

Moreover, even assuming, as Associated Recovery contends, that the issues in this case and *Netsphere I* are not exactly identical because the Fifth Circuit did not expressly address the issue of the legal validity of the receiver's sales of the Domain Names, Associated Recovery's claims still fail because they are based on the flawed assumption that the sales of the Domain Names were void *ab initio* and never divested Novo Point of any right, title, or ownership interest in the Domain Names because the Fifth Circuit determined in *Netsphere I* that the district court lacked jurisdiction

over the Domain Names. As noted by Movant Defendants, this conclusion by Associated Recovery rests entirely on the reversal of the receivership in *Netsphere I* while failing to account for the Fifth Circuit's: (1) denial of Baron's and Novo Point's motions to stay the sales of the Domain Names pending appeal; (2) holding in *Netsphere I* that using Novo Point's assets that were part of the receivership to pay for receivership fees was an "equitable solution" under the circumstances even though the receivership was found to be improper, *Netsphere, Inc.*, 703 F.3d at 313; and (3) wording of the December 31, 2012 clarification order that stated, "The district court orders that were in place prior to the release of our opinion remain in place." *In re Baron*, 593 F. App'x 356, 358, 2014 WL 7251031 (5th Cir. 2014) (quoting *Netsphere, Inc. v. Baron*, No. 10-11202, slip op. at 6-8 (5th Cir. 31 Dec. 2012)).

Associated Recovery's theory also fails to address how the Fifth Circuit could have ordered the district court to use Novo Point's assets to pay for receivership fees if, as it contends, the sales of Novo Point's Domain Names were void *ab initio* and Novo Point was never divested of the Domain Names. Further, the court disagrees that the sales of the Domain Names or sales agreements under which the Domain Names were sold by the receiver are void *ab initio* or an absolute nullity in light of the reversal of the order appointing the receiver and Associated Recovery's jurisdictional argument.[12]  Plaintiff does not cite any authority for its contention that reversal of the receivership under the circumstances in *Netsphere I* automatically voided the Domain Name sales and related sales agreements, and the court is not aware of any such authority.  Additionally, as the court in

---

[12] "[V]oid" means "[o]f no legal effect"; "null." Black's Law Dictionary 1805 (10th ed. 2009). "[V]oid ab initio" means "[n]ull from the beginning, as from the first moment when a contract is entered into. A contract is void ab initio if it seriously offends law or public policy, in contrast to a contract that is merely voidable at the election of one party to the contract." *Id.*  "The distinction between *void* and *voidable* is often of great practical importance. Whenever technical accuracy is required, *void* can be properly applied only to those provisions that are of no effect whatsoever— those that are an absolute nullity." *Id.*

*Netsphere III* explained, Novo Point's belief that the district court decided parts of the case erroneously does not implicate either the district court's subject matter jurisdiction over the *Netsphere* action or the Fifth Circuit's jurisdiction over the *Netsphere* appeals. *Netsphere*, Inc., 657 F. App'x at 324.

Further, Plaintiff's reliance on this court's February 28, 2014 order in *Netsphere* (Doc. 1368) and January 2, 2014 opinion in *Baron v. Schurig* is misplaced, as neither supports Plaintiff's contention that "after the remand from the Fifth Circuit, this [c]ourt recognized that due to its lack of subject matter jurisdiction, all orders entered concerning the receivership were void *ab initio*." Pl.'s Combined Resp. ¶¶ 32-34, 38 (Doc. 155) (citing *Baron*, 2014 WL 25519, at *14); and February 28, 2014 Order (Netsphere Action, Doc. 1368). In *Baron v. Schurig*, the court concluded that the mandate rule precluded the relief sought by Baron's former attorneys as petitioning creditors in the involuntary bankruptcy brought against him because the former attorneys sought to have their fees paid from the receivership assets pursuant to the May 11, 2011 Fee Order entered by Judge Furgeson that was based on the improper Receivership Order. The court determined that using the Fee Order as a basis to pay Baron's former attorneys using the receivership assets would circumvent the Fifth Circuit's holding and mandate in *Netsphere I* that directed the court to award the receiver's remaining reasonable fees from the receivership cash assets, but not Baron's former attorney's fees. *Baron*, 2014 WL 25519, at *14. The court also indicated there was some evidence that a bona fide dispute existed regarding the amount of fees that precluded the relief sought by Baron's former attorneys. *Id.* at *13.

Moreover, the court's February 28, 2014 decision to vacate the order appointing Damon Nelson to manage Novo Point and Quantec and not conduct extensive hearings before winding down

the receivership in *Netsphere* has no relevance to the issue in this case whether *Netsphere I* automatically reversed or voided the orders authorizing the sales of Novo Point's Domain Names. The February 28, 2014 order pertains to domain names registered or owned by Novo Point and Quantec that were never sold and which the Fifth Circuit ordered this court to return to Baron or the owners of the assets in winding down the receivership. The issue with respect to these assets was not so much who owned the assets, but who had authority to act on behalf of Novo Point and Quantec for purposes of receiving the assets when the receivership was wound down.

Moreover, as noted in this court's March 27, 2015 opinion, this issue was created by Baron and others acting on his behalf in another shameful effort to manipulate the proceedings in *Netsphere* and the related bankruptcy proceedings and affect the manner in which the receivership assets were returned to the receivership parties. *Netsphere, Inc. v. Baron*, 3:09-CV-0988-L, 2015 WL 1400543, at *3, 10 n.3, 9 (N.D. Tex. Mar. 27, 2015). The court had no reason to believe that it could realisticly resolve in an expeditious manner the issue of who owned or had authority to control Novo Point, Quantec, or these entities' assets when Baron, his attorneys, and others acting on his behalf had successfully thwarted Judge Furgeson's and the bankruptcy court's efforts in getting to the bottom of this same issue for several years. Moreover, the court believed that engaging in such an elusive venture would further delay the winding down of the receivership unnecessarily. The court similarly believed, albeit mistakenly, that vacating the order appointing Damon Nelson to manage Novo Point and Quantec would alleviate confusion and expedite the winding down and return of the assets remaining in the receivership as mandated by the Fifth Circuit. The assets in this case, on the other hand, pertain to Novo Point's Domain Names that were sold and liquidated to pay receivership fees in accordance with the Fifth Circuit's holding and mandate in that case.

Accordingly, for the foregoing reasons, the court concludes that, because the orders authorizing the sales of Domain Names and related sales agreements were not reversed or voided as a result of *Netsphere I*, Novo Point had no ownership or possessory rights to the Domain Names to assign to Associated Recovery, and without such rights Plaintiff is not entitled to the declaratory judgment relief requested and has not stated valid claims for relief based on alleged ACPA violations; unfair competition; common law trademark infringement; conversion; or intentional interference with an existing contract. Plaintiff's equitable claim for unjust enrichment similarly fails because it is based on Plaintiff's contention that Defendants would be unjustly enriched if allowed to keep the Domain Names and profit derived from the Domain Names purchased by them in light of the Fifth Circuit's ruling in *Netsphere I*. Thus, all of Plaintiff's claims, except its breach of contract claim, fail as a matter of law and will be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

**B.    Plaintiff's Remaining Breach of Contract Claim**

Consolidated Defendants contend that Plaintiff's breach of contract claim is also barred by collateral estoppel, as it is based on the same theory that the Domain Name sales and sales agreements are void. This argument may be true, but the court cannot make such a determination at this time, as it is unclear from Plaintiff's vague and conclusory allegations what the factual bases are for this claim. In its Third Amended Complaint, Plaintiff includes an indemnity provision from a Domain Name sales agreement and alleges in conclusory fashion as follows with respect to its "Alternative Claim[] for Breach of Contract and Recover of Attorneys' Fees":

> Under the express terms of the transactions described *supra* ¶ 21-27 of this amended complaint, Registrant Defendants SocialBon Inc., Floridians LLC, Media Options Inc., Strong Inc., Telepathy Inc., News Ltd., JRS Holdings LLC, Sylvia O'Donohoe, Virtual Investments LLC, and Quinn Vesey each became contractually

obligated to "pay to the applicable Seller Releasee [including Novo Point and its successor and assign, Associated Recovery] the amount of any and all Losses arising out of, based upon or relating to any of the Domain Names or any in connection with any intellectual property claim or ownership claim related to the Domain Names." Therefore, if this Honorable Court does not order each of those Registrant Defendants to transfer each Domain Name purportedly assigned to each such Registrant Defendant, then strictly in the alternative, Associated Recovery seeks judgment against each of those Registrant Defendant's for any and all Losses arising out of, based upon or relating to any such Domain Name or identical Mark, and reasonable and necessary attorneys' fees incurred in prosecuting such contract claim, pursuant to Chapter 38 of the Texas Civil Practices and Remedies Code.

Pl.'s Compl. ¶ 49. In its motion-to-dismiss response, Plaintiff similarly quotes an indemnity provision and contends in conclusory fashion that it is entitled to recover "all Losses arising out of, based upon or related to any of the Domain Names." Pl.'s Consolidated Resp. ¶ 39 (Doc. 155). Plaintiff references paragraphs 21 through 27 of its Complaint in support of the breach of contract claim, but the factual allegations in these paragraphs do not shed any light on whether the listed Registrant Defendants are parties to a sales agreement containing the indemnity provision quoted by Plaintiff; what losses Plaintiff has incurred "arising out of, based upon or related to any of the Domain Names"; or why Plaintiff believes any such losses are recoverable based on the contractual language in the indemnity clause. For example, it not clear whether Plaintiff contends that it or Novo Point suffered losses because of Defendants' alleged conduct or as a result of the receivership.

Consolidated Defendants also contend that Plaintiff's breach of contract claim against Defendant Telepathy, Inc. fails because Telepathy, Inc. did not purchase any Domain Names from Novo Point and did not agree to be bound by the contract terms referenced in Plaintiff's Third Amended Complaint. Based on a Domain Name Assignment and Transfer Agreement attached to Consolidated Defendants's motion to dismiss, which includes indemnity language that is slightly different from that included in Plaintiff's pleadings, Consolidated Defendants also contend that

Plaintiff's breach of contract claim fails because it is not based on "any intellectual property claim or ownership claim." Because of the insufficiency of Plaintiff's pleadings, the court cannot determine whether Telepathy, Inc. purchased the Domain Names in question in this case from Novo Point or was a party to a Domain Name sales agreement. Likewise, while the court can consider documents attached to a defendant's motion to dismiss that are referred to in the plaintiff's complaint and are central to the plaintiff's claims, the terms of the agreement attached to Consolidated Defendants' motion to dismiss differ slightly from those quoted in Plaintiff's pleadings, and the agreement relied on by Consolidated Defendants does not pertain to any Defendant that Plaintiff has sued for breach of contract.

Finally, Consolidated Defendants contend that Plaintiff's breach of contract claim is barred by the statute of limitations. Plaintiff contends that dismissal at this juncture on a statute of limitations defense is improper under Rule 12(b)(6).

A statute of limitations may support dismissal pursuant to Rule 12(b)(6) when it is evident from a plaintiff's pleadings that the action is time-barred and the pleadings fail to set forth or raise some basis for tolling the statute. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (citations omitted). At this time, however, it is not evident from the pleadings whether Plaintiff's breach of contract claim is time-barred. To make this determination, the court would first need to determine which state's law governs the contract claim. The agreement attached to Consolidated Defendants' motion to dismiss contains a provision that calls for the application of Texas law, but, as noted, the language in this agreement is not identical to that in the agreement language quoted by Plaintiff, and the agreement relied on by Plaintiff is not attached to its Complaint. Further, the parties disagree about which state's law applies to Plaintiff's state law claims, and the court does not have sufficient

information to conduct the fact-intensive choice-of-law analysis necessary to make this determination. Additionally, the parties' briefs do not address in any detail this issue, the relevant legal standard, or application of the facts in this case to the standard. Accordingly, resolution of whether Plaintiff's contract claim is barred by the statute of limitations is premature. For all of these reasons, the court will deny Consolidated Defendants' motion to dismiss Plaintiff's breach of contract claim.

### C.     Sua Sponte Dismissal of Same Claims Against Remaining Defendants

A district court may *sua sponte* dismiss a complaint under Rule 12(b)(6) "as long as the procedure employed is fair." *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (citation omitted ). Fairness in this context usually "requires both notice of the court's intention and an opportunity to respond." *Id.* (citation omitted).  *Sua sponte* dismissal without notice and opportunity to respond, however, is appropriate when there is no prejudice to the plaintiff.  *See Taylor v. Acxiom Corp.*, 612 F.3d 325, 330 (5th Cir. 2010) (concluding in consolidated action involving more than seventy-five defendants, that, "[w]hile the district court did dismiss sua sponte some defendants who did not join the motion to dismiss, there is no prejudice to the plaintiffs in affirming the judgment in its entirety because the plaintiffs make the same allegations against all defendants.").

Like *Taylor*, some but not all of the numerous Defendants in this consolidated action filed motions to dismiss or joined in the motions to dismiss.  In addition, Plaintiff's claims against the nonmoving Defendants are identical to those asserted against Movant Defendants in that they are based on the same factual allegations and legal theories. Moreover, Plaintiff had the opportunity to file several lengthy responses and briefs to Movant Defendants' motions to dismiss.  As the grounds

included in the motions to dismiss form the basis for the court's *sua sponte* determination that dismissal of the same claims by Plaintiff against the remaining Defendants is appropriate under Rule 12(b)(6), and Plaintiff has already had an opportunity to respond at length to the motions to dismiss, the court concludes that Plaintiff would not be prejudiced and it would not be unfair if the same claims based on the same facts against the remaining nonmoving Defendants are dismissed with prejudice before giving Plaintiff notice and a further opportunity to respond to the same grounds for dismissal. *See id.* Accordingly, for the reasons already explained, the court determines that all of Plaintiff's claims against the remaining Defendants, except Plaintiff's breach of contract claim, are barred by collateral estoppel and will *sua sponte* dismiss with prejudice these claims against the remaining Defendants under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### D. Plaintiff's Request to Amend its Pleadings

Associated Recovery requests to amend its pleadings to cure any defects if the court determines that Defendants' motions to dismiss should be granted. Movant Defendants oppose Plaintiff's request to amend its pleadings, contending:

> Since this case began, Plaintiff has cycled through numerous counsel, filed multiple amended complaints, and received numerous lengthy extensions. During that time, Plaintiff's position has only worsened as this Court and the Fifth Circuit have issued additional rulings that defeat its claims, on top of earlier rulings that also defeat its claims. Plaintiff's case is futile. The time has come to dismiss it with prejudice.

Consolidated Defs.' Reply 6 (Doc. 163).

Plaintiff has amended its pleadings a few times, including after Defendants moved the first time to dismiss its claims. Moreover, the court has determined that all of Plaintiff's claims, except its breach of contract claim, fail as a matter of law because they are based on the erroneous

conclusion that the district orders in *Netsphere* authorizing the sale of the Domain Names were expressly reversed by the Fifth Circuit or are void *ab initio* as a result of the Fifth Circuit's December 18, 2012 opinion and opinions of this court such that none of the sales or transfers of ownership of the Domain Names divested Novo Point of any right, title, or ownership interest. The court, therefore, believes that Plaintiff has stated its "best case" and cannot improve upon or supplement the allegations as pleaded with respect to these claims. Thus, further attempts to amend these claims would be futile and unnecessarily delay the resolution of this action. Accordingly, the court will deny Plaintiff's request to further amend its pleadings with respect to these claims that the court has determined will be dismissed with prejudice.

Regarding Plaintiff's remaining claim for breach of contract, the allegations in Plaintiff's Third Amended Complaint are insufficient to raise a right to relief for breach of contract above the speculative level against the remaining Defendants, but the court will allow Plaintiff to amend its pleadings with respect to this claim because it is unclear at this juncture whether amendment as to this claim would be futile. Accordingly, the court will grant Plaintiff's request to amend its pleadings with respect to its breach of contract claim against Defendants SocialBon, Inc.; Floridians, LLC; Media Options, Inc.; Strong, Inc.; Telepathy, Inc.; News, Ltd.; JRS Holdings, LLC; Sylvia O'Donohoe; Virtual Investments, LLC; and Quinn Vesey. *Given the opportunities that Plaintiff has had to amend its pleadings and the court's prior directive to Plaintiff on March 23, 2017, to amend its pleadings to include all of its claims against all defendants, the court will not allow Plaintiff to add any additional parties or claims.* Plaintiff's amended pleading with respect to it breach of contract claim **must** allege whether the Defendants at issue are parties to the written agreement relied on by Plaintiff, and, if not, the factual bases for which nonparties to the written agreement can be

held liable for breach of the agreement pursuant to the indemnity provision. Further, Plaintiff **must** allege the factual bases for the losses it contends that it is entitled to recover under the indemnity provision that arise out of, are based upon, or relate to the Domain Names associated with the Defendants sued for breach of contract. For example, Plaintiff **must** allege facts as to whether the losses are attributable to the allegedly reduced market value sale price of the Domain Names referenced in the Third Amended Complaint; whether the losses are attributable to Plaintiff's loss of the Domain Names and related profits the Domain Names could have generated if the Domain Names had not been sold by the receiver; some conduct that Defendants sued for breach of contract engaged in after purchasing the Domain Names; or other reason(s).

### E. Motion for Substitute Service and Extension of Time (Doc. 103)

In its March 28, 2017 motion, Plaintiff requests additional time to serve the handful of Marshall Defendants referenced in the court's March 10, 2017 show cause order that was entered in Civil Action No. 3:16-CV-651-L. Plaintiff's motion is moot with respect to Vivian Rosenthal, MOINC-US, Steve Parma, and Kate Spade because these persons and entities were not included as Defendants in Plaintiff's Third Amended Complaint and, therefore, are no longer parties to this action. The motion is also moot with respect to SocialBon, Inc. and JRS Holdings, LLC, as Plaintiff filed documents on March 30, 2017, that indicate these Defendants were served in June 2016. Of the Marshall Defendants referenced in the court's show cause order, this leaves only William Wolfson; Sol Perlstein; TobyClements.com, LLC; Janno, LLC; Floridian, LLC; News, Ltd.; Worldwide Retailing, LLC; Sylvia O'Donohoe; Dharshinee Naidu; and GoldRun, Inc. that are the subject of the court's show cause order. Plaintiff states that it has attempted unsuccessfully to serve these Defendants, which are believed to be located in foreign countries or states other than Texas,

in accordance with Texas law and requests to serve these Defendants by substitute service by either publication or e-mail. Although not referenced in the court's show cause order, Plaintiff also requests to serve Media Options, Inc. by publication or e-mail for the same reason. William Wolfson; Sol Perlstein; TobyClements.com, LLC; Janno, LLC; Worldwide Retailing, LLC; Dharshinee Naidu; and GoldRun, Inc. have not been sued for breach of contract, Plaintiff's only remaining claim. Accordingly, Plaintiff's motion as to these Defendants is moot. With respect to the Defendants that Plaintiff has sued for breach of contract, this leaves only Floridian, LLC; News. Ltd.; Sylvia O'Donohoe; and Media Option, Inc. that were identified in the court's show cause order or referenced in Plaintiff's motion. The court will deny without prejudice Plaintiff's Motion for Leave for Substitute Service and Extend Period for Service (Doc. 103) with respect to Floridian, LLC; News. Ltd.; Sylvia O'Donohoe; and Media Option, Inc. and will deny as moot the motion in all other respects.

## IV.    Conclusion

For the reasons stated, the court **grants** Defendants' Motions to Dismiss under Rule 12(b)(6) (Docs. 129, 132, 135, 143) with respect to all of Plaintiff's claims, except Plaintiff's breach of contract claim; **grants** BIG's Motion to Dismiss (Doc. 89) filed in Civil Action 3:17-CV-651-L; **dismisses with prejudice** all of Plaintiff's claims and requests for relief, *except Plaintiff's breach of contract claim*, against the Movant Defendants under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Further, *except Plaintiff's breach of contract claim*, the court *sua sponte* **dismisses with prejudice** all claims by Plaintiff with respect to the remaining internet Domain Names and Defendants, as these claims are identical to those that the court has already dismissed and determined to be fundamentally flawed in ruling on moving the

Movant Defendants' motions to dismiss. Plaintiff's Motion for Leave for Substitute Service and Extend Period for Service (Doc. 103) is **denied without prejudice** as to Defendants Floridians, LLC; Media Options, Inc.; News, Ltd.; and Sylvia O'Donohoe and **denied as moot** as to all other Defendants. Plaintiff's request to amend its pleadings is **granted** with respect to its breach of contract claim and **denied** in all other respects. Plaintiff **shall** file an amended pleading by **April 11, 2018**, that cures the deficiencies herein noted. *Failure to do so will result in the dismissal of Plaintiff's remaining contract claim with prejudice pursuant to Rule 12(b)(6). The court will not extend this deadline.*

**It is so ordered** this 28th day of March, 2018.


Sam A. Lindsay
United States District Judge

**Exhibit "A" to Memorandum Opinion and Order**
**(List of Defendants included in Plaintiff's Third Amended Complaint)**

| Domain Name | Defendant Registrant | Defendant Registrar |
|---|---|---|
| 028.com | John Doe 2 | liuxiao sheng |
| 134.com | Domains By Proxy, LLC | GoDaddy.com, LLC |
| 3535.com | Domains By Proxy, LLC | GoDaddy.com, LLC |
| 3dcamera.com | Linda Butcher / or HRJM | |
| 744.com | John Doe 1 | OnlineNIC, Inc |
| aij.com | Domains By Proxy, LLC | GoDaddy.com, LLC |
| ajm.com | Telepathy, Inc. | |
| apf.com | All-Pro Fasteners, Inc. | Perfect Privacy, LLC |
| apf.com | TobyClements.com LLC | |
| azm.com | Domains By Proxy, LLC | GoDaddy.com, LLC |
| azy.com | Telepathy, Inc. | |
| baldface.com | Adam Strong | |

| | | |
|---|---|---|
| baldface.com | Strong, Inc. | |
| bartenderguide.com | Linda Butcher / or HRJM | Fabulous.com Pty Ltd |
| battlelgo.com | Dharshinee Naidu | |
| battlelog.com | Electronic Arts, Inc. | |
| battlelog.com | Dharshinee Naidu | |
| bej.com | Whois Privacy Services Pty Ltd | Fabulous.com Pty Ltd |
| bgi.com | Telepathy, Inc. | CSC Corp. Domains, Inc. |
| bgi.com | Media Options, Inc. | |
| bulletproofvest.com | Onig, LLC | GoDaddy.com, LLC |
| bulletproofvest.com | PriveCo Inc. | |
| bulletproofvest.com | Chris Carli (Agent for Onig) | |
| businessdegree.com | Media Options, Inc. | GoDaddy.com, LLC |
| buytickets.com | True Magic, LLC | GoDaddy.com, LLC |
| bxi.com | Telepathy, Inc. | |
| cdy.com | Xiamen Privacy Protection | eName Technology Co.,Ltd |
| cheapsunglasses.com | Onig, LLC | GoDaddy.com, LLC |
| cheapsunglasses.com | Chris Carli (Agent for Onig) | |
| ching.com | Buyers Intl. Group, LLC | GoDaddy.com, LLC |
| ching.com | Media Options, Inc. | |
| chipleynews.com | News Ltd. | |
| cid.com | CID GmbH | PSI-USA, Inc. |
| collegetextbooks.com | Onig, LLC | GoDaddy.com, LLC |
| collegetextbooks.com | Chris Carli (Agent for Onig) | |
| crafty.com | Adam Strong | |
| crafty.com | Strong, Inc. | |
| cuk.com | Whois Privacy Services Pty Ltd | Fabulous.com Pty Ltd |
| cvy.com | Telepathy, Inc. | |
| designart.com | Linda Butcher / or HRJM | |
| ding.com | Sylvia O'Donohoe | GoDaddy.com, LLC |
| diveshop.com | Media Options, Inc. | |
| diveshop.com | Linda Butcher / or HRJM | EPIK, Inc. |
| duv.com | Telepathy, Inc. | |
| efix.com | Media Options, Inc. | GoDaddy.com, LLC |
| efm.com | Sol Perlstein | |
| egyptnews.com | News Ltd. | GoDaddy.com, LLC |

| | | |
|---|---|---|
| eky.com | Virtual Investments LLC | GoDaddy.com, LLC |
| emv.com | Telepathy, Inc. | |
| entertainmentgroup.com | DomainEmpire.com Ltd | GoDaddy.com, LLC |
| eph.com | Media Options, Inc. | Enom, Inc. |
| exchangeratecalculator.com | Fantasy Spin Game, LLC | Tierranet, Inc. |
| exchangeratecalculator.com | Media Options, Inc. | |
| exy.com | Moniker Privacy Services | Moniker Online Svcs. LLC |
| ezs.com | Telepathy, Inc. | |
| ezv.com | Telepathy, Inc. | |
| fny.com | John Doe 4, | eName Technology Co.,Ltd |
| fok.com | Media Options, Inc. | GoDaddy.com, LLC |
| fx2.com | John Doe 5 | |
| fxf.com | John Doe 6 | Google, Inc |
| fxf.com | Ye Yu | |
| gfa.com | Media Options, Inc. | GoDaddy.com, LLC |
| gleam.com | Adam Strong | |
| gleam.com | Strong, Inc. | |
| goldrun.com | GoldRun, Inc | |
| gpm.com | TobyClements.com LLC | GoDaddy.com, LLC |
| gra.com | Whois Privacy Services Pty Ltd | Fabulous.com Pty Ltd |
| gtf.com | Telepathy, Inc. | |
| gtf.com | Media Options, Inc. | |
| hhd.com | Moniker Privacy Services | Moniker Online Svcs LLC |
| hiu.com | Telepathy, Inc. | |
| hiu.com | Media Options, Inc. | |
| homelearning.com | Media Options, Inc. | Wild West Domains, LLC |
| hone.com | Adam Strong | |
| hone.com | Strong, Inc. | |
| icandy.com | Radical Investments LLC | |
| icandy.com | Linda Butcher / or HRJM | |
| icy.com | Alansis Corp; Alansis.com | GoDaddy.com, LLC |
| igm.com | Media Options, Inc. | Moniker Online Svcs LLC |
| inplay.com | No Org. Name | GoDaddy.com, LLC |
| iwf.com | Telepathy, Inc. | |
| jlu.com | Telepathy, Inc. | |

| | | |
|---|---|---|
| johnnieo.com | Quinn Vesey | |
| joj.com | Telepathy, Inc. | |
| jph.com | TobyClements.com LLC | eName Technology Co.,Ltd |
| jtz.com | John Doe 7, | GoDaddy.com, LLC |
| kaam.com | Janno, LLC | Name.com, Inc |
| kac.com | Telepathy, Inc. | |
| kfj.com | Telepathy, Inc. | |
| kgj.com | John Doe 8, | |
| khx.com | Telepathy, Inc. | |
| kmq.com | John Doe 9, | eName Technology Co.,Ltd |
| kof.com | WEB5 SOLUTIONS INC | ENOM, INC |
| kou.com | John Doe 10, | |
| kou.com | Media Options, Inc. | |
| kxq.com | John Doe 11 | |
| kxw.com | Jphn Doe 12 | eName Technology Co.,Ltd |
| lakehavasunews.com | News Ltd. | DropCatch.com 941 LLC |
| lfo.com | Whois Privacy Services Pty Ltd | Fabulous.com Pty Ltd |
| lhe.com | Telepathy, Inc. | |
| lhe.com | Media Options, Inc. | |
| lmg.com | Telepathy, Inc. | |
| lmg.com | Media Options, Inc. | |
| lnm.com | John Doe 13 | |
| logostore.com | Adam Strong | |
| logostore.com | Strong, Inc. | |
| lookout.com | Lookout Inc. | Amazon Registrar, Inc |
| luohe.com | John Doe 14 | eName Technology Co.,Ltd |
| mecc.com | Media Options, Inc. | Fabulous.com Pty Ltd |
| meq.com | John Doe 15 | eName Technology Co.,Ltd |
| mqn.com | Telepathy, Inc. | |
| musicdegree.com | Media Options, Inc. | UNIREGISTRAR CORP |
| newsmoldova.com | News Ltd. | DropCatch.com 440 LLC |
| nlh.com | CAMAC SOLUTIONS | ENOM, INC |
| nlm.com | Telepathy, Inc. | |
| nlm.com | Media Options, Inc. | |
| nvq.com | WEB5 SOLUTIONS INC | GoDaddy.com, LLC |

| | | |
|---|---|---|
| ocu.com | John Doe 16 | Internet Domain Service BS Corp |
| ohw.com | Telepathy, Inc. | |
| okv.com | Telepathy, Inc. | |
| onlineinsurancequotes.com | State Farm Automobile Insurance | |
| onlineinsurancequotes.com | Media Options, Inc. | |
| parkinggames.com | Telepathy, Inc. | |
| parkinggames.com | Steve Fortuna | Name.com, Inc |
| pht.com | Power Home Technologies LLC | GoDaddy.com, LLC |
| pixie.com | John Doe 17 | eName Technology Co.,Ltd |
| plf.com | Domain Protection Services, Inc | Name.com, Inc |
| qmh.com | John Doe 18 | eName Technology Co.,Ltd |
| qmh.com | Telepathy, Inc. | eName Technology Co.,Ltd |
| recharge.com | CG Capital BV | Ascio Technologies, Inc |
| reservoircapital.com | Domains By Proxy, LLC | GoDaddy.com, LLC |
| rewards.com | DBG Partners, Inc | NETWORK SOLUTIONS, LLC |
| rne.com | Telepathy, Inc. | |
| rsv.com | Telepathy, Inc. | |
| ruten.com | John Doe 19 | |
| rvm.com | Telepathy, Inc. | |
| rx3.com | Telepathy, Inc. | |
| savetime.com | Steve Fortuna | GoDaddy.com, LLC |
| sdu.com | John Doe 20 | |
| sdu.com | Media Options, Inc. | |
| slice.com | Slice Technology, Inc. | Wild West Domains, LLC |
| sojo.com | SocialBon, Inc. | |
| spytoys.com | Linda Butcher / or HRJM | ENOM, Inc. |
| spytoys.com | Creation Media, LLC | |
| sqg.com | John Doe 21 | |
| sqg.com | Telepathy, Inc. | eName Technology Co.,Ltd |
| taolv.com | John Doe 22 | |
| tgg.com | Telepathy, Inc. | |
| tpb.com | Telepathy, Inc. | |
| tsy.com | Telepathy, Inc. | |
| tumult.com | Tumult, Inc. | ENOM, INC |
| tumult.com | Floridians LLC | |

| | | |
|---|---|---|
| ucr.com | CBRE Group, Inc. | NETWORK SOLUTIONS, LLC |
| ugm.com | Telepathy, Inc. | |
| uhw.com | John Doe 23 | |
| uncutdiamonds.com | Linda Butcher / or HRJM | |
| usedguns.com | True Magic LLC | |
| uwj.com | Telepathy, Inc. | |
| uyr.com | Worldwide Retailing LLC | ENOM, INC |
| vanart | Media Options, Inc. | |
| vanart.com | Linda Butcher / or HRJM | UNIREGISTRAR CORP |
| vcz.com | John Doe 24 | |
| vfg.com | Telepathy, Inc. | |
| vfh.com | WHOIS PRIVACY PROTECTION SERVICE, INC | ENOM, INC |
| vfz.com | Telepathy, Inc. | |
| vgj.com | John Doe 25 | eName Technology Co.,Ltd |
| vgk.com | Privacy Protection Service INC d/b/a PrivacyProtect.org | Webair Internet Development |
| vgy.com | Telepathy, Inc. | |
| vhj.com | William Wolfson | 1API GmbH |
| vlu.com | Telepathy, Inc. | |
| vsk.com | Telepathy, Inc. | |
| vuu.com | Whois Privacy Services Pty Ltd | Fabulous.com Pty Ltd |
| vvs.com | Whois Privacy Services Pty Ltd | Fabulous.com Pty Ltd |
| waterquality.com | Telepathy, Inc. | |
| waterquality.com | Media Options, Inc. | |
| wce.com | WCE Intl. Ltd | GoDaddy.com, LLC |
| wff.com | Telepathy, Inc. | |
| wof.com | Telepathy, Inc. | |
| womensclothes.com | JRS Holdings LLC | GoDaddy.com, LLC |
| xaq.com | JD 27 | eName Technology Co.,Ltd |
| xff.com | JD 28 | |
| xsg.com | JD 29 | eName Technology Co.,Ltd |
| xsg.com | Telepathy, Inc. | |
| ycx.com | JD 30 | |
| ycx.com | Telepathy, Inc. | eName Technology Co.,Ltd |
| yey.com | JD 31 | |
| ygx.com | JD 32 | |

| | | |
|---|---|---|
| ygx.com | Telepathy, Inc. | eName Technology Co.,Ltd |
| yjr.com | JD 33 | Shenzhen Internet Works |
| yjx.com | JD 34 | eName Technology Co.,Ltd |
| yjx.com | Telepathy, Inc. | |
| ylz.com | JD 35 | |
| yqp.com | JD 36 | eName Technology Co.,Ltd |
| yqt.com | Telepathy, Inc. | |
| yqt.com | JD 37 | eName Technology Co.,Ltd |
| yrn.com | JD 38 | eName Technology Co.,Ltd |
| ysg.com | Telepathy, Inc. | Moniker Online Services LLC |
| yte.com | JD 39 | GoDaddy.com, LLC |
| yyg.com | JD 40 | eName Technology Co.,Ltd |
| zdp.com | Telepathy, Inc. | |
| zdp.com | JD 41 | eName Technology Co.,Ltd |
| zhd.com | JD 42 | eName Technology Co.,Ltd |
| zqi.com | Telepathy, Inc. | |
| zqs.com | Telepathy, Inc. | eName Technology Co.,Ltd |
| zulin.com | JD 43 | eName Technology Co.,Ltd |
| zzm.com | JD 44 | eName Technology Co.,Ltd |

| | |
|---|---|
| wyd.com | John Doe 26 |